UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEREMY ZIELINSKI, on behalf of himself
and all others similarly situated,

                              Plaintiff,

                                                          9:17-CV-1042
v.                                                        (DNH/TWD)

ANTHONY ANNUCCI, DOCCS Acting Commissioner,
MICHAEL KIRKPATRICK, Clinton Correctional
Facility Superintendent, JOHN DOES 1-9,

                              Defendants.
_____

APPEARANCES:                             OF COUNSEL:

JEREMY ZIELINSKI
16-A-3601
Elmira Correctional Facility
PO Box 500
Elmira, New York 14902
Plaintiff, *pro se*

BYRNE COSTELLO LAW FIRM                  JORDAN R. PAVLUS, ESQ.
AXA Tower I
100 Madison Street
Suite 1600
Syracuse, New York 13202
*Pro bono* for Plaintiff
on First Motion for Injunction Only

HON. LETITIA JAMES                       WILLIAM A. SCOTT, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, New York 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

**REPORT-RECOMMENDATION AND ORDER**

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff *pro se* Jeremy Zielinski ("Zielinski"), an inmate who was, at all relevant times, in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), commenced this civil rights action under 42 U.S.C. § 1983 with the filing of a *pro se* complaint alleging that DOCCS Acting Commissioner Anthony Annucci ("Annucci") and Clinton Correctional Facility ("Clinton") Superintendent, Michael Kirkpatrick ("Kirkpatrick"), violated his constitutional rights under the Eighth and Fourteenth Amendments for being wrongfully denied meals on multiple occasions because his name was left off of the "chow lists." (Dkt. No. 1.)  Plaintiff brought the action on behalf of himself "and on behalf of a class of similarly situated persons . . . consisting of all inmates at Clinton."  *Id.* at ¶ 4.[1]  Plaintiff also sought preliminary injunctive relief.  *Id.* at 6, ¶ B.

Upon initial review pursuant to 28 U.S.C. § 1915, the Court directed that the "action shall be considered only as an action brought by plaintiff in his individual capacity" and dismissed Plaintiff's Fourteenth Amendment claims arising out of the denial of meals without prejudice. (Dkt. No. 10 at 13.)  However, the Court found Plaintiff's Eighth Amendment claims based upon the denial of meals survived initial review pursuant to 28 U.S.C. §1915(e)(2)(B) and 28 U.S.C. § 1915A.  *Id.*  The Court denied Plaintiff's request for preliminary injunctive relief, but directed that the New York State Attorney General's Office produce information, to the extent possible, regarding the names of the unidentified John Doe corrections officers.  *Id.* at 14.  Thereafter,

---

[1]    Paragraph numbers are used in citations where documents identified by the docket number under CM/ECF, the Court's electronic filing system, contain consecutively numbered paragraphs.  Page numbers in citations to documents identified by the docket number refer to the page numbers inserted by CM/ECF.

Defendants indicated by status report that DOCCS was unable to determine the names of the John Doe defendants responsible for preparing the relevant chow lists.  (Dkt. No. 16.) Defendants then filed an Answer.  (Dkt. No. 21.)

Prior to the Answer being filed, Plaintiff filed an application for a temporary restraining order and preliminary injunction seeking an Order that Defendants "stop denying me food." (Dkt. No. 17 at ¶ 1.)  Defendants filed a response in opposition to the motion (Dkt. No. 19) and Plaintiff filed a reply in further support of his motion.  (Dkt. No. 20.)  Thereafter, District Judge David N. Hurd, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c) referred Plaintiff's request for injunctive relief to the undersigned for the purpose of scheduling and overseeing limited discovery concerning the motion, and to appoint *pro bono* counsel for Plaintiff to assist in discovery, and any evidentiary hearing that may be necessary on the motion.  (Dkt. No. 24.)  The Court then directed Defendants to produce to the Court for an in camera review certain documents pertaining to the meal deprivation claim while the Court sought *pro bono* counsel. (Dkt. No. 26.)  Defendants served required Rule 26 disclosures (Dkt. No. 27) and responded to the Court's directive to submit documents for an in camera review.  (Dkt. No. 40.)

Before appointment of *pro bono* counsel could be made, Plaintiff filed a second motion for a temporary restraining order and preliminary injunction to prevent Defendant Annucci from confining Plaintiff in involuntary protective custody ("IPC") or otherwise transferring him from general population at Clinton or transferring him out of Clinton.  (Dkt. No. 28.)  Plaintiff then filed a motion to amend his complaint (Dkt. No. 29) and shortly thereafter filed a motion seeking to file a second supplemental complaint.  (Dkt. No. 33.)  An Order (Dkt. No. 34) appointing attorney Jordan R. Pavlus, Esq., of the Byrne Costello Law Firm as *pro bono* counsel was then

issued for the purpose of assisting with discovery on the first pending motion for injunction (Dkt. No. 17) regarding meal availability for Plaintiff. Thereafter, Plaintiff was apparently transferred from Clinton to Elmira Correctional Facility ("Elmira") where he currently remains. (Dkt. No. 44.) He also filed a further motion (Dkt. No. 43) requesting that the Court construe his second motion for injunction (Dkt. No. 28) as a motion for an order directing his immediate return to Clinton.

The Court held a discovery conference with Plaintiff, *pro bono* counsel, and Defendants' counsel to discuss the parameters of the limited discovery on the motion for injunction regarding denial of meals, and made discovery directives. (Dkt. No. 46; Text Minute Entry 7/10/2018.) Discovery ensued regarding the issue of meal denials, and the Court made further directives establishing when any further filings in support of the pending motions seeking injunctive relief were to be filed. (Dkt. Nos. 46, 49-53, 55, 57- 60, 62, 64, 65.) Plaintiff then filed a further reply in support of his motions for injunctive relief. (Dkt. No. 66.)

Thus, before the Court are Plaintiff's motions for injunctive relief (Dkt. Nos. 17, 28, 43) which are fully briefed as directed by the Court, including Defendants' responses in opposition (Dkt. Nos. 19, 31, 47, 48, 49), and Plaintiff's replies and other submissions in support of the motions. (Dkt. Nos. 18, 20, 66.) Also before the Court are Plaintiff's motions to file a first amended complaint and a second supplemental complaint (Dkt. Nos. 29, 33) and Defendants' responses in opposition. (Dkt. Nos. 39, 42.)

## II.    PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF

Preliminary injunctive relief "'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Moore v.*

4

*Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  "In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'"  *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)).  However, when the moving party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is "even higher."  *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)).[2]

Thus, a mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief."  *Citigroup Global Mkts.*, 598 F.3d at 35 n.4 (internal quotation marks omitted).  "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons."  *Fisher v. Goord*, 981 F. Supp. 140, 167-68 (W.D.N.Y. 1997) (citing *Farmer v.*

---

[2]        Under the Prison Litigation Reform Act, preliminary injunctive relief in any civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct that harm. *See* 18 U.S.C. § 3626(a)(2).  In considering an application for prospective relief, courts are required to give substantial weight to any adverse impact such relief may have on public safety or on the operation of the criminal justice system.  *See* 18 U.S.C. § 3626(a)(1)(A).

*Brennan*, 511 U.S. 825, 846-47 (1994)).

Equally important, injunctions directing a party to refrain from misconduct or other wrongdoing – so-called "obey the law" injunctions – are generally disfavored by courts because they are vague, not readily enforceable, and would not subject defendants to any requirement not already imposed by law. *See Rowe v. New York State Div. of the Budget*, No. 1:11-CV-1150 (LEK/DRH), 2012 WL 4092856, at *7 (N.D.N.Y. Sept. 17, 2012) (citing *N.L.R.B. v. Express Pub. Co.*, 312 U.S. 426, 435-36 (1941)).  Based upon the foregoing, and for the reasons set forth below, it is recommended that Zielinski's motions for preliminary injunctive relief (Dkt. No. 17, 28, 43) be denied.

### A.    Injunction Regarding "Chow List" Policy at Clinton Correctional Facility

In his first motion for injunctive relief, Plaintiff seeks an Order from the Court directing that "the defendants stop denying me food." (Dkt. No. 17 at ¶ 1.)  He states that he has been denied meals by unnamed corrections officers at Clinton on several dates because he has not been on the "chow list" and that he has made complaints to various unnamed facility staff and civilian staff. *Id.* at ¶¶ 2, 3, 6, 7, 10.  He claims he submitted numerous grievances, letters, and complaints to try to stop the denial of meals. *Id.* at ¶ 11.

The Court assigned *pro bono* counsel to assist Plaintiff in gathering discovery and evidence related to the claims alleged in this motion. (Dkt. No. 34.)  Such discovery ensued until *pro bono* counsel ultimately determined that all requested discovery had been provided. (Dkt. No. 65.)  Counsel was directed to forward the information to Plaintiff (Dkt. No. 64) and Plaintiff

then filed a further reply as directed to all of his motions for injunctive relief.[3]  (Dkt. No. 66.)

Plaintiff was transferred from Clinton to Elmira during the pendency of these motions.  (Dkt. No.

44.)  Defendants argue the transfer to another facility moots Plaintiff's request for the injunction

concerning the deprivation of meals at Clinton.  (Dkt. No. 47 at 1.)

Despite the transfer, Plaintiff argues the Court can still preliminarily enjoin Clinton from

continuing their "chow list" policy.  (Dkt. No. 66 at 4-9.)  He specifically argues that the transfer

amounts to a voluntary cessation of the policy being applied to Plaintiff, but it does not make it

clear that the unlawful conduct will not reoccur; that the policy can be repeated; that the harms

from the policy are inherently transitory; and that his transfer was made in bad faith.  *Id.*

"It is settled in this Circuit that a transfer from a prison facility moots an action for

injunctive relief against the transferring facility."  *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir.

1996); *see also Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an

inmate's transfer from a prison facility generally moots claims for declaratory and injunctive

relief against officials of that facility."); *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011)

(same); *Verley v. Wright*, No. 02 Civ. 1182(PKC), 2007 WL 2822199, at *9 (S.D.N.Y. Sept. 27,

2007) ("To the extent that plaintiff seeks injunctive relief directed at officials at [the transferring

facility], those claims are now moot as plaintiff is no longer incarcerated [there].").  "The

hallmark of a moot case or controversy is that the relief sought can no longer be given or is no

longer needed."  *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983).

An exception to this general mootness doctrine is "for challenged actions that are

---

[3]      Plaintiff does not include any copies of grievances, letters or other written
documentation of his complaints in any of his moving papers, including the supplemental reply
filed after discovery on his motion took place.  *See* Dkt. No. 66.

'capable of repetition, yet evading review.'" *Pugh v. Goord*, 571 F. Supp. 2d 477, 488 (S.D.N.Y. 2008) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).  This exception applies "if '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Id.* (quoting *Murphy*, 455 U.S. at 482).

In this case, the Court finds that Plaintiff's transfer to Elmira moots his request for injunctive relief related to the denial of meals during his incarceration at Clinton.  Plaintiff's requested injunction is directed solely to his request that *he* be provided meals while incarcerated at Clinton.  (Dkt. No. 20 at 1.)  "My request, however, is for a specific, narrow, readily-enforceable order: That the defendants provide me with the 3 regularly scheduled facility meals each day."  *Id.*  Moreover, Plaintiff has made it clear that he is getting his meals at Elmira (*see* Dkt. No. 66-1 ¶ 7) such that there is no "reasonable expectation that the same complaining party [will] be subject to the same action again."  *Murphy*, 455 U.S. at 482.

The Court recognizes that DOCCS may freely transfer Plaintiff between facilities, *Pugh*, 571 F. Supp. 2d at 489, such that he may at some point return to Clinton.  Other than speculation, however, the Court has no basis at this time to conclude that Plaintiff will be returned to Clinton. Additionally, Plaintiff's class allegations do not alter this recommendation since the Court has made clear that Plaintiff, as a *pro se* litigant, cannot maintain a class action because non-attorneys may not represent anyone other than themselves (Dkt. No. 10 at 7 (citations omitted)) and that "this action shall be considered only as an action brought by plaintiff in his individual capacity" until the requirements of Rule 23 of the Federal Rules of Civil Procedure "have been satisfied."  (Dkt. No. 10 at 13.)

8

Accordingly, Plaintiff's request for an injunction relating to his incarceration at Clinton is moot by reason of his transfer to another correctional facility, and an evidentiary hearing on the issue is unnecessary. Because Plaintiff could conceivably be returned to Clinton during the pendency of this action, however, the Court recommends that Plaintiff's request for this injunctive relief be denied without prejudice at this time.

### B.    Injunction Regarding Protective Custody and Motion to Return to Clinton

Plaintiff also moved the Court for an injunction to prevent his confinement in involuntary protective custody ("IPC") at Clinton and to enjoin the Commissioner of DOCCS from transferring him out of Clinton. (Dkt. No. 28.) Plaintiff was transferred to Elmira while the motion was pending, thus he filed a letter motion requesting that his motion to prevent IPC confinement "be construed as a motion for an Order directing my immediate return to Clinton CF." (Dkt. No. 43.) Defendants filed opposition to both motions. (Dkt. Nos. 31, 48.)

Since Plaintiff is no longer in IPC at Clinton, and since Plaintiff requests that his motion be construed as one seeking his return to Clinton, the Court recommends denying the motions. As Defendants correctly state, it is DOCCS, and not the Court, that determines where Plaintiff will be housed during his period of incarceration. *See* Dkt. No. 31 at 7; Dkt. No. 48 at 5; *see also Olim v. Wakinekona*, 461 U.S. 238, 248-49 (1983) (inmates have no right to be confined in a particular state or particular prison within a given state); *Montayne v. Haymes*, 427 U.S. 236, 243 (1976) (New York state prisoners have no right to incarceration at a particular prison facility no matter what part an inmate's behavior may play in a decision to transfer). Plaintiff's request to be confined in a different correctional facility is not sufficient to warrant the requested judicial relief.

In light of his *pro se* status, the Court has considered whether Plaintiff has made a sufficient showing to warrant the issuance of any form of judicial relief regarding his transfer from Clinton to Elmira, or regarding his confinement at Elmira, and concludes that he has not.  In so ruling, the Court finds that Plaintiff has not demonstrated that he is likely to suffer imminent irreparable harm if the requested relief is not granted.  To the contrary, Plaintiff states he had been assaulted and threatened at Clinton by other inmates, although he claims in conclusory fashion that guards orchestrated these attacks, and that he was denied numerous meals at Clinton. (Dkt. No. 17 at ¶ 2.)  Further, Plaintiff has showed no relationship between the transfer to Elmira and his claims in this action that he was not getting proper meals at Clinton, nor is there any allegation that either named Defendant played a role in the transfer.  Plaintiff claims the transfers were retaliatory for filing this action and another action, for gathering evidence for the actions, and because he was being nominated to the Clinton Inmate Grievance Resolution Committee. (Dkt. No. 28-1 at ¶ 3.)  Plaintiff also claims nothing occurred to justify his transfer to IPC at Clinton or his transfer to Elmira from Clinton, and he believes the transfer to IPC was "fraudulent and baseless."  *Id* at ¶ 8.  However, Plaintiff provides no evidence to support these conclusory and speculative claims, and thus they are insufficient to make the showing for the issuance of preliminary injunctive relief.

Upon review of the present record, the Court finds Plaintiff has failed to demonstrate, with evidence, a "clear and substantial" showing of a likelihood of success on the merits of his claims, or that he will suffer extreme or very serious damage if the motion to transfer him back to Clinton is denied.  As a result, the Court recommends that Plaintiff's motion seeking injunctive relief regarding his placement in IPC at Clinton be denied as moot, and that his motion

requesting a transfer back to Clinton be denied.

## III.    PLAINTIFF'S PROPOSED AMENDED AND SUPPLEMENTAL COMPLAINTS

The named Defendants in Plaintiffs' proposed "First Amended and Supplemental

Complaint" ("FAC") seeking to add claims and parties are Annucci, Acting Commissioner of

DOCCS; Shelley M. Mallozzi ("Mallozzi"), Director of Inmate Grievance Program, DOCCS;

Kirkpatrick, former Clinton Superintendent; Earl Bell ("Bell"), Clinton Superintendent; Christine

Gregory ("Gregory"), Clinton Inmate Grievance Program ("IGP") Supervisor; Sergeant Jabut

("Jabut"), Clinton; Sergeant John Doe 1, Clinton; and Clinton Corrections Officers Travis J.

Baker ("Baker"), M. French ("French"), Lamoy, C. Reed ("Reed"), S. Castine ("Castine"), and

John Doe 2-9.  (Dkt. No. 29-3 at ¶¶ 5-17.)  The section 1983 claims alleged by Plaintiff in the

proposed FAC include (1) Eighth Amendment claims for meal deprivation, attacks by other

inmates, and failure to protect; (2) First Amendment claims for retaliation for Plaintiff filing

lawsuits and grievances, and the filing of false misbehavior reports against Plaintiff; (3) First

Amendment claims of hindering of the "free flow of mail" and the "right to petition the

Government" related to alleged deficiencies in DOCCS grievance procedures; and (4) New York

State Penal Law claims.  *Id.* at ¶¶ 102-112.  Plaintiff also characterizes his FAC as a class action.

*Id.* at ¶ 101.

The named Defendants in Plaintiffs' proposed "Second Supplemental Complaint"

("SSC"), which also seeks to add claims and more parties, are all of the parties named in the

FAC, plus additional parties of Sergeant W. Leclair ("Leclair"); Watch Commander John Doe

10; S. Bullis ("Bullis"), Commissioner's Hearing Officer; and T. Zerniak ("Zerniak"), Deputy

Superintendent for Security, all of Clinton.  (Dkt. No. 33-1 at ¶¶ 115-118.)  The section 1983

claims alleged by Plaintiff in the proposed SSC include (1) First Amendment claims for transferring Plaintiff to IPC in retaliation for Plaintiff filing lawsuits; and (2) denying Plaintiff access to the courts by his transfer to IPC with the intent of preventing him from observing the practices of how the "chow list" policy was applied and to prevent him from having access to the law library in violation of the Petition Clause of the First Amendment as it applies to Defendants under the Fourteenth Amendment. *Id.* at ¶¶ 174-176.

In the FAC and the SSC, Plaintiff seeks judgment: (1) declaring Defendants' policies and actions to be in violation of Plaintiffs' Constitutional rights; (2) enjoining Defendants from denying him meals and continuing to engage in such unconstitutional and unlawful actions; (3) enjoining Defendants from confining Plaintiff in IPC; (4) directing Defendants to expunge the record of Plaintiff being confined in IPC; (5) declaring that the Inmate Grievance Resolution Committee ("IGRC") election without Plaintiff on the ballot to be null and void; (6) directing Defendants to hold a special election for IGRC Representative with Plaintiff on the ballot; (7) declaring Clinton's IGP systemically not available and that Plaintiff does not need to use it before commencing any further litigation; (8) awarding actual and punitive damages; and (9) awarding attorneys fees and costs pursuant to 42 U.S.C. § 1988. *See generally* Dkt. Nos. 29-3, 33-1.

Defendants argue Plaintiff's proposed amendments are futile and have specifically raised the following opposition to Plaintiffs' FAC: (1) the proposed FAC continues to raise class action allegations although he is a *pro se* litigant; (2) the First and Eighth Amendment claims concerning the "chow list" policy alleged against Annucci, Kirkpatrick, and Bell are conclusory and there is no allegation that these Defendants were aware of Plaintiff's complaints that he was

not getting meals; (3) the First and Eighth Amendment claims concerning the assaults by other inmates orchestrated by unspecified DOCCS staff are baseless and conclusory, and Plaintiff does not identify any specific corrections officers who purportedly orchestrated the assaults; (4) the First Amendment false misbehavior report claim does not specifically allege that Defendant Jabot issued the report, and an inmate has no constitutionally guaranteed immunity from being wrongly or falsely accused of conduct that may result in the deprivation of a liberty interest; (5) Plaintiff has no First Amendment right to the grievance process created by state law for DOCCS; (6) Plaintiff's Eighth Amendment failure to protect claim regarding inmate porters not providing him meals does not allege sufficient facts to establish that Plaintiff was incarcerated under conditions posing a substantial risk of harm; and (7) Plaintiff's New York State Penal Law claims fail because an individual cannot bring a private cause of action for criminal violations. *See generally* Dkt. No. 39.

In addition to the reasons for opposing the FAC, Defendants have raised the following further opposition to Plaintiff's SSC: (1) Plaintiff has failed to exhaust his administrative remedies; and (2) Plaintiff has failed to allege actual injuries such that his access to courts claim must fail. *See generally* Dkt. No. 42.

### A.    Legal Standards

#### 1.    Motion to Amend

The filing of amended and supplemental pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 15. Rule 15(a)(2) provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed.R.Civ.P. 15(a)(2). Under Rule 15(a), a motion to amend a pleading should only be denied, "if there is an 'apparent or declared

reason – such as undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (other citation omitted).  An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6).  *Lucente v. Int'l Bus. Machines Corp*., 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).   The decision to grant or deny a motion to amend is committed to the sound discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion.  *See Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).

## 2. Local Rule

Under Local Rule 7.1, a proposed amended complaint "must be a complete pleading, which will supersede the original pleading in all respects.  A party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference."  N.D.N.Y. L.R. 7.1(a)(4).  Further, the motion must "identify the amendments in the proposed pleading, either through the submission of a red-lined version of the original pleading or other equivalent means."  *Id.*

## 3. Joinder of Parties

In the case of proposed amendments where new defendants are to be added, the Court must also look to Rules 20 and 21 of the Federal Rules of Civil Procedure.  *Ward v. LeClaire*, No. 07-CV-0026 (LEK/RFT), 2008 WL 182206, at *3 (N.D.N.Y. Sept. 26, 2007) (citation

omitted).  Rule 21 states that a party may be added to an action "at any time [and] on just terms."

Fed.R.Civ.P. 21.  Rule 21 is "intended to permit the bringing in of a person, who through

inadvertence, mistake or for some other reason, had not been made a party and whose presence as

a party is later found necessary or desirable."  *Gosten v. Potter*, No. 9:08-CV-0478 (FJS/ATB),

2010 WL 4774238, at *5 (N.D.N.Y. Sept, 21, 2010) (citations omitted).[4]  Rule 20(a)(2) is

liberally construed "so as to promote judicial economy and to allow related claims to be tried

with a single proceeding."  *Equal Emp't Opportunity Comm'n v. Nichols Gas & Oil, Inc.*, 518 F.

Supp. 2d 505, 508-09 (W.D.N.Y. 2007) (citations omitted); *Viada v. Osaka Health Spa, Inc.*, 235

F.R.D. 55, 61 (S.D.N.Y. 2006) (citation omitted).  The plaintiff bears the burden of

demonstrating that joinder is warranted under Rule 20.  *Deskovic v. City of Peekskill*, 673 F.

Supp. 2d 154, 159 (S.D.N.Y. 2009).

### B.    Analysis

#### 1.    Proposed First Amended Complaint

The Court has reviewed the proposed FAC thoroughly and with due regard for Plaintiff's

status as a *pro se* litigant and has considered the thorough and well-reasoned response provided

by Defendants' counsel.

##### a.    <u>Class Action Allegations</u>

Defendants seek denial of Plaintiffs' motion to amend to the extent the proposed FAC

---

[4]    "Rule 21 cannot be read alone but must be read in light of Rules 18, 19 and 20[.]"
*United States v. Commercial Bank of N. Am.*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962).  In this
respect, the federal rules state, in part, that "[p]ersons . . . may be joined in one action as
defendants if: (A) any right to relief is asserted against them jointly, severally, or in the
alternative with respect to or arising out of the same transaction, occurrence, or series of
transactions or occurrences; and (B) any question of law or fact common to all defendants will
arise in the action." Fed.R.Civ.P. 20(a)(2).

seeks to allege a class action.  (Dkt. No. 39 at 5.)  As the Court has already stated, "this action shall be considered only as an action brought by plaintiff in his individual capacity."  (Dkt. No. 10 at 7.)  "[I]t is well settled in this circuit that *pro se* plaintiffs [non-lawyers] cannot act as class representatives.  They do not satisfy the requirements of Rule 23(a)(4)."  *Pabon v. Goord*, No. 99 CIV. 2196, 1999 WL 1063180, at *1 (S.D.N.Y. Nov. 23, 1999).  As a result, this aspect of Plaintiff's motion to amend is denied.

b.    <u>Plaintiff's First and Eighth Amendment Meal Deprivation Claims</u>

In his FAC, Plaintiff restates his Eighth Amendment claims regarding denial of meals against the original two Defendants, Annucci and Kirkpatrick, and alleges additional specific dates when he was denied meals.  (Dkt. No. 29-3 at ¶¶ 20-26.)  He further alleges that newly named Defendants Baker, French, Castine, and Reed all participated in the denial of meals on specific dates including 2/4/17 (Baker and French), 2/3/18 (Castine and Reed), and 3/24/2018 (Castine and Reed).  *Id.* at ¶¶ 27-33.  Plaintiff then alleges that newly named Defendant Bell, along with original Defendants Annucci and Kirkpatrick, were all personally aware of and directly responsible for the deprivation of meals at Clinton because they created and allowed policies to continue which resulted in inmates being deprived of meals.  *Id.* at ¶¶ 35-41. Additionally, read liberally, Plaintiff further alleges newly named Defendant Lamoy threatened him numerous times because of Plaintiff's continued complaints about not receiving meals.  *Id*. at ¶¶ 57, 68-70.

Defendants argue the proposed amendments contained in Claims 1 and 3 of the FAC are insufficiently conclusory in alleging First Amendment retaliation and Eighth Amendment cruel and unusual punishment violations for the deprivation of meals.  Defendants further argue: "This

16

is particularly true for supervisory defendants Annucci, Kirkpatrick and Bell.  The Plaintiff does not allege that these Defendants denied him any meals or that they were aware that the Plaintiff himself was denied meals."  (Dkt. No. 39 at 7.)

Rule 20 of the Federal Rules of Civil Procedure governs the permissive joinder of parties. Fed. R. Civ. P. 20.  As noted above, to join a party, the movant must satisfy two requirements. Rule 20 permits joinder of a plaintiff if: "(A) he or she asserts any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).

The two requirements for joining a defendant are the same as that for joining a plaintiff. *Compare* Fed. R. Civ. P. 20(a)(1) and Fed. R. Civ. P. 20(a)(2).  In assessing whether the requirements of Rule 20(a) are met, courts must accept the factual allegations in a plaintiff's complaint as true.  *Deskovic*, 673 F. Supp. 2d at 159.  The plaintiff bears the burden of demonstrating joinder is warranted under Rule 20.  *Id.*  The requirements of Rule 20(a) are to be interpreted liberally to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding.  *Viada*, 235 F.R.D. at 61 (quotation and citation omitted).

As to proposed new Defendants Baker, French, Castine, and Reed, Plaintiff alleges specific additional dates he was denied meals, and specific allegations of the involvement of these four Defendants regarding the denial of meals.  The Court finds these allegations are sufficiently plead and arise out of the same set of facts and circumstances involving Plaintiff's claimed deprivation of meals while housed at Clinton, and will involve common questions of law

and fact.  The Court notes, moreover, that Defendants do not contend they will be unduly

prejudiced if this aspect of Plaintiff's motion to amend concerning the FAC is granted, nor is

there any basis in the record upon which the Court finds that the resolution of this matter will be

unreasonably delayed thereby since Defendants will be afforded an opportunity to dispute these

allegations and to conduct reasonable discovery.  As such, the Court will allow the requested

amendments to add Baker, French, Castine, and Reed as party defendants concerning the Eighth

Amendment violations alleged in Claim 1 of the FAC.

As to proposed new Defendant Lamoy, Plaintiff's FAC adds allegations regarding threats

and harassment by Lamoy sounding in First Amendment retaliation for Plaintiff's complaints that

he was being wrongfully deprived of meals.  (Dkt. No. 29-3 at ¶¶ 50, 57, 68-70.)  As with the

claims alleged against Baker, French, Castine, and Reed, the Court finds these allegations are

sufficiently plead and arise out of the same set of facts and circumstances involving Plaintiff's

claimed deprivation of meals while housed at Clinton, and will involve common questions of law

and fact.  Although verbal threats and harassment, without more, do not generally give rise to

cognizable claims under section 1983, *see, e.g., Alnutt v. Cleary*, 913 F. Supp. 160, 165

(W.D.N.Y. 1996) (citation omitted), Plaintiff does not seek to assert these claims in a vacuum

but, rather, in furtherance of his pending Eighth Amendment claims.  So understood, these

allegations may be relevant to the pending claims.  *See Toliver v. City of New York*, 530 Fed.

App'x 90, 92-93 (2d Cir. 2013) (reversing district court's granting of defendants Rule 12(b)(6)

motion based on the lower court's erroneous conclusion that plaintiff alleged mere verbal

harassment which did not support actionable constitutional deprivation); *Toliver v. Fisher*, No.

9:12-CV-0077 (MAD/ATB), 2015 WL 403133, at *21 (N.D.N.Y. Jan. 29, 2015) ("When alleged

harassment amounts to more than verbal taunts and includes other more serious, ongoing constitutional deprivations, a plaintiff should be given an opportunity to pursue his constitutional claims.") As a result, the Court will allow the requested amendment to add Lamoy as a party defendant concerning First Amendment retaliation as alleged in Claim 3 of the FAC.

Regarding the allegations in the FAC against proposed new Defendant Bell, and the additional allegations against Defendants Annucci and Kirkpatrick, the Court agrees with Defendants that these claims are conclusory and insufficiently plead since Plaintiff does not allege these Defendants denied him any meals or were even aware Plaintiff was denied meals.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C.] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). As the Supreme Court has noted, a defendant may only be held accountable for his own actions under section 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law." *Hendrickson v. U.S. Attorney Gen.*, No. 91-CV-8135, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994).

With respect to individuals who, like Defendants Annucci, Kirkpatrick, and Bell, are sued in their capacities as supervisors, it is well-established that they cannot be liable for damages

under section 1983 solely by virtue of being a supervisor. *See Richardson v. Goord*, 347 F.3d

431, 435 (2d Cir. 2003) ("[L]iability . . . cannot rest on respondeat superior."); *Wright*, 21 F.3d at

501. To establish responsibility on the part of a supervisory official for a civil rights violation, a

plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct;

(2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3)

created or allowed to continue a policy or custom under which unconstitutional practices

occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event;

or (5) failed to act on information indicating that unconstitutional acts were occurring. *See*

*Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21

F.3d at 501.

Here, the FAC alleges in conclusory fashion that other inmates are subjected to meal

deprivations and that Defendants Annucci, Kirkpatrick, and Bell were personally aware of these

inmates' meal deficiencies because of the manner in which the "chow lists" are taken, their

failure to correct errors in the way "chow lists" are taken, their lack of supervision and record

keeping, their refusal to use surveillance cameras and body cameras, and their refusal to

investigate complaints. (Dkt. No. 29-3 at ¶¶ 34-41.) However, it bears repeating that this is not a

class action. Plaintiff also alleges those three Defendants were aware of the retaliation against

Plaintiff by named and unnamed Corrections Officers. *Id.* at ¶¶ 80-84. Plaintiff does not allege

the personal involvement of Defendants Annucci, Kirkpatrick or Bell in their roles as supervisory

officials, or that he ever reported to them that he was being denied meals, or that he ever even

encountered them. Plaintiff has further failed to allege specific factual allegations that

Defendants Annucci, Kirkpatrick, or Bell ever received or were even aware of any complaints by

Plaintiff about meals or "chow lists." Even if Plaintiff's new allegations were construed as him reporting the meal deprivations to them or that they somehow received the complaints of Plaintiff and ignored the complaints, it is not enough to establish personal involvement of these officials. "It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Higgins v. Coombe,* No. 95 CIV 8696(SS), 1997 WL 328623, at * 10 (S.D.N.Y. June 16, 1997) (citations omitted). Thus, the Court denies Plaintiff's motion to amend insofar as he seeks to add Defendant Bell and add additional First and Eighth Amendment claims against Annucci and Kirkpatrick.

> ### c.    Plaintiff's First Amendment Retaliation Claim Regarding False Misbehavior Report

In Claim 5, Plaintiff alleges he was issued a false misbehavior report by a non-defendant employee, Ms. C. Kemp ("Kemp"), for lying and for interfering with an employee. (Dkt. No. 29-3 at ¶ 65.) He alleges newly proposed Defendant Sergeant Jabut ordered Kemp to file the misbehavior report in retaliation for his complaints about the denial of meals and then ordered him "keeplocked." *Id.* The charges in the misbehavior report were dismissed five days later. *Id.* at ¶ 75.

"[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citation omitted). In other words, a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). "The

prisoner's due process rights are protected [in such a case] if he is granted a hearing on the charges and given an opportunity to rebut them." *Jones v. Coughlin*, 45 F3d 677, 79 (2d Cir. 1995). An allegation that a false misbehavior report was issued in retaliation for an inmate's alleged exercise of a constitution right must be viewed with skepticism. *See Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001). Moreover, such a claim cannot survive if it is phrased wholly in conclusory terms that are unsupported by detailed factual allegations. *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000).

Here, the Court finds Plaintiff's claims of retaliation against Jabut are unsupported by detailed factual allegations. Plaintiff specifically notes that no claims are made against Kemp, the DOCCS employee who issued the misbehavior report. (Dkt. No. 29-3 at ¶ 65.) Plaintiff never alleges that Jabut issued a false misbehavior report against him such that he has not alleged conduct against Jabut sufficient to sustain a First Amendment violation. The proposed amendment would not withstand a motion to dismiss as it contains conclusory and vague general allegations against Jabut and is therefore futile. Moreover, Plaintiff asserts he was cleared of wrongdoing at the hearing on the subject misbehavior report. Accordingly, Plaintiff's motion to amend to add a retaliation claim against proposed Defendant Jabut is denied.

>    d.    Plaintiff's Claims Regarding Assault by Another Inmate and
>          Inmate Porters Denying Him Food

Plaintiff further alleges in Claims 2, 4, and 8 of his FAC that his First and Eighth Amendment rights were violated because he was assaulted by other inmates and inmate porters denied him food. (Dkt. No. 29-3 at ¶¶ 104, 106, 110.) Plaintiff alleges an unnamed inmate assaulted him on December 7, 2017, and on December 14, 2017, a different unnamed inmate

22

threatened him.  *Id.* at ¶¶ 45, 46, 61, 62.  Plaintiff claims these attacks were "orchestrated" by unnamed Clinton staff members.  *Id.* at ¶ 61.  He further alleges unnamed inmate porters on December 8 and 9, 2017, were directed by other unnamed Clinton staff to deliberately not deliver him meals.  *Id.* at ¶¶ 51, 52.

Plaintiff does not state any factual support for these claims which are vague, speculative, and conclusory.  As such, the claims may be dismissed on the pleadings.  "'A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Leon v. Murphy,* 988 F.3d 303, 311(2d Cir. 1993) (quoting *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) (per curium)) (other citations omitted).  Accordingly, Plaintiff's motion to amend is denied with regarding to Claims 2, 4, and 8 of his FAC.

e.      Plaintiff's Claims Regarding DOCCS' Grievance Procedures

Plaintiff alleges a variety of flaws in the IGP at Clinton in violation of his First Amendment rights.  (Dkt. No. 29-3 at ¶¶ 85-99, 108, 109.)  These claims are generally directed at Defendants Annucci and Kirkpatrick, along with newly proposed Defendants Bell, Mallozzi, and Gregory.  *Id.* at ¶¶ 88, 93, 95.  He alleges Kirkpatrick and Bell violated his First Amendment rights by refusing to investigate grievance complaints.  *Id.* at ¶ 85.  He further alleges Annucci and Mallozzi violated his First Amendment rights because they are responsible for interference with IGP mail and they refuse to modify grievance procedures.  *Id.* at ¶ 93.  With regard to Gregory, Plaintiff alleges she conducts sham investigations of grievances in violation of his First Amendment rights.  *Id.* at ¶ 95.  These allegations fail to state a claim upon which relief can be granted.

23

As stated by the Court in *Shell v Brzezniak*, 365 F. Supp. 2d 362 (W.D.N.Y. 2005):

> The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances. *See Bill Johnson's Rest., Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim. *Cancel v. Goord,* No. 00 Civ.2042, 2001 WL 303713, *3 (S.D.N.Y. Mar. 29, 2001). If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim. *See Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991). "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Cancel,* 2001 WL 303713, at *3; *see also Torres v. Mazzuca,* 246 F. Supp. 2d 334, 342 (S.D.N.Y.2003); *Mahotep v. DeLuca,* 3 F. Supp. 2d 385, 390 (W.D.N.Y.1998).

*Id.* at 369-70. Accordingly, Plaintiff's motion to add causes of action pertaining to Clinton's internal grievance procedures fails to state a claim upon which relief may be granted and the motion is therefore denied with respect to Claims 6 and 7. *See also Abreu v. Travers*, 9:15-CV-0540 (MAD/ATB), 2016 WL 6127510, *13 (N.D.N.Y. Oct. 20, 2016) ("It is well-established that a prison inmate has no constitutional right of access to such an internal grievance process.") (collecting cases).

### f.     Plaintiff's Claims Regarding New York's Penal Law

Plaintiff's last two claims in the proposed FAC assert causes of action for violations of New York's Penal Law §§ 110.00, 135.65, and 120.14. (Dkt. No. 29-3 at ¶¶ 111, 112.) He claims proposed Defendant Lamoy committed the crime of attempted coersion, and the crime of

threatening Plaintiff such that he was in fear of physical injury. *Id.* Since private citizens do not have a private cause of action for alleged criminal violations, these claims fail and the motion to amend is denied with respect to Claims 9 and 10 as alleged in the FAC. *Smith v. New York City Police Dep't*, No. 06 Civ. 15436(JSR)(KNF), 2010 WL 423039, at *9 (S.D.N.Y. Feb. 4, 2010).

### 2. Proposed Second Supplemental Complaint

While Plaintiff's motion to amend regarding the FAC was pending, he moved to file a SSC to add additional Defendants and three more causes of action. (Dkt. Nos. 33, 33-1.) Defendants oppose the motion. (Dkt. No. 42.)

As an initial matter, the Court notes the SSC is insufficient because it fails to comply with the Northern District of New York's Local Rule 7.1. Under Local Rule 7.1, a proposed amended complaint "must be a complete pleading, which will supersede the original pleading in all respects. A party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." N.D.N.Y. L.R. 7.1(a)(4). Plaintiff's SSC starts with paragraph number 113, apparently picking up where the proposed FAC, its last paragraph being number 112, left off. *Compare* Dkt. No. 29-3 with 33-1. The motion to amend may be denied on this basis alone. In view of Plaintiff's *pro se* status however, the Court has otherwise considered the motion which seeks to add causes of action sounding in First Amendment retaliation, and First Amendment and Fourteenth Amendment access to courts claims. (Dkt. No. 33-1 at ¶¶ 174-176.) For the following reasons, Plaintiff's motion to file the SSC is denied.

### a. Plaintiff's Claims Regarding Access to Courts

Plaintiff contends that as a result of being put into IPC, he was denied access to courts because he could not access the prison law library. (Dkt. No. 33-1 at ¶¶ 145, 153, 167, 175.)

Plaintiff also alleges his placement in IPC was in retaliation for filing lawsuits and attempting to

investigate his claims, and for successfully campaigning for nomination to serve as the inmate

representative to the IGRC.  *Id.* at  ¶¶ 129, 164, 174, 176.

"A prisoner has a constitutional right of access to the courts for the purpose of presenting

his claims, a right that prison officials cannot unreasonably obstruct and that states have

affirmative obligations to assure."  *Washington v. James*, 782 F.2d 1134, 1138 (2d Cir. 1986)

(citing *Bounds v. Smith,* 430 U.S. 817, 821-23 (1977)).  This right of access, however, guarantees

a prisoner "no more than reasonable access to the courts."  *Herrera v. Scully,* 815 F. Supp. 713,

725 (S.D.N.Y. 1993) (citing *Pickett v. Schaefer*, 503 F. Supp. 27, 28 (S.D.N.Y. 1980)).  To state

a claim for denial of access to the courts, a plaintiff must allege facts plausibly suggesting that (1)

the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury.

*Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Howard v. Leonardo*, 845 F. Supp. 943, 946

(N.D.N.Y. 1994) (Hurd, M.J.).  A hypothetical or theoretical denial of access is insufficient to

state a claim.  *Lewis*, 518 U.S. at 350-51.

Plaintiff claims he "is unable to access the Law Library to conduct essential research in

order to continue prosecuting and commencing meritorious civil rights claims against

defendants."  (Dkt. No. 33-1 at ¶ 167.)  Plaintiff has failed to offer any specifics regarding those

claims and offers no additional factual allegations that he did indeed experience prejudice by

virtue of being unable to access the law library, leaving instead only conclusory allegations.

*Collins v. Goord*, 438 F. Supp. 2d 399, 418 (S.D.N.Y. 2006 (holding that vague allegations do

not "substitute for the required showing of an 'actual injury' in a specific legal action resulting

from the alleged deprivation").  Moreover, a review of the docket in this action, and the other

action Plaintiff cites, *Zielinski v. Annucci*, No. 9:17-CV-1087 (GTS/CFH), also pending in the

Northern District of New York, belies Plaintiff's claims since both actions contain numerous

submissions from Plaintiff during the time he alleges he was in IPC.  *See, e.g.,* Dkt. Nos. 25, 28,

29, 30, 32, 33, 37, 41; *Zielinski v. Annucci*, No. 9:17-CV-1087 (GTS/CFH), Dkt. Nos. 31, 33, 34,

36, 37.  Accordingly, Plaintiff's motion to amend regarding Claim 12 in the SSC is denied.

### b.  Plaintiff's Claims Regarding Retaliation

As noted above, Plaintiff also alleges in his SSC that his placement in IPC was in

retaliation for filing lawsuits and attempting to investigate his claims, and for successfully

campaigning for nomination to serve as the inmate representative to the IGRC.  (Dkt. No. 33-1 at

¶¶ 129, 164, 174, 176.)  Plaintiff does not allege that he exhausted his administrative remedies

concerning these claims.  Instead, without support, Plaintiff claims administrative remedies are

not available; his placement in IPC is not grievable; "and without a hearing and determination

there is nothing to appeal administratively."  *Id.* at ¶ 157.  Plaintiff notes that his hearing on the

IPC was held on two dates, but then adjourned and had not been rescheduled at the time of the

filing of this motion to amend.  *Id.* at ¶¶ 146, 150, 155, 156.  As set forth below, because Plaintiff

has failed to exhaust administrative remedies, his motion to add claims of retaliation in his SSC

are denied without prejudice.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or

other correctional facility until such administrative remedies as are available are exhausted."  42

U.S.C. § 1997e(a); *see also Ross v. Blake*, __ U.S. ___, 136 S. Ct. 1850, 1854-55 (2016).  "[T]he

PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. In New York state prisons, DOCCS has a well-established three-step inmate grievance program. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the IGP involves the following procedure for the filing of grievances. First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence. *Id.* at § 701.5(a) (2010). A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue. *Id.* at 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*id.* at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing. *Id.* at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision. *Id.* at 701.5(c)(1). If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal. *Id.* at § 701.5(c)(3)(ii). Grievances regarding DOCCS-wide policy issues are forwarded directly to the central office review committee ("CORC") for a decision under the

28

process applicable to the third step. *Id.* at 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the

superintendent's written decision. *Id.* at 701.5(d)(1)(I). CORC is to render a written decision

within thirty calendar days of receipt of the appeal. *Id.* at 701.5(d)(3)(ii).

As set forth above, at each step of the IGP, a decision must be rendered within a specified

time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must

appeal 'to the next step,'" assuming there is another step in the IGP. *Eleby v. Smith*, No. 9:15-

CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. §

701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure

by the IGRC or the superintendent to timely respond to a grievance . . . can—and must—be

appealed to the next level . . . to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including

receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his

administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d

170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps

that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the

merits.") (internal quotations and citations omitted)).

An inmate may seek an extension of the time limits in writing at any of the steps, but such

a request must be made within forty-five days of the incident being grieved or the decision being

appealed. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g) (2013). If an inmate believes that an

extension was wrongly denied, he may file a separate grievance protesting the denial. *Id.*

If a prisoner has failed to properly follow each of the applicable steps prior to commencing

litigation, he has failed to exhaust his administrative remedies. *Woodford*, 548 U.S. at 93.

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]") (quotations and citations omitted). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id*. at 1859-60. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second Circuit noted that, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Here, Plaintiff does not claim to have exhausted his administrative remedies or that he even attempted to do so. He also does not claim that administrative remedies were unavailable to him or that he was prevented from filing a grievance regarding the retaliation or access to courts claims. Instead, he asserts that his retaliation and access to courts claims are not grievable and that his hearing on the IPC was incomplete so he could not appeal it. (Dkt. No. 33-1 at ¶ 157.) However, compliance with the PLRA includes the formal inmate grievance process outlined above, as well as through an administrative appeal regarding a superintendent's hearing which includes IPC placement. *See* N.Y. Comp. Codes R. & Regs. tit. 7, §§ 254.8 and 330.3(b). Although a prisoner has no independent duty to plead facts plausibly suggesting that he exhausted his available administrative remedies in order to state an actionable civil rights claim, *Jones*, 549 U.S. at 211-17, "[t]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id.* at 216. If a prisoner chooses to plead facts regarding exhaustion, and those facts show that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim. *Id*. at 215-16.

Based on the foregoing, the facts plead by Plaintiff in his SSC clearly show that he failed to exhaust his available administrative remedies with regard to his First Amendment retaliation claims. As such, the Court denies the motion to amend in this respect without prejudice.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion seeking injunctive relief regarding denial of meals at Clinton Correctional Facility (Dkt. No. 17) be **DENIED** without prejudice; and it is further

**RECOMMENDED** that Plaintiff's motion seeking injunctive relief regarding his

placement in involuntary protective custody at Clinton Correctional Facility (Dkt. No. 28) be **DENIED** as moot; and it is further

      **RECOMMENDED** that Plaintiff's motion seeking to be returned to Clinton Correctional Facility (Dkt. No. 43) be **DENIED**; and it is hereby

      **ORDERED** that Plaintiffs' first motion to amend his complaint (Dkt. No. 29) is **GRANTED**, in part, and **DENIED**, in part as follows: (1) Plaintiff's requested amendment regarding his Eighth Amendment claim for denial of meals alleged in Claim 1 of the First Amended Complaint (Dkt. No. 29-3) against Defendants Baker, French, Castine, and Reed is **GRANTED**; (2) Plaintiff's requested amendment regarding his First Amendment claim for retaliation alleged in Claim 3 of the First Amended Complaint (Dkt. No. 29-3) against Defendant Lamoy is **GRANTED**; and (3) all other claims in the First Amended Complaint (Dkt. No. 29-3) are **DENIED**; and it is further

      **ORDERED** that Plaintiff is directed to submit a copy of the final page of his proposed First Amended Complaint (Dkt. No. 29-3 at 31) to this Court bearing his original signature **within thirty (30) days** of the filing date of this Order and Report-Recommendation; and it is further

      **ORDERED** that upon receipt from Plaintiff of a signed copy of the signature page of the First Amended Complaint (Dkt. No. 29-3) the Clerk will file that pleading as the Amended Complaint in this action against original Defendants Annucci and Kirkpatrick, as well as new Defendants Baker, French, Castine, Reed, and Lamoy **ONLY**; and it is further

      **ORDERED** that upon the filing of the signed First Amended Complaint, the Clerk shall issue a summons for each of the newly added Defendants Baker, French, Castine, Reed, and

Lamoy **ONLY**, and forward the summonses, along with a copies of the signed First Amended Complaint, to the United States Marshal for service upon Defendants Baker, French, Castine, Reed, and Lamoy **ONLY**; and it is further

    **ORDERED** that a formal response to Plaintiff's signed First Amended Complaint be filed by Defendants Baker, French, Castine, Reed, and Lamoy as provided for in the Federal Rules of Civil Procedure subsequent to service of process on said Defendants; and it is further

    **ORDERED** that original Defendants Annucci and Kirkpatrick file their respective response the First Amended Complaint within twenty (20) days of the filing of the signed First Amended Complaint; and it is further

    **ORDERED** that Plaintiff's second motion to amend his complaint (Dkt. No. 33) regarding First Amendment retaliation claims asserted in the Second Supplemental Complaint (Dkt. No. 33-1), is **DENIED** for failure to exhaust administrative remedies, without prejudice, and the First Amendment and Fourteenth Amendment access to court claims asserted in the Second Supplemental Complaint are **DENIED** with prejudice; and it is further

    **ORDERED** that the Clerk shall terminate *pro bono* counsel, Jordan R. Pavlus, Esq., of the Byrne Costello Law Firm, who was assigned for the limited purpose of assisting with discovery pertaining to Plaintiff's motion seeking injunctive relief regarding denial of meals at Clinton Correctional Facility, from the docket; and it is further

    **ORDERED** that pretrial deadlines remain adjourned and will be reset as soon as possible once all Defendants have appeared in this action after the filing and service of the First Amended Complaint; and it is further

    **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

 SO ORDERED.

Date:   March 19, 2019
       Syracuse, NY

Thérèse Wiley Dancks
United States Magistrate Judge

---

[5]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

2016 WL 6127510
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Carlos ABREU, Plaintiff,
v.
TRAVERS, et al., Defendants.

9:15-CV-0540(MAD/ATB)
|
Signed 10/20/2016

**Attorneys and Law Firms**

CARLOS ABREU, 99-A-3027, Green Haven
Correctional Facility, P.O. Box 4000, Stormville, NY
12582, Plaintiff, pro se.

**DECISION and ORDER**

MAE A. D'AGOSTINO, United States District Judge

# I. INTRODUCTION

**\*1** Presently before the Court for review is a complaint
submitted for filing by pro se plaintiff Carlos Abreu
pursuant to 42 U.S.C. § 1983 ("Section 1983").[1] Dkt. No.
1 ("Compl."). Plaintiff, who is presently incarcerated at
Green Haven Correctional Facility, has paid the filing fee
required for this action.

# II. RELEVANT BACKGROUND

This action was originally commenced by plaintiff and
fifteen other inmates in October, 2012, against more than
seventy defendants. *See Weathers, et al. v. Travers, et al.*,
No. 9:12-CV-1582 (GLS/RFT) ("*Weathers*"). Plaintiff's
claims were severed from the remaining plaintiffs' claims
in *Weathers*, he was granted permission to file his
complaint in this action, and his complaint in this action
was deemed filed on October 22, 2012 – the date that the
*Weathers* action was filed. *See* Dkt. Nos. 6, 7. The full
history of *Weathers* is set forth in multiple Decisions and
Orders issued by then-Chief United States District Judge
Gary L. Sharpe in that action and will not be repeated here
unless relevant to the Court's review. *See* Dkt. Nos. 4-7
(copies of relevant orders from *Weathers*).

# III. DISCUSSION

The legal standard governing the dismissal of a pleading
for failure to state a claim pursuant to 28 U.S.C. §
1915A(b) was discussed at length in this Court's Decision
and Order filed on September 14, 2015, and it will not be
restated in this Decision and Order.[2] *See* Dkt. No. 8 (the
"September 2015 Order") at 4-8. Among other things, the
September 2015 Order dismissed the Eighth Amendment
medical indifference claims against defendants Travers,
Marlow, and Lashway arising between February, 2012,
and August, 2012, because those claims were clearly
duplicative of claims asserted by plaintiff in an earlier-
filed action. September 2015 Order at 9-10; *see also Abreu
v. Lira*, No. 9:12-CV-1385 (NAM/DEP) ("*Abreu* I"),
Dkt. No. 1. Since those claims have been dismissed, the
factual allegations supporting them will not be discussed
in this Decision and Order unless necessary to clarify the
remaining claims. Travers, Marlow, and Lashway remain
defendants as there are other claims asserted against them.

## A. Summary of the Complaint

Plaintiff asserts numerous claims that arose, if at all,
while he was incarcerated at Upstate Correctional Facility
("Upstate C.F."). Plaintiff states that all of the defendants
are sued in their individual capacities. Compl. at 8. The
Court will use its best efforts in an attempt to discern
plaintiff's claims and will set forth the facts as alleged by
plaintiff in his complaint.

### 1. Medical and Mental Health Treatment

Plaintiff suffers from chronic asthma, high cholesterol,
allergies, hemorrhoids, and "other medical conditions."
Compl. at 9. Prior to arriving at Upstate C.F.,
plaintiff was housed at Southport Correctional Facility
("Southport C.F."), where the mental health staff
determined that plaintiff suffered from "serious mental
conditions/psychological traumas." *Id.* Also while at
that facility, the medical staff ordered that plaintiff be
scheduled for x-rays or an MRI, that he see a specialist and
an eye doctor, that he undergo a rectal examination, and
receive physical therapy and "other medical attentions."
*Id.* At either Southport C.F. or Five Points Correctional
Facility, plaintiff was given an asthma inhaler, Lipitor for
his high cholesterol, and allergy and pain medication. *Id.*
at 10.

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 36 of 131

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

**\*2** On or about February 29, 2012, while waiting for medical appointments and physical therapy that had been scheduled at Southport C.F., plaintiff was transferred to Upstate C.F. Compl. at 10. Plaintiff was regularly intimidated, retaliated against, and denied medical services by the nurses, security, and staff at Upstate C.F. because they claimed that he had stabbed two correctional officers at Five Points C.F. *Id.* at 11. On April 17, 2012, plaintiff filed a grievance claiming that defendants Travers and Lashway were harassing and threatening him. *Id.* at 18-19.

From November, 2012 until February, 2013, at Upstate C.F., plaintiff filed nearly daily sick call requests reporting chronic pain, rectal bleeding, vision and hearing problems, and headaches, and requesting a back brace, physical therapy, a colonoscopy, various medications, and specialist appointments, but the requests were repeatedly denied or ignored. [3] Compl. at 11-12. Plaintiff was told by nurses that there was no real doctor at Upstate C.F. and only defendant nurse practitioner Lashway could schedule him to see a doctor. *Id.* at 12. Plaintiff had previously sued Lashway in 2008; the lawsuit was settled in 2010. *Id.* at 12. Defendant Lashway remembered plaintiff from her previous contact with him at Clinton Correctional Facility and she "mentioned" plaintiff's lawsuit and complaints against her, and asked if it was true that plaintiff settled the lawsuit against her. *Id.* at 13.

Plaintiff advised defendants Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, and Otis that defendants Travers, Marlow, and Lashway were not addressing his medical needs, but they did not correct the problem. Compl. at 15. On May 10, 2012, plaintiff wrote to defendant Fischer complaining about the medical staff misconduct and also told him that he had written several times to defendants Rock, Uhler, Lira, Zernia, and Quinn about the same problems but they did not respond. *Id.* at 25-26, 34.

On August 16, 2012, defendant Travers denied plaintiff his cholesterol and allergy medication. Compl. at 36. In an attempt to cover up her misconduct, defendant Travers lied that plaintiff threw his medication on the floor, and therefore she asked defendant Lashway to discontinue all of plaintiff's medications, including his pain medication. *Id.* at 36-37.

In August, 2012, plaintiff filed multiple complaints and sick call slips asking for new glasses because his were broken, but defendants Travers and Lashway "fail[ed] or refuse[d] to assist" him. Compl. at 38. Without his glasses, plaintiff suffers from eye pain, blurred vision, double vision, headaches or migraines, and cannot read well. *Id.* Plaintiff wrote to defendants Otis, Schroyer, Smith, Rabideau, Grinbergs, and Kornigsmann about his glasses, but they ignored him. *Id.* On August 23, 2012, plaintiff wrote to defendant Bellnier about the continued misconduct of defendants Travers and Lashway, asking that he investigate, but Bellnier did not correct the problem. *Id.* at 47.

Defendant Marlow denied plaintiff adequate medical care on August 30 through September 2, 2012, after he complained that the disciplinary loaf diet was causing him pain and other medical issues; she just smiled and walked away without examining plaintiff or reporting the problem to a doctor. Compl. at 40-41. On September 5, 14, and 15, 2012, defendant Travers denied plaintiff medical care when he reported medical problems arising from being placed on the loaf diet. *Id.* at 41, 45. Defendant Travers denied plaintiff medical care on October 17 and 18, 2012, for a sore throat, hoarseness, and difficulty swallowing. *Id.* at 50.

**\*3** On November 27, 2012, plaintiff filed a grievance against defendants Travers and Lashway, claiming that they ignored his complaints of pain and his requests for his asthma inhaler, Lipitor, allergy medications, eyeglasses, an MRI, a colonoscopy, and that he be examined by a "doctor/specialist." Compl. at 54. From November, 2012, and forward, defendants Travers and Lashway continued to deny plaintiff medical care. *Id.* at 54-55.

Defendant nurse Waterson would not give plaintiff any pain medication for his injuries suffered as a result of an assault on January 24, 2013, and failed to report plaintiff's serious injuries in the medical records or to report the sexual assault by defendant Sisto. Compl. at 65. Plaintiff requested sick call for his injuries from January 24, 2013, through February 3 or 7, 2013, and reported his "eye conditions, pains, and injuries" to defendants Greenizen, Uhler, Rock, and Otis in person and in letters and grievances. *Id.* at 67. Defendants Laramay and Bell were also notified. *Id.*

WESTLAW  © 2019 Thomson Reuters. No claim to original U.S. Government Works.    2

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 37 of 131

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

Plaintiff sent letters to defendants Kemp, Gonzalez, and Bosco "reporting his medical and mental health conditions" and also advised defendant Evans. Compl. at 68.

### 2. Excessive Force/Sexual Assault

On September 18, 2012, defendant Patterson placed handcuffs on plaintiff's wrist too tight, pulled plaintiff back aggressively and violently, conducted a pat frisk, and intentionally touched plaintiff's genitals and buttocks. Compl. at 45-46. As a result, both of plaintiff's wrists were cut and bleeding and he had pain in his testicles, hands, wrists, and shoulders. *Id.* at 46. Plaintiff wrote to defendants Rock, Uhler, Fischer, and Oropallo about Patterson's misconduct but they failed to correct it. *Id.* at 46.

On December 3, 2012, defendants Marshall, Lipka, Tuper, Whitford, and Greenizen physically assaulted plaintiff in his cell, pulled down his pants, and placed an unknown object in his "butt/anus/rectal area" and hit him on his butt, penis/testicles, and other parts of his body. Compl. at 55. Defendant Marlow refused to report the sexual assault and noted in plaintiff's record that he suffered no injuries, even though plaintiff had cuts on both wrists, several bruises, and his hands were swollen. *Id.* at 56. On December 3 and 4, 2012, plaintiff wrote to defendants Otis, Rock, and Fischer to report the incident, and defendant Rock sent defendant Oropallo to investigate the incident. *Id.* at 56. Despite this, defendants Rock, Otis, Bellnier, and Uhler did not move plaintiff out of Upstate C.F. *Id.* at 57.

On January 24, 2013, plaintiff was falsely accused of refusing to return his lunch tray and an extraction team arrived at his cell, accompanied by defendant Zernia, who stated that defendants Rock and Otis had approved the cell extraction. Compl. at 64.[4] Defendant Phillips opened plaintiff's cell door hatch, and a chemical agent was sprayed in the cell. *Id.* Plaintiff was ordered to put his hands through the cell hatch, and when he did, he was hit with a heavy metal stick. *Id.* Defendants Grant, Dunning, Richter, and Sisto entered the cell and beat plaintiff, who was not resisting but was lying face down on the floor. *Id.* at 64-65. Plaintiff was taken to the decontamination room in handcuffs, where he was beaten again while defendant Phillips blocked the hand held video camera. *Id.* at 65-66.

Defendant Sisto choked plaintiff and put his finger inside of plaintiff's rectum while defendant Phillips falsely yelled that plaintiff was resisting. *Id.* at 65. Defendant Sisto continued to assault plaintiff back at his cell. *Id.*

### 3. Conditions of Confinement

**\*4** Between March 2012 until April 2012, defendant Williams commenced a "campaign of harassment, discrimination[ ] and retaliation[ ]" by denying plaintiff toilet paper, tampering with his incoming magazines and newspapers which he had been approved to receive, and denying him cleaning supplies and food when she worked on his block. Compl. at 23. On June 15, 2012, plaintiff filed a grievance reporting the unsanitary conditions on 9-Block where he was housed, including numerous insects, mice, rats, and vermin, but defendant Williams told plaintiff that insects, mice, rats, and vermin will not harm him but only want food. *Id.* at 32.

On August 27, 2012, defendants Forbes, Jarvis, and Santamore refused to give plaintiff his dinner or general library materials and closed the "vision panel" on plaintiff's cell door. *Id.* at 40.

On November 14, 2012, defendant Bilow claimed that he observed plaintiff sticking an object up his rectal area. Compl. at 53. As a result of the accusation, defendant Bilow strip searched plaintiff in front of two other correctional officers during which time plaintiff was forced to "open his butt, show his penis, [and] open his mouth." *Id.* When nothing was found, plaintiff was placed under 24-hour observation for several days in a cold room, where he had to go to the bathroom in front of correctional officers, female and male. *Id.* Plaintiff was denied showers and clean clothes and did not have adequate toilet paper or water. *Id.* at 54. The room was lit 24 hours a day, and plaintiff had to sit in the boss chair multiple times. *Id.* at 53. Defendant Oropallo and Greenizen approved the foregoing. *Id.*

### 4. Restricted Diet

In May, 2012, plaintiff complained to defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, and Otis about the medical problems that he was suffering from being placed on the disciplinary loaf diet. Compl. at

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 38 of 131

Abreu v. Travers, Not Reported in Fed. Supp. (2016)
2016 WL 6127510

27-28. Defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, Otis, Lashway, Uhler, Travers, and Lira knew that the loaf diet was inadequate and likely to cause pain. *Id.* at 27. Among other things, plaintiff suffered nausea, vomiting, stomach pains, increased bleeding and pains in his rectal area, constipation, and dry lips. *Id.* As a result of disciplinary proceedings held before defendant Lira, plaintiff was placed on the disciplinary loaf diet, which defendant Lashway approved on August 24, 2012, without first examining plaintiff, even knowing that the loaf diet created medical issues for plaintiff. *Id.* at 40-42; 47. Defendant Lira knew that it was not an adequate diet and if he placed plaintiff on the diet it would harm his health. *Id.* at 47.

### 5. Mail Interference, Destruction of Property, and Access to the Courts

Defendant Wilson denied plaintiff access to law library materials from February 29, 2012 until March 10, 2012, even though plaintiff had court deadlines. Compl. at 16. Defendant Wilson denied plaintiff copies of state court papers and other legal supplies needed to litigate his state court actions, and denied his requests for legal books and legal supplies. *Id.* at 21-23, 30, 49. Plaintiff filed grievances against defendant Wilson on March 10, 2012; April 9, 2012; and April 25, 2012. *Id.* at 16, 22, 23. On October 12, 2012, defendant Wilson told plaintiff that the legal documents that he had sent to the law library for copying were "missing/lost," however defendant Wilson intentionally threw them out because he saw his name in the papers. *Id.* at 51. Defendant Wilson acted in retaliation for the grievances and complaints that plaintiff had filed against him. *Id.* Plaintiff wrote to defendant Laramay, who is "responsible for the law library area," complaining about defendant Wilson's misconduct but he failed to resolve the problem. *Id.* at 52.

**\*5** On May 16, 2012, defendant Williams refused to put plaintiff's legal mail into the mail box but instead threw it on the floor and it went into the trash. Compl. at 29. On August 27, 2012, defendants Forbes, Jarvis, and Santamore denied plaintiff his incoming mail, law library materials, the responses to his grievances and appeals, and letters from his family. *Id.* at 40. On October 24, 2012, defendant Gokey ripped up plaintiff's law library slip. *Id.* at 50. In January, 2013, correctional officers ordered defendant Hungerford to deny plaintiff notary services,

and she stated that she did not care if the courts rejected plaintiff's papers for lack of a notary. *Id.* at 59.

On January 24, 2013, defendants Garland and Gokey searched plaintiff's cell and threw his legal papers all over the cell and in the shower. Compl. at 61. The legal papers were out of their envelopes, and many were ripped, wet, or covered in peanut butter, jelly, and toothpaste. *Id.* Plaintiff's personal photos and magazines were destroyed or ripped, his clothes and jacket were wet and dirty, his headphones and radio were broken or unusable, and his legal books were confiscated. *Id.* Plaintiff reported the incident to defendant Phillips, who looked at plaintiff's cell, laughed, and said that's what happens when you file grievances. *Id.* at 62.

### 6. Processing Grievances

Between March, 2012, through June, 2012, defendants White and Woodward failed or refused to adequately or properly process plaintiff's grievances or appeals and mis-coded some of his grievances. Compl. at 18, 21, 31, 51-52. On May 10, 2012, plaintiff wrote to defendant Bellamy about the misconduct of White and Woodward, but she did not correct the misconduct. *Id.* at 26. Plaintiff also wrote to defendants White and Cromp requesting information on grievances that he filed. *Id.* at 58.

### 7. Threats and Harassment

Defendant Patterson threatened to assault plaintiff on September 6, 2012. Compl. at 45. Defendant Gokey harassed, discriminated, and retaliated against plaintiff on September 6, September 17, and October 12, 2012, and continued to threaten him until he left Upstate C.F. *Id.* at 48. On October 24, 2012, while defendant Gokey was escorting defendant Mainville in 9-Block, he stopped in front of plaintiff's cell and threatened him for filing a grievance against him. *Id.* at 50. On November 14, 2012, defendants Travers and Bilow stopped in front of plaintiff's cell and verbally sexually harassed him. *Id.* at 55. In December, 2012, defendants Oropallo and Marshall threatened plaintiff that if he reported misconduct again he would be beaten and raped. *Id.* at 56-57. On January 8, 2013, defendant Whitford threatened plaintiff with physical violence. *Id.* at 59.

Case 9:17-cv-01042-DNH-TWD Document 67 Filed 03/19/19 Page 39 of 131

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

### 8. Religion Claims

On August 27, 2012, defendants Forbes, Jarvis, and Santamore refused to feed plaintiff his kosher meal at dinner. Compl. at 40.

### 9. False Misbehavior Reports

False misbehavior reports were issued to plaintiff by defendants Bilow and Wilson on November 14, 2012; defendants Whitford and Tabb on December 3, 2012; defendant Forbes on December 24, 2012; and defendant Hungerford on January 2, 2013. Compl. at 55-59.

### 10. Due Process

In August, 2012, defendant Lira presided as hearing officer over three of plaintiff's disciplinary hearings. Compl. at 47. Defendant Lira denied plaintiff due process during the hearings because he denied plaintiff video tapes and audio records of the alleged incidents, and found plaintiff guilty without sufficient evidence. *Id.* Defendant Lira sentenced plaintiff to seven days on the disciplinary loaf diet for each of the hearings, amounting to twenty-one days total, even though he knew that being on the loaf caused harm to plaintiff and was not an adequate diet. *Id.*

### 11. Denial of Access to Medical Records

 **\*6** On May 11, 2012, plaintiff filed a grievance complaining that defendants Smith and Rabideau were denying plaintiff copies of his medical records in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191, 110 Stat. 1936, and New York State Department of Corrections and Community Supervision ("DOCCS") regulations. Compl. at 20. Plaintiff wrote to defendant Schroyer about the problem with his medical records. *Id.* at 35. Plaintiff wrote to defendant Kornigsmann on May 13, 2012 about the misconduct of defendants Grinsberg, Lashway, Travers, and Marlow regarding violating HIPAA and state regulations, but he did not respond. *Id.* at 27. Grinsberg responded to plaintiff telling him that there is no provision allowing him to send grievances directly to the Central Office. *Id.* at 29.

Plaintiff requests monetary damages. Compl. at 82. For a more complete statement of plaintiff's claims, refer to the complaint.

### 12. Summary of Claims

In deference to plaintiff's pro se status, the complaint is liberally construed to assert the following claims: (1) Eighth Amendment medical indifference claims against defendants Travers, Lashway, Marlow, Smith, Rock, Rabideau, Schroyer, Kornigsmann, Grinbergs, Otis, Bellnier, Fischer, Waterson, Laramay, Quinn, Bell, Evans, Kemp, Gonzalez, and Bosco; (2) Eighth Amendment excessive force claims against defendants Patterson, Marshall, Lipka, Tuper, Whitford, Greenizen, Otis, Rock, Fischer, Oropallo, Zernia, Phillips, Grant, Dunning, Richter, Sisto, Bellnier, and Uhler; (3) Eighth Amendment conditions of confinement claims against defendants Williams, Forbes, Jarvis, Santamore, Bilow, Oropallo, and Greenizen; (4) Eighth Amendment claims against defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, Otis, Lashway, Uhler, Travers, and Lira relating to the restricted diet; (5) property destruction claims against defendants Gokey and Garland; (6) First Amendment mail interference claims against defendants Forbes, Jarvis, Santamore, and Williams; (7) First Amendment access to the courts claims against defendants Wilson, Laramay, Gokey, Hungerford, Garland, and Phillips; (8) First Amendment retaliation claims against defendants Travers, Lashway, Wilson, Gokey, and Phillips; (9) interference with grievance claims against defendants White, Woodward, Bellamy, and Cromp; (10) claims that defendants Travers, Patterson, Bilow, Lashway, Phillips, Gokey, and Marshall threatened and harassed plaintiff; (11) First Amendment religion claims against defendants Forbes, Jarvis, and Santamore; (12) false misbehavior report claims against defendants Whitford, Tabb, Forbes, Bilow, Wilson, and Hungerford; (13) a Fourteenth Amendment due process claim against defendant Lira; (14) claims that defendants Kornigsmann, Grinbergs, Lashway, Travers, Marlow, Smith, Rabideau, and Schroyer violated HIPAA and DOCCS regulations; (15) Fourteenth Amendment Equal Protection claims; (16) conspiracy claims; and (17) state law tort claims.

### B. Analysis

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 40 of 131

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to maintain a Section 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to ... § 1983 suits." *Iqbal*, 556 U.S. at 676. Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [5]

### 1. Eighth Amendment Medical Indifference Claims

*7 To state an Eighth Amendment claim for medical indifference, a plaintiff must allege that the defendant was deliberately indifferent to a serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference has two necessary components, one objective and the other subjective. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The objective component of an Eighth Amendment deliberate indifference claim

"requires that the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway*, 99 F.3d at 553) (internal quotation marks omitted). Under the subjective element, medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance v. Armstrong*, 143 F. 3d 698, 703 (2d Cir. 1998) (quoting *Hathaway*, 99 F.3d at 553). "Deliberate indifference requires more than negligence but less than conduct undertaken for the very purpose of causing harm." *Hathaway*, 37 F.3d at 66. To assert a claim for deliberate indifference, an inmate must allege that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate must also demonstrate that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' "). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

Plaintiff alleges that defendants Travers, Marlow, Lashway, and Waterson denied him adequate medical care for various medical issues including, but not limited to, chronic pain, rectal bleeding, vision problems, migraines, side-effects suffered as a result of being placed on the disciplinary loaf diet, and injuries suffered from an assault by staff. Compl. at 36-37, 38, 40-42, 45, 47, 50, 54, and 65. Plaintiff also claims that he reported the misconduct of defendants Travers, Marlow, and Lashway to defendants Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, Greenizen, Uhler, Laramay, Quinn, and Bell (*see* Compl. at 15, 24-26, 34, 38, 47, and 67) but they failed to correct the misconduct. Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Eighth Amendment medical indifference claims

Case 9:17-cv-01042-DNH-TWD Document 67 Filed 03/19/19 Page 41 of 131
Abreu v. Travers, Not Reported in Fed. Supp. (2016)
2016 WL 6127510

against defendants Travers, Marlow, Lashway, Waterson, Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, and Uhler survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

With respect to defendants Laramay, Quinn, Bell, Greenizen, whom plaintiff identifies respectively as two Lieutenants, a Captain, and a Sergeant, there are no facts to plausibly suggest that they had the authority or the ability to correct alleged misconduct by the medical staff. Accordingly, plaintiff's Eighth Amendment medical indifference claims against defendants Laramay, Quinn, Bell, and Greenizen are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Finally, plaintiff claims that defendants Evans, Kemp, Gonzalez, and Bosco failed to provide him with adequate mental health care. Compl. at 68. Conclusory allegations that defendants were aware of a plaintiff's medical needs and failed to provide adequate care are generally insufficient to state an Eighth Amendment claim of inadequate medical care. *See, e.g., Gumbs v. Dynan*, No. 11-CV-0857, 2012 WL 3705009, at *12 (E.D.N.Y. Aug. 26, 2012) ("conclusory allegations that the defendants were aware of plaintiff's medical needs and chronic pain but failed to respond are generally not sufficient proof of defendant's deliberate indifference and cannot survive a Rule 12(b)(6) motion to dismiss") (citing *Adekoya v. Holder*, No. 09 Civ 10325, 751 F. Supp. 2d 688, 691 (S.D.N.Y. Nov. 12, 2010) (finding conclusory allegations that medical staff defendants were aware of plaintiff's medical needs and failed to provide adequate care insufficient to defeat a motion to dismiss a claim of inadequate medical care)). There is also nothing to plausibly suggest that these defendants exhibited the requisite state of mind to sustain an Eighth Amendment deliberate indifference claim. Therefore, plaintiff's Eighth Amendment medical indifference claims against defendants Evans, Kemp, Gonzalez, and Bosco are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**2. Eighth Amendment Excessive Force Claims**

**\*8** The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle*, 429 U.S. at 104. This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). [6]

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see* e.g. *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that plaintiff's Eighth Amendment excessive force claims against defendants Patterson, Marshall, Lipka, Tuper, Whitford, Greenizen, Otis, Rock, Zernia, Phillips, Grant, Dunning, Richter, and Sisto survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Plaintiff's Eighth Amendment excessive force claims against defendants Fischer, Oropallo, Bellnier, and Uhler stand on a different footing. Construing the complaint liberally, plaintiff alleges that after he was assaulted by staff on December 3, 2012, he notified these defendants about an alleged assault and they failed to take corrective measures. Compl. at 56-57. Plaintiff does not contend that defendants Fischer, Oropallo, Bellnier, or Uhler directly participated in the alleged constitutional violation, namely plaintiff's December 3, 2012 assault. Rather, the gravamen of plaintiff's complaint against these defendants is that he advised them of misconduct after the fact. However, "[i]f the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation." *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong ... [must] have been capable of mitigation at the time the supervisory official was apprised thereof ... Without such caveat, the personal involvement doctrine may effectively and improperly be transformed into one of *respondeat superior*."); *Jackson*

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 42 of 131

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

*v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) ("[A] 'failure to remedy' theory of liability is not available with respect to discrete and completed violations."). Thus, here, because the assault had already occurred, defendants Fischer, Oropallo, Bellnier, and Uhler cannot be held liable on the basis of a failure to correct. Accordingly, plaintiff's Eighth Amendment excessive force claims against defendants Fischer, Oropallo, Bellnier, and Uhler are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Eighth Amendment Conditions of Confinement Claims

**\*9** The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Gaston v. Coughlin*, 249 F.3d 156, 163 (2d Cir. 2001).

To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) that the defendants acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303-04 (1991).

Plaintiff's allegations that defendants Forbes, Jarvis, and Santamore denied him dinner and general library

materials on one day and closed the "vision panel" on his cell door, *see* Compl. at 40, do not plausibly suggest that these defendants deprived plaintiff of basic human needs. *See Rhodes*, 452 U.S. at 347 (Routine discomfort and restrictive or even harsh prison conditions "are part of the penalty that criminal offenders pay for their offenses against society."); *see also Hudson*, 503 U.S. at 9. Plaintiff's allegations also do not plausibly suggest that these defendants acted with the requisite deliberate indifference. Accordingly, the Eighth Amendment conditions of confinement claims against defendants Forbes, Jarvis, and Santamore are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff*, 537 F.3d at 191, the Court finds that plaintiff's Eighth Amendment conditions of confinement claims against defendants Williams, Bilow, Oropallo, and Greenizen, *see* Compl. at 32, 53-54, survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. Restricted Diet Claims

The Eighth Amendment requires "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam) (internal quotation marks omitted); *see also Willey v. Kirkpatrick*, 801 F.3d 51, 61 (2d Cir. 2015). Plaintiff alleges that the food that he was served when placed on the restricted diet was nutritionally inadequate and caused him physical harm. In light of *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that plaintiff's Eighth Amendment restricted diet claims against defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, Otis, Lashway, Uhler, Travers, and Lira survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 5. Destruction of Property Claims

**\*10** The Supreme Court has held that the unauthorized intentional destruction of prisoner's property may not be the basis for constitutional claims if sufficient post deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *see also Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy."). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001); *Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) ("The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property].").

The destruction of property claims against defendants Gokey and Garland are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim under Section 1983 upon which relief may be granted.

### 6. First Amendment Mail Interference Claims

The First Amendment protects an inmate's right to send and receive both legal and nonlegal mail, although prison officials may regulate that right if the restrictions they employ are " 'reasonably related to legitimate penological interests.' " *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); see *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (holding that prisoners do have a right – albeit a limited one – to send and receive mail (citation omitted)). Legal mail is entitled to greater protection from interference than nonlegal mail. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). A single instance of mail tampering that does not result in the plaintiff suffering any damage is generally insufficient to support a constitutional challenge. *See Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975).[7] "Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.' " *Davis*, 320 F.3d at 351 (quoting *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, at \*6 (S.D.N.Y. Mar. 29, 2001) (citing *Washington v. James*, 782 F.2d 1134,1139 (2d Cir. 1986))). Indeed, courts have consistently applied *Morgan*

to dismiss suits by inmates alleging unconstitutional opening of their legal mail without any showing of damages. *See Pacheo v. Comisse*, 897 F. Supp. 671, 681 (N.D.N.Y. 1995) (dismissing inmate's claim based on a single instance in which defendants allegedly opened his legal mail outside of his presence because "he has shown no prejudice as a result of the allegedly unauthorized opening"); *Walton v. Waldron*, 886 F. Supp. 981, 986 (N.D.N.Y. 1995) ("Existing precedent on an inmate's claim that his 'legal' mail has been improperly handled by prison officials requires a showing of harm."); *Gittens v. Sullivan*, 670 F. Supp. 119, 124 (S.D.N.Y. 1987), *aff'd*, 848 F.2d 389 (2d Cir. 1988) (holding that inmate's allegation that his legal mail was "interfered with on one occasion is insufficient to state a cause of action given that the interference complained of did not affect plaintiff's access to the courts").

Plaintiff alleges that on May 16, 2012, defendant Williams threw a piece of plaintiff's legal mail in the trash, Compl. at 29, and on August 27, 2012, defendants Forbes, Jarvis, and Santamore did not give plaintiff his incoming mail, *id.* at 40. Even accepting as true all of the allegations in plaintiff's complaint and drawing all inferences in plaintiff's favor, plaintiff has alleged only that each of the forgoing defendants interfered with his mail on one occasion, and there is nothing to plausibly suggest that any single instance of mail interference caused plaintiff to suffer a constitutionally significant injury.

**\*11** Accordingly, the First Amendment mail interference claims against defendants Williams, Forbes, Jarvis, and Santamore are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 7. First Amendment Access to the Courts Claims

It is well settled that inmates have a First Amendment right to "petition the Government for a redress of grievances."[8] This right, which is more informally referred to as a "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004). "However, this right is not 'an abstract,

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

freestanding right ....' and cannot ground a Section 1983 claim without a showing of 'actual injury.' " *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353. "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98 Civ. 2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.' " *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that in order to allege a denial of access to a claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint ...." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18 (footnote omitted).

Here, plaintiff alleges only that he was denied legal materials and supplies, and some of his legal papers were destroyed. Compl. at 16, 21-23, 30, 40, 49, 50-52, 59-60. Even accepting plaintiff's allegations as true, he nevertheless offers no facts to suggest how the denial or destruction of legal materials "prejudiced his ability to seek redress from the judicial system." *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995). Plaintiff fails to provide any information in the complaint about the basis of any court action or proceeding which was actually frustrated as a result of the loss or destruction of legal materials. *See Christopher*, 536 U.S. at 416 ("Like any

other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.") (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-515 (2002)). Simply stated, plaintiff fails to allege any facts to plausibly suggest that a non-frivolous claim was actually hindered or prejudiced because of the alleged denial of access to legal materials. *See Lewis*, 518 U.S. at 360 n.7 ("Courts have no power to presume and remediate harm that has not been established."); *Arce v. Walker*, 58 F. Supp. 2d 39 (W.D.N.Y. 1999) ("a prisoner's conclusory assertion that he suffered prejudice does not suffice to support an access to courts claim ... some showing of impaired access is required"); *see also Davis*, 320 F.3d at 352 ("Mere 'delay in being able to ... communicate with the courts does not rise to the level of a constitutional violation.' ").

*12 Accordingly, plaintiff's First Amendment access to the courts claims against defendants Wilson, Laramay, Gokey, Hungerford, Garland, and Phillips do not survive sua sponte review and are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. First Amendment Retaliation Claims

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.' " *Davis*, 320 F.3d at 352 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Case 9:17-cv-01042-DNH-TWD Document 67 Filed 03/19/19 Page 45 of 131

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

Plaintiff alleges that he filed grievances against defendants Travers and Lashway on April 17, 2012, and November 27, 2012. Compl. at 38, 54. Plaintiff filed a grievance against defendant Travers on June 14, 2012, and against defendant Lashway on June 15, 2012. *Id.* at 21-22. Plaintiff also filed a lawsuit against defendant Lashway in 2008, which was settled in 2010; defendant Lashway mentioned the lawsuit to plaintiff and said that she remembered him. *Id.* at 12-13. From November, 2012, through February, 2013, plaintiff claims that defendants Travers and Lashway denied him adequate medical care. *See*, e.g. Compl. at 12-13, 18-19, 36-38, 50.

Plaintiff filed grievances against defendant Wilson on March 10, 2012, April 9, 2012, and April 25, 2012. Compl. at 16, 22-23. On October 12, 2012, defendant Wilson intentionally destroyed some of plaintiff's legal documents because he saw that his name was mentioned in them and allegedly in retaliation for plaintiff's grievances. *Id.* at 51.

On October 24, 2012, defendant Gokey threatened to harm plaintiff because plaintiff had filed a grievance against him. Compl. at 50. Defendant Gokey told plaintiff that his "time [will come] very soon" and he ripped up plaintiff's law library slip. *Id.* On January 24, 2013, defendant Gokey destroyed some of plaintiff's legal papers and personal property. *Id.* at 61. Plaintiff complained to defendant Phillips, the block officer, and he told plaintiff that's what happens when you file grievances. *Id.* at 62.

In light of *Sealed Plaintiff*, 537 F.3d at 191, the Court finds that the First Amendment retaliation claims against defendants Travers, Lashway, Wilson, Gokey, and Phillips survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 9. Interference with Grievance Claims

**\*13** It is well-established that a prison inmate has no constitutional right of access to such an internal grievance process. *Rhodes v. Hoy*, No. 9:05-CV-0836 (FJS/DEP), 2007 WL 1343649, at \*6 (N.D.N.Y. May 5, 2007) (noting that inmates have "no constitutional right of access to the established inmate grievance program"); *Davis v. Buffardi*, No. 9:01-CV-0285 (PAM/GJD), 2005 WL 1174088, at \*3 (N.D.N.Y. May 4, 2005) ("[P]articipation

in an inmate grievance process is not a constitutionally protected right."); *Cancel*, 2001 WL 303713, at \*3 (holding that "inmate grievance procedures are not required by the Constitution" and therefore failure to see to it that grievances are properly processed does not create a claim under Section 1983). Simply stated, there is no underlying constitutional obligation to afford an inmate meaningful access to the internal grievance procedure, or to investigate and properly determine any such grievance.

Plaintiff's interference with grievance claims against defendants White, Woodward, Bellamy, and Cromp do not survive sua sponte review and are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 10. Verbal Threats and Harassment

Verbal threats and harassment, absent physical injury, are not constitutional violations cognizable under Section 1983. *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) ("verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

Accordingly, plaintiff's claims that defendants Travers, Patterson, Bilow, Lashway, Phillips, Gokey, and Marshall verbally threatened and harassed him are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 11. First Amendment Religion Claims

The First Amendment Free Exercise Clause guarantees the right to free exercise of religion. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). The Free Exercise Clause, and the First Amendment generally, applies to prison inmates, subject to certain limitations. *Ford v. McGuinnis*, 352 F.3d 582, 588 (2d Cir. 2003) ("Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause.") (citing *Pell v. Procunier*, 417 U.S. 817,

Case 9:17-cv-01042-DNH-TWD Document 67 Filed 03/19/19 Page 46 of 131
Abreu v. Travers, Not Reported in Fed. Supp. (2016)
2016 WL 6127510

822 (1974)). "[A] prisoner has a right to a diet consistent with his or her religious scruples." *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003). To state a claim under the First Amendment Free Exercise Clause, a plaintiff must demonstrate that his or her sincerely held religious beliefs were substantially burdened by defendant's conduct. *Singh v. Goord*, 520 F. Supp. 2d 487, 498, 509 (S.D.N.Y. 2007); *see also Salahuddin v. Goord*, 467 F.3d at 274-75 (To prevail on a free-exercise claim, a prisoner "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs."). In order to be considered a "substantial burden," the plaintiff "must demonstrate that the government's action pressure[d] him to commit an act forbidden by his religion or prevent[ed] him from engaging in conduct or having a religious experience mandated by his faith." *Muhammad v. City of New York Dep't of Corr.*, 904 F. Supp. 161, 188 (S.D.N.Y. 1995) (citations omitted). The burden must be more than an inconvenience, it must substantially interfere with a tenet or belief that is central to the religious doctrine. *Id.*

**\*14** Here, plaintiff fails to identify his religion, thus making it impossible for the Court to determine if the denial of one kosher meal placed a substantial burden on his religious beliefs. Plaintiff alleges no facts to suggest that defendants interfered with a tenet or belief that is central to any religious doctrine. Accordingly, plaintiff's First Amendment free exercise claims against defendants Forbes, Jarvis, and Santamore are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 12. False Misbehavior Reports

It is well settled that "a prison inmate has no constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *accord, Pittman v. Forte*, No. 9:01-CV-0100, 2002 WL 31309183, at \*5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.); *see also Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at \*2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief."). The only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*,

105 F.3d at 862. In addition, "[t]he filing of a false report does not, of itself, implicate the guard who filed it in constitutional violations which occur at a subsequent disciplinary hearing." [9] *Williams v. Smith*, 781 F.2d 319, 324 (2d Cir. 1986) (rejecting prisoner's "but for" argument as to guard who prepared misbehavior report but was not involved in Tier III hearing) (citation omitted).

Plaintiff's claims that defendants Whitford, Tabb, Forbes, Bilow, Wilson, and Hungerford issued him false misbehavior reports are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 13. Fourteenth Amendment Due Process Claim

"A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'...." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Here, defendant Lira found plaintiff guilty of misconduct as a result of each of the three disciplinary hearings and after each hearing sentenced plaintiff to seven days of the disciplinary diet. The Second Circuit has held that the imposition of a loaf diet does not impose an atypical and significant hardship on inmates, even where the inmate alleges that the diet caused severe stomach pain and weight loss. *McEachin v. McGuinnis*, 357 F.3d 197 (2d Cir. 2004) (finding that a seven-day post-hearing restricted diet did not impose an atypical and significant hardship).

Based upon the foregoing, the Fourteenth Amendment due process claims against defendant Lira are dismissed pursuant to U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 14. Denial of Access to Medical Records

**\*15** Insofar as plaintiff's complaint could be liberally construed to allege a claim under the HIPAA, "Congress did not intend to create a private right of action through which individuals can enforce HIPAA's provisions." *Pecou v. Forensic Comm. Personnel*, No. 06-CV-3714, 2007 WL 1490450, at \*2 (E.D.N.Y. Jan. 5, 2007) (citing

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

*Barnes v. Glennon*, No. 9:05-CV-0153 (LEK/RFT), 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (The HIPAA statute does not "either explicitly or implicitly, confer to private individuals a right of enforcement."); *University of Colorado Hosp. Auth. v. Denver Publ'g Co.*, 340 F. Supp. 2d 1142, 1144 (D. Colo. 2004) (finding no evidence that Congress intended to create a private right of action under HIPAA). Accordingly, plaintiff may not maintain a claim for the alleged denial of access to his medical records under HIPAA.

Construing the complaint liberally, plaintiff also claims that defendants Kornigsmann, Grinbergs, Lashway, Travers, Marlow, Smith, Rabideau, and Schroyer violated DOCCS regulations. A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations or state law. *See Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, at *6 (S.D.N.Y. Mar. 15, 2001) (the failure to follow a New York State DOCCS Directive or prison regulation does not give rise to a federal constitutional claim); *see also Patterson v. Coughlin*, 761 F.2d 886, 891 (2d Cir. 1985) ("[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983 ...."); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) (Section 1983 imposes liability for violations of rights protected by the Constitution and laws of the United States, not for violations arising solely out of state or common-law principles).

Thus, plaintiff's claims that defendants Kornigsmann, Grinbergs, Lashway, Travers, Marlow, Smith, Rabideau, and Schroyer violated HIPAA and DOCCS regulations are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 15. Fourteenth Amendment Equal Protection Claims

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights,

or malicious or bad faith intent to injure a person.' " *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Plaintiff's allegation that defendants denied him equal protection is entirely conclusory, with no facts to support any claim that he was discriminated against, or even to suggest on what basis he was discriminated against. *See* Compl. at 74 (alleging only that defendants "intentionally discriminated against [him] and treated him differently from other similarly situated inmates... [with] no rational basis."). *See Iqbal*, 556 U.S. at 678 (noting that a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice) (internal quotations and alterations omitted).

*16 As a result, plaintiff's Equal Protection claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 16. Conspiracy Claims

A conspiracy claim under Section 1983 must allege that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello*, 292 F.3d at 325; *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Brown v. City of Oneonta*, 106 F.3d 1125, 1133 (2d Cir. 1997) (complaints containing only conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 48 of 131

relief. To state a conspiracy claim, plaintiff "must provide some factual basis supporting a meeting of the minds." *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003). Thus, plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).

Here, plaintiff does not assert any facts giving rise to a conspiracy, but instead makes only vague statements that defendants somehow conspired to deny him rights. *See* Compl. at 81. There are no facts upon which it may be plausibly inferred that the defendants came to an agreement, or a "meeting of the minds," to violate his constitutional rights. *See Iqbal*, 556 U.S. at 680-81 (allegations that the defendants "willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "solely on account of his religion, race, and/ or national origin" found conclusory); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

Plaintiff's conspiracy claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 17. Defendants R. Isobella, Nason, and Spinner

The Court notes that there are no allegations of wrongdoing against defendants R. Isobella, Nason, and Spinner in the body of the complaint. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New* York, No. 97 CIV. 2246, 1998 WL 382055, at *2 (S.D.N.Y. Jul. 9, 1998)); *see also Crown v. Wagenstein*, No. 96 CIV. 3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint

insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

**\*17** Accordingly, R. Isobella, Nason, and Spinner are dismissed as defendants to this action.

### 18. State Law Tort Claims

Plaintiff asserts state law tort claims. Compl. at 76-80. [10]

*Section 24 of the New York State Correction Law* provides in pertinent part:

> 1. No civil action shall be brought in any court of the state ... against any officer or employee of the department ... in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24. "[T]he Second Circuit has held that the immunity from suit in state court provided to [DOCCS] employees by § 24 extends to suits for tort claims based on state law against [DOCCS] employees in federal court." *Brown v. Dep't of Corr. Servs.*, No. 09 Civ. 949, 2011 WL 2182775, at *9 (W.D.N.Y. June 2, 2011) (citing *Baker v. Coughlin*, 77 F.3d 12, 14 (2d Cir. 1996)). Nothing in the complaint suggests that the DOCCS defendants acted outside the scope of their employment in connection with state law tort claims asserted by plaintiff. *See* Compl. at 76-80. Thus, to the extent plaintiff seeks monetary damages from the DOCCS defendants in their personal capacities, plaintiff's state law tort claims are barred by N.Y. Correction Law § 24(1), and those claims are dismissed without prejudice pursuant to N.Y. Correction Law § 24(2).

Defendants Kemp, Gonzalez, and Bosco are identified by plaintiff as employees of the New York State Office of

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 49 of 131

Abreu v. Travers, Not Reported in Fed. Supp. (2016)
2016 WL 6127510

Mental Health ("OMH"). Compl. at 7-8. [11] New York State Mental Hygiene Law § 19.14 states in relevant part:

(a) No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against an officer or employee of the office who is charged with the duty of securing the custody of a person in need of care and treatment for alcoholism in his personal capacity for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of official duties by such officer or employee.

(b) Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of such officer or employee shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Mental Hyg. Law § 19.14. Therefore, to the extent plaintiff seeks monetary damages from the OMH defendants in their personal capacities, plaintiff's state law tort claims against them are barred by Mental Hyg. Law § 19.14(a), and those claims are dismissed without prejudice pursuant to Mental Hyg. Law § 19.14(b).

**C. Service of Process**

*18 Where a plaintiff has been authorized by the Court to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, the U.S. Marshals Service is appointed to effect service of process of the summons and complaint on his behalf. *See* Fed. R. Civ. P. 4(c)(2) (U.S. Marshal must be appointed to serve process when plaintiff is authorized to proceed in forma pauperis); 28 U.S.C. § 1915(d) ("the officers of the court shall issue and serve all process and perform all duties in [in forma pauperis] cases."). However, in this case, plaintiff's IFP Application was denied pursuant to 28 U.S.C. § 1915(g). As a result, he is responsible for serving the summons and complaint on the defendants.

Rule 4(c) of the Federal Rules of Civil Procedure also provides that "[a]t the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court." Fed. R. Civ. P. 4(c)(3). Therefore, in order to advance the disposition of this action, and in light of the fact that plaintiff is incarcerated and proceeding pro se, plaintiff is advised that he may submit a motion requesting service by the United States Marshal on the

following conditions. Plaintiff must (1) pay the service fee due to the U.S. Marshal in full **in advance** by money order or certified check [12] and (2) provide all necessary papers for service, including a completed U.S. Marshals Form (USM-285 Form) for each of the remaining thirty-three defendants, and thirty-three copies of the complaint. Plaintiff is directed to send the service documents and payment of the service fee to the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367, to be forwarded by the Clerk to the U.S. Marshal.

**IV. CONCLUSION**
**WHEREFORE**, it is hereby

**ORDERED** that the following claims survive sua sponte review and require a response: (1) the Eighth Amendment medical indifference claims against defendants Travers, Marlow, Lashway, Waterson, Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, and Uhler; (2) the Eighth Amendment excessive force claims against defendants Patterson, Marshall, Lipka, Tuper, Whitford, Greenizen, Otis, Rock, Zernia, Phillips, Grant, Dunning, Richter, and Sisto; (3) the Eighth Amendment conditions of confinement claims against defendants Williams, Bilow, Oropallo, and Greenizen; (4) the Eighth Amendment restricted diet claims against defendants Rock, Kornigsmann, Fischer, Prack, Bellnier, Schroyer, Otis, Lashway, Uhler, Travers, and Lira; and (5) the First Amendment retaliation claims against defendants Travers, Lashway, Wilson, Gokey, and Phillips; and it is further

**ORDERED** that all remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further [13]

*19 **ORDERED** the Clerk shall issue summonses for defendants Travers, Marlow, Lashway, Waterson, Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, Greenizen, Uhler, Patterson, Marshall, Lipka, Tuper, Whitford, Zernia, Grant, Dunning, Richter, Sisto, Williams, Bilow, Oropallo, Prack, Lira, Wilson, Gokey, and Phillips and forward them to plaintiff. It is plaintiff's responsibility to immediately serve the named defendants with a summons

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 50 of 131

and a copy of his complaint in accordance with the Federal Rules of Civil Procedure. The Clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the complaint be filed by the defendants Travers, Marlow, Lashway, Waterson, Fischer, Rock, Schroyer, Kornigsmann, Grinbergs, Smith, Rabideau, Otis, Bellnier, Greenizen, Uhler, Patterson, Marshall, Lipka, Tuper, Whitford, Zernia, Grant, Dunning, Richter, Sisto, Williams, Bilow, Oropallo, Prack, Lira, Wilson, Gokey, and Phillips, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that Bell, Bellamy, Bosco, Cromp, Evans, Forbes, Garland, Gonzalez, Hungerford, Jarvis, Kemp, Laramay, Santamore, Tabb, White, Woodward, Isobella, Nason, Quinn, and Spinner are **DISMISSED without prejudice** as defendants to this action; and it is further

**ORDERED** that plaintiff may submit a motion requesting service of process by the U.S. Marshal in accordance with Federal Rule of Civil Procedure 4(c)(3) **to the limited extent set forth above**. The Clerk shall send plaintiff thirty-three blank USM-285 Forms for his use should he choose to request such service. As a courtesy, the Clerk shall also send plaintiff one copy of his complaint for his use in making additional copies;[14] and it is further

**ORDERED** that upon receipt from the Clerk of plaintiff's payment of the service fee and the documents required for service, the U.S. Marshal shall attempt to serve the summons and complaint upon the remaining defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that, if plaintiff requests service by the U.S. Marshal, he must comply with any additional requests from the U.S. Marshal for documents that are necessary to effectuate service, and must provide payment in advance to the U.S. Marshal for any subsequent service attempt if the original attempt to serve any defendant is unsuccessful; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: October 20, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 6127510

Footnotes

1    Plaintiff has three other civil actions pending in this District. *See Abreu v. Kooi*, No. 9:14-CV-1529 (GLS/RFT); *Abreu v. Miller*, No. 9:15-CV-1306 (TJM/DJS); and *Abreu v. Lipka*, No. 9:16-CV-0776 (LEK/DEP).

2    Plaintiff is not proceeding in forma pauperis therefore 28 U.S.C. § 1915(e)(2)(B) does not apply.

3    Plaintiff does not attribute this alleged misconduct to a particular person.

4    Plaintiff also claims that the cell extraction had been approved by the medical staff who claimed that plaintiff did not suffer from asthma, but plaintiff does not identify an individual from the medical staff who approved it. *Id.* at 64.

5    The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 51 of 131

Abreu v. Travers, Not Reported in Fed. Supp. (2016)

2016 WL 6127510

the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)).

6    In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

7    To the extent that plaintiff may be attempting to assert that he was denied access to the courts as a result of this mail interference, that purported claim is discussed below.

8    *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").

9    "The only constitutional violation that could occur in this situation is if plaintiff were not provided adequate due process in any proceeding which is based upon the misbehavior report. In that case, the claim is not based on [the] truth or falsity of the misbehavior report but instead on the conduct of the hearing itself." *Santana*, 2007 WL 2712992, at *2.

10    Plaintiff asserts claims for Intentional and Negligent Infliction of Emotional Distress, Assault, Battery, and False Imprisonment under New York common law. *Id.*

11    Additionally, the Federal claims against defendants Kemp, Gonzalez, and Bosco have been dismissed without prejudice therefore the Court would in any event decline to exercise supplemental jurisdiction over the state law claims against them.

12    Payment in cash or by personal check is not acceptable. For service by mail, the fee is $8.00 per summons and complaint. The cost of service by mail on the twenty defendants in this action is $264.00. Plaintiff is also advised that, if initial service is unsuccessful, he will be required to pay the U.S. Marshal any additional fee, also in advance, for subsequent service attempts according to the fee schedule set by the U.S. Marshal.

13    Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

14    Plaintiff may, if he so chooses, make copies of his complaint for service on double-sided paper.

---

**End of Document**                                                                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

2017 WL 986123
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Terrell K. ELEBY, Plaintiff,
v.
G. SMITH and N. Vevone, Defendants.

Civil Action No. 9:15-CV-0281 (TJM/DEP)
|
Signed January 9, 2016
|
Filed 01/09/2017

**Attorneys and Law Firms**

TERRELL K. ELEBY, 86-A-0908, Sing Sing
Correctional Facility, 354 Hunter Street, Ossining, NY
10562, Pro Se.

FOR DEFENDANTS: ERIC T. SCHNEIDERMAN,
New York State Attorney General, OF COUNSEL:
CHRISTOPHER J. HUMMEL, ESQ., Assistant
Attorney General, The Capitol, Albany, NY 12224.

REPORT AND RECOMMENDATION

DAVID E. PEEBLES, CHIEF U.S. MAGISTRATE
JUDGE

 **\*1** This is a civil rights action brought by *pro se*
plaintiff Terrell Eleby against three individuals employed
by the New York State Department of Corrections and
Community Supervision ("DOCCS"), one of whom has
since been dismissed from the action, pursuant to 42
U.S.C. § 1983. In his complaint, plaintiff alleges that two
of the defendants assaulted him in violation of his Eighth
Amendment rights, and the third defendant violated his
Fourteenth Amendment rights by issuing an allegedly
false misbehavior report against him and confining him in
the special housing unit ("SHU") at the prison facility in
which he was housed.

Currently pending before the court is a motion brought
by the remaining two defendants seeking the entry of
summary judgment in their favor based upon plaintiff's
alleged failure to exhaust available administrative

remedies before filing suit. For the reasons set forth below,
I recommend that the defendants' motion be granted.

I. BACKGROUND [1]
Plaintiff is a prison inmate currently held in the custody
of the DOCCS. *See, e.g.,* Dkt. No. 29-2 at 13. Although
plaintiff is now confined elsewhere, at the times relevant
to this action he was housed in the Auburn Correctional
Facility ("Auburn") located in Auburn, New York. *Id.* at
18.

In his complaint, plaintiff alleges that on January 14, 2015,
he was waiting in one of Auburn's hospital dormitory
rooms to be escorted to an outside facility for a medical
examination. Dkt. No. 1 at 4; Dkt. No. 29-2 at 54. At
approximately 10:00AM, defendants Smith and Vevone,
both of whom are corrections officers, arrived at plaintiff's
room to escort him on the medical trip. Dkt. No. 1 at
4. While plaintiff was attempting to remove his clothes
for a mandatory strip search, defendant Smith "violently
and physically attacked [him]." *Id.*; *see also* Dkt. No. 29-2
at 58. According to plaintiff, both defendants Smith and
Vevone "jumped on [his] back," and defendant Smith
punched him repeatedly in the eye, head, neck, back, and
ribs. Dkt. No. 29-2 at 58, 62-63. After approximately five
minutes Sergeant Cudla, who is not a named defendant
in the action, arrived at plaintiff's dorm, physically
intervened, and ordered defendants Smith and Vevone to
cease the assault and leave the room. Dkt. No. 1 at 4-5;
Dkt. No. 29-2 at 58-59, 64. As a result of the alleged
assault, plaintiff suffered various injuries, including a
bloody and swollen eye, swelling and redness to his neck,
and sore ribs. Dkt. No. 1 at 5; Dkt. No. 29-2 at 62-63, 67.

Following the use-of-force incident, defendants Smith and
Vevone issued plaintiff a misbehavior report accusing
him of violating six prison rules. Dkt. No. 22 at 9; Dkt.
No. 29-2 at 72. Following a superintendent's hearing to
address the charges, plaintiff was found guilty on four
of the six counts. Dkt. No. 22 at 13; Dkt. No. 29-2 at
72. As a result of that finding, plaintiff was sentenced
to serve thirty days of disciplinary SHU confinement,
with a corresponding loss of commissary, package, and
telephone privileges. Dkt. No. 22 at 13; Dkt. No. 29-2 at
73-72.

II. PROCEDURAL HISTORY

**Eleby v. Smith, Not Reported in Fed. Supp. (2017)**

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 53 of 131

2017 WL 986123

---

**\*2** Plaintiff commenced this action on or about March 12, 2015, with the filing of a complaint and accompanied by an application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. On May 12, 2015, Senior District Judge Thomas J. McAvoy issued a decision and order granting plaintiff's IFP application and accepting his complaint for filing, with the exception of one cause of action.[2] Dkt. No. 11. In his third cause of action, plaintiff asserted a Fourteenth Amendment claim against defendant Lieutenant Quinn based on the allegation that defendant Quinn "conspire[d] and aided ... in writing a false [misbehavior] report after ascertaining the facts [sic] that [defendants Smith and Vevone] were in the wrong." Dkt. No. 1 at 6. Judge McAvoy dismissed that cause of action for failure to state a cognizable claim pursuant to 28 U.S.C. §§ 1915(e), 1915A. Dkt. No. 11 at 9-12.

Following the close of discovery, defendants Smith and Vevone filed the currently pending motion for summary judgment seeking dismissal of plaintiff's complaint, arguing that plaintiff failed to fully exhaust available administrative remedies before filing this action. Dkt. No. 29-5. Plaintiff has filed a response in opposition to defendants' motion, which is now fully briefed, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

A. Legal Standard Governing Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B. Plaintiff's Exhaustion of Administrative Remedies

**\*3** In their motion, defendants contend that plaintiff's complaint is subject to dismissal because plaintiff has failed to exhaust available administrative remedies as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), prior to commencing this action. *See generally* Dkt. No. 29-5 at 2.

1. Legal Principles Governing
Exhaustion Under the PLRA

The PLRA, which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Section 1997e(a)'s exhaustion provision is "mandatory" and applies to all inmate lawsuits regarding the conditions of their confinement. *Ross*, 136

2017 WL 986123

S. Ct. at 1856; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002); *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). In the event a defendant establishes that the inmate-plaintiff failed fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford*, 548 U.S. at 93 ("[W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion."); *Wilson v. McKenna*, —— Fed.Appx. ——, No. 15-3496, 2016 WL 5791558, at *1 (2d Cir. Oct. 4, 2016). "Proper exhaustion" requires a plaintiff to procedurally exhaust his claims by "compl[ying] with the system's critical procedural rules." [3] *Woodford*, 548 U.S. at 95; *accord, Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

New York affords state prison inmates the opportunity to seek redress of complaints regarding prison conditions through a grievance procedure that is designated as the Inmate Grievance Program ("IGP"). *Williams*, 829 F.3d at 119. The IGP is comprised of three steps that inmates must satisfy when they have a grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119. The IGP requires that an inmate first file a grievance with "the clerk" within twenty-one days of the alleged occurrence giving rise to his complaint. 7 N.Y.C.R.R. § 701.5(a)(1). "The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility." *Id.* Representatives of the inmate grievance resolution committee ("IGRC") [4] have up to sixteen days after the grievance is filed to informally resolve the issue. *Id.* at § 701.5(b)(1). If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen days after receipt of the grievance. *Id.* at § 701.5(b)(2).

A grievant may then appeal the IGRC's decision to the facility's superintendent within seven days after receipt of the IGRC's written decision. 7 N.Y.C.R.R. § 701.5(c). The superintendent must issue a written decision within a certain number of days after receipt of the grievant's appeal. [5] *Id.* at § 701.5(c)(3)(i), (ii).

**\*4** The third and final step of the IGP involves an appeal to the DOCCS Central Office Review Committee ("CORC"), which must be taken within seven days after an inmate receives the superintendent's written decision. 7 N.Y.C.R.R. § 701.5(d)(1)(i). The CORC is required to render a written decision within thirty days of receipt of an appeal. *Id.* at § 701.5(d)(2)(i).

It is worth noting that, as in this case, where an inmate complains of harassment or other misconduct by corrections officers or prison employees, the IGP provides for an expedited review process. 7 N.Y.C.R.R. § 701.8. In particular, the IGP requires inmates "who wish[ ] to file a grievance complaint that alleges employee harassment [to] follow the procedures set forth in [7 N.Y.C.R.R §] 701.5(a)[.]" *Id.* at § 701.8(a). As was noted above, section 701.5(a)(1) provides that, *inter alia*, the inmate shall submit his grievance to the clerk within twenty-one days of the incident of which he complains. *Id.* at § 701.5(a)(1). On the same day the clerk receives a grievance complaining of employee harassment, he must forward it "to the superintendent by the close of business." *Id.* at § 701.8(b).

As can be seen, at each step of the IGP process, a decision must be rendered within a specified time period. 7 N.Y.C.R.R. § 701.5. Where the IGRC and/ or superintendent do not timely respond, an inmate must appeal "to the next step." *Id.* at § 701.6(g)(2); *Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) (Suddaby, J.) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance ... can— and must—be appealed to the next level ... to complete the grievance process."). Generally, if a plaintiff fails to follow each of the required three steps of the above-described IGP prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggerio v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (quotation marks omitted)).

While the PLRA mandates exhaustion of available administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are available" must first be exhausted. 42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858 ("[T]he exhaustion requirement hinges on the availability of administrative remedies." (quotation marks omitted)). In the PLRA context, the Supreme Court has determined that "availability" means that "an inmate is required to

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quotation marks omitted).

In *Ross*, the Supreme Court identified three circumstances in which a court could find that internal administrative remedies are not available to prisoners under the PLRA. [6] *Ross*, 136 S. Ct. at 1859-60. Under the first, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. In addition, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* The Court explained that, "[i]n this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third scenario in which administrative remedies are deemed unavailable to prisoners is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

## 2. Analysis

**\*5** The record now before the court firmly establishes that plaintiff did not exhaust the available administrative remedies in accordance with the PLRA before commencing this action. According to plaintiff, following the alleged assault, he submitted a (1) grievance, [7] (2) letter to the superintendent at Auburn, (3) memorandum to the IGP supervisor at Auburn, and (4) letter to the New York State Inspector General ("IG") complaining of the alleged assault by defendants Smith and Vevone. [8] Dkt. No. 29-2 at 25-26, 39-40, 46-47, 50, 94-99, 104. Plaintiff did not receive any written response to any of his correspondence. Dkt. No. 29-2 at 40-42, 48-49, 51-53. He claims, however, that an officer stationed at Auburn, Sergeant Cudla, conducted an in-person interview of him on January 22, 2015, in connection with the grievance allegedly filed, and the IG's office conducted an investigation that included an interview of plaintiff in or about April 2015. *Id.* at 40-42, 48-49, 51-53. He also contends that he spoke directly to Deputy Robisson, the Deputy of Superintendent for Security at Auburn, regarding the assault. *Id.* at 31-32, 47-48, 100.

Notwithstanding the fact that he did not receive a written response to any of his correspondence regarding the alleged assault, plaintiff admittedly neglected to appeal the lack of a response to the next level of the IGP. *Id.* at 48-51. Because the IGP has been interpreted by courts in this circuit as requiring inmates to appeal to the next level when they do not receive a timely response to their grievance, plaintiff should have appealed to the superintendent and/or the CORC when he failed to receive a written response to the grievance he allegedly filed. *See* 7 N.Y.C.R.R. § 701.6(g)(2) ("[M]atters not decided within the time limits may be appealed to the next step."); *Dabney v. Pegano*, 604 Fed.Appx. 1, 4-5 (2d Cir. 2015) (citing section 701.6(g) and concluding that, based on that provision, the plaintiff had "an unimpeded path to the CORC, notwithstanding his claims that the Great Meadow grievance clerk failed to process his complaint and that the Clinton superintendent ignored his appeal"); *Hyliger v. Gebler*, 624 Fed.Appx. 780, 782 (2d Cir. 2015) ("Under the regulations ..., if at any step of the grievance process[ ] an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to appeal to the next step. Thus, when [the plaintiff] did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy." (quotation marks, alteration, citation, and footnote omitted)). The record in this case shows, without contradiction, that while plaintiff appealed other grievance denials to the CORC, he did not do so in connection with defendants' alleged assault. Dkt. No. 29-3 at 4. This default constitutes a failure to exhaust available administrative remedies for purposes of the PLRA.

Liberally construing plaintiff's response to defendants' pending motion, he contends that he fully exhausted administrative remedies before commencing this action because his grievance involved allegations of employee harassment, and, consequently, by sending his letter directly to the superintendent he satisfied the requirements of the IGP. Dkt. No. 31 at 5. The IGP, however, clearly mandates that even those grievances complaining of employee harassment must be filed with the IGP clerk, who then must forward the grievance to the superintendent on the day of receipt. 7 N.Y.C.R.R. § 701.8(a). Writing and sending a letter directly to a superintendent does not satisfy the IGP. *See Dabney*, 604 Fed.Appx. at 3 ("The IGP also has an expedited

Case 9:17-cv-01042-DNH-TWD Document 67 Filed 03/19/19 Page 56 of 131

Eleby v. Smith, Not Reported in Fed. Supp. (2017)

2017 WL 986123

process for harassment grievances, which pertains to employee conduct meant to annoy, intimidate, or harm an inmate. These grievances go directly to a superintendent." (quotation marks, citations omitted)); *see also Lopez v. Bushey*, No. 11-CV-0418, 2014 WL 2807532, at *9 (N.D.N.Y. Apr. 7, 2014) (Dancks, M.J.) ("If the grievance involves a claim of misconduct by staff, harassment or discrimination, it receives a code of 49.... [T]he grievance is handled expeditiously by passing through the IGRC and going directly to the superintendent of the facility.").

**\*6** Plaintiff next argues that he appealed the disciplinary hearing determination related to the misbehavior report he was issued, following the alleged assault by defendants Smith and Vevone, on January 14, 2015. Dkt. No. 31 at 3. Appealing a disciplinary hearing determination, however, is no substitute for filing and pursuing to completion a grievance through the IGP. [9] *See, e.g., McCoy v. Goord*, 255 F. Supp. 2d 233, 256 (S.D.N.Y. 2003).

Plaintiff also "asserts ... that the defendants hinder[ed] [his] complaint from reaching the CORC and from being properly filed with the IGRC." Dkt. No. 31 at 5. While I am mindful of my obligation to draw all inferences in favor of the non-moving party on summary judgment, *Terry*, 336 F.3d at 137, this conclusory allegation is not supported by any record evidence. Indeed, plaintiff sets forth this contention in an unsworn memorandum of law, which is decidedly not evidence. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 142 (2d Cir. 2003) ("In support of the assertion that the police had received complaints of drug activity in the area, the district court cited, not to admissible evidence, but to the defendants' memorandum of law, which is not evidence at all."). In any event, even assuming plaintiff's contention constitutes competent evidence, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 619 (2d Cir. 1996). At his deposition in this matter, plaintiff unequivocally testified that he did not file an appeal of his grievance to the CORC. Dkt. No. 29-2 at 49-51. He now attempts to create a dispute of fact by arguing that defendants thwarted his appeal from reaching the CORC. Dkt. No. 31 at 5. This he cannot do. *Hayes*, 84 F.3d at 619.

Finally, to the extent plaintiff contends that his letter to the IG and any subsequent investigation constitutes exhaustion under the PLRA, plaintiff is incorrect. *See, e.g., Goodson v. Silver*, No. 09-CV-0494, 2012 WL 4449937, at *9 (N.D.N.Y. Sept. 25, 2012) (Suddaby, C.J.) ("[A]n IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement[.]" (citing cases)).

In summary, because plaintiff admittedly failed to pursue a grievance filed under the IGP to completion by filing an appeal to the CORC, and because he has failed to set forth any evidence that the IGP was rendered unavailable to him, I recommend that defendants' motion be granted.

## IV. SUMMARY AND RECOMMENDATION

Plaintiff's remaining cause of action alleges that defendants Smith and Vevone applied excessive force against him on January 14, 2015. Although plaintiff alleges that he filed various written documents—including a grievance in accordance with the IGP—complaining of defendants' use of force, he admits that he did not pursue the matter through the IGP by seeking review of his grievance by the CORC, as required under the available grievance program. Accordingly, it is respectfully

**\*7** RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 29) be GRANTED and that plaintiff's complaint in this matter be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. [10] FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

The clerk of the court is respectfully directed to serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

## All Citations

Not Reported in Fed. Supp., 2017 WL 986123

2017 WL 986123

Footnotes

1 In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

2 Plaintiff's first and second IFP applications were denied as incomplete. Dkt. Nos. 4, 7. Following those denials, plaintiff filed a third IFP motion, on or about April 2, 2015, which was then granted by Judge McAvoy. Dkt. Nos. 9, 11.

3 Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

4 The IGRC is comprised of "two voting inmates, two voting staff members, and a non-voting chairperson." 7 N.Y.C.R.R. § 701.4(a).

5 Depending on the type of matter complained of by the inmate, the superintendent has either seven or twenty days after receipt of an appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

6 According to the Second Circuit, "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams*, 829 F.3d at 123 n.2.

7 Aside from plaintiff's testimony at his deposition, there is no record evidence to support his allegation that he filed a grievance in accordance with the IGP. *See, e.g.,* Dkt. No. 29-3 at 4; Dkt. No. 29-4 at 2.

8 In or about 2014 the DOCCS Office of Special Investigations assumed the role previously played by the IG, including investigating complaints regarding prison conditions. *See* DOCCS Directive No. 0700, available at http://www.doccs.ny.gov/Directives/0700.pdf.

9 In any event, plaintiff's appeal of the disciplinary hearing determination does not complain of excessive force used by defendants Smith and Vevone. Dkt. No. 22 at 22-23. Instead, plaintiff argued on appeal that the hearing determination was based on insufficient evidence. *Id.* Accordingly, even assuming the appeal from the disciplinary hearing could act as a substitute for filing and pursuing a grievance through the IGP, plaintiff's appeal did not place prison officials on notice of his complaints of excessive force because he did not raise them in his appeal. *Id.*

10 If you are proceeding *pro se* and are served with this report and recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 4774238
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Darrell GOSTON, Plaintiff,
v.
Richard POTTER, Defendant.

No. 9:08–CV–478 (FJS/ATB).
|
Sept. 21, 2010.

**Attorneys and Law Firms**

Darrell Goston, pro se.

C. Harris Dague, for Defendant.

### ORDER and REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

 **\*1** Presently before the court are two letter-motions filed by plaintiff to "substitute" parties as defendants in this action. (Dkt.Nos.45, 46). Counsel for defendant Potter has responded in opposition to the motions. (Dkt. No. 48). For the following reasons, plaintiff's motion to "substitute" will be denied. To the extent that plaintiff's second motion (Dkt. No. 46) may be read as a motion to amend, the court will recommend denial based on futility, and this court will recommend dismissing this action in its entirety.

### I. *Background and Procedural History*

Plaintiff brought this civil rights action, challenging two disciplinary proceedings held against him. (Dkt. No. 1). This case was complicated by plaintiff filing a petition for habeas corpus raising identical claims. *See Goston v. Woods,* 9:08–CV–462 (NAM/GHL). *Goston v. Woods* was dismissed on July 17, 2008 by Chief Judge Norman A. Mordue, after a Report–Recommendation by Magistrate Judge George H. Lowe, because plaintiff never responded to Magistrate Lowe's order to state whether plaintiff lost good time as a result of the Tier III disciplinary hearing. [1] (Dkt. Nos. 5, 6 in 9:08–CV–462).

On August 27, 2008, defendant Potter filed his first motion for judgment on the pleadings in this case. (Dkt. No. 15). The *only* basis for defendant's motion was the lack of personal involvement in the alleged due process violation. [2] (Dkt. No. 15–1; Def.'s Mem. of Law). In an affidavit, responding to the defendant's motion, plaintiff specifically stated that defendant Potter was the hearing officer in **both** the Tier II and the Tier III hearings. (Dkt. No. 18 at 4). Based, in part, on this representation, Magistrate Judge Di Bianco [3] recommended that defendant Potter's motion for judgment on the pleadings be denied. (Dkt. No. 19).

Magistrate Judge Di Bianco also stated that if plaintiff lost good time as the result of these disciplinary hearings, the plaintiff would have to show that the disciplinary hearings had been reversed prior to filing a section 1983 action based on alleged due process violations during those hearings. (Dkt. No. 19 at 5, 8). In his complaint, plaintiff did not claim that he lost good time as the result of the Tier III hearing. (Dkt. No. 19 at 8). In plaintiff's response to defendant's motion for judgment on the pleadings, he alleged *for the first time in either action,* that he lost six months of good time as the result of the Tier III hearing. *Id.* at 3 (citing Dkt. No. 17). Magistrate Judge Di Bianco stated that

> [t]he court does not wish to make the mistake of recommending dismissal *sua sponte,* and then determining that plaintiff did not lose good time *as a result of these charges.* Thus, at this time, the court will not recommend dismissal, but will merely note that if plaintiff lost good time he says, the case will be subject to dismissal pursuant to *Edwards v. Balisok,* [520 U.S. 641 (1997) ].

 **\*2** *Id.* at 9 (emphasis in original).

After the Report–Recommendation was filed, defense counsel filed a letter-motion requesting that his motion for judgment on the pleadings be "withdrawn." (Dkt. No. 20). Counsel stated that in view of Magistrate Judge

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 59 of 131
Goston v. Potter, Not Reported in F.Supp.2d (2010)
2010 WL 4774238

Di Bianco's statement that, if plaintiff lost good time as a result of the Tier III hearing, the case would be subject to dismissal based on *Edwards,* defendant wished to withdraw the motion for judgment on the pleadings so that he could file a summary judgment motion. *Id.* Defense counsel was instructed to file his papers as "Objections" to the Report–Recommendation. (Text Order dated Nov. 14, 2008). Defense counsel filed his "Objections" and included as exhibits, the disciplinary records in question, showing that plaintiff lost six months of good time as a result of the Tier III hearing in question. (Dkt. No. 21).

Prior to Senior Judge Scullin's ruling on the Report–Recommendation, plaintiff moved to amend his complaint. (Dkt. No. 22). Plaintiff alleged that defendant Potter was only the hearing officer for the Tier III hearing, rather than being the hearing officer for both the Tier II and Tier III hearings, as plaintiff had stated in his response to the defendant's motion for judgment on the pleadings. (*Compare* Dkt. No. 18 at 4 *with* Dkt. No. 22). On April 27, 2009, Senior Judge Scullin issued his Memorandum Decision and Order, adopting, as modified, Magistrate Judge Di Bianco's Report–Recommendation. (Dkt. No. 23). Senior Judge Scullin denied plaintiff's motion to "stay the action," and denied defendant Potter's motion for judgment on the pleadings. (Dkt. No. 23). In that Order, Senior Judge Scullin also ordered plaintiff to advise the court whether he would waive all claims relating to good time in order that he might proceed with his claims challenging only the sanctions that affected the conditions of his confinement, [4] *i.e.* the time that he was confined in the Special Housing Unit (SHU) as a result of the Tier III hearing. [5] *Id.*

On May 18, 2009, plaintiff filed the waiver discussed in Senior Judge Scullin's Order, allowing this civil rights action to proceed. (Dkt. No. 24). On May 19, 2009, in accordance with plaintiff's waiver, Senior Judge Scullin ordered the dismissal of "all claims set forth in the complaint relating to disciplinary sanctions imposed on Plaintiff which affect the duration of his confinement ...." (Dkt. No. 25 at 2).

Magistrate Judge Di Bianco granted plaintiff's motion to amend his complaint on November 12, 2009. (Dkt. No. 33). The amended complaint was filed on November 12, 2009. (Am.Compl., Dkt. No. 34). A Mandatory Pretrial Discovery and Scheduling Order was issued on December 16, 2009, setting a discovery deadline of April 14, 2010

and a dispositive motion deadline of July 13, 2010. (Dkt. No. 36). Defense counsel filed a notice of compliance with the Mandatory Pretrial Discovery Order Production of Documents. (Dkt. No. 42). A Suggestion of Death for defendant Potter was filed on July 9, 2010, and at the same time, this court granted defense counsel's request for a stay of the dispositive motion deadline. (Dkt. Nos. 43, 44 and Text Order dtd. July 9, 2010).

## II. *Substitution of Parties*

### A. Legal Standard

**\*3** Rule 25 of the Federal Rules of Civil Procedure provides that if a party dies, and the claim is not extinguished by the party's death, the court may order substitution of the proper party. FED. R. CIV. P. 25(a)(1). A motion for substitution may be made by *any party,* and the motion must be served on the parties as provided in Rule 5 and served upon non-parties as one would serve a summons pursuant to Rule 4. *Id.* Rule 25 further provides that unless a motion for substitution is made within 90 days after the death is "suggested upon the record by service of a statement of the fact of the death as provided [in the rule] for the service of the motion," the action will be dismissed as against the deceased party. *Id.*

The rule makes it clear that any party may make a motion for substitution, but as soon as a "suggestion of death" is filed, the motion for substitution must be made within 90 days. *Id.* The running of the 90 days commences with the "proper suggestion of death." *George v. United States,* 208 F.R.D. 29, 31 (D.Conn.2001) (citing *Pastorello v. City of New York,* 95 Civ. 470, 2000 WL 1538518, at *2 (S.D.N.Y. Oct.18, 2000)). In *George v. United States,* the court cited two affirmative steps required to trigger the 90–day time limitation. *Id.* First, death must be "formally" suggested "upon the record." *Id,* (citing *Barlow v. Ground,* 39 F.3d 231, 233 (9th Cir.1994)). Second, the "suggesting party" must serve other parties and non-party successors or representatives of the deceased with a suggestion of death in the same manner as required for service of the motion to substitute. *Id.* Although existing parties may be served pursuant to FED. R. CIV. P. 5, non-parties must be served as if they were being served with a summons pursuant to FED. R. CIV. P. 4. *Id.*

### B. Application

In this case, defense counsel filed the suggestion of death on July 9, 2010. (Dkt. No. 43). Defense counsel served plaintiff with the suggestion of death, but it does not appear that the successors or representatives of the deceased party were served with the document. Plaintiff, therefore, has until October 7, 2010 to move for substitution of parties. On August 6, 2010, plaintiff attempted to "substitute" David Rock as a defendant "in place of Richard Potter." (Dkt. No. 45). On August 25, 2010, plaintiff requested the opportunity to further "amend" his complaint to substitute Lieutenant Sawyer and Deputy Superintendent John Doe for "the original defendant." (Dkt. No. 46).

Even assuming that plaintiff's submissions were sufficient "motions," plaintiff has understandably misunderstood the meaning of Rule 25. The meaning of a "proper party" under Rule 25 "is either a representative of the decedent's estate or the successor of the deceased." *Shapiro v. United States,* No. 07 Civ. 161, 2008 WL 4302614, at *1 (S.D.N.Y. Sept. 17, 2008) (citations omitted). Under New York law, to qualify as a "representative" of the decedent's estate, the individual must have received letters to administer the estate of the decedent. *Id.* (citing *Graham v. Henderson,* 224 F.R.D. 59, 64 (N.D.N.Y.2004). To qualify as a "successor," the individual is considered a proper party if the person is a distributee of the estate. *Id.* (citing *inter alia Hardy v. Kaszycki & Sons Contractors, Inc.,* 842 F.Supp. 713, 716–17 (S.D.N.Y.1993)).

**\*4** David Rock is the Superintendent of Great Meadow Correctional Facility. (Dkt. No. 46 at 1). It is unclear from the plaintiff's submission who proposed defendants Sawyer [6] and Doe are; however, it is clear that none of these defendants are representatives of defendant Potter's estate, nor are they distributees of the estate. None of the new defendants proposed by plaintiff is a "proper party" for substitution. Plaintiff has not yet requested the substitution of the proper party. Thus, to the extent that plaintiff is asking to "substitute" these parties for defendant Potter, these "motions" are denied.

### III. *Motion to Amend*

As a *pro se* party, plaintiff may have been confused by the concept of "substitution" of parties. The court will also interpret plaintiff's submissions as motions to amend his complaint to add defendants in addition to, not in place of, defendant Potter.

### A. Legal Standard

Fed.R.Civ.P. 15(a) provides that the Court should grant leave to amend "freely ... when justice so requires." Generally, the court has discretion whether or not to grant leave to amend a pleading. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). When exercising its discretion, the court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving party. *Evans v. Syracuse City School District,* 704 F.2d 44, 46 (2d Cir.1983) (citing *Foman,* 371 U.S. at 182). The court must also examine whether there will be prejudice to the opposing party. *See, e.g., Ansam Associates Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir.1985) (permitting proposed amendment would be especially prejudicial once discovery was completed and a summary judgment motion filed). Where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted).

Generally, an amendment is futile if the pleading fails to state a claim or would otherwise be subject to dismissal. *Duling v. Gristede's Operating Corp.,* 265 F.R.D. 91, 103–104 (S.D.N.Y.2010) (citing *inter alia Health Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990)) (failure to state a claim); *Yves Saint Laurent Parfums, S.A. v. Costco Wholesaler Corp.,* No. 07 Civ. 3214, 2010 WL 2593671, at *2 (S.D.N.Y. June 24, 2010) (leave to amend based on futility may be granted where the proposed amendment has "no colorable merit). The analysis is similar to that employed in a motion to dismiss. *Kassner v. 2nd Avenue Delicatessen, Inc.,* 496 F.3d 229, 244 (2d Cir.2007); *Stetz v. Reeher Enterprises, Inc. .,* 70 F.Supp.2d 119, 121 (N.D.N.Y.1999). The court must accept the asserted facts as true and construe them in the light most favorable to the amending party. *Id.* The complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

Goston v. Potter, Not Reported in F.Supp.2d (2010)

2010 WL 4774238

---

**\*5** When amendments raise colorable claims, especially where they are based upon disputed facts, they should be allowed, and a comprehensive legal analysis deferred to subsequent motions to dismiss or for summary judgment. *Madison Fund, Inc. v. Denison Mines Ltd.,* 90 F.R.D. 89, 91 (S.D.N.Y.1981); *EEOC v. Sage Realty Corp.,* 87 F.R.D. 365, 371–72 (S.D.N.Y.1980); *WIXT Television, Inc. v. Meredith Corp.,* 506 F.Supp. 1003, 1010 (N.D.N.Y.1980).

In the case of proposed amendments where a party is to be added, the Court must also look to Rule 21 of the Federal Rules of Civil Procedure. *Bridgeport Music, Inc. v. Universal Music Group, Inc.,* 248 F.R.D. 408, 412 (S.D.N.Y.2008) (citations omitted). Rule 21 states that the court may permit a party to be added to an action "at any time, on just terms." FED. R. CIV. P. 21. Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *United States v. Commercial Bank of North America,* 31 F.R.D. 133, 135 (S.D.N.Y.1962) (internal quotations omitted). Addition of parties under Rule 21 is guided by the same liberal standard as a motion to amend under Rule 15. *Bridgeport Music, Inc.,* 248 F.R.D. at 412; *Fair Housing Development Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y.1972). As with Rule 15 amendments, joinder pursuant to Rule 21 may be denied as futile if the proposed pleading would not withstand a motion to dismiss. *See Cortigiano v. Oceanview Manor Home for Adults,* 227 F.R.D. 194, 201–202 (E.D.N.Y.2005) (citations omitted) (discussion of Rule 15(a) standards, including futility, as applied to Rule 21motion to add parties).

**B. Application**

Because plaintiff in this case cannot "substitute" the proposed new defendants in place of defendant Potter under Rule 25, the court will interpret plaintiff's request as a motion to amend to add new parties under Rules 15(a) and 21.[7] As a motion to amend, however, plaintiff's submission is not in the proper form. Plaintiff has not submitted a proposed amended complaint,[8] which asserts how the proposed new defendants were personally involved in the alleged constitutional violation. Personal involvement is a prerequisite to the assessment of damages in a section 1983 case. *Wright v. Smith,* 21 F.3d 496, 501

(2d Cir.1994); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003).

There is no allegation that Superintendent Rock was involved with plaintiff's disciplinary hearings. The same is true for the Deputy Superintendent "John Doe." The only individual who appears to have been involved in plaintiff's disciplinary hearings is Lieutenant Sawyer. The court knows this only after reviewing the documents that defense counsel filed as "objections" to Judge Di Bianco's ReportRecommendation.[9] Even if plaintiff had moved properly to add Lieutenant Sawyer, this court finds that the amendment would be futile.

**\*6** Plaintiff's current amended complaint alleges that, as the result of one incident on August 17, 2007, he was given two misbehavior reports and was "denied his Procedural rights to Due Process when he was subjected ... to a [sic] Tier II and Tier III Disciplinary Hearings and sanctions that arose out of the same ... incident." (Am. Compl. at p. 6).[10] Plaintiff lists three "Causes of Action," related to this conduct. *Id.* Only two of the three are actually "Causes of Action." The first "Cause of Action" alleges a violation of due process, and the second, alleges a violation of the Eighth Amendment. *Id.* The third "Cause of Action" merely alleges that the sanction of 360 days in SHU imposed by defendant Potter amounted to an "atypical and significant" deprivation, sufficient to establish a liberty interest protected by "due process." This third paragraph does not raise a separate cause of action because the establishment of a "liberty interest" is only the first step in a due process claim. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001).

Based on the documents submitted by defense counsel as objections to Judge Di Bianco's Report–Recommendation, it is clear that Lieutenant Sawyer was the hearing officer for plaintiff's Tier II hearing. According to plaintiff's amended complaint, the only sanctions plaintiff suffered as the result of the Tier II hearing were 30 days cell confinement and 30 days loss of various privileges. (Am. Compl. at p. 5).

In order to begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determine whether the defendant deprived plaintiff of that liberty interest without due process. *Giano v. Selsky,* 238 F.3d at 225; *Bedoya v.*

---

*Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). In *Sandin v. Conner,* the Supreme Court held that although states may still create liberty interests protected by due process, [11] "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In the context of a summary judgment motion, the *Sandin* court rejected a claim that thirty days in segregated confinement was "atypical and significant." *Id.* at 486.

The sanction that Lieutenant Sawyer imposed on plaintiff was 30 days confinement to his own cell, together with some loss of privileges for 30 days. A 30–day confinement, particularly confinement to one's own cell, absent additional egregious circumstances is insufficient to establish a liberty interest, protected by due process. *See Sealey v. Giltner,* 197 F.3d 578, 589–90 (2d Cir.1999) (101 days in normal SHU conditions were not atypical and significant). The federal district courts in New York, applying *Sandin,* have been consistent in holding that terms of SHU or "keeplock" [12] of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Carl v. Dirie,* No. 9:09–CV–724, 2010 WL 3338566 at *6–7 (N.D.N.Y. March 29, 2010) (granting motion to dismiss where plaintiff spent 30 days in SHU, but did not allege any additional aggravating circumstances present during the period of confinement); *Thompson v. LaClair,* No. 9:08–CV–37, 2009 WL 2762164, at *5–6 (N.D.N.Y. Aug. 25, 2009) (finding, on the pleadings, no liberty interest in 30–day confinement with loss of privileges); *Ochoa v. DeSimone,* No. 9:06–CV–119, 2008 WL 4517806, at *4 (N.D.N.Y. Sept. 30, 2008) (summary judgment).

*7 Even if the discipline imposed implicated a liberty interest, plaintiff does not allege any due process violation. Other than claiming that he was charged in two hearings for one incident, plaintiff does not cite any other alleged deficiency in the Tier II hearing. Plaintiff's attempt to amend his complaint to add Lieutenant Sawyer in order to challenge his Tier II hearing, would not withstand a

motion to dismiss. [13] Thus, to the extent that plaintiff's submission can be interpreted as a motion to amend to add Lieutenant Sawyer as a separate defendant, it must be denied.

## IV. *Sua Sponte Dismissal*

Generally, the court would afford plaintiff the opportunity to substitute the appropriate estate representative for defendant Potter. [14] However, this court has determined that it would be futile to do so. Even if plaintiff were to properly substitute defendant Potter's estate, plaintiff does not state a claim for relief.

### A. Legal Standard

Plaintiff is proceeding *in forma pauperis* in this action. Under 28 U.S.C. § 1915(e)(2)(B)(ii), the court has the authority to dismiss an action brought *in forma pauperis* by an inmate at any time if the court determines that the action is "frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief." In this case, the basis of plaintiff's due process claim is that he should not have had two disciplinary hearings related to the same conduct.

Plaintiff received twelve months SHU confinement as a result of the Tier III hearing. (Am. Compl. at p. 5). Twelve months (365 days) confinement would suffice to establish a liberty interest, requiring due process protection. *See Colon v. Howard,* 215 F.3d 227, 231 (2d Cir.2000) (finding that a prisoner's liberty interest was infringed by 305–day confinement). In *Wolff v. McDonnell,* 418 U.S. 539, 563–64, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that due process requires advance notice of the charges against the inmate, and a written statement of reasons for the disposition. The inmate should also have the ability to call witnesses and present documentary evidence, subject to legitimate safety and correctional goals of the institution. *Id.* Finally, the inmate is entitled to a fair and impartial hearing officer, and the hearing disposition must be supported by "some" or "a modicum" of evidence. *Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (some evidence standard); *McCann,* 698 F.2d at 121–22 (fair and impartial hearing officer). Plaintiff alleges no deficiencies in the Tier III hearing, relating to the rights described in *Wolff.*

Plaintiff's claim could be interpreted as a "double jeopardy" claim. The Double Jeopardy Clause is limited to proceedings that are "essentially criminal." *Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). It is well-settled that prison disciplinary hearings are not considered part of a criminal prosecution, and that they do not implicate the Double Jeopardy Clause. *See Porter v. Selsky,* 287 F.Supp.2d 180, 190–91 (W.D.N.Y.2003) (discussing cases); *Nimmons v. Schult,* No. 9:07–CV–927, 2008 WL 5056744, at *3 (N.D.N.Y. Nov.24, 2008) (citing *inter alia Wolff v. McDonnell,* 418 U.S. at 556 and *Breed v. Jones, supra* and discussing cases). In *Porter v. Selsky,* the court denied the inmate's motion for reconsideration of its prior ruling that prison officials may impose their own penalty for a prison disciplinary rule violation, originating from the *same conduct* for which the inmate was found guilty in a criminal prosecution, without violating the inmate's right to be free from double jeopardy. 287 F.Supp.2d at 188–91.

### B. Application

**\*8** In this case, plaintiff claims *only* that he should not have had two separate hearings based on the same conduct. Because plaintiff complains only about prison disciplinary hearings, the Double Jeopardy Clause does not afford him any protection. Additionally, a review of plaintiff's complaint shows that, although he had two separate hearings, the charges at each hearing were different. [15] Plaintiff states that the Tier II hearing involved the following charges:

1. Rule 100.13—An Inmate Shall Not Engage in Fighting.

2. Rule 104.11—An Inmate Shall Not Engage in Violent Conduct.

3. Rule 104.13—An Inmate Shall Not Engage in Conduct Which Disturbs the Order of the Facility.

(Am. Compl. at p. 5). Plaintiff states that he was found guilty only of the first and third charges. *Id.* The Tier III hearing involved the following charges:

1. Rule 106.10—Violating a Direct Order

2. Rule 113.10—Weapon

3. Rule 115.10—Frisk Procedures

4. Rule 100.11—Attempted Staff Assault

(Am. Compl. at p. 5). Plaintiff states that he was found guilty of all the violations, charged in the Tier III hearing. *Id.* A review of the charges of which plaintiff was found guilty shows that none are the same. Plaintiff admits that he was found not guilty of the Tier II violation of engaging in violent conduct, but was found guilty of the Attempted Staff Assault after the Tier III hearing. Arguably, the violent conduct charge and the fighting charge could have been similar, but plaintiff was found not guilty of one of the charges.

The fact that plaintiff had two separate hearings regarding the same incident does not mean that he was charged or punished twice for the same conduct, only that he was punished for several different violations arising from one incident. [16] This does not rise to the level of a constitutional violation. In fact, plaintiff's own statement of facts shows that he was not punished twice for the same charge. [17]

This court finds that plaintiff's amended complaint does not state a claim for relief. The court is recommending *sua sponte* dismissal of the amended complaint in its entirety as against defendant Potter, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). To the extent that plaintiff's motions can be read as motions to amend the amended complaint to add different defendants in addition to defendant Potter, I recommend that the motions be denied as futile.

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that plaintiff's letter-motion to "substitute" David Rock as a defendant (Dkt. No. 45) is **DENIED,** and it is

**RECOMMENDED,** that plaintiff's letter-motion to amend his amended complaint to add Lieutenant Sawyer and a "John Doe" Deputy Superintendent (Dkt. No. 46) be **DENIED,** and it is

**RECOMMENDED,** that the amended complaint (Dkt. No. 34) be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**\*9** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993)

(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 4774238

Footnotes

1    A petition for habeas corpus would be the appropriate method of challenging a disciplinary hearing after which plaintiff lost good time, when a decision in the inmate's favor would necessarily affect the duration of his confinement, and after the inmate exhausted his state court remedies. *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

2    Although plaintiff had listed defendant Potter in the caption of the complaint, he was not mentioned anywhere in plaintiff's statement of facts. (Dkt. No. 1).

3    This case was initially assigned to Magistrate Judge Di Bianco and was assigned to me following Judge Di Bianco's retirement on January 4, 2010. (Dkt. No. 37).

4    *See Peralta v. Vasquez,* 467 F.3d 98, 103 (2d Cir.2006) (allowing plaintiff to proceed with a challenge to his disciplinary hearing if he waives "once and for all" all claims relating to sanctions affecting the duration of his confinement).

5    Senior Judge Scullin stated that defense counsel had submitted a great deal of documentation regarding plaintiff's disciplinary hearings, and considered the information only to the extent that it was integral to the complaint or incorporated by reference thereto. (Dkt. No. 23 at 5–6) (citing *Sira v. Morton,* 380 F.3d 57, 66 (2d Cir.2004) (quotation omitted). Based on this review, Senior Judge Scullin confirmed that plaintiff lost six months of good time as the result of the Tier III hearing. *Id.*

6    Based upon documents provided by defense counsel in his "objections" to Judge Di Bianco's Report–Recommendation, proposed defendant Sawyer appears to be the hearing officer assigned to the Tier II hearing at issue in this case. (Dkt. No. 21–1 at 1).

7    *Pro se* submissions are interpreted with the utmost liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (*per curiam* ).

8    Submission of a proposed amended complaint is required by the Local Rules of the Northern District of New York. *See* LOCAL RULES N.D.N.Y. 7(a)(4).

9    These documents were served on plaintiff on November 28, 2008. (Dkt. No. 21–4. Certificate of Service). The court notes that exhibits attached to defendant's "objections" would constitute much of the discovery materials relevant to this case because they include copies of the documents related to the disciplinary hearings at issue in this case. Although the court does not base its decision on the "delay" factor of the standard for amendment of pleadings, it is clear that plaintiff knew as of late November or early December 2008, that Lieutenant Sawyer was the hearing officer in plaintiff's Tier II hearing. Plaintiff had stated inaccurately in his earlier submission, that defendant Potter was the hearing officer for both hearings. Based on the documents submitted by defense counsel in his objections, and after Senior Judge Scullin acted on the Report–Recommendation in late April, 2009, plaintiff could have moved to amend his complaint at that time instead of waiting until more than one year later, after the death of defendant Potter.

10   Plaintiff has inserted a blank page in the middle of his Form–Complaint on which he has written his "Statement of Facts" and "Procedural History." This court will, therefore, cite to the pages of the complaint as assigned by the court's Case Management and Electronic Case Filing (CM/ECF) system.

11   "[T]he prevailing view is that by its regulatory scheme New York State has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor (citations omitted)." *Thompson v. LaClair,* 9:08–CV–037, 2009 WL 2762164 at \*4 (N.D.N.Y. Aug.25, 2009).

12   "Keeplock" is confinement to one's own cell. *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989). This is would be an even less "atypical" type of confinement than being placed in a special housing unit for 30 days.

13   Plaintiff also claims a violation of the Eighth Amendment as a result of the two disciplinary hearings, however, an Eighth Amendment violation requires conditions of confinement that impose an excessive risk to the inmates health or safety. *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In this case, there is no indication that

2010 WL 4774238

confinement to plaintiff's own cell for 30 days would have caused plaintiff any risk to his health or safety. Thus, no Eighth Amendment violation is stated with respect to the Tier II disposition.

14    As stated above, based upon the date of the suggestion of death, plaintiff would have until October 7, 2010 within which to substitute the appropriate party.

15    The court suspects that this is the case because the Tier II violations were not as serious as the Tier III violations and were handled separately for that reason.

16    Even in a criminal prosecution, multiple violations arising out of a single transaction may be charged and tried separately without violating double jeopardy. *See e.g. United States v. Blackshear,* 313 Fed. Appx. 338, 345 (2d Cir.2008).

17    A review of defense counsel's exhibits shows that the plaintiff's sanctions from the Tier II hearing and the Tier III hearing were served concurrently; thus, there is no indication that plaintiff spent any extra time confined as a result of the two hearings. The exhibits show that the Tier II sanction was to be served from August 23, 2007 until September 16, 2007 (plaintiff only had twenty four days left of his 30–day sanction after the Tier II hearing), and the Tier III SHU time was to be served from August 23, 2007 until August 23, 2008. (Dkt. No. 21–1 at 1; Tier II sanction); (Dkt. No. 21–2 at 3; Tier III sanction).

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   8

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 66 of 131

Hendrickson v. U.S. Atty. Gen., Not Reported in F.Supp. (1994)

1994 WL 23069

1994 WL 23069
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dale HENDRICKSON, Plaintiff,

v.

UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
|
Jan. 24, 1994.

MEMORANDUM AND ORDER

McKENNA, District Judge.

*1 On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an inmate
then in confinement at the Federal Correctional
Institution in Otisville, New York ("Otisville"), filed this
action for injunctive relief and damages based upon
alleged violations of his rights under the United States
Constitution, Amendments I, IV, V, VI, IX, and XIII,
and upon violations of various laws and/or regulations
governing prison administration.[1] The Complaint named
as defendants G.L. Hershberger ("Hershberger"), the
United States Attorney General ("Attorney General"),
Gary Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith ("Keith"), the
Bureau of Prisons ("BOP"), and the Otisville Medical
Department ("OTV Medical Department") (collectively
"Defendants"). Defendants moved for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, or, in the alternative, for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set out below, Defendants'
Rule 12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Complaint,
pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure, for failure to state a claim upon which relief
can be granted. Rule 12(c) provides:

> After the pleadings are closed but
> within such time as not to delay
> the trial, any party may move
> for judgment on the pleadings.
> If, on a motion for judgment on
> the pleadings, matters outside the
> pleadings are presented to and
> not excluded by the court, the
> motion shall be treated as one for
> summary judgment and disposed of
> as provided in Rule 56, and all
> parties shall be given reasonable
> opportunity to present all material
> made pertinent to such a motion by
> Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that are
employed for dismissing a complaint for failure to state
a claim under Fed.R.Civ.P. 12(b)(6) are applicable" to a
Rule 12(c) motion to dismiss for failure to state a claim
upon which relief can be granted. See Ad–Hoc Comm.
of the Baruch Black & Hispanic Alumni Ass'n v. Bernard
M. Baruch College, 835 F.2d 980, 982 (2d Cir.1987); see
also Viacom Int'l. Inc. v. Time, Inc., 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Arthur R.
Miller, Federal Practice and Procedure ¶ 1367, at 515–
16 (1990). Thus, the Court must read the Complaint
generously, drawing all reasonable inferences from the
complainant's allegations. See California Motor Transp. v.
Trucking Unlimited, 404 U.S. 508, 515 (1972). Moreover,
"consideration is limited to the factual allegations in
[the] amended complaint, which are accepted as true, to
documents attached to the complaint as an exhibit or
incorporated in it by reference, to matters of which judicial
notice may be taken, or to documents either in plaintiff['s]
possession or of which plaintiff[ ] had knowledge and
relied on in bringing suit." Brass v. American Film
Technologies, Inc., 987 F.2d 142 (2d Cir.1993); accord
Allen v. Westpoint–Pepperell, Inc., 945 F.2d 40, 44 (2d
Cir.1991); Cortec Indus., Inc. v. Sum Holding L.P., 949
F.2d 42, 47–48 (2d Cir.1991), cert. denied, 112 S.Ct.
1561 (1992); Frazier v. General Elec. Co., 930 F.2d 1004,
1007 (2d Cir.1991). Defendants, therefore, are entitled to
dismissal for failure to state a claim only if the Court finds

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 67 of 131

Hendrickson v. U.S. Atty. Gen., Not Reported in F.Supp. (1994)

1994 WL 23069

beyond a doubt that "plaintiff can prove no set of facts" to support the claim that plaintiff is entitled to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

## II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary

receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

## III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 68 of 131

Hendrickson v. U.S. Atty. Gen., Not Reported in F.Supp. (1994)

1994 WL 23069

by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity as to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

**All Citations**

Not Reported in F.Supp., 1994 WL 23069

---

Footnotes

1    The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

2    *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

---

**End of Document**                                               © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 69 of 131

Higgins v. Coombe, Not Reported in F.Supp. (1997)

1997 WL 328623

1997 WL 328623
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Thomas HIGGINS, Plaintiff,

v.

Philip COOMBE, Jr., Acting Commissioner of the
New York Department of Correctional Services
(DOCS); Glenn Goord, Deputy Commissioner of
Facility Operations (DOCS); D. Selsky, Director of
Special Housing (DOCS); C. Artuz, Superintendent
of Greenhaven Correctional Facility; L. Portuondo,
First Deputy Superintendent; C. Coefield, Dep. Sup't
of Security; D. Bliden, Dep. Sup't of Programs; T.
Bushek, Dep. Sup't of Administration; G. Haponik,
Steward; G. Blaetz, Senior Counselor; Sally Kapland,
Senior Counselor; Snyder, Captain Security;
Naggy, Lieutenant Security; Cottington, Sergeant
Security; Whitney, Sergeant Security; R. Murphy,
Correction Officer; Surber, Correction Officer;
John Doe, Correction Officer; Correspondence
Department Employees, Defendants.

No. 95 CIV. 8696(SS).
|
June 16, 1997.

**Attorneys and Law Firms**

Dennis C. Vacco Attorney General of the State of New
York Attorney for Defendants 120 Broadway New York,
N.Y. 10271

Christopher A. Quaranta, Esq.

Thomas Higgins Pro Se Plaintiff Attica Corr. Facility No.
85–A–1106 Attica, N.Y. 14011

*OPINION AND ORDER*

SOTOMAYOR

**\*1** Plaintiff, Thomas Higgins, a prisoner at Attica
Correctional Facility, brings this action pro se under 42
U.S.C. § 1983, alleging that defendants retaliated against
him for filing prior lawsuits against Greenhaven prison
officials. [1] Plaintiff's Complaint is prolix, consisting of

over forty handwritten pages and over sixty attached
exhibits. However, the crux of the Complaint alleges
that defendants retaliated against him by altering his
employment status at the facility, by tampering with
his legal mail and other communications which denied
him access to the courts, and by filing false misbehavior
reports against him. Plaintiff seeks monetary damages
and injunctive relief. Defendants move to dismiss the
Complaint pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure. For the reasons to be discussed,
defendants' motion is granted in part and denied in part.

THE STANDARD OF REVIEW: DISMISSAL
UNDER RULE 12(b)(6)

Motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) are
designed to test the legal sufficiency of a plaintiff's claims.
In construing such a motion, I must accept all material
facts alleged in the Complaint as true and must draw all
reasonable inferences in plaintiff's favor. *See Haines v.
Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d
652 (1972); *Hertz Corp. v. City of New York,* 1 F.3d
121, 125 (2d Cir.1993), *cert. denied,* 510 U.S. 1111, 114
S.Ct. 1054, 127 L.Ed.2d 375 (1994). I may not dismiss
plaintiff's Complaint "unless it appears beyond doubt that
the plaintiff can prove no set of facts in support of his
claim which would entitle him to relief." *Conley v. Gibson,*
355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);
*see Hishon v. King & Spaulding,* 467 U.S. 69, 104 S.Ct.
2229, 81 L.Ed.2d 59 (1984). In deciding a Rule 12(b)
(6) motion, I may consider only those matters contained
in the Complaint, the documents attached thereto, and
matters of which I may take judicial notice.

Despite this liberal rule of pleading, it is well settled in
lawsuits alleging a violation of constitutional rights that
"a Complaint consisting of nothing more than naked
assertions, and setting forth no facts upon which a court
could find a violation of [a civil right], fails to state a cause
of action under Rule 12(b)(6)." *Martin v. N.Y. State Dep't
of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978); *see
also Wright v. Santoro,* 714 F.Supp. 665, 668 (S.D.N.Y.)
(*pro se* Complaint's vague and conclusory allegations are
legally insufficient), *aff'd,* 891 F.2d 278 (2d Cir.1989).

THE STANDARD OF REVIEW: RETALIATION
CLAIMS

The Second Circuit has recognized that prison officials
may not retaliate against prisoners for exercising their

Higgins v. Coombe, Not Reported in F.Supp. (1997)

1997 WL 328623

constitutional rights. *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995). However, the Court has also recognized "the ease with which claims of retaliation may be fabricated, [and the need to] ... examine prisoners' claims of retaliation with care." *Colon,* 58 F.3d at 871 (*citing Flaherty v. Couglin,* 713 F.2d 10, 13 (2d Cir.1983).) A plaintiff alleging retaliation "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating fact in the prison officials' decision to discipline plaintiff." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (*citing In Mount Healthy Sch. Dist. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).)

**\*2** Where these claims may have merit the prisoners making them must be accorded the full procedural and substantive safeguards available to other litigants. *Colon,* 58 F.3d at 872. "[A] retaliation claim supported by specific and detailed factual allegations which amounts to a persuasive case ought to be pursued with full discovery. However, a Complaint which alleges retaliation in wholly conclusory terms may be safely dismissed on the pleadings alone.... A third category of allegations also exists, namely a Complaint which alleges facts giving rise to a colorable suspicion of retaliation. Such a claim will support at least documentary discovery." *Flaherty,* 713 F.2d at 13; *accord Colon,* 58 F.3d at 872.

*DISCUSSION*

Unfortunately, defendants' motion papers do not address all of the incidents of retaliation presented by plaintiff in this Complaint. However, before granting plaintiff's motion, I must address and rule upon every possible claim plaintiff may be making in this Complaint. *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (court is to read a pro se party's "supporting papers liberally and ... interpret them to raise the strongest possible arguments that they suggest".) I have culled the following eight incidents of alleged retaliation from plaintiff's Complaint.

1. PRISON JOB ASSIGNMENT

On September 21, 1994, plaintiff returned from St. Francis Hospital to Greenhaven Correctional Facility after an operation performed on plaintiff's achilles tendon. Prior to his hospitalization, plaintiff was employed at the facility in the position of Inmate

Liaison Representative. Plaintiff alleges that defendants Sally Kapland and Ginny Blaetz designated plaintiff as "medically unemployable" because of his injury and subsequent hospitalization. Plaintiff contested this designation and maintains that defendants, including Superintendent Artuz, "have consistently failed to correct the error." Complaint at 8. Plaintiff, however, "continued to do his assignment as an I.L.C. representative for D–Block and attend an Executive meeting with the staff as such in October...." Complaint at 8. Plaintiff's allegations against Blaetz and Kapland make no mention of retaliation for plaintiff's exercise of any constitutionally protected right. Furthermore, plaintiff's designation as "medically unemployable," by his own admission, did not interfere with his work as Inmate Liaison Representative. As such, plaintiff fails to state a claim against Blaetz and Kapland in alleging that they designated him as medically unemployable.

Plaintiff also claims that he has been "continually harassed in his position on the Inmate Liaison Committee by [defendants] forcing him to attend G.E.D. classes although he had his High School Diploma, G.E.D. and college he obtained while incarcerated and cut his pay." Complaint at 37. Prison inmates have no constitutional right to a particular prison assignment or to a specific wage while incarcerated in a correctional facility. *Moody v. Daggett,* 429 U.S. 78, 88, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987); *Salahuddin v. Coughlin,* 674 F.Supp. 1084, 1054 (S.D.N.Y.1987). By reverse implication, plaintiff has no constitutional right *not* to participate in institutional programming.

**\*3** Acts of retaliation, however, are actionable under § 1983 if they violate First Amendment rights. *See, e.g., Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988) (an act in retaliation for the exercise of a constitutional right is actionable under § 1983). Plaintiff alleges a retaliatory motive: "it was due to his [plaintiff's] exercising his First Amendment rights, speaking out against their abuses and petitioning the Courts that the constitutional violations of the 5th, 8th and 14th Amendment occurred." Complaint at 37.

Retaliation claims are subject to the well-established standard that even in a pro-se civil rights action, vague and conclusory allegations are insufficient to state a cause of action. *Flaherty,* 713 F.2d at 13 ("[A] § 1983 complaint

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 71 of 131

Higgins v. Coombe, Not Reported in F.Supp. (1997)

1997 WL 328623

which alleges retaliation in wholly conclusory terms may be safely dismissed on the pleadings alone."); *see also Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) (complaints relying on civil rights statutes insufficient unless they contain some specific allegations).

Here, plaintiff's one sentence statement that his placement in the G.E.D. Program were in retaliation for exercising protected rights is impermissibly vague and conclusory. Plaintiff has presented the Court with no evidence or allegation to further to support this insubstantial contention. On the contrary, plaintiff has provided the Court with a non-retaliatory motive for these acts: plaintiff explains that forcing prisoners to attend GED classes and cutting pay "has been an ongoing occurrence with many of the prisoners in an effort to fraudulently fill the class rooms to maintain the jobs of the employees on their staff. This has resulted in many state lawsuits." Complaint at 37. As plaintiff has not presented the Court with violations of constitutional magnitude or evidence of retaliation, this claim is also dismissed.

**2. MISSING § 1983 APPENDIX in *Higgins v. Artuz,* No. 96 Civ. 4810(SS) (S.D.N.Y.1996)**

Plaintiff also claims that prison officials tampered with his legal mail by removing an Appendix from a sealed envelope accompanying plaintiff's § 1983 civil rights complaint. Plaintiff argues that although the complaint reached the Court and was assigned a judge and docket number, the accompanying Appendix did not. On September 29, 1994, Carolyn Cairns Olson, Assistant Attorney General, sent the Court a letter, copied to plaintiff, and indicated that "[t]he *pro se* complaint in this action refers to numerous exhibits in an 'Appendix.' An Appendix, however, was not served upon this office, or upon any of the defendants in this action, with the summons and complaint ... The Clerk suggested that it may be in Chambers." Exhibit 19. Plaintiff subsequently wrote the Court responding to Ms. Olson's letter. Plaintiff's inquiry was forwarded to Richard Wilson, a clerk in this Court's Pro Se Office for response. Exhibit 28.

By letter dated November 8, 1994, Mr. Wilson responded to plaintiff's inquiry:

> **\*4** In your letter you state that this office did not send

you the appendices you submitted with your complaint, so that you could serve copies on the defendants. However, upon review of the complaint submitted, it appears as though there might be some confusion on your part. The complaint you submitted has a Table of Contents, which lists the various parts of the "complaint." When this office received your papers, we separated the following documents from the complaint and they were filed separately: Order to Show Cause and Temporary Restraining Order, Motion to Proceed In Forma Pauperis and Assignment of Counsel, Affidavit of In Forma Pauperis and Assignment of Counsel and an Order of Forma Pauperis and Assignment of Counsel ... Should you have any further questions please contact the undersigned.

Plaintiff concedes that the § 1983 Complaint that accompanied the Appendix did reach the Court. Complaint at 34. Nevertheless, plaintiff alleges that D. Bliden, Deputy Superintendent; T. Bushek, Dep. Sup't of Administration; Gail Haponik and other unnamed corrections officers working in conjunction with R. Wilson of the Pro Se Office conspired to retaliate against him by removing the Appendix from the envelope mailed to this Court containing plaintiff's Complaint. Complaint at 29. In their motion papers, defendants argue generally that "plaintiff's access to the courts was not hampered or impacted upon, even if his court papers were misplaced." Memorandum at 8.

Prison inmates have a well established constitutional right to petition the government for redress of their grievances, which includes the right of reasonable access to courts. *Hudson v. Palmer,* 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1983); *see also Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). "In order to state a valid § 1983 claim on this ground, the inmate must allege facts tending to show that the alleged deprivation actually interfered with his or her access to

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 72 of 131

Higgins v. Coombe, Not Reported in F.Supp. (1997)

1997 WL 328623

the courts, or prejudiced an existing action." *Jermosen v. Coughlin,* 877 F.Supp. 864, 871 (S.D.N.Y.1995); *accord Herrera v. Scully,* 815 F.Supp. 713, 725 (S.D.N.Y.1993). The "actual injury" requirement for a denial of access to the courts is "more than just any type of frustrated legal claim." *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2181, 135 L.Ed.2d 606 (1996). The injury must go to the plaintiff's ability to "attack their sentences, directly or collaterally, and in order to challenge the conditions of confinement." *Id.* A plaintiff must show how the destruction of documents could have impeded any suit that he had or could have brought. *Hikel v. King,* 659 F.Supp. 337, 340 (E.D.N.Y.1987). Delays in communicating with the courts or in the ability to work on a legal action does not rise to the level of a constitutional violation. *Jones v. Smith,* 784 F.2d 149, 151–52 (2d Cir.1986).

Plaintiff's allegation, that the Appendix appended to Complaint No. 96 Civ. 4810 was removed by prison officials before mailing, is nothing more than speculation, unsupported by any concrete factual allegations. It is seemingly implausible that prison officials, intent on preventing plaintiff from filing a § 1983 lawsuit, would open plaintiff's mail, remove the Appendix, but then forward the Complaint to the court. Indeed, plaintiff expresses his own doubts regarding this contention in his Affirmation: "[I]t is probable to a certain extent that the Pro–Se Clerk's Office removed the appendixes...." Affirmation at 4. In addition, the letter from R. Wilson, a former staff member in the Pro Se Office of this Court, points to the possible solution to this issue when he states that the "appendix," consisting of certain documents unrelated to the allegations in the Complaint, was received by the Court and separated from the Complaint itself. The fact that the Complaint was filed with the Court belies plaintiff's allegation that prison officials prevented his access to the court. Therefore, plaintiff has not shown, and cannot show, that he was denied access to the Court by the named prison officials for removing his Appendix and this claim against them is dismissed.

### 3. EMERGENCY TELEPHONE CALL

**\*5** On November 15, 1994, plaintiff attempted to make "an emergency telephone call" to the Court to discuss the missing Appendix. Complaint at 15. Plaintiff's basis for requesting this "emergency" telephone call was the statement in R. Wilson's November 8, 1994 letter stating, "[s]hould you have any further questions, please contact

the undersigned." Plaintiff apparently interpreted this statement as a demand to contact the Court by telephone. Plaintiff's request was initially thwarted because the facility was "shut down for security reasons." Plaintiff was told to put his request into writing. His written request was subsequently denied. Plaintiff argues that he "demonstrated a necessity for a legal telephone call, showing [ ] the letter of the Pro–Se Clerk, R. Wilson, stating that if I had any further questions to call." Complaint at 23. Defendants do not address this claim in their motion papers.

This allegation must also be dismissed. P. Nelson, Senior Counselor,[2] responded to plaintiff's request to call the Court by stating, "[t]he document that you supplied does not request that you be given a call to the court." Exhibit 39. I agree with Mr. Nelson's observation that the Letter from the Court's Pro Se Office in no way supports plaintiff's argument that he was entitled to an emergency phone telephone call. In addition, there are no facts to support plaintiff's allegation that his legal mail was not being forwarded by the facility which might thereby justify an emergency telephone call. Indeed, utilizing the mail as his means of communication, plaintiff, then and now, continues to actively litigate both of his pending cases. Plaintiff has made no showing that he has been harmed by defendant Nelson's refusal to let plaintiff make a call only he described as an "emergency." As such, all claims against defendant P. Nelson are dismissed.

### 4. MISSING POLICE REPORT

Plaintiff next alleges that unnamed defendants conspired to retaliate against him by removing police reports he had attached as an exhibit to a habeas corpus petition which plaintiff had prepared for filing in this Court. Plaintiff maintains that the reports were stolen from his cell in retaliation for filing the lawsuit, 94 Civ. 4810, that named Correction Officer Wildrick[3] as a defendant. Plaintiff believes that Officer Wildrick might have taken the reports. When confronted by plaintiff, Officer Wildrick denied having possession of the reports. Complaint at 12. As further evidence of retaliation, plaintiff alleges that although he reported the incident, "the complaint was not logged that day and all the preceding events demonstrates a consciousness of guilt on the officer's [Wildrick's] part."

Because plaintiff alleges no actual injury from Officer Wildrick's purported conduct, this claim must be

1997 WL 328623

dismissed. Plaintiff specifically alleges in his Complaint that on November 3, 1994, he went to the law library and recopied the police reports and that on November 4, 1994, he mailed out the habeas petition, which was received by the Court on November 14, 1994. Further, plaintiff's allegation that the petition was given to prison officials for mailing on November 4, 1994 and not "received" by the Court until ten days later, is of no moment inasmuch as there is no indication or allegation that plaintiff suffered actual injury or prejudice as a result.

5. LOST LEGAL DOCUMENTS

**\*6** Plaintiff was transferred to Wende Correctional Facility on January 19, 1995. Plaintiff claims generally that defendants Bliden, Haponik, Bushek and Surber were "responsible for the disappearance of a bag and a half of legal work. This was maliciously accomplished because plaintiff filed the instant suit." Complaint at 35. Plaintiff maintains that two bags containing legal materials and documents were to be sent to his mother "for safe keeping." Instead, the bags were sent to his brother, also at Wende and, "after seeing the contents and reviewing the I.S. 64 form, plaintiff realized that the contents of the bag were part of two (2) full bags of legal documents from his and his brothers criminal case, i.e. transcripts, police reports, and documentation he had signed to be sent to his mother." Affirmation at 9. However, the legal documents were missing from the bags and have not been recovered. Plaintiff alleges that defendants Coombe and Artuz "were notified, but failed, or adequately failed to respond and/or investigate plaintiff's claims in their supervisory capacities." Affirmation at 9.

Plaintiff also charges defendant Surber with "maliciously" removing important legal materials from luggage he packed in preparation for his transfer to Wende Correctional Facility. Plaintiff alleges that defendant Surber altered the I.S. 64 inventory form that contained the list of his itemized property. As a result of this action, plaintiff contends that he is unable "to litigate within his criminal Habeas Corpus proceeding in the Eastern District Federal Court." [4] Affirmation at 10.

This allegation is sufficient to survive dismissal under the liberal pleading standards of *Fed.R.Civ.P. 12(b) (6)*. Whether the deprivation of these legal documents prejudiced plaintiff's ability to litigate a habeas action and ultimately caused actual injury cannot be resolved

by the instant motion. Plaintiff has pled the possible violation of a substantive constitutional right. *Morello v. Smith, 810 F.2d 344 (2d Cir.1986)*. Defendants' motion to dismiss this claim against correction officer Surber, therefore, is denied. However, as plaintiff has not pled the personal involvement of any of the other named defendants, the claim as against defendants Coombe, Artuz, Bliden, Haponik and Bushek is dismissed. *See infra* at pp. 25–26.

6. CELL SEARCH ALLEGATIONS

Plaintiff alleges that, on November 17, 1994, "the institutional search team headed by defendants Captain Snyder and Lieutenant Naggy searched D Block housing area." Complaint at 15. Four other individuals, defendants Surber, Murphy, Cottington and a John Doe correction officer searched plaintiff's cell. Although all of the cells on D Block were searched that evening, plaintiff asserts that the search of his cell was retaliatory in nature and was undertaken to create a false misbehavior report against plaintiff. As evidence, plaintiff contends that he was the only prisoner ordered to face the wall until the search was completed. However, when plaintiff objected, the correction officers permitted him to turn around.

**\*7** Plaintiff maintains that the defendants turned his cell upside down, confiscating many of plaintiff's belongings as contraband, including magazines, lamps, a typewriter, coffee, creamer, sugar, eating utensils, legal binders and looseleaf notebooks. In addition to the above items designated as contraband, the corrections officers found a hidden razor blade that plaintiff contends was placed in the cell by the officers to fabricate a false misbehavior report. Complaint at 21.

As evidence of retaliatory conduct, plaintiff points to alleged racist remarks made by the officers and the fact that the search of plaintiff's cell took longer and was more thorough than others. However, when plaintiff later complained about the condition of his cell after the search, a correction officer, "grinned and remarked that everyone['s] cell had been left the same way." Complaint at 23. Plaintiff alleges that defendants conducted a cell search in retaliation for plaintiff's suit against Correction Officer Wildrick.

The Supreme Court has held that prisoners do not have a legitimate expectation of privacy in their individual cells. *Hudson v. Palmer, 468 U.S. 517, 525–26, 104*

Higgins v. Coombe, Not Reported in F.Supp. (1997)

1997 WL 328623

S.Ct. 3194, 82 L.Ed.2d 393 (1984). Searches of cells implicate no protected constitutional rights, even if the search is arbitrary or retaliatory in nature. *Hudson,* 468 U.S. at 527; *see Payne v. Axelrod,* 871 F.Supp. 1551, 1555 (N.D.N.Y.1995); *Demaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1996). *But see Lowrance v. Coughlin,* 862 F.Supp. 1090, 1098 (S.D.N.Y.1994) ("a range of retaliatory conduct in reaction to a prisoner's exercise of constitutionally protected rights has long been established as unconstitutional by courts of this circuit.") (*citing Jones v. Coughlin,* 696 F.Supp. 916, 920 (S.D.N.Y.1988).) I dismiss all claims against correction officers Snyder and Naggy, the defendants responsible for the search of D Block.

Further, any claim plaintiff may be making for the destruction of personal property must also be dismissed. A claim for deprivation of property does not lie in federal court if the state courts provide an adequate remedy for the deprivation of that property. *Hudson,* 468 U.S. at 533; *Parratt v. Taylor,* 451 U.S. 527, 54243, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Marino v. Ameruso,* 837 F.2d 45, 47 (2d Cir.1988). New York provides such a remedy in § 9 of the New York Court of Claims Act which permits an inmate to pursue a claim for deprivation of property against the State of New York in the New York Court of Claims. *See Demaio,* 877 F.Supp. at 95. Because New York State provides an adequate post-deprivation remedy for destruction of his property, plaintiff may not pursue this claim as a § 1983 action in this Court.

## 7. RETALIATORY FALSE MISBEHAVIOR REPORT

Plaintiff alleges that, as a result of the cell search, defendants fabricated a false misbehavior report against him in retaliation for his suit naming correction officer Wildrick as a defendant. As evidence of retaliation, plaintiff asserts that during the cell search, defendants were "singing and speaking that they were protecting and avenging the honor of a loved one ... I was later informed that they allegedly found a weapon." Plaintiff claims that the items confiscated were authorized and not contraband and that the razor was "planted." Affirmation at 7. [5] Plaintiff further maintains that he was "set-up with [these] false disciplinary charges ... by defendants Snyder, Naggy, Cottington, Whitney, Murphy, Surber and John

Doe." Defendant correction officer Whitney allegedly "endorsed" the false misbehavior report. Affirmation at 5.

**\*8** Plaintiff also alleges that close inspection of the misbehavior report indicates that the report was altered: "[i]f you notice it would seem, as in most cases, from the upper left hand corner that the review officer intended to make both a tier II disciplinary, however the report was escalated to a tier III by someone else." Complaint at 24. This claim is without any basis in fact and is unconnected to the action of any particular defendant. It is, therefore, dismissed.

However, " '[a]lthough the filing of unfounded charges d[oes] not give rise to a per se constitutional violation action under section 1983,' *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988), the Second Circuit has held that a § 1983 claim may stand when the false charges are allegedly brought in retaliation for an inmate's exercise of his substantive due process rights, *see Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988)." *Rodriguez v. Phillips,* 66 F.3d 470, 477 (2d Cir.1995).

Claims of retaliation must be examined with skepticism and care, *Flaherty,* 713 F.2d at 13, and a plaintiff's broad and unsubstantiated allegations of retaliation will not defeat a motion for summary judgment. However, plaintiff's allegations here are sufficient to bring plaintiff's claim within the purview of § 1983 and thus survive dismissal under Rule 12(b)(6). In *Colon v. Coughlin,* 58 F.3d 865 (2d Cir.1995), the plaintiff alleged that defendants conspired to subject him to retaliatory false charges and to deprive him of a fair hearing in retaliation for bringing prior lawsuits. The Court, in reversing the district court's grant of summary judgment, credited plaintiff's unsupported allegations of retaliation noting that plaintiff had filed two prior lawsuits regarding conditions of his confinement and that the "temporal proximity between an inmate's lawsuit and disciplinary action may serve as circumstantial evidence of retaliation." *Colon,* 58 F.3d at 872. In addition, the Circuit credited plaintiff's statement that he had no record of prior incidents of misbehavior and held that "evidence of prior good behavior also may be circumstantial evidence of retaliation." 58 F.3d at 872. This circumstantial evidence, combined with incriminating statements made by corrections officers, prompted the Second Circuit to conclude that summary judgment was inappropriate.

1997 WL 328623

In the instant action, plaintiff has stated that he was an honor block inmate with no prior record of misbehavior and that the alleged retaliatory acts of defendants occurred in close proximity to his filing of prior lawsuits. In addition, plaintiff has alleged that a correction officer told him that action would be taken to protect the honor of a "loved one." These allegations are sufficient to withstand a motion to dismiss under Fed. R. 12(b)(6). Plaintiff has raised a colorable suspicion of retaliation and must be given an opportunity to conduct discovery regarding this claim.

## 8. HEARING/CONFINEMENT ISSUES

**\*9** Plaintiff contends that hearing officer G. Blaetz intentionally retaliated against plaintiff by conducting a biased hearing with the intent to find him guilty of the charges in the allegedly false misbehavior report. He also contends that the hearing officer impermissibly confined plaintiff pending the disposition of the hearing. During the hearing, plaintiff asserts that defendant Blaetz denied him an opportunity to prove his claim of retaliatory false charges by refusing to permit plaintiff to call certain witnesses or to question the corrections officers involved in the search of plaintiff's cell and in the subsequent misbehavior report. In addition, plaintiff alleges that the hearing officer found him guilty "although the evidence presented supported the defendants had maliciously fabricated the report." Complaint at 36.

Plaintiff was found guilty of three of the charges and was sentenced to sixty days keeplock and loss of privileges. Selsky affirmed this disposition on appeal. Complaint at 27, 29. Plaintiff maintains that "[d]efendants Coombe, Glenn Goord, Selsky, Artuz, Portuondo and Coefield were notified through correspondence, and direct appeals of the retaliatory misbehavior report and conduct, but failed to investigate or overturn the guilty disposition...." Affirmation at 7.

Defendants argue that the holding of *Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)*, mandates dismissal of plaintiff's hearing and confinement claims. However, because I find that plaintiff's complaint concerns substantive due process rights regarding retaliatory discipline, and not simply procedural due process issues, the complaint cannot be dismissed on this ground.

The "crux" of plaintiff's claim is that state officials violated his First Amendment right by retaliating against him for exercising his constitutionally protected right to seek redress in federal court. *Sandin* addressed procedural due process claims and made the distinction that inmates

> retain other protection from arbitrary state action even within the expected conditions of confinement. They may invoke the First and Eighth Amendments and the Equal Protection Clause of the Fourteenth Amendment where appropriate.

*Sandin*. 115 S.Ct. at 2302, n. 11.

Here, plaintiff is alleging retaliatory discipline for exercising a First Amendment right. "*Sandin* did not affect substantive constitutional rights, nor did *Sandin* eliminate challenges to retaliatory discipline." *Mckenzie v. Hollins,* No. 95 CV 0880 (RSP/GJD), 1996 WL 596722 (N.D.N.Y. Oct.11, 1996) (*citing Pratt v. Rolland, 65 F.3d 802 (9th Cir.1995)*.) Consequently, whether plaintiff's 60 day confinement and loss of privileges is of "real substance" and would constitute an "atypical or significant hardship [ ]" creating a liberty interest protected by the Due Process Clause is not a question this Court need reach for the purposes of dismissal under Rule 12(b)(6).

Although *Sandin* cannot constitute the basis for dismissal of plaintiff's retaliation claims, another recent Supreme Court case, *Edwards v. Balisok —— U.S. – – – – , 117 S.Ct. 1584, —— L.Ed.2d – – –%B 1997 WL 255341 (May 19, 1997)*, further altered the due process analysis governing prison disciplinary hearings. The plaintiff in *Edwards,* Jerry Balisok, was found guilty at a disciplinary hearing of violating prison rules. He was sentenced to 10 days in isolation, 20 days in segregation, and deprivation of 30 days good-time credit. The plaintiff filed suit alleging that the procedures used in his hearing violated his Fourteenth Amendment right to due process. Specifically, the plaintiff alleged that the hearing officer "concealed exculpatory witness statements and refused to ask specified questions of requested witnesses ... which prevented respondent from introducing extant exculpatory material and 'intentionally denied' him the right to present a defense." The plaintiff further contended

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 76 of 131

Higgins v. Coombe, Not Reported in F.Supp. (1997)

1997 WL 328623

that these acts were the product of "deceit and bias" on the part of the hearing officer. Mr. Balisok's disciplinary disposition was affirmed on appeal.

**\*10** The Supreme Court applied *Heck v. Humphrey,* 512 U.S. 477, 487, 114 S.Ct. 2364, 129 L.Ed.2d 383 to Mr. Bolisok's claim and held "that a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." [6] *Edwards,* 520 U.S. 641 at ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 at ——, 1997 WL 255341 at \*1. In the instant action, plaintiff's disciplinary hearing finding of guilt has not been invalidated or overturned on appeal.

The *Edwards* Court looked at the nature of claim brought by plaintiff to determine if a finding in plaintiff's favor would "necessarily imply the invalidity of the judgment." 520 U.S. 641 at ——, 117 S.Ct. 1584, 137 L.Ed.2d 906 at ——, 1997 WL 255341 at \*3. The Court held that "allegations of deceit and bias on the part of the decisionmaker ... necessarily imply the invalidity of the punishment and imposed [and would not be] cognizable under § 1983." *Id.* at \* 4. In the instant action, Higgins claims that hearing officer Blaetz intentionally retaliated against him by conducting a biased hearing with the intent to find him guilty of the charges against him. I find plaintiff's claims of retaliation against the hearing officer indistinguishable from the allegations of deceit and bias set forth in *Edwards.* Although plaintiff also alleges procedural defects at his disciplinary hearing, his "principal" claim, as in *Edwards,* is one of retaliation and therefore "necessarily impl[ies] the invalidity of the punishment imposed." *Edwards* at \* 6. Applying the *Heck* analysis mandated by *Edwards* to the instant action, I dismiss all claims regarding retaliation on the part of hearing officer Blaetz and D. Selsky. [7]

## QUALIFIED IMMUNITY

The doctrine of qualified immunity shields government officials in an action under 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d

396 (1982) (citations omitted). Even where the rights were clearly established, the official will not be held personally liable if it was objectively reasonable for the official to believe that his or her acts did not violate those rights. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations omitted).

In order to determine whether a right is "clearly established," the Court must consider: (1) whether the right was defined with reasonable specificity, (2) whether Supreme Court and Circuit Court cases have clearly established the right, and (3) whether a reasonable defendant would have understood that his or actions were unlawful in light of preexisting law. *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). "[B]are allegations of malice, [however] should not suffice to subject government officials to either the costs of trial or to the burdens of broadreaching discovery." *Harlow,* 457 U.S. at 817–18.

**\*11** Plaintiff's allegations concern retaliatory conduct occurring between 1994 and 1995. The right to petition the government for the redress of grievances is a fundamental right stated with sufficient clarity in the First Amendment. In addition, the right of inmates to petition the government for redress of grievances without reprisal, including the right of access to the court, was clearly established well before 1994. *See Sostre v. McGinnis,* 442 F.2d 178, 189 (2d Cir.1971) (en banc) (confinement for past or threatened litigation against prison officials constituted due process violation), *cert. denied,* 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972); *Haymes v. Montanye,* 547 F.2d 188, 191 (2d Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2925, 53 L.Ed.2d 1063 (1977) (confiscation of a petition complaining of inmate's access to the law library violated the First Amendment right to petition for redress of grievances); *Flaherty,* 713 F.2d at 13 (outlined the procedure to be followed by the district court when confronted with a prisoner's claim that administrative decision was taken in retaliation for filing litigation); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (per curiam) (inmate's allegation that he was placed on Central Monitoring Case status in retaliation for commencing litigation stated a claim for relief); *Morello v. James,* 810 F.2d 344, 346 (2d Cir.1987) (intentional theft of inmate's papers constitutes denial of access to courts).

Case 9:17-cv-01042-DNH-TWD Document 67 Filed 03/19/19 Page 77 of 131

Higgins v. Coombe, Not Reported in F.Supp. (1997)

1997 WL 328623

Thus, it is not objectively reasonable for defendants to believe that their purported retaliatory actions did not violate plaintiff's rights, and therefore defendants are not entitled to qualified immunity.

## PERSONAL INVOLVEMENT

As a prerequisite to a § 1983 claim, plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivation. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Liability for damages in an action under § 1983 may not be based on the respondeat superior or vicarious liability doctrines. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Plaintiff's pleadings fail to allege facts demonstrating that defendants D. Bliden, T. Bushek, Gail Haponik, Philip Coombe, Glenn Goord, C. Artuz, L. Portuondo or C. Coefield, each holding supervisory positions within Greenhaven Correctional Facility or within the Central Office of the Department of Corrections, had any direct involvement, knowledge of, or responsibility for the alleged retaliatory acts against plaintiff. Plaintiff merely alleges that the above defendants are personally involved because they were either informed verbally or in writing, or they "knew or should have known" of the incidents forming the basis of this complaint and that they failed to take sufficient action.

The defendants cannot be held liable on this theory. "[S]upervisory liability may be imposed where an official demonstrates 'gross negligence' or 'deliberate indifference' to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." *Wright,* 21 F.3d at 501. "However, it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Greenwaldt v. Coughlin,* No. 93 Civ. 6551(LAP), 1995 WL 232736 at *3 (S.D.N.Y. April 19, 1995) (*citing Murray v. Coughlin,* No. 91–CV–0476, 1995 WL 128968 at *6 (W.D.N.Y. Mar. 15, 1995)); *Cepeda v. Coughlin,* No. 91 Civ. 2469(RWS), 1995 WL 23566 at *3 (S.D.N.Y. Jan.19, 1995); *Clark v. Coughlin,* No. 92 Civ. 0920(RWS), 1993 WL 205111 at *6 n. 2 (S.D.N.Y. June 10, 1993), *aff'd,* 17 F.3d 391 (2d Cir.1993); *Garrido,*

716 F.Supp. at 100 (dismissing that portion of complaint against NYSDOCS Commissioner where his only alleged connection to the case was that "he ignored plaintiff's letter of protest and request for an investigation of the allegations made in [the] action)." *Compare Larkins v. Oswald,* 510 F.2d 538, 539 (2d Cir.1975) (an allegation that the Superintendent failed to act after receiving an *official* report containing allegations of unconstitutional violations may be actionable). As such, all such failure to supervise claims against these defendants are dismissed.

## MOTION TO AMEND COMPLAINT

**\*12** In his reply Affirmation, plaintiff, for the first time, raises allegations of retaliatory transfer and inadequate medical treatment. These allegations are beyond the scope of the instant action. If plaintiff wishes to pursue these claims, he may submit a proper motion to amend attaching a proposed amended Complaint for consideration by the Court. The proposed motion should be confined to these issues and received by the Court no later than thirty days from the date of this Order.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the Complaint is DENIED in part and GRANTED in part as follows:

Defendants' motion to dismiss is denied on the claims relating to incidents (5), the lost legal documents and, (7), the retaliatory false misbehavior report. As such, the motion to dismiss the Complaint as against defendants Cottington, Whitney, R. Murphy, and Surber is DENIED.

All claims relating to (1) plaintiff's prison job assignment; (2) the missing Appendix; (3) the emergency telephone call; (4) the missing police report; (6) the cell search, and (8) the hearing/confinement issues are dismissed in their entirety. Because the actions taken by defendants G. Blaetz, D. Selsky, P. Nelson, S. Kapland, Snyder and Naggy in these incidents did not violate plaintiff's constitutional rights, defendants' motion to dismiss the Complaint against these defendants is GRANTED.

1997 WL 328623

Defendants' motion to dismiss D. Bliden, T. Bushek, Gail Haponik, Philip Coombe, Glenn Goord, C. Artuz, L. Portuondo and C. Coefield for lack of personal involvement is GRANTED.

SO ORDERED

**All Citations**

Not Reported in F.Supp., 1997 WL 328623

Footnotes

1    Plaintiff is an active litigant, having brought several suits against Greenhaven officials in this Court. Plaintiff's instant retaliation claim arises out of a suit currently pending before me, *Higgins v. Artuz,* No. 94 Civ. 4810(SS). In addition to Christopher Artuz, Superintendent for the Greenhaven Facility, plaintiff named two corrections officers in that action, G. Wildrick and Daniel Evertts.

2    Although not so designated in the caption, "P. Nelson" is referred to as a defendant in the body of plaintiff's complaint.

3    Officer Wildrick is not named as a defendant in this action.

4    I note that plaintiff's complaint alleges that he has filed federal habeas corpus actions in both the Southern and Eastern Districts of New York.

5    I note that these allegations were not contained in plaintiff's complaint and first appeared in plaintiff's response, (Affirmation), to defendants' motion to dismiss the complaint. Ordinarily I would not consider plaintiff's Affirmation as supplemental to his complaint. However, I afford plaintiff latitude on this occasion since I am considering dismissal under Fed.R.Civ.P. 12(b)(6).

6    In doing so, the Supreme Court implicitly upheld this Circuit's holding in *Black v. Coughlin,* 76 F.3d 72 (2d Cir.1996). In *Black,* the Second Circuit, applying a *Heck* analysis, held that a prisoner's constitutional claim regarding disciplinary due process did not accrue until a state court reversed his disciplinary sentence. 76 F.3d at 75.

7    *Edwards* was decided after the instant motion was filed. Neither party has asked to raise or brief the effect of *Edwards* on the facts presented here. However, should the parties have arguments which bear on this issue, I invite a motion for reconsideration.

---

**End of Document**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3948100
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jonathan MENA, Plaintiff,
v.
CITY OF NEW YORK, et al., Defendants.

No. 13-cv-2430 (RJS)
|
Signed 07/19/2016

**Attorneys and Law Firms**

Jonathan Mena, Stormville, NY, pro se.

Omar Javed Siddiqi, Ryan Glenn Shaffer, New York City Law Department, New York, NY, for Defendants.

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge

**\*1** Plaintiff Jonathan Mena, who is currently incarcerated and proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against Correction Officer Benjamin Eason ("Defendant"), alleging violations of the Eighth Amendment. Now before the Court is Defendant's motion for summary judgment. For the reasons set forth below, the motion is granted.

I. BACKGROUND

A. Facts [1]

On September 9, 2012, while incarcerated at the Otis Bantum Correctional Center ("OBCC") on Rikers Island, Plaintiff was placed in an intake cell in the OBCC's receiving area, which he shared with two other individuals. (56.1 Stmt. ¶¶ 2–3.) Plaintiff alleges that the cell was extremely cold, vermin-infested, and too small to accommodate three men. (*See* Doc. No. 54-1 ("Compl.") 4, 8.) Plaintiff further alleges that these conditions, coupled with the constant noise made by the two other inmates, prevented him from sleeping for the entire 60-hour period that he was held in the cell. (*See id.* at 4.)

Consequently, he asked Defendant, who was on duty, to transfer him to a different cell. (56.1 Stmt. ¶¶ 7–8.) According to Plaintiff, Defendant responded that there was "nothing he could do" about the situation. (*Id.* ¶ 9; *see also* Doc. No. 54-2 ("Mena Dep.") 59:5-8.)

Plaintiff avers that he filed a grievance with the OBCC to complain about his experience in the cell. (*See* Compl. at 7.) The New York City Department of Correction ("DOC") has an administrative grievance procedure, known as the Inmate Grievance and Request Program ("IGRP"), for inmates housed at facilities such as the OBCC. The IGRP, which was available and in effect at all times relevant to this lawsuit, requires that inmates first file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within ten days of the complained-of act. (56.1 Stmt. ¶¶ 11–12; *see also* Doc. No. 54-3 ("IGRP Directive") § IV(D)(1).) The IGRC then attempts to resolve the grievance informally within five days, and if the grievance is not informally resolved, then the inmate may request a formal hearing before the IGRC. (56.1 Stmt. ¶ 12; *see also* IGRP Directive §§ IV(G)-(H).) An inmate may appeal the IGRC's decision to the commanding officer, or her designee, and subsequent appeals may be taken to the Central Office Review Committee ("CORC"). (56.1 Stmt. ¶ 13; *see also* IGRP Directive §§ IV(I)-(J).) The CORC's decision is the final and binding decision of the DOC; if an inmate disputes the decision of the CORC, he may independently appeal to the Board of Correction. (IGRP Directive at 47.) Finally, if an inmate does not receive a timely disposition at any point throughout the grievance process, he has the option of either granting an extension of time to the relevant decisionmaker (i.e., the IGRC, the commanding officer, or the CORC) or appealing and proceeding to the next level of review. (56.1 Stmt. ¶ 14; *see also* IGRP Directive §§ IV(D)(9)(b), (10).)

**\*2** As Plaintiff himself acknowledges, after submitting the grievance and receiving no response, he neither granted the DOC an extension of time nor appealed. (*See* Compl. 7–8; Opp'n 6.) In his Complaint, Plaintiff admits that he is "still waiting" for a disposition of his grievance, but does not indicate any steps he has taken to appeal any decision before the IGRC. (*See* Compl. 7.) In response to a question on the Southern District of New York Prison Complaint form asking a plaintiff to "set forth any additional information that is relevant to the exhaustion of your administrative remedies," Plaintiff repeated a number of his substantive allegations against the OBCC

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

staff, but did not state any information relevant to the grievance process. (*Id.* at 5.) And in his opposition brief in connection with this motion, Plaintiff again notes that he filed "several grievances about the issues in question," but he does not indicate any specific steps he took to appeal to the IGRC or to pursue any other avenue of appellate review within the IGRP. (Opp'n 6.)

### B. Procedural History

On April 11, 2013, Plaintiff commenced this action by filing a complaint against the City of New York, Correction Officer Jaquon Pickwood ("Pickwood"), Correction Officer Sauda Abdul-Malik ("Abdul-Malik"), and Defendant (collectively, "Defendants"), pursuant to Section 1983, asserting violations of his constitutional rights under the Eighth and Fourteenth Amendments. (*See* Doc. No. 1.) On December 9, 2013, Defendants moved to dismiss the Complaint. (Doc. No. 18.) On September 17, 2014, the Court granted Defendants' motion to dismiss with respect to Plaintiff's claims against the City of New York, Pickwood, and Abdul-Malik, and Plaintiff's Fourteenth Amendment claims against Defendant for failure to state a claim upon which relief can be granted, but denied Defendants' motion to dismiss with respect to Plaintiff's Eighth Amendment claim against Officer Eason. (Doc. No. 29.) On September 11, 2015, following the completion of discovery, Defendant filed the instant motion for summary judgment, along with his brief and his 56.1 Statement, arguing that Plaintiff failed to exhaust administrative remedies, that his Eighth Amendment conditions of confinement claim failed on the merits, and that in any event, Defendant was entitled to qualified immunity. (Doc. Nos. 53–55, 57.) Defendant also filed a notice pursuant to Local Civil Rule 56.2 alerting Plaintiff of his obligation to submit a responsive statement and informing him of the consequences of not doing so. (Doc. No. 56.) In accordance with Local Rule 56.2, this notice included copies of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (*Id.*) On October 14, 2015, Plaintiff filed a brief opposing summary judgment and submitted several exhibits (*see* Doc. No. 58), but he failed to submit a responsive 56.1 Statement. Defendant submitted his reply on October 22, 2015. (Doc. No. 59 ("Reply").)

### II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party " 'show[s]' – that is, point[s] out ... – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**\*3** Typically, a "nonmoving party's failure to respond to a [Local Civil] Rule 56.1 statement permits the court

to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)). "This general rule applies equally" to cases involving a *pro se* nonmoving party who has been provided adequate notice of the consequences of failing to properly respond to a summary judgment motion. *Pierre-Antoine v. City of N.Y.*, No. 04-cv-6987 (GEL), 2006 WL 1292076, at *3 (S.D.N.Y. May 9, 2006); *see also Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund*, No. 03-cv-7421 (KMK), 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Even so, the Court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement," *Holtz*, 258 F.3d at 73, and the Court is obligated to construe *pro se* litigants' submissions liberally, *see McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).

Here, Plaintiff failed to submit a responsive Rule 56.1 statement, even though Defendant, pursuant to Local Civil Rule 56.2, sent Plaintiff notice of his obligations under Local Civil Rule 56.1 and Federal Rule of Civil Procedure 56 and sent copies of both rules. (Doc. No. 56). In light of Plaintiff's *pro se* status, the Court has exercised its discretion to independently review the record, which reveals no controverted facts. *See Holtz*, 258 F.3d at 73. In fact, as discussed below, Plaintiff's own submissions confirm the material facts contained in Defendant's Rule 56.1 Statement.

### III. DISCUSSION

Defendant argues that summary judgment should be granted because Plaintiff has failed to comply with the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (the "PLRA"). The Court agrees.

Under the PLRA, inmates bringing claims with respect to prison conditions under Section 1983 must exhaust the administrative remedies that are available at that prison before proceeding in federal court. 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is "mandatory," thus "foreclosing judicial discretion." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (describing the "invigorated exhaustion provision" as "[a] centerpiece of the PLRA's

effort to reduce the quantity of prisoner suits" (citations and quotation marks omitted)). Accordingly, "the law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin v. Rivera*, No. 13-cv-7054 (RJS), 2015 WL 3999180, at *3 (S.D.N.Y. June 29, 2015); *accord Johnson v. N.Y.C. Dep't of Corr.*, No. 13-cv-6799 (CM), 2014 WL 2800753, at *6 (S.D.N.Y. June 16, 2014) ("Assuming that [p]laintiff filed a timely grievance ... and received no response within five business days[,] ... [p]laintiff ... could have taken the next step and requested a hearing."); *Leacock v. N.Y.C. Health Hosp. Corp.*, No. 03-cv-5440 (RMB) (GWG), 2005 WL 483363, at *7 (S.D.N.Y. Mar. 1, 2005) ("[T]hat [plaintiff] allegedly did not receive a response to her grievance does not excuse her from failing to exhaust the appellate remedies available to her."); *Burns v. Moore*, No. 99-cv-966 (LMM) (THK), 2002 WL 91607, at *8 (S.D.N.Y. Jan. 24, 2002) ("Thus, even if [p]laintiff received no response to his initial grievance, [p]laintiff could have sought the next level of review, in this case, to the prison superintendent.").

**\*4** At the OBCC, where Plaintiff was incarcerated, an inmate must exhaust several layers of review, even if the inmate does not receive a timely disposition at the initial stages. (56.1 Stmt. ¶ 12–14.) Here, as Plaintiff reveals in his own complaint and brief in opposition to the motion for summary judgment, he did not exhaust the OBCC administrative procedure. (Compl. 7–8; Opp'n 6.) Rather, he indicates that he filed a grievance but otherwise did not appeal or seek further review through the IGRP process. (Compl. 7–8 (noting that he is "still waiting" for disposition of his grievances and did not seek review at the next levels within IGRP); Opp'n 6 (noting that he filed "several grievances about the issues in question," but omitting reference to any specific steps taken to appeal)). Accordingly, Plaintiff failed to satisfy the PLRA exhaustion requirement.

The Court next considers whether there is any basis for excusing Plaintiff's failure to exhaust administrative remedies at the IGRP. Last month, the Supreme Court forcefully disapproved of judge-made exceptions to the PLRA's exhaustion requirement, stressing the mandatory language of the statute. *See Ross*, 136 S. Ct. at 1862 ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.") In doing so, the Supreme Court expressly

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 82 of 131

Mena v. City of New York, Not Reported in Fed. Supp. (2016)

2016 WL 3948100

rejected the Second Circuit's prior framework under *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004), and, by extension, *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), which recognized a "special circumstances" exception to the PLRA's exhaustion requirement. *See Williams v. Priatno*, No. 14-4777, ___ F.3d. ____, ____, ____, 2016 WL 3729383, at *4 (2d Cir. July 12, 2016) ("[T]o the extent that our special circumstances exception ... permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.").

Thus, post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are "available" to him. *Ross*, 136 S. Ct. at 1862; *see also* 43 U.S.C. § 1997e(a). An inmate's failure to exhaust may therefore be excused when his prison's grievance mechanisms are literally or constructively "unavailable." *Ross*, 136 S. Ct. at 1858–59. The Supreme Court described three scenarios in which administrative procedures could be "officially on the books," but "not capable of use to obtain relief," and therefore unavailable. *Id*. While not exhaustive, these illustrations nonetheless guide the Court's inquiry. *See Williams*, 2016 WL 3729383, at *4 n.2. First, an administrative procedure is unavailable when "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to inmates." *Ross*, 136 S. Ct. at 1859. If prison administrators either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it, the administrative channels are not "available" within the meaning of the PLRA. *Id.*; *see also Booth v. Churner*, 523 U.S. 731, 736, 738 (2001) ("[T]he modifier 'available' requires the possibility of some relief."). Second, an administrative procedure is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* To meet this high bar, the administrative remedy must be "essentially 'unknowable.'" *Id.* Finally, "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1860.

Here, Plaintiff has not alleged – let alone shown – that the administrative procedures at the OBCC were unavailable to him. Although Plaintiff's initial grievance received no response, this alone is insufficient to show that the IGRP acted as a mere dead end. As stated earlier, "the law is well-settled" that an inmate's "failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *Garvin*, 2015 WL 3999180, at *3 (collecting authorities). In short, the DOC's untimeliness in this case is not enough to demonstrate the unavailability of an administrative remedy. This is especially true in light of the IGRP's built-in appeal mechanism, whereby inmates may directly proceed to the next level of review in the event of the DOC's failure to respond to a grievance. (*See* IGRP Directive § IV(D) (9)(b), (10).) Furthermore, Plaintiff has not introduced any facts to indicate that prison officials at OBCC are "consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859.

**\*5** Nor has Plaintiff pointed to any evidence that the IGRP was "so opaque that it [became], practically speaking, incapable of use" and therefore "essentially unknowable." *Ross*, 136 S. Ct. at 1859. While the Second Circuit recently found that certain administrative grievance procedures at a different New York State facility met this standard, the Second Circuit's decision hinged on the "extraordinary circumstances" specific to the case before it, for which the applicable grievance regulations gave "no guidance whatsoever." *See Williams*, 2016 WL 3729383, at *1, *5. Specifically, the plaintiff in *Williams* was housed in a special housing unit and segregated from the regular prison population; therefore, he gave his grievance complaint to a correction officer to file on his behalf. *Williams*, 2016 WL 3729383, at *2. However, the plaintiff in *Williams* alleged that the correction officer to whom he gave his complaint failed to file it, *id.*, and because the Second Circuit concluded that the applicable grievance regulations gave "no guidance whatsoever to an inmate whose grievance was never filed," *id.* at 5, it reversed the District Court's dismissal for failure to exhaust. Here, by contrast the IGRP expressly guides inmates in Plaintiff's position who have filed a grievance but have not received a timely response and directs them to either grant an extension of time to the relevant decisionmaker or to appeal to the next level of review. (*See* IGRP Directive §§ IV(D)(9)(b), (10).) In light of the IGRP's unambiguous directive, Plaintiff has clearly failed to show that the IGRP was "essentially unknowable." *See Ross*, 136 S. Ct. at 1859.

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 83 of 131

Mena v. City of New York, Not Reported in Fed. Supp. (2016)
2016 WL 3948100

Finally, the Court turns to the third scenario contemplated by the Supreme Court, in which "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859. Plaintiff has not demonstrated, or even suggested, that prison administrators obstructed or interfered with his access to administrative remedies. *See, e.g.,* *Winston v. Woodward,* No. 05-cv-3385 (RJS), 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (concluding that plaintiff's failure to exhaust administrative remedies was not excused in light of his "failure to put forth any corroborating evidence, either direct or circumstantial, to support his claims that he suffered retaliation in the form of threats, harassment and mail tampering"). Thus, this exception to the exhaustion requirement is also clearly inapplicable.

Therefore, the Court concludes, as a matter of law, that Plaintiff has failed to exhaust administrative remedies available to him through the IGRP and has failed to offer any facts to prove that administrative remedies were not available to him. Because Plaintiff's claims are barred for failure to comply with the administrative exhaustion requirement of the PLRA, Defendant's motion for summary judgment is granted. [2]

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED.

Although Plaintiff has paid the filing fee in this action and has not applied to proceed *in forma pauperis,* the Court nevertheless certifies pursuant to 28 U.S.C. § 1915(a)(3) that, in the event Plaintiff seeks to appeal this Order *in forma pauperis,* any appeal would not be taken in good faith.

The Clerk is respectfully directed to terminate the motion pending at docket number 53, to mail a copy of this order to Plaintiff, and to close this case.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3948100

---

Footnotes

1   The following facts are drawn from Defendant's unopposed Local Civil Rule 56.1 Statement. (Doc. No. 55 ("56.1 Statement" or "56.1 Stmt.").) In deciding Defendant's motion for summary judgment, the Court has also considered Plaintiff's submission in opposition to summary judgment (Doc. No. 58 ("Opp'n")), and has conducted an independent review of the record, notwithstanding Plaintiff's failure to submit a statement compliant with Local Civil Rule 56.1. *See* *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d. Cir. 2001) (noting that district court "may in its discretion opt to conduct an assiduous review of the record even when" a party has failed to comply with Local Civil Rule 56.1 (citations and quotation marks omitted)).

2   Although Defendant has raised other grounds for summary judgment, including that Plaintiff has failed to establish an Eighth Amendment conditions of confinement claim, and that Defendant is entitled to qualified immunity, the Court finds it unnecessary to address these other arguments because of Plaintiff's failure to exhaust remedies.

---

**End of Document**                                 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Pabon v. Goord, Not Reported in F.Supp.2d (1999)

1999 WL 1063180

1999 WL 1063180
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

William PABON and Felix Manuel
Ruiz, a/k/a Pedro Ruiz, Plaintiffs,

v.

Glenn GOORD, Commissioner
of the New York Department of
Correctional Services, et. al, Defendants.

No. 99 CIV 2196(WHP) DFE.
|
Nov. 23, 1999.

*MEMORANDUM AND ORDER*

EATON, Magistrate J.

**\*1**  1. On January 28, 1999, the Pro Se Office of our Court received the first complaint of Mr. Pabon and Mr. Ruiz. It contained 257 paragraphs and 47 exhibits. On September 7, 1999, they filed their Amended Complaint, which was shorter and had no exhibits, but added seven more defendants.

2. This case is assigned to District Judge William H. Pauley III. On October 15, he referred this case to me for general pretrial supervision and for a report and recommendation on any dispositive motions.

3. Both plaintiffs have filed motions seeking appointment of counsel. I deny both motions. The plaintiffs have been able to produce very articulate papers. They will be able to present their case, and they have not shown a need to use up the scarce and precious resource of volunteer attorneys.

4. At Paragraphs 92–101 of the Amended Complaint, Mr. Pabon and Mr. Ruiz seek to represent all inmates at Greenhaven Correctional Facility who have Hepatitis C. "It is well settled in this circuit that *pro se* plaintiffs [non-lawyers] cannot act as class representatives. They do not satisfy the requirements of Rule 23(a)(4), F.R. Civ. P." *McLeod v. Crosson,* 1989 WL 28416, at \*1 (S.D.N.Y. Mar. 21, 1989) (Haight, J.). *See also Phillips v. Tobin,* 548 F.2d 408, 412–15 (2d Cir.1976). The Amended Complaint says at Paragraph 100, "The named Plaintiffs will fairly and adequately protect the interests of the Class; especially if this Court assigns counsel for the prosecution of this action." I decline to appoint counsel for this purpose.

5. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the plaintiffs may not serve any further amended complaint unless they obtain permission from me in advance.

6. By letter dated November 8, AAG June Duffy, a Deputy Bureau Chief, advises that only one of the many defendants has been served with process so far, and she requests an extension of time for all of the defendants to respond to the Amended Complaint, until January 28, 2000. I grant that request, but only on the following condition; I direct the Attorney General's Office to serve and file, by December 14, 1999, a response to plaintiffs' September motion seeking to enjoin the Department of Corrections from transferring either inmate to a different prison. I enclose for AAG Duffy a copy of this motion.

7. I will hold the Initial Case Management Conference, to discuss discovery and scheduling, on February 7, 2000 at 10:30 a.m. The defendants' attorney must come to my chambers for the conference, and must make arrangements with the prison so that Mr. Pabon and Mr. Ruiz can attend the conference by telephone.

8. Mr. Ruiz should advise AAG Duffy and me of his inmate number.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 1063180

---

End of Document    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4092856
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lynn A. ROWE, Plaintiff,
v.
NEW YORK STATE DIVISION
OF THE BUDGET, Defendant.

No. 1:11–CV–1150 (LEK/DRH).
|
Sept. 17, 2012.

**Attorneys and Law Firms**

Lynn A. Rowe, Schenectady, NY, pro se.

Gregory J. Rodriguez, Office of Attorney General, Albany, NY, for Defendant.

***DECISION and ORDER***

LAWRENCE E. KAHN, District Judge.

**I. INTRODUCTION**

 **\*1**  Plaintiff Lynn Rowe ("Plaintiff" or "Rowe") commenced the instant action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* claiming that she was discriminated against on account of her disability and retaliated against for engaging in protected activity. Dkt. No. 1 ("Complaint"). In her initial Complaint, Plaintiff named the New York State Division of the Budget, James Kiyonaga, and Thomas Wood as Defendants. *See id.* at 1–3. Defendants moved to dismiss the claims against the individuals on the ground that there is no individual liability under the ADA, and to dismiss the claims against the State of New York under the Eleventh Amendment. Dkt. No. 8 ("first Motion to dismiss"). In response to this Motion, Plaintiff filed an Amended Complaint withdrawing the claims against the individual Defendants. Dkt. No. 16 ("Amended Complaint"). Based on the filing of the Amended Complaint, Defendants filed an application to withdraw their first Motion to dismiss, which the Court granted. *See* Dkt. No. 14. Presently before the Court is: (1) Defendant's renewed Motion to dismiss the Amended Complaint pursuant to Rule 12 of the Federal Rules

of Civil Procedure; and (2) Plaintiff's Cross–Motion for leave to file a second amended complaint. Dkt. Nos. 17 ("Motion"), 20 ("CrossMotion").

**II. BACKGROUND**

The following facts are taken from Plaintiff's Amended Complaint and, for purposes of the instant motion, are assumed to be true.

Plaintiff suffers from peroneal muscular atrophy, type 1 A, which is a physical condition that negatively affects her ability to walk and perform other motor skills. Am. Compl. at 2.[1] Plaintiff is a New York State employee and works in the Expenditure/Debt Unit of the Division of the Budget. *Id.* ¶ 1. In April 2007, Plaintiff's prior supervisor, James Kiyonaga, began excluding Plaintiff from almost all meetings, trainings, and seminars. *Id.* He also made belittling remarks about Plaintiff's hearing. *Id.* On April 2, 2007, Plaintiff observed Kiyonaga mocking the way she walked. *Id.* Thereafter, Plaintiff requested a new supervisor, and Defendant investigated the matter. *Id.* After the investigation, Kiyonaga remained Plaintiff's supervisor, and Plaintiff claims that the discriminatory behaviors and exclusionary practices escalated in retaliation to that internal investigation. *Id.*

In June 2008, Plaintiff again requested a new supervisor. *Id.* ¶ 2. However, Kiyonaga remained Plaintiff's supervisor until he left the Division of the Budget on September 17, 2008. *Id.* At that time, Defendant Thomas Wood became Plaintiff's supervisor. *Id.*

In October 2008, Plaintiff became aware that she had been passed over for a promotion. *Id.* ¶ 3. Another employee with a lower score on the civil service exam received the promotion. *Id.* Plaintiff requested a meeting with Wood. *Id.* At the meeting, held on October 29, 2008, Wood told Plaintiff that she did not receive the promotion because of a performance evaluation previously prepared by Kiyonaga, which stated that Plaintiff was not meeting the performance standards of her level (Grade 18 Budget Examiner), or even that of the lower Grade 14 level. *Id.* This performance review contradicted prior performance reviews completed by Kiyonaga before Plaintiff complained about his discriminatory conduct. *Id.* In July 2009, Plaintiff requested a copy of the negative performance evaluation. *Id.* ¶ 5. She was told that it was

2012 WL 4092856

no longer available. Wood also denied that Kiyonaga influenced the determination concerning the promotion and stated that Plaintiff did not meet the standard for promotion to Grade 23. *Id.* ¶ 5.

**\*2** Plaintiff filed a charge of discrimination with the EEOC on August 20, 2009. *Id.* ¶ 3. On August 31, 2009, Wood advised Plaintiff that he would be providing her with a performance review. *Id.* ¶ 6. Plaintiff received the review, which had some negative components, on September 23, 2009. *Id.* Plaintiff filed a second charge of discrimination with the EEOC on July 20, 2010, alleging that the negative September 23, 2009 performance review was in retaliation for engaging in protected conduct. *Id.* Plaintiff contends that the performance review falsely claimed that Plaintiff lost data and made other improper charges. *Id.* ¶¶ 6–7.

Plaintiff further alleges that Wood "talks down" to her and excludes her from meetings, trainings and projects in which her co-workers are included. *Id.* ¶ 8–9. Plaintiff also claims that Wood repeatedly assigned her tasks that were impossible to complete, gave her unreasonably short deadlines, and assigned her to inappropriate tasks, all in retaliation for her protected conduct. *Id.* ¶¶ 10–13.

On May 13, 2010, Plaintiff was transferred from her position as a Budget Examiner to a Budget Examiner Public Finance position, without her consent or prior knowledge. *Id.* ¶ 14. Because Plaintiff was transferred out of her original position, she lost her "holds" on that position, which are important to secure a job in the event of layoffs. *Id.* After learning from the Civil Service department that this action was impermissible, Plaintiff complained to the human resources department and was transferred back into her original title. *Id.*

Based on the foregoing, Plaintiff commenced the instant action pursuant to the Americans with Disabilities Act claiming that she was discriminated against on account of her disability (failure to promote), excluded from work activities on account of her disability, and retaliated against for engaging in protected activity. Plaintiff seeks injunctive relief directing Defendants to cease all discriminatory and retaliatory behavior; include her in work projects, meetings, and training; to grant her a Grade 23 promotion; and to remove the negative performance appraisals from her record. *Id.* at 18.

## III. LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept all [factual] allegations as true and draw all inferences in the light most favorable to" the non-moving party. *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting Bell *Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly,* 550 U.S. at 570). Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV. DISCUSSION

### A. Eleventh Amendment

**\*3** Defendant New York State Division of Budget moves to dismiss on the ground it is entitled to Eleventh Amendment immunity. It is well established that governmental entities that are considered "arms of the state" also receive Eleventh Amendment immunity. *Clissuras v. City University of New York,* 359 F.3d 79, 81 (2d. Cir.2004). Defendant correctly asserts that the Division of the Budget is a state agency entitled to Eleventh Amendment immunity. *See Bruns v. Doerr,* 13 F. App'x 29, 30 (2d Cir.2001) (affirming district court's dismissal of claims against various State agencies, including the Division of Budget, pursuant to the Eleventh Amendment); *Chafetz v. Roosevelt Island Operating Corp.,* No. 97 Civ. 0761, 2000 WL 1277337, at \*3 (S.D.N.Y.2000) (stating that the New York State Director of Budget is appointed by the Governor and that the Division of Budget is an arm of the state). Although Plaintiff seeks prospective injunctive relief, such relief is only available in suits against individual state officers acting in their official capacities. *Deposit Ins. Agency v. Superintendent of Banks of N.Y.,* 482 F.3d 612, 617 (2d Cir.2007). Because the Amended Complaint names only the Division of the Budget as a Defendant, the Court lacks subject matter

2012 WL 4092856

jurisdiction pursuant to the Eleventh Amendment. *See Davis v. Dept. of Corrections,* No. 2:11–cv–164, 2012 WL 1269123, at *2–3 (D.Vt. Apr.16, 2012) (collecting cases) (retaliation claims against the state under Titles I and V of the ADA are barred by the Eleventh Amendment); *Warren v. Goord,* No. 99–cv–296F, 2006 WL 1582385, at *17 (W.D.N.Y. May 26, 2006) (retaliation claims against the state under Title V of the ADA are barred by the Eleventh Amendment); *Briggs v. New York State Dept. of Transp.,* 233 F.Supp.2d 367, 373 (N.D.N.Y.2002); *Salvardor v. Lake George Park Com'n,* No. 1:98–cv–1987, 2001 WL 1574929, at *2–3 (N.D.N.Y. March 28, 2001). Accordingly, the Amended Complaint must be dismissed.

**B. Cross–Motion to Amend**

Having determined that Plaintiff's claims as set forth in the Amended Complaint are barred by the Eleventh Amendment, the Court now turns to Plaintiff's Cross–Motion for leave to file a second amended complaint. In her proposed amendment, Plaintiff seeks to add Thomas Wood and Robert Megna, in their official capacities, as defendants. The purpose of this is to enable her to take advantage of the exception to Eleventh Amendment immunity carved out in *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Defendant opposes the Cross–Motion on the grounds that allowing the amendment would be futile and that Plaintiff has unduly delayed seeking to amend her complaint.

*1. Plaintiff's Claim for Disability Discrimination Under the ADA*

Defendant claims that allowing Plaintiff to amend her complaint would be futile because she has failed to plausibly allege that she was subjected to an adverse employment action or that any action was on account of her disability. Plaintiff responds that she was denied a promotion and denied training and other opportunities that would permit her to advance on account of her disability.

**\*4** To establish a discrimination claim under the ADA, Plaintiff must prove the following elements: (1) Defendant is subject to the ADA; (2) Plaintiff was a person with a disability within the meaning of the ADA; (3) Plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) Plaintiff suffered adverse employment action because

of her disability. *Shannon v. N. Y. City Transit Auth.,* 332 F.3d 95, 99 (2d Cir.2003).

Defendants do not argue that they are not subject to the ADA, that Plaintiff is not disabled within the meaning of the ADA, or that Plaintiff was not otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation. Rather, Defendants argue that: (1) Plaintiff did not suffer adverse employment action; and (2) there is no evidence of discrimination on account of Plaintiff's disability. The Court will address each of these issues.

*a. Adverse Employment Action*

"An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Demoret v. Zegarelli,* 451 F.3d 140, 151 (2d Cir.2006) (internal quotation marks and citation omitted). "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Mathirampuzha v. Potter,* 548 F.3d 70, 78 (2d Cir.2008) (citation omitted). "[A] negative job evaluation may constitute [an] adverse employment action in certain circumstances." *Sanders v. New York City Human Res. Admin.,* 361 F.3d 749, 756 (2d Cir.2004) (citation omitted). "To constitute an adverse employment action, negative evaluations must affect an ultimate employment decision, including decisions concerning promotion, wages or termination." *Hicks v. Baines,* 593 F.3d 159, 170 (2d Cir.2010) (internal quotation marks and citation omitted); *see also Sotomayor v. City of New York,* No. 10–CV–3411, 2012 WL 1889780, at *21 (E.D.N.Y.2012) (and cases cited therein).

Plaintiff claims that Kiyonaga gave her a negative performance evaluation prior to his departure from the Division of Budget in September 2008 and that this evaluation was a factor in her not receiving a promotion that same year. Although this evaluation may constitute an adverse employment action, it is not properly before the Court because it is a discrete incident that occurred more than 300 days prior to the filing of the charge of discrimination. [2] 42 U.S.C. § 2000e–5(e)(1); *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 108–09, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (a claim not filed with the EEOC within 300 days of the employment practice is time barred).

However, the denial of the promotion itself also qualifies as a discrete adverse employment action. In her proposed second amended complaint, Plaintiff claims that she first learned that she would not receive the promotion on October 29, 2008, [3] which is fewer than 300 days before Plaintiff filed her charge of discrimination on August 20, 2009. Accordingly, taking Plaintiff's allegations as true for purposes of deciding these Motions, any ADA claims relating to this promotion denial appears to have been timely raised.

**\*5** Plaintiff also claims that she received a negative performance evaluation in July 2009. There are no allegations in the proposed second amended complaint that this performance evaluation was accompanied by any other consequences, such as the denial of a promotion, decreased wages, etc. Accordingly, this negative performance evaluation does not constitute an adverse employment action.

Plaintiff further claims that she was excluded from various meetings, projects and trainings, and was therefore not afforded "the same opportunities ... for promotion and advancement that my coworkers enjoy." Plaintiff also alleges that she was improperly transferred into a different title, thereby causing her to lose "holds" on her prior position. Upon Plaintiff's complaining of the situation, she was "put ... back into [her] original title." In deference to Plaintiff's *pro se* status, the Court finds that these allegations—though inartfully pleaded—adequately describe materially adverse employment actions for this stage of the proceeding. *See Galabya v. New York City Board of Educ.*, 202 F.3d 636, 640 (2d Cir.2000) ("A materially adverse change might be indicated by ... a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation.").

### b. Evidence of Discrimination

To establish the fourth element of her claim, Plaintiff must demonstrate that her disability was a motivating factor in Defendant's decision not to promote her; to exclude her from the various meetings, projects, and trainings; or to transfer her to a different title. In her proposed second amended complaint, Plaintiff alleges that, in April 2007, Kiyonaga was "doing a mocking imitation of the way [Plaintiff] walked"; that Thomas Wood "always 'talked down' to [Plaintiff] as if [she] lack[s] some intellectual

ability"; and that she has been excluded from some "meetings, training, and projects that [her] coworkers have been included on."

While these allegations may be consistent with a defendant's liability, they stop short of the line between possibility and plausibility of entitlement to relief because there are insufficient plausible factual allegations to show that any adverse employment actions were on account of Plaintiff's disability. Even assuming Kiyonaga once mocked the way Plaintiff walked, there are insufficient plausible factual allegations suggesting that he gave Plaintiff a negative performance evaluation or otherwise influenced the decision not to promote Plaintiff on account of her disability. To the contrary, the allegations in the proposed amended pleading are more suggestive of retaliation, if anything; namely, that Kiyonaga engaged in a course of conduct against Plaintiff because she requested a new supervisor. Similarly, there are insufficient allegations that Wood acted on account of Plaintiff's disability. Plaintiff's contention that Wood talked down to her and did so "based on preconceived notions of [her] as a disabled individual" is conclusory and insufficient to demonstrate the necessary causal relationship between any adverse employment actions and Plaintiff's disability. There are insufficient other factors attributing any discriminatory motive to Wood. Accordingly, allowing Plaintiff to amend her complaint to assert claims of disability discrimination under the ADA would be futile.

### 2. Plaintiff's Claim for Retaliation Under the ADA

**\*6** Defendants oppose Plaintiff's motion to amend her complaint to include a claim of retaliation on the grounds that Plaintiff did not suffer any adverse employment action. For the reasons previously stated, the failure to promote Plaintiff, as well as the course of action in excluding Plaintiff from various meetings, projects and trainings and in changing Plaintiff's title, can be found to be adverse employment actions. [4] Accordingly, the Court finds that allowing Plaintiff to amend her complaint to assert retaliation claims under the ADA would not be futile.

### 3. Whether Plaintiff Acted with Undue Delay

Lastly, Defendants argue that the Cross–Motion for leave to file an amended complaint should be denied because Plaintiff acted with undue delay. The Court

disagrees. Although approximately nine months elapsed between the time this action was commenced and the time that Plaintiff filed the instant Cross–Motion for leave to amend, there is no indication she has been dilatory. The Court has no reason to believe that Plaintiff, who is proceeding *pro se,* has not attempted to further this litigation to the best of her ability. The Motions to amend in this case have been filed in response to Defendants' Motions to dismiss and in an effort to address Eleventh Amendment immunity. Significantly, the Motions to amend have served to do little more than change the official caption of the case to take advantage of the *Ex Parte Young* exception to the Eleventh Amendment. Plaintiff has not introduced significantly different factual allegations or sought different relief. Defendants articulate no prejudice that would result from permitting the amendment. Accordingly, the Court finds that any delay is an insufficient basis upon which to deny the motion for leave to file a second amended complaint.

### 4. Case or Controversy

The disposition of the instant motions does, however, cause a concern as to whether the court has subject matter jurisdiction. The Court has a continuing obligation to ensure it has subject matter jurisdiction. A federal court may only exercise jurisdiction over an actual injury traceable to the defendant and *likely to be redressed* by a favorable judicial decision. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). Article III of the Constitution confines courts to "resolve real and substantial controversies *admitting of specific relief* through a decree of a conclusive character." *Id.* (internal quotations, citation and alteration omitted) (emphasis added).

Here, Plaintiff is not seeking monetary damages in her proposed second amended complaint (indeed, they are unavailable because of the Eleventh Amendment). *See* Dkt. No. 20–2. Rather, Plaintiff seeks equitable relief directing Defendants "to instruct [appropriate] staff to remove the performance reviews done by Thomas Wood which contain false statements and to granting the Grade 23." *Id.* at 21. The Court has found that the performance reviews, standing alone, did not constitute adverse employment actions. Accordingly, there is no basis for directing the removal of the performance reviews. [5]

**\*7** Plaintiff also seeks an order requiring "Thomas Wood ... to cease all discriminatory/retaliatory behavior, including exclusion from work projects, meetings, and job specific trainings .... [and an order] requesting Robert Megna to prohibit any further discriminatory/retaliatory practices...." *Id.* This relief amounts to little more than an "obey the law" injunction. "Obey the law" injunctions are vague, do not require the defendants to do anything more than that already imposed by law, subject the defendants to contempt rather than statutorily prescribed sanctions, and are not readily capable of enforcement. As such, these injunctions are not favored and would not be warranted here. *N.L.R.B. v. Express Pub. Co.,* 312 U.S. 426, 61 S.Ct. 693, 699–700, 85 L.Ed. 930 (1941); *see also New York v. Shinnecock Indian Nation,* 560 F.Supp.2d 186, 189 (E.D.N.Y.2008). It, therefore, appears that there is no relief available to Plaintiff, even if Defendant is found to have retaliated against her in violation of the ADA. Accordingly, the parties are directed to show cause within thirty days of the date of this Decision and Order as to whether this case should be dismissed for lack of subject matter jurisdiction.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED,** that Defendant's Motion (Dkt. No. 17) to dismiss Plaintiff's Amended Complaint is **GRANTED;** and it is further

**ORDERED,** that the Court **RESERVES DECISION** on Plaintiff's Cross–Motion for leave to file a second amended complaint (Dkt. No. 20) pending the parties' submissions on the issue of subject matter jurisdiction; and it is further

**ORDERED,** that any further briefing on the issue of subject matter jurisdiction, from both parties, be filed within thirty (30) days of the date of this Decision and Order.

**IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2012 WL 4092856

2012 WL 4092856

Footnotes

1 Citations to the Amended Complaint are either to the electronic page number (pages 1–3) or to the paragraph number (pages 4–18).

2 Plaintiff filed her charge of discrimination on August 20, 2009. Three hundred days prior to August 20, 2009 is October 24, 2008. The proposed amended complaint alleges that Kiyonaga left the Division of the Budget on September 17, 2008 and, therefore, necessarily completed the performance review on or before September 17, 2008. This is more than 300 days prior to the filing of the complaint with the EEOC.

3 It is not clear on from the filings on what date this promotion decision was actually made. Accordingly, the Court looks only to the October 29, 2008 date for purposes of deciding these Motions.

4 Defendants read the proposed second amended complaint to be alleging retaliation for filing of the EEOC complaints. A fair reading of the proposed amended complaint, however, also alleges that Defendants retaliated against Plaintiff for complaining to the administrative/HR unit about Kiyonaga's behavior. This may be found to be protected activity.

5 It is unclear to the Court as to whether Plaintiff's reference to Grade 23 is related to her requested removal of the performance reviews, or whether she is requesting some other form of relief.

---

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 423039
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Philip SMITH, Plaintiff,

v.

NEW YORK CITY POLICE DEPARTMENT, P.O.
Manuel Cordova, Sgt. Anibal Amaya, Det. Forte, Det.
Henry, Det. Gill, Parole Officer Henry, Defendants.

No. 06 Civ. 15436(JSR)(KNF).
|
Feb. 4, 2010.

### REPORT AND RECOMMENDATION

KEVIN NATHANIEL FOX, United States Magistrate
Judge.

**\*1** TO THE HONORABLE JED S. RAKOFF,
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

Philip Smith ("Smith"), proceeding *pro se,* commenced
this action, pursuant to 42 U.S.C. § 1983, alleging the
New York City Police Department ("NYPD"), Police
Officer Manuel Cordova ("Cordova"), Detective Forte
("Forte") and Detective Gill ("Gill"), [1] violated his
constitutional rights by shooting Smith in his back,
while he was surrendering to "officers." As a result
of being shot, Smith underwent kidney-removal surgery
and reconstructive surgery to his stomach and intestines.
The plaintiff asserts claims for excessive force, reckless
endangerment, police brutality and attempted murder,
for which he seeks monetary relief. Before the Court
is the defendants' motion for summary judgment, made
pursuant to Fed.R.Civ.P. 56. The plaintiff opposes the
motion.

### II. BACKGROUND

The following facts are undisputed:

On December 17, 2003, Smith was intoxicated and
possessed a gun. Shortly before 7:00 p.m., outside a
building located at 3784 10th Avenue, in New York
County, Smith took "D.C." hostage, at gunpoint, and told
D.C. to take him to 213 Nagle Avenue, apartment 10G,
where the plaintiff believed money and drugs were located,
which he intended to take. Once they arrived at the Nagle
Avenue location, Smith instructed D.C., at gunpoint, to
knock on the door to apartment 10G. When the door
opened, the two entered the apartment. Upon entering,
the plaintiff forced the six occupants, at gunpoint, to strip
naked. Some of the occupants escaped the apartment, at
some point, causing the plaintiff "to yell that he would
shoot somebody if they did not ... return."

Smith searched for money and drugs. As he did so, Smith
heard police sirens outside the building. Shortly thereafter,
Smith heard police "walkie-talkies" in the hallway outside
the apartment, and noticed the door to apartment 10G
opening. The plaintiff pointed his gun toward the door,
and realized that the individual who had opened the
door-and at whom he was pointing his gunwas a police
officer. Cordova and Amaya, who were outside apartment
10G, observed Smith holding a gun, and retreated from
the door. Cordova and Amaya shouted commands at
the plaintiff, though it is disputed whether they told the
plaintiff to "drop his gun," or "put his hands on the wall."
All parties contend that the "[p]laintiff claims that he 'put
[his] hands on the wall' with the gun still in his hand," and
Cordova fired his gun at the plaintiff. The parties agree
that Forte and Gill were not involved personally in the
shooting.

The defendants dispute the plaintiff's claims that: (1)
"Plaintiff came out of the apartment, and showed
Sergeant Amaya that he had a gun by holding it out by
the barrel to clearly demonstrate that his hand wasn't on
the trigger"; (2) the plaintiff informed Amaya he had a
gun, and Amaya responded, "I know, just come out and
put your hands on the wall"; (3) Cordova "began shouting
commands but does not remember exactly what those
commands were," and the plaintiff was "confused" and
"followed the orders of Sergeant Amaya and put his hands
on the wall thinking that he would be safe"; (4) when

2010 WL 423039

Smith put his hands on the wall to surrender, he held his gun so that it "was not pointed in the direction of the officers'; and (5) Cordova shot Smith "[w]hile plaintiff's back was turned and his hands [were] on the wall." The plaintiff disputes the defendants' claims that: (a) "Officer Cordova and Sergeant Amaya repeatedly ordered [the plaintiff], in a loud voice, ... to drop the gun"; (b) in response to Cordova's and Amaya's orders, the plaintiff said nothing and did not drop his gun; and (c) at the time he fired one round in Smith's direction, Cordova believed his life was in immediate danger.

**\*2** The plaintiff contends he was: (1) transported to Presbyterian Hospital, after being shot in his back; and (2) hospitalized, through February 6, 2004. During this time, the plaintiff alleges he underwent numerous surgeries to: (a) "stop[ ][his] pancreas from leaking and bleeding[; (b) ] remov[e] his left kidney[;] and [ (c) ] remov[e] ... three and a-half to four and a-half feet of his intestines." The defendants do not discuss the extent of the plaintiff's injury, if any, in the papers submitted in support of their motion.

### III. DISCUSSION

*Standard of Review for Summary Judgment*
Summary judgment may be granted in favor of the moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(c)(2); *see also D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998), *cert. denied,* 524 U.S. 911, 118 S.Ct. 2075 (1998); *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006). When considering a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. America Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 [1986] ).

The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law....' An issue

of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 212 (2d Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 [1986] ). Once the moving party has satisfied its burden, the non-moving party must come forward with "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon the allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247-48, 106 S.Ct. at 2510 (emphasis omitted). The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Id.* at 256, 106 S.Ct. at 2514. Summary judgment should only be granted if no rational jury could find in favor of the non-moving party. *See Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 721 (2d Cir.1994).

**\*3** The defendants contend they are entitled to summary judgment because: (1) Smith cannot show that excessive force was used against him; (2) the plaintiff cannot assert a claim for excessive force against Forte and Gill, because he has not shown these defendants were involved personally in using force against him; (3) the plaintiff cannot prosecute criminal offenses, which are asserted in his remaining claims; (4) Cordova is shielded from liability to Smith, under the doctrine of qualified immunity; and (5) NYPD is not a suable entity.

*Excessive Force*[2]
The Fourth Amendment proscribes the use of excessive force by police officers. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871 (1989) (internal quotation marks and citations omitted); *see also Phelps v. Szubinski,* 577 F.Supp.2d 650, 661 (E.D.N.Y.2008) (quoting *Graham* ). Application of the "reasonableness"

standard in this context "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U .S. at 396, 109 S.Ct. at 1872; *see also Amnesty America v. Town of West Hartford,* 361 F.3d 113, 123 (2d Cir.2004) (quoting *Graham* ). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Phelps,* 577 F.Supp.2d at 661 (quoting *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872).

The facts and circumstances surrounding the plaintiff's December 17, 2003 encounter with the officer defendants are disputed. Smith contends that, once he realized police officers were attempting to enter apartment 10G, at 213 Nagle Avenue, he followed Amaya's commands, put his hands above his head and positioned his body so that he faced a wall with his back to the police officers. Smith admits he was still holding a gun, when he put his hands above his head; however, he recalls that the gun "was not pointed in the direction of the officers as his back was turned to them," and that he held his gun "out by the barrel to clearly demonstrate that his hand wasn't on the trigger."

The defendants contend Smith posed a threat to their safety. According to the defendants, when Cordova and Amaya opened the door to apartment 10G initially, and saw the plaintiff pointing a gun at them, they felt their lives were in "immediate danger"; therefore, they retreated. Cordova reapproached the door to apartment 10G, the door to the apartment opened, Smith was observed holding a firearm in his right hand, and Cordova and Amaya directed Smith to drop his weapon. The defendants allege that Smith "said nothing and did not drop the gun," and Cordova, "believing his life was in immediate danger, fired one round in Plaintiff's direction." The defendants do not make any allegations about how Smith held his gun, or in what direction it was pointed at the time Cordova fired his gun at Smith.

**\*4** In order to determine whether the force used to effect an arrest was reasonable and, thus, not a violation of the Fourth Amendment, a "factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." Inasmuch as the inquiry is fact-specific, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America,* 361 F.3d at 123.

As noted above, when a summary judgment motion is being considered, a court is required to view the evidence in the light most favorable to the party against whom summary judgment is sought. Moreover, the court must draw all reasonable inferences in the non-moving party's favor. Applying that rule here, the Court finds that Smith's allegations are sufficient to create issues of fact respecting the objective reasonableness of the degree of force used by Cordova, on December 17, 2003. The plaintiff's excessive-force claim requires credibility determinations to be made. Such determinations are typically the province of a jury, *see Azrielli v. Cohen Law Offices,* 21 F.3d 512, 517 (2d Cir.1994); this militates against granting summary judgment to the defendants on the plaintiff's excessive-force claim. *See Amnesty,* 361 F.3d at 124; *Breen v. Garrison,* 169 F.3d 152, 153 (2d Cir.1999).

The Court is mindful that Cordova has asserted the affirmative defense of qualified immunity, with respect to Smith's excessive force claim. As explained above, whether the force used in effecting an arrest is excessive, turns on its reasonableness. Therefore, "[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999); *see Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998).

*Personal Involvement*

"In this Circuit, personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977) (citing *Mukmuk v. Commissioner of Dept. of Correctional Services,* 529 F.2d 272, 275 [2d Cir.1976] ). A § 1983 complaint must contain allegations that a defendant is "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (citing *Black v. United States,* 534 F.2d 524, 527-528 [2d Cir.1976] ); *see also, Lee v. State of New York Dept. of Correctional Services,* No. 97 Civ. 7112, 1999 WL 673339,

at *15 (S.D.N.Y. Aug. 30, 1999). The defendants contend Smith has not asserted an excessive-force claim against Forte and Gill, owing to his failure to show that these defendants were involved personally in using force against him.

**\*5** The plaintiff has not made any factual allegations concerning the personal involvement of Forte and Gill, in the use of force against him, on December 17, 2003. Moreover, Smith concedes that these defendants were not involved personally in the shooting. Since personal involvement in the alleged deprivation of rights is a prerequisite to an award of damages under § 1983, granting the defendants' motion for summary judgment, as it relates to these two defendants, on the issue of excessive force, is warranted.

*Plaintiff's Reckless Endangerment and Attempted Murder Claims*
In addition to making an excessive-force claim, the plaintiff has asserted claims for reckless endangerment and attempted murder, which are criminal offenses. *See* New York Penal Law §§ 120.20, 120.25, 125.25, 110.00. However, an individual cannot bring a private cause of action for alleged criminal violations. *See, e.g .,* *Rzayeva v. United States,* 492 F.Supp.2d 60, 84 (D.Conn.2007) (finding that an individual could not raise claims for murder and conspiracy to commit murder, because "private citizens do not have a private cause of action for criminal violations"). Therefore, the defendants are entitled to judgment, as a matter of law, on these claims.

*NYPD's Amenability to Suit*
In its most pertinent part, the New York City Charter provides that: "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." New York City Charter Ch. 17 § 396.

Defendant NYPD, is an agency of the city of New York. "Governmental agencies have only those powers which are conferred expressly or by necessary implication; power is not to be inferred, and the principle of strict construction should be applied in interpreting statutory grants of power." *Yonkers Comm'n on Human Rights v. City of Yonkers,* 654 F.Supp. 544, 551 (S.D.N.Y.1987) (quotations and citations omitted). Accordingly, perforce

of the above-referenced provision of the New York City Charter, NYPD, an agency of the city of New York, lacks the capacity to be sued. *See* *5 Borough Pawn, LLC v. City of New York,* 640 F.Supp.2d 268, 284 (S.D.N.Y.2009). Therefore, Smith may not maintain this action against NYPD.

## IV. RECOMMENDATION

For the reasons set forth above, the defendants' motion for summary judgment, Docket Entry No. 39, to the extent it pertains to NYPD, the plaintiff's reckless endangerment and attempted murder claims, as well as the claims asserted against Forte and Gill, should be granted. However, the motion should be denied, with respect to the excessive-force claim the plaintiff asserted against Cordova.

\* \* \*

N.B. All unpublished decisions to which citation has been made are being provided to the defendant with a copy of this order.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RERESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* *Thomas v. Arn,* 474 U.S. 140 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59

2010 WL 423039

(2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38
(2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 423039

Footnotes

1    Smith also named as defendants Sergeant Anibal Amaya ("Amaya") and Detective Henry; however, in October 2008, an
     order was entered dismissing the complaint as to these defendants.

2    While the plaintiff raises police brutality as a separate claim, the facts he alleges for that claim mirror those alleged for his
     excessive-force claim. Thus, the two claims are, essentially, the same. Therefore, it is reasonable to treat the plaintiff's
     police brutality claim as "subsumed within his [excessive-force claim]." *Hotaling v. LaPlante,* 167 F.Supp.2d 517, 523-24
     (N.D.N.Y.2001).

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 403133
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Michael TOLIVER, Plaintiff,

v.

Brian FISCHER, et al., Defendants.

No. 9:12–CV–00077 (MAD/ATB).
|
Signed Jan. 29, 2015.

**Attorneys and Law Firms**

Michael Toliver Wallkill, NY, Plaintiff pro se.

Office of the New York, State Attorney General, Cathy Y. Sheehan, AAG Albany, NY, Attorneys for Defendants (except Defendant North).

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**I. INTRODUCTION**

 *1  On January 17, 2012, Plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that twenty employees of the New York State Department of Corrections and Community Supervision ("DOCCS") violated his constitutional rights during his confinement at the Shawangunk Correctional Facility ("Shawangunk"). Dkt. No. 1. By Decision and Order dated May 3, 2012, this Court dismissed, *sua sponte,* Defendants Schneiderman, Bellamy, and Prack from the action because the complaint did not state facts suggesting their personal involvement in the alleged violations of Plaintiff's constitutional rights. Dkt. No. 9 at 8–10.

On June 28, 2012, Plaintiff filed an amended complaint (Dkt. No. 27), which, by Decision and Order dated December 6, 2012 (Dkt. No. 85), this Court accepted for filing against seventeen of the original Defendants, as well as Correction Officer ("C.O.") North, who was not named in the original complaint. Liberally construed, the surviving claims in Plaintiff's amended complaint include (1) a First Amendment claim, based on Defendants'

alleged filing of false misbehavior reports against Plaintiff, in retaliation for his pursuit of complaints, grievances, appeals, and Article 78 actions; (2) an equal protection claim based on alleged discrimination against Plaintiff because of his race, disability, and/or sexual orientation; (3) a conspiracy claim related to the retaliation and discrimination claims; (4) a Fourteenth Amendment claim alleging denial of procedural due process in connection with various disciplinary proceedings; and (5) an Eighth Amendment claim for failure to provide adequate medical care. Dkt. No. 27 at 8–9, 35. Plaintiff seeks both monetary and injunctive relief. Dkt. No. 27 at 14.

Defendants filed a motion, pursuant to Fed.R.Civ.P. 12(b)(6), seeking dismissal of Plaintiff's amended complaint in its entirety, on behalf of all but one of the remaining Defendants. *See* Dkt. No. 134. [1] Plaintiff responded to the motion to dismiss, and defense counsel chose not to file a reply. Dkt. No. 145; Dkt. No. 150. On November 17, 2014, Magistrate Judge Baxter issued a Report–Recommendation recommending that the Court grant-in-part and deny-in-part Defendants' motion to dismiss. Dkt. No. 155.

Currently before the Court are Plaintiff's objections to Magistrate Judge Baxter's Report–Recommendation. Dkt. No. 159. Also before the Court are Plaintiff's requests for a temporary restraining order, requests for sanctions, and an order against further retaliation resulting from the current lawsuit. Dkt. Nos. 161, 163, 167 & 168. Defendants have opposed Plaintiff's motions. Dkt. No. 166.

**II. BACKGROUND**

**A. Facts and Contentions**
For an overview of the facts and contentions, refer to Magistrate Judge Baxter's Report–Recommendation. *See* Dkt. No. 155 at 3–5.

**B. Magistrate Judge Baxter's November 17, 2014 Report–Recommendation**
In his Report–Recommendation, Magistrate Judge Baxter recommended that the Court should grant Defendants' motion to dismiss in regard to Defendants Fischer, Maly, and LeClaire, and as to Plaintiff's conspiracy claim. *See* Dkt. No. 155. Magistrate Judge

Baxter further recommended that the remainder of the motion to dismiss be denied. *See id.*

**\*2** Specifically, Magistrate Judge Baxter recommended that Defendants Fischer, LeClaire, and Maly should be dismissed "because [P]laintiff has not adequately alleged that they were personally involved in any constitutional violations. However, the allegations of personal involvement with respect to [D]efendants Smith and Pingott are adequate ...." Dkt. No. 155 at 6–7. Next, Magistrate Judge Baxter recommends that the retaliation charge involving Defendant Budziszewski stand, because "[t]he allegations ... state a plausible claim of retaliation that cannot be dismissed under Rule 12(b)(6)." *Id.* at 18. The Report–Recommendation did not address the retaliation charge against Defendant North, because "[D]efendant North has not appeared in this case and is not a party to the pending Rule 12(b)(6) motions ...." *Id.* at 18 n. 17.

Additionally, Magistrate Judge Baxter found that Plaintiff's equal protection claim is adequate to survive a Rule 12(b)(6) motion because Plaintiff's allegations "are sufficient to state a 'class of one' equal protection claim, and perhaps a discrimination claim based on race and/or sexual orientation." *Id.* at 22. Magistrate Judge Baxter recommended that the conspiracy claim be dismissed under the "intracorporate conspiracy doctrine," because conclusory allegations by Plaintiff of Defendants' " 'personal' agenda" are not sufficient to plausibly suggest that Defendants acted outside the scope of their employment. *Id.* at 25.

Due to Plaintiff's allegations, including that the hearing officer said to Plaintiff "[e]very time you get a ticket you will be found guilty regardless.... I ain't fair and impartial[,]" Magistrate Judge Baxter found Plaintiff has stated a plausible denial of procedural due process claim. *Id.* at 27; Dkt. No. 27 at 57. Finally, Magistrate Judge Baxter recommended that the Court deny the motion to dismiss in regard to Plaintiff's deliberate indifference claim because, at this stage, Plaintiff's allegation "that he suffered extreme pain for approximately 30 minutes before the identified defendants allowed him to get medical attention[,]" is sufficient to survive the motion. Dkt. No. 155 at 31.

**C. Plaintiff's objections**

Plaintiff first objects to the dismissal of Defendant Maly from the lawsuit. Dkt. No. 159 at 2. He "seeks to supplement the complaint to detail [additional] constitutional deprivations." *Id.* According to the Report–Recommendation, "[t]he only specific allegation in the amended complaint regarding [D]efendant Maly is that, as Acting Superintendent, he denied one of [P]laintiff's grievances...." *Id.* at 9. Plaintiff wishes to add that "Defendant [Maly] sent plaintiff to 'S.H.U.' for *90 days* in direct retaliation to this lawsuit .... " Dkt. No. 159 at 2.

Plaintiff next objects to the dismissal of Defendant Fischer from the lawsuit. *Id.* at 3. Plaintiff has not introduced any new arguments and simply repeats arguments Magistrate Judge Baxter's Report–Recommendation has already addressed. *Id.* This includes "allowing a pattern o[f] retaliation and discrimination by ignoring plaintiff's various grievances and Article 78 proceedings." *Id.*

**\*3** Third, Plaintiff objects to the dismissal of Defendant LeClaire from the lawsuit. Dkt. No. 159 at 4. Plaintiff alleges Defendant LeClaire condoned the retaliatory conduct of officers under his command, and that he "knew or should have known of the continued constitutional violations...." *Id.*

Finally, Plaintiff objects to the dismissal of the conspiracy claim, and alleges that Defendants "had a meeting of the minds in their individual capacities for a common goal." *Id.* at 5. Plaintiff further claims that "Defendants ... conspire[d] with each other to hurt plaintiff, to keeplock plaintiff, to place plaintiff in SHU, [and] to take all privileges away from plaintiff ...." *Id.*

**D. Plaintiff's December 22, 2014, and December 29, 2014 requests for preliminary injunctive relief and sanctions**

Plaintiff requests a preliminary injunction to place him in protective custody, and he requests sanctions against Defendants for each day he remains outside protective custody. Dkt. No. 161 at 3–4. Plaintiff claims he "is in danger [and he has] been forced to live in general population where [his] enemies are." *Id.* at 3. He also claims that Defendants refused to place Plaintiff back in protective custody so that he "can get physically assaulted." *Id.* at 2. Finally, Plaintiff seeks an order against further retaliation resulting from this lawsuit. *Id.* at 4.

In a submission filed seven days later, Plaintiff again requests sanctions, a temporary restraining order, and an order against further retaliation due to the current proceedings. Dkt. No. 163 at 1. Plaintiff states that on December 18, 2014, "Defendants Keys, Sarkowicz, Korines, and co-working 'friends' " came to his cell and threatened his life, continued to file false misbehavior reports, and threatened to break his neck due to his participation in a hunger strike. *Id.* at 2. Plaintiff also claims that inmates who remember him from before his placement in protective custody "reminded [him] that 'the first opportunity to get [him] for snitching [he] will be "done off." ' " *Id.* at 3.

Defendants oppose Plaintiff's requests injunctive relief. Specifically, Defendants argue that "Plaintiff's request should be denied because the requested relief does not relate to any of the allegations of the underlying amended complainant or the proposed second amended complaint." Dkt. No. 166 at 1. Defendants further argue that Plaintiff's allegations are entirely speculative, and that these complaints "should be addressed through administrative channels at Shawangunk Correctional Facility ...." *Id.* at 2.

### E. Plaintiff's January 5 and 11, 2015 requests for sanctions and injunctive relief

In a letter request dated January 5, 2015, Plaintiff requests "additional sanctions for "further" retaliation ... as [he] was thrown out of [his] wheelchair[,] punched in the face and slapped and kicked by C.O. Stokes on December 22, 2014." Dkt. No. 167 at 2. Plaintiff also requests that the Court order his transfer from his current facility due to the alleged assault by C.O. Stokes, who is not a Defendant in this matter. *Id.* at 3. Plaintiff notes that Defendant Gardner "has recently issued a disposition placing [him] in keeplock with 30 days loss of all privileg[es] without" the required procedural due process. *Id.* at 4. Finally, Plaintiff alleges that the prison medical personnel refuse to examine him, and he "is in pain-sick call is being denied to [him] by medical staff when [they] make their tours." *Id.* at 5.

**\*4** In a letter dated January 11, 2015, Plaintiff cites a Supreme Court case for the proposition that an inmate "may seek injunctive relief based on the claim that defendant corrections officials are knowingly and unreasonably disregarding an objectively intolerable risk of harm and will continue absent a court order directing otherwise." Dkt. No. 168 at 8. Finally, Plaintiff objects to

his current placement in the general prison population due to his status as "victim prone" of being victimized by other inmates, as defined under 7 N.Y.C.R.R. § 1701.5(c)(4)(i).

### III. DISCUSSION

#### A. Standard of Review

##### 1. Review of a report-recommendation

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a *"de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (2006). When a party, however, files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir,* No. 9:08–CV–322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2006).

A litigant's failure to file objections to a magistrate judge's report-recommendation, even when that litigant is proceeding *pro se,* waives any challenge to the report on appeal. *See Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A pro se litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b) (1) and Rules 72, 6(a) and former 6(e) of the Federal Rules of Civil Procedure).

##### 2. Motion to dismiss standard

A motion to dismiss for failure to state a claim pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure* tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark,* 508 F.3d 106, 111–12 (2d Cir.2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc .,* 282 F.3d 147, 152–53 (2d Cir.2002)).

**\*5** To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed.R.Civ.P. 8(a) (2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting [*Twombly,* 550 U.S.] at 557, 127 S.Ct.1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly,* 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed[,]" *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quotation omitted). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to " 'construe [a complaint]

broadly, and interpret [it] to raise the strongest arguments that [it] suggests.' " *Weixel v. Bd. of Educ.,* 287 F.3d 138, 146 (2d Cir.2002) (quotation omitted); *Lopez v. Jet Blue Airways,* 662 F.3d 593, 596 (2d Cir.2011) (citation omitted).

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it ." *Id.* (citation omitted).

### 3. *42 U.S.C. § 1983*

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode,* 423 U.S. 362, 370–71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin,* 758 F.Supp. 876, 881 (S.D.N.Y.1991) (citing *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481, *reh. denied,* 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980)). As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions. *See id.* (citing *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979)) (other citation omitted).

### B. Plaintiff's motion to amend and supplement the amended complaint

**\*6** On December 18, 2014, the Court received a motion from Plaintiff seeking to supplement the amended complaint, which included the proposed supplemental amended pleading. *See* Dkt. No. 158. The motion seeks to add additional claims and Defendants, several of whom are employed at Upstate Correction Facility. *See* Dkt. No. 158–2.

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 100 of 131
Toliver v. Fischer, Not Reported in F.Supp.3d (2015)
2015 WL 403133

"Federal Rule of Civil Procedure 15(a) provides that any time after a responsive pleading is served a party must seek leave from the court to amend a pleading. Rule 15(a) specifically states that leave shall be freely given when justice so requires." *LaBarbera v. Audax Const. Corp.,* 971 F.Supp.2d 273, 284 (E.D.N.Y.2013) (citing Fed.R.Civ.P. 15(a)). "However, in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court stated that denial of a Rule 15(a) motion may be appropriate in instances of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.' " *Id.* The decision to grant or deny a Rule 15(a) motion to amend is committed to the sound discretion of the district court. *See id.*

"Federal Rule of Civil Procedure 15(d) provides that a party must obtain leave from the court to supplement a pleading setting forth transactions or occurrences or events that have happened since the date of the pleading sought to be supplemented. Rule 15(d) allows a party to supplement the complaint in order to present subsequent material that is related to the claims presented in the original complaint." *LaBarbera,* 971 F.Supp.2d at 284 (citing *Argus, Inc. v. Eastman Kodak Co.,* 552 F.Supp. 589, 602 (S.D.N.Y.1982); 3 Moore's Federal Practice ¶ 15.16[1], at 15176 (2d ed.1982)). Matters stated in a supplemental complaint should have some relation to the claim set forth in the original pleading. *See id.* (citing 3 Moore's Federal Practice ¶ 15.16[3], at 15183 (2d ed.1989)). As with Rule 15(a), the decision to grant or deny a Rule 15(d) motion is within the sound discretion of the district court. *See id.*

In the present matter, the Court finds that Plaintiff should not be permitted to supplement and amend his amended complaint. Plaintiff commenced this action on January 17, 2012, alleging violations that occurred exclusively at Shawangunk C.F. *See* Dkt. No. 1. Then, on June 28, 2012, the Court received Plaintiff's eighty-one (81) page amended complaint. *See* Dkt. No. 27. Thereafter, Plaintiff submitted several additional motions to amend and supplement his complaint. In a Decision and Order dated February 13, 2013, this Court denied the motions on several grounds. *See* Dkt. No. 98. First, the Court noted that the motions failed to comply with Local Rule 7.1(a)

(4) in that it was not a complete, cohesive pleading, but rather a piecemeal compilation of prior submissions. *See id.* at 7–8. The Court found it to be an unreasonable task to ask the Court and Defendants to attempt to interpret and respond to such a pleading. *See id.* Additionally, the Court noted that the proposed amended pleading sought to add claims relating to events that occurred at Upstate C.F. and were unrelated to the claims and Defendants in this action.

**\*7** For many of the same reasons discussed in its February 13, 2013 Decision and Order, the Court finds Plaintiff's motion to amend and supplement his amended complaint must be denied. First, the proposed supplemental amended complaint is not a complete submission. In fact, in a letter dated January 11, 2015, Plaintiff indicates that he "merely submitted the 'supplemental' amended complaint as to be attached" to the amended complaint and admits that he *"did not* submit the *'supplemental amended complaint'* to supercede the ... amended complaint; but, to be an added attachment to the ... amended complaint." Dkt. No. 168 at 2–3 (emphasis in original).

Additionally, permitting supplementation and amendment at this point, nearly three years after Plaintiff commenced this action would be unduly prejudicial and would cause undue delay in the resolution of this action. *See Lopez v. Smiley,* 375 F.Supp.2d 19, 30 (D.Conn.2005). Finally, permitting amendment Plaintiff to amend and supplement to add claims and Defendants entirely unrelated to the claims in this case would be inappropriate. *See Klos v. Haskell,* 835 F.Supp. 710, 715–16 (W.D.N.Y.1993), *aff'd,* 48 F .3d 81 (2d Cir.1995) (denying motion to supplement the complaint to include claims occurring at subsequent correctional facility).

**C. Personal involvement**
" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quotation and other citations omitted). " '[W]hen monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.' " *Id.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.)).

Courts have repeatedly found personal involvement is not established when a supervisory official receives letters regarding a plaintiff's grievances and simply refers that grievance to other personnel for investigation. *See Vega v. Artus,* 610 F.Supp.2d 185, 199 (N.D.N.Y.2009); *see also Sealy v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997). Rather, personal involvement must be established by either proving (1) the defendant directly participated in the alleged conduct; (2) the defendant knew of the circumstances establishing the complaint and failed to remedy the situation; (3) the defendant created a policy that allowed the unconstitutional practice; (4) the defendant acted grossly negligent; or (5) the defendant demonstrated deliberate indifference to the rights of the plaintiff by not acting on the plaintiff's complaints. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

In his Report–Recommendation, Magistrate Judge Baxter found that Plaintiff has not adequately alleged that Defendants Fischer, LeClaire, and Maly should be dismissed because Plaintiff failed to adequately allege that they were personally involved in any constitutional violations. *See* Dkt. No. 155 at 6–11. In his objections, Plaintiff simply repeats arguments that he made in response to Defendants' motion to dismiss and which were properly rejected by Magistrate Judge Baxter. *See Harnett v. Barr,* 538 F.Supp.2d 511, 524 (N.D.N.Y.2008); *Burton v. Lynch,* 664 F.Supp.2d 349, 360 (S.D.N.Y.2009).

**\*8** Having reviewed the Report–Recommendation and Plaintiff's submissions, the Court finds that Magistrate Judge Baxter correctly determined that Plaintiff failed to allege facts plausibly suggesting that Defendants Fischer, Maly and LeClaire were personally involved in the alleged constitutional deprivations.

### D. Conspiracy

The amended complaint alleges that Defendants conspired to "discriminate, harass, and retaliate" against Plaintiff by pursuing false disciplinary charges against him over a period of more than one year. *See* Dkt. No. 27 at 8. Magistrate Judge Baxter agreed with Defendants that this claim should be dismissed under the "intracorporate conspiracy doctrine." Dkt. No. 155 at 22–25.

The intra-corporate conspiracy doctrine, which applies to conspiracy claims pursuant to both 42 U.S.C. § 1983, *see Dilworth v. Goldberg,* No. 10 Civ. 2224, 2012 WL 4017789, \*30 (S.D.N.Y. Sept. 13, 2012); *Anemone v. Metropolitan*

*Transportation Authority,* 419 F.Supp.2d 602, 603–04 (S.D.N.Y.2006), and 42 U.S.C. § 1985, *see Herrmann v. Moore,* 576 F.2d 453, 459 (2d Cir.1978), "posits that officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." *Jefferson v. Rose,* 869 F.Supp.2d 312, 317–18 (E.D.N.Y.2012) (quotations and citations omitted); *see also Smith v. Town of Hempstead Department of Sanitation Sanitary District No. 2,* 798 F.Supp.2d 443, 461 (E.D.N.Y.2011) (citation omitted). The intra-corporate conspiracy doctrine "extends to public corporate bodies, including municipalities." *Nimkoff v. Dollhausen,* 751 F.Supp.2d 455, 466 (E.D.N.Y.2011) (citation omitted); *see also Michael v. County of Nassau,* No. 09–cv–5200, 2010 WL 3237143, \*5 (E.D.N.Y. Aug. 11, 2010) (holding that the intra-corporate conspiracy doctrine applies to municipalities).

Contrary to Plaintiff's conclusory objections, Magistrate Judge Baxter correctly determined that the intra-corporate conspiracy doctrine mandates dismissal of Plaintiff's conspiracy claims. The allegations in the amended complaint and Plaintiff's objections make clear that all Defendants were employed by the same public entity and that they were working in the scope of their public employment during the alleged unconstitutional conduct. *See Richard v. Fischer,* —— F.Supp.2d ——, 2014 WL 3974158, \*8–\*9 (W.D.N.Y.2014) (applying the intracorporate conspiracy doctrine to bar the plaintiff's conspiracy claims brought against DOCCS employees who were acting within the scope of their employment during the alleged unconstitutional conduct).

Having reviewed this claim and Magistrate Judge Baxter's Report–Recommendation, the Court finds that Magistrate Judge Baxter correctly determined that Defendants' motion to dismiss as to Plaintiff's conspiracy claims should be granted.

### E. Preliminary injunctive relief

#### *1. Governing Legal Standard*

**\*9** A party seeking injunctive relief must demonstrate 1) irreparable harm; and 2) either a) a likelihood of success on the merits of the claims, or b) existence of serious questions going to the merits of the claims, and a balance of hardships tipping decidedly in the moving party's favor. *See D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.,* 465 F.3d

Case 9:17-cv-01042-DNH-TWD Document 67 Filed 03/19/19 Page 102 of 131
Toliver v. Fischer, Not Reported in F.Supp.3d (2015)

2015 WL 403133

503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* No. 00–CV–012E, 2006 WL 618576, \*3 (W.D.N.Y. Mar. 10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir.1994) (per curiam)).

A higher standard than ordinarily required must be met "where an injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act ." *Phillip v. Fairfield Univ.,* 118 F.3d 131, 133 (2d Cir.1997) (citation omitted). To meet such a higher standard, the moving party must "show[ ] clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from a denial of the injunction." *Id.* at 133 (other citations omitted). Additionally, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord,* 981 F.Supp. 140, 167 (W.D.N.Y.1997) (citing *Farmer v. Brennan,* 511 U.S. 825, 846–47, 114 S.Ct. 1970, 1983–84, 128 L.Ed.2d 811 (1994)) (other citations omitted).

Finally, when a party seeks preliminary injunctive relief, "the relief ... must relate to the allegations contained in the underlying complaint." *McAllister v. Goord,* No. 9:06–CV–0442, 2009 WL 5216953, \*2 (N.D.N.Y. Dec. 30, 2009) (internal citations omitted).

" 'A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.' " *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.,* 437 Fed. Appx. 57, 58 (2d Cir.2011) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir.2009)). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that " 'absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm .' " *Bisnews AFE (Thailand),* 437 Fed. Appx. at 58 (quoting *Faiveley,* 559 F.3d at 118).

*2. Analysis*

In the first request, Plaintiff contends that "Defendants are refusing [to place him in protective custody] so that [he] can get physically assaulted [,]" and that he "is in danger" and has "been forced to live ... where enemies are." Dkt. No. 161 at 3. However, these claims are entirely speculative and relate to possible future injury, and therefore are not sufficient to show irreparable harm. [2] *Salvatierra v. Connolly,* No. 09 Civ. 3722, 2010 WL 5480756, \*24 (S.D.N.Y. Sept. 1, 2010) ("Plaintiff's general fear of future retaliation by Defendants is too speculative to warrant injunctive relief") (citation omitted), report and recommendation adopted by 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011); *Ward v. LeClaire,* No. 9:07–CV–0026, 2007 WL 1532067, \*2 (N.D.N.Y. May 24, 2007) ("Plaintiff's request for injunctive relief against future threats or harassment by inmates and/or prison officials is too speculative to meet the irreparable harm requirement. Although Plaintiff claims that he will face future threats and harassment, Plaintiff cannot claim with any certainty how, when, or where he will be retaliated against, or that the retaliation will result in irreparable harm to Plaintiff") (citation omitted).

**\*10** In his second request, Plaintiff alleges "Defendants Keys, Sarkowicz, Korines, and co-working 'friends' " threatened his life and threatened to break his neck. Dkt. No. 163 at 2. There are no Defendants by the names of Sarkowicz and Korines in this lawsuit, and therefore this Court has no power to enforce an injunction based on their conduct. Fed.R.Civ.P. 65(d). In regard to Defendant Keys, "allegations of future injury without more do not establish a real threat of injury." *Slacks v. Gray,* No. 9:07–CV–0510, 2008 WL 2522075, \*1 (N.D.N.Y. June 25, 2008) (citation omitted). Plaintiff has not alleged a real threat of injury, and any future threats should be reported to prison staff, so as not to "immerse the federal judiciary in the management of state prisons." *Fischer,* 981 F.Supp. at 167.

Plaintiff also seeks an order against "further retaliation resulting from this lawsuit." Dkt. No. 163 at 1. Plaintiff's repeated requests for this type of relief are entirely conclusory and far too speculative to meet the irreparable harm standard. *See Ward v. LeClaire,* No. 9:07–cv–26, 2007 WL 1532067, \*2 (N.D.N.Y. May 24, 2007) ("Although Plaintiff claims that he will face future threats and harassment, Plaintiff cannot claim with any certainty how, when, or where he will be retaliated against, or that the retaliation will result in irreparable harm to Plaintiff").

In his third request for injunctive relief and sanctions, Plaintiff again asks the Court to order Defendants to transfer him to a different facility because of Defendants' alleged conduct. *See* Dkt. No. 164. Plaintiff alleges that, absent a transfer, he will suffer physical harm but claims that he does not feel comfortable providing more detail because he fears that his letter will be intercepted and not reach the Court. *See id.* at 2–3. Again, these conclusory assertions regarding speculative future threats and injury are insufficient to establish irreparable harm. *See Fischer, 981 F.Supp. at 167.* [3]

Plaintiff requests additional sanctions and restates his request for a TRO based on the alleged conduct of C.O. Stokes, who Plaintiff claims threw him out of his wheelchair, and then proceeded to punch and slap him in the face. Dkt. Nos. 167 & 168. Plaintiff claims that "nearby Defendants" witnessed this conduct. *See id.* at 7. Again, any sought after relief against C.O. stokes must fail because he is not a party to this action. Further, Plaintiff's conclusory assertion that "nearby Defendants" witnessed this conduct is insufficient to warrant the Court granting the requested relief for this alleged past harm.

Finally, the Court also finds that Plaintiff is not entitled to the requested relief because he has made no showing that he is likely to succeed on the merits of his underlying claims.

Based on the foregoing, the Court denies Plaintiff's motions for preliminary injunctive relief (Dkt. Nos. 161, 163, 164, 167 & 168).

### F. Request for sanctions against Defendants

**\*11** Included in his motions seeking injunctive relief, Plaintiff "request [s] that [Defendants] are sanctioned $10,000.00 a day" for failing to place Plaintiff in protective custody. *See, e.g.,* Dkt. No. 161 at 4. Plaintiff has not specified the legal basis for the motion for sanctions.

Sanctions may be imposed against a party to an action under Fed.R.Civ.P. 11 ("Rule 11") or 37 ("Rule 37"), 28 U.S.C. § 1927, or the Court's inherent power, none of which are applicable here. In particular, Rule 11, by its terms, is the vehicle by which sanctions may be obtained in connection with the filing in court of pleadings, motion papers, or other documents that are baseless, filed in bad faith, or intended to harass, unnecessarily delay, or needlessly increase the cost of litigation. *See* Fed.R.Civ.P. 11(b)-(c). Since Plaintiff does not seek sanctions based on any pleadings, motion papers, or other documents filed by Defendants in this action, Rule 11 provides no basis for the requested sanctions.

Sanctions against a party are also available under Rule 37(b) for failing to comply with a court order or to respond to discovery. *See* Fed.R.Civ.P. 37(b). Again, this rule provides no basis for the requested relief. Sanctions may also be ordered under 28 U.S .C. § 1927 against "an[y] attorney or other party admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously [ .]" Accordingly, by its terms, section 1927 applies to attorneys and parties "admitted to conduct cases" in a federal court. Since they are not attorneys, sanctions under section1927 are not available as against Defendants.

Finally, the Court finds that there is no basis to support invoking the Court's inherent power to sanction Defendants based on the alleged conduct. Rather, a careful reading of Plaintiff's requests for sanctions establishes that Plaintiff, rather than seeking true sanctions, offers argument in support of what may become Plaintiff's damages should he ultimately succeed in this action.

Based on the foregoing, Plaintiff's motions for sanctions are denied.

### G. Plaintiff's appeals

Plaintiff has appealed several orders issued by Magistrate Judge Baxter. *See* Dkt. Nos. 144, 149, 153 and 154. In his first appeal, Plaintiff argues that Magistrate Judge Baxter should have sanctioned Defendants for failing to submit a responsive pleading by a certain date and that a motion to dismiss is not a responsive pleading. *See* Dkt. No. 144 at 2–3. Contrary to Plaintiff's assertions, the Rule 12(a)(4) of the Federal Rules of Civil Procedure, a motion to dismiss resets the time for filing the defendant's responsive pleading as follows: "if the court denies the motion ..., the responsive pleading must be served within 14 days after notice of the court's action [.]" Since the Court had not acted on Defendants' motion to dismiss until the filing of this Memorandum–Decision and Order, Defendants were in compliance with Magistrate Judge

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 104 of 131
Toliver v. Fischer, Not Reported in F.Supp.3d (2015)
2015 WL 403133

Baxter's order. Moreover, Magistrate Judge Baxter was well within his authority to rescind his previous order requiring Defendants to respond to Plaintiff's motion for sanctions and to *sua sponte* deny that motion as frivolous, which it was.

**\*12** Next, Plaintiff appeals Magistrate Judge Baxter's May 27, 2014 Decision and Order in which he denied Plaintiff's fifth motion to amend the amended complaint. *See* Dkt. Nos. 147 & 149. Magistrate Judge Baxter properly denied that motion based on Plaintiff's failure to attached a proposed amended pleading or to include any factual support for the claims and defendants Plaintiff was seeking to add. *See* N.D.N.Y. L.R. 7.1(a)(4).

In a submission dated August 9, 2014, Plaintiff appeals Magistrate Judge Baxter's Text Order denying his motion to preserve and compel Defendants to turn over a video tape of an incident unrelated to the facts of this case. *See* Dkt. Nos. 152 & 153. As Magistrate Judge Baxter correctly determined, the video in question is entirely unrelated to the present matter as it allegedly captures the actions of a non-defendant on June 26, 2014, long after this action was filed. Moreover, the video tape in question allegedly depicts the actions of a corrections officer at Five Points C.F., while the conduct relevant to this case allegedly occurred at Shawangunk C.F. [4]

Finally, in a letter dated October 1, 2014, Plaintiff again asks the Court to sanction Defendants for their failure to file a responsive pleading. *See* Dkt. No. 154. For the reasons discussed above, Plaintiff's appeal is denied as frivolous.

Based on the foregoing, the Court denies Plaintiff's appeals (Dkt. Nos. 144, 149, 153 and 154).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, Magistrate Judge Baxter's Report–Recommendation and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Baxter's November 17, 2014 Report–Recommendation is **Adopted** in its entirety for the reasons set forth therein; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 134) is **GRANTED** in part and DENIED in part; and the Court further

**ORDERS** that Defendants' motion to dismiss is **GRANTED** as to Defendants Fischer, Maly, and LeClaire, and as to Plaintiff's conspiracy claim; and the Court further

**ORDERS** that Defendants' motion to dismiss is otherwise **DENIED;** and the Court further

**ORDERS** that Plaintiff's motions for injunctive relief and for sanctions (Dkt. Nos. 161, 163, 164 & 167) are **DENIED;** and the Court further

**ORDERS** that Plaintiff's appeals (Dkt. Nos. 144, 149, 153 & 154) are **DENIED;** and the Court further

**ORDERS** that Plaintiff's motion to amend/supplement his amended complaint (Dkt. No. 158) is **DENIED;** and the Court further

**ORDERS** that all future pretrial matters are referred to Magistrate Judge Baxter; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum–Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

### REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

**\*13** On January 17, 2012, plaintiff commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that 20 employees of the New York State Department of Correctional and Community Services ("DOCCS") violated his constitutional rights during his confinement at the Shawangunk Correctional Facility ("Shawangunk"). (Compl., Dkt. No. 1). By Decision and Order dated May 3, 2012, the Honorable Mae A. D'Agostino, United States District Judge, dismissed, *sua sponte,* defendants Schneiderman, Bellamy, and Prack from the action because the complaint did not state facts suggesting their personal involvement in the alleged violations of plaintiff's constitutional rights. (Dkt. No. 9 at 8–10).

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 105 of 131

On June 28, 2012, plaintiff filed an amended complaint (Dkt. No. 27), which, by Decision and Order dated December 6, 2012 (Dkt. No. 85), Judge D'Agostino accepted for filing against 17 of the original defendants, as well as Correction Officer ("C.O.") North, who was not named in the original complaint. [1] Liberally construed, the surviving claims in plaintiff's amended complaint include a First Amendment claim, based on the defendants' alleged filing of false misbehavior reports against plaintiff, in retaliation for his pursuit of complaints, grievances, appeals, and Article 78 actions; an equal protection claim based on alleged discrimination against plaintiff because of his race, disability, and/or sexual orientation; a conspiracy claim related to the retaliation and discrimination claims; a Fourteenth Amendment claim alleging denial of procedural due process in connection with various disciplinary proceedings; and an Eighth Amendment claim for failure to provide adequate medical attention. (Dkt. No. 27 at 8–9, 35). [2] Plaintiff seeks both monetary and injunctive relief. (Dkt. No. 27 at 14).

The Attorney General's Office has filed a motion, pursuant to Fed.R.Civ.P. 12(b)(6), seeking dismissal of plaintiff's amended complaint in its entirety, on behalf of all but one of the remaining defendants. [3] (Dkt. No. 134). Plaintiff has responded to the motion to dismiss (Dkt. No. 145), and defense counsel chose not to file a reply (Dkt. No. 150). The motion to dismiss has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by Judge D'Agostino.

**I. Facts and Contentions**

When plaintiff was transferred to Shawangunk in February of 2011, he required the assistance of a walker when inside his cell, and otherwise needed a wheelchair to ambulate, because of back problems. (Am. Compl., Dkt. No. 27 at 17). [4] He was assigned to a housing unit that was not wheelchair accessible so that he could attend a mandatory program available only in that cell block. (Dkt. No. 27 at 19). Plaintiff was told that his wheelchair had to be kept in a bin in a storage room and retrieved from that location whenever he required it to move around the facility. (Dkt. No. 27 at 17). Plaintiff alleges that he suffered substantial pain, and was injured on several occasions while attempting to store or retrieve his wheelchair, and that the defendants ignored these serious medical issues and delayed his referral for treatment. (Dkt. No. 27 at 17–18, 21–24). Plaintiff further claims that his repeated requests for inmate assistance with storing and retrieving his wheelchair were denied. (Dkt. No. 27 at 17–20).

**\*14** Plaintiff alleges that, between March 2011 and May 2012, he filed a number of grievances, implicating various defendants, regarding the conditions of his confinement, including issues relating to the storage and retrieval of his wheelchair and his ability to take extended showers because of his medical issues. (Dkt. No. 27 at 11–13, 40–41, 72–81). Plaintiff claims that defendants filed numerous false misbehavior reports against him in retaliation for pursuing grievances (Dkt. No. 27 at 24–26, 41–59), and because of his race and sexual orientation (as overtly gay) (Dkt. No. 27 at 35, 58–59). Plaintiff further alleges that he was denied due process in connection with the disciplinary hearings against him because he was found guilty by a biased hearing officer on many misbehavior reports, despite overwhelming evidence of his innocence or other mitigating circumstances. (Dkt. No. 27 at 25, 42, 49, 51–52).

Defendants contend that defendants Fischer, Smith, Maly, Pingott, and LeClaire should be dismissed because the amended complaint does not adequately allege their personal involvement in any constitutional violation. (Def.s' Mem. of Law at 5–6, Dkt. No. 134–1). Defense counsel argues that plaintiff does not plausibly allege a causal connection between plaintiff's grievances and the misbehavior reports filed against him by various defendants, as required to support a retaliation claim. (Id. at 13–15). The defendants further assert that plaintiff's claim of discrimination fails because it is based on allegations of verbal harassment that are not actionable. (Id. at 6–7). Plaintiff's conspiracy claim is barred, according to defense counsel, by the intracorporate conspiracy doctrine. (Id. at 7–8). The defendants contend that plaintiff's conclusory assertion that the disciplinary hearing officer was biased do not support a due process claim. (Id. at 11–13). Finally, defense counsel argues that plaintiff's medical care claim does not adequately allege facts satisfying the subjective and objective elements of an Eighth Amendment violation. (Id. at 9–11).

For the reasons set forth below, this court recommends that the defendants' motion to dismiss be granted in part

and denied in part. In particular, this court recommends that defendants Fischer, Maly, and LeClaire be dismissed based on a lack of personal involvement, and that plaintiff's conspiracy claim be dismissed pursuant to the intracorporate conspiracy doctrine. This court otherwise recommends that defendants' motion be denied.

## II. *Motion to Dismiss*

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (*citing Bell Atl. Corp.,* 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp.,* 550 U.S. at 555 (citation omitted).

 *15 When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir.1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich,* 408 F.3d 124, 128 (2d Cir.2005); *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999). In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

## III. *Personal Involvement*

For the reasons set forth below, plaintiff's claims against defendants Fischer, LeClaire, and Maly may be dismissed because plaintiff has not adequately alleged that they were personally involved in any constitutional violations. However, the allegations of personal involvement with

respect to defendants Smith and Pingott are adequate, at least in the context of a Rule 12(b)(6) motion.

### A. Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability for any constitutional claim. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003). "The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (*citing, inter alia, Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). [5]

### B. Analysis

### 1. Defendants Fischer and LeClaire

The only specific allegation in the amended complaint suggesting the personal involvement of former DOCCS Commissioner Fischer andDep. Com. LeClaire relates to the latter's April 26, 2011 letter to plaintiff. (Dkt. No. 27 at 29, 31, 63, 64, 67). In the letter, defendant LeClaire states that defendant Fischer asked him to respond to plaintiff's letter regarding misbehavior reports. Defendant LeClaire then advises that he was referring plaintiff's letter to Supt. Smith for investigation and any appropriate action because there was no basis for review of the Tier II disciplinary proceeding against plaintiff above the level of the facility superintendent. (Dkt. No. 27 at 63). The personal involvement of a supervisory official cannot be established if his only involvement is to refer an inmate's complaint to the appropriate staff for investigation. *Harnett v. Barr,* 538 F.Supp.2d 511, 524 (N.D.N .Y.2008); *Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response

to the prisoners to advise him of the subordinate's decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official).

**\*16** Plaintiff also makes conclusory claims about the failure of defendants Smith and LeClaire to oversee subordinate DOCCS employees, and the role of these two defendants in allowing a pattern or retaliation and discrimination by ignoring plaintiff's various grievances and Article 78 proceedings. Such unsupported allegations are not adequate to establish their personal involvement. *See Smart v. Goord,* 441 F.Supp.2d 631, 642–643 (S.D.N.Y.2006) (the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement); *Pagan v. Correctional Medical Services,* No. 11–CV–1357, 2012 WL 2036041, at \*6–7 (S.D.N.Y. June 6, 2012) (courts in this district have repeatedly held that affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement under section 1983). [6]

### 2. Defendant Maly

The only specific allegation in the amended complaint regarding defendant Maly is that, as Acting Superintendent, he denied one of plaintiff's grievances claiming that plaintiff had been denied several physical therapy appointments because of discrimination in October 2011. (Dkt. No. 27 at 12, 30, 31). According to the plaintiff, Mr. Maly's letter denying the grievance stated that Sgt. Lutz had spoken with the plaintiff and the physical therapist and determined that the plaintiff had missed several physical therapy appointments. (Dkt. No. 27 at 30).

In *McKenna v. Wright,* 386 F.3d 432, 437–38 (2d Cir.2004), the Second Circuit noted that it was "questionable [as to] whether an adjudicator's rejection of a grievance would make him liable for the conduct" of which the inmate complained. [7] The district courts within this Circuit "are divided regarding whether review and denial of a grievance constitutes personal involvement in the underlying alleged unconstitutional act." *Burton v. Lynch,* 664 F.Supp.2d 349, 360 (S.D.N.Y.2009) (collecting cases). The *Burton* court noted that district courts have found personal involvement based on denying a grievance where (1) the official undertakes some kind of investigation into the initial denial; (2) the official provides

a detailed and specific response to the grievance rather than a *pro forma* denial; or (3) the grievance involves an ongoing violation "such that the 'supervisory official who reviews the grievance can remedy it directly.' " *Id.* (quoting *Vega v. Artus,* 610 F.Supp.2d 185, 198 (N.D.N.Y.2009); *Young v. Choinski,* 15 F.Supp.3d 172, No. 3:10–CV–606, 2014 WL 962237, at \*15 (D.Conn. Mar. 13, 2014) (a supervisory official confronted with an "ongoing" constitutional violation who reviews a grievance or appeal regarding that violation, is "personally involved" if he or she can remedy the violation directly).

By delegating the investigation of this grievance to Sgt. Lutz and merely reporting Sgt. Lutz's findings in his letter to plaintiff, defendant Maly did not become personally involved in any alleged constitutional violation. *Sealey v. Giltner,* 116 F.3d at 51. Moreover, the amended complaint does not suggest that, despite his many complaints and grievances, plaintiff had any further problems with respect to physical therapy appointments. Absent allegations of an ongoing violation that Mr. Maly could have remedied, his denial of this one grievance is not sufficient to establish his personal involvement in any alleged infringement of plaintiff's constitutional rights. [8]

### 3. Defendant Smith

**\*17** With respect to Shawangunk Superintendent Smith, plaintiff alleges that he affirmed the denial of at least one grievance, filed on May 6, 2011, relating to staff denials of plaintiff's requests for assistance in moving his wheelchair. (Dkt. No. 27 at 20). Plaintiff alleges that various defendants continued to engage in retaliatory and discriminatory conduct relating to the storage and retrieval of plaintiff's wheelchair. [9] Based on the authority cited immediately above, plaintiff's allegations adequately allege that the Superintendent was personally involved, in that he failed to remedy an ongoing violation that was within his power to address.

Moreover, defendant Smith affirmed guilty dispositions on a number of misbehavior reports against plaintiff, despite plaintiff's allegations that hearing officer Gardner was biased and that he ignored evidence establishing plaintiff's innocence. (Dkt. No. 27 at 45–46, 49, 57). [10] In the context of a Rule 12(b)(6) motion, these allegations are sufficient to support a claim that defendant Smith was personally involved in the retaliation and due process violations alleged against defendant Gardner. *See, e.g.,*

*Williams v. Smith,* 781 F.2d 319, 324 (2d Cir.1986) (concluding that the plaintiff had "sufficiently alleged that Superintendent Smith was personally involved in depriving him of his due process right to call witnesses" at the disciplinary hearing when Smith affirmed the guilty finding on appeal); *Friedland v. Otero,* No. 3:11cv606, 2014 WL 1247992, at *10–11 (D.Conn. Mar. 25, 2014) (defendant Choinski's review of plaintiff's due process claims in connection with the appeal of the disciplinary proceeding report constituted sufficient personal involvement, in that he failed to remedy the underlying procedural defects associated with the disciplinary hearing) (collecting cases).

**4. Defendant Pingott**

Plaintiff documents that Capt. Pingott investigated and denied at least one of his grievances about the storage and retrieval of plaintiff's wheelchair and related injuries sustained in March 2011. (Dkt. No. 27 at 11–12, 45, 61). Plaintiff further alleges that he filed a grievance about defendant Pingott's response. (Dkt. No. 27 at 11–12). Finally, plaintiff claims that Capt. Pingott told his subordinates to "write [plaintiff's] ass up" on misbehavior reports in retaliation for his grievances. (Dkt. No. 27 at 65). Plaintiff's amended complaint adequately alleges Capt. Pingott's personal involvement in constitutional violations, at least in the context of a Rule 12(b)(6) motion.

**IV. *Retaliation***

**A. Legal Standards**

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Id.* at 380.

*18 A prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986). However, if the defendant initiated false disciplinary charges against plaintiff in retaliation for his exercise of a constitutionally protected right, plaintiff's First Amendment rights are implicated even if the plaintiff was entitled to, and did receive, full procedural due process. *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988). Filing prison grievances and lawsuits are clearly constitutionally protected activities in the context of a retaliation claim. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996).

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett,* 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* In the context of a disciplinary hearing, the type of evidence required to establish a causal connection between plaintiff's protected activity and the defendant's alleged adverse action includes: temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing, and statements from the defendants regarding their motives. *Santiago v. Whidden,* No. 3:10–CV–1839, 2012 WL 668996, at *7 (D.Conn. Feb. 29, 2012) (citing *Barclay v. New York,* 477 F.Supp.2d 546, 558 (N.D.N.Y.2007)).

**B. Analysis**

Defense counsel argues that plaintiff's "conclusory" allegations that various defendants retaliated against him, for pursuing various grievances, by filing numerous misbehavior reports against him during the same time period are insufficient to state a "plausible" claim of retaliation. (Def.s' Mem. of Law at 14–15). Defendants contend that plaintiff fails to allege, with specificity, that the defendants who filed misbehavior reports against him had knowledge of prior grievances, or other facts suggesting a causal link between plaintiff's protected activities and the defendants' alleged adverse actions. (*Id.*) While many of plaintiff's allegations of retaliation may not withstand a well-documented motion for summary judgment, they are adequate to survive a motion to dismiss under Rule 12(b)(6).

Plaintiff alleges that, on March 9 and 10, 2011, he "circulated ... to the above-named defendants" his first grievances against defendant Kane, and perhaps also against defendants Peterson and Keys, relating to their orders that plaintiff store and retrieve his wheelchair. (Dkt. No. 27 at 11, 33–34). [11] Plaintiff claims that five false misbehavior reports, relating to his problems with moving his wheelchair and related physical limitations, were then filed against him in retaliation for those first grievances. On March 10th, two misbehavior reports were filed against plaintiff-one issued by defendant Peterson and witnessed by his "partner," defendant Kane, and one issued by defendant Keys-defendant Kane's "friend." (Dkt. No. 27 at 33–34, 43–44). On March 13, 2011, defendant Kane's "partner," defendant Stefiniki filed disciplinary charges relating to plaintiff's failure to properly store his wheelchair. (Dkt. No. 27 at 32, 45–46). Defendant Cutler filed a misbehavior report against plaintiff on March 14th, because he would not get up to go get his medications, purportedly because plaintiff could not move due to back pain and spasms. (Dkt. No. 27 at 24, 47) . [12] On March 25, 2011, defendant DeGraff charged plaintiff with having contraband-two Motrin pills for which plaintiff had a prescription-charges on which plaintiff was ultimately found not guilty by hearing officer Gardner. (Dkt. No. 27 at 24, 34–35, 48). [13]

**\*19** A well-documented summary judgment motion might well establish that the March 10 misbehavior reports were filed **before** plaintiff submitted his first grievances. The defendants who filed the misbehavior reports in the days following plaintiff's first grievance(s) might be in a position to file affidavits documenting that they were not then aware of the grievances, notwithstanding plaintiff's claim that he "circulated" them to the defendants. Moreover, a summary judgment motion might clarify who was named in plaintiff's first grievances and persuade the court that no rational fact finder would conclude that correction officers not implicated in the grievances had any cause to retaliate against plaintiff. *See, e.g., Hare v. Hayden,* 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.") (citing *Wright v. Goord,* 554 F.3d 255, 274 (2d Cir.2009) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another

corrections officer); *Roseboro v. Gillespie,* 791 F.Supp.2d 353, 369 (S.D.N.Y.2011) (plaintiff has failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in). However, the court cannot, based solely on the amended complaint, liberally construed, find that these allegations of retaliation should be dismissed under Rule 12(b)(6).

Plaintiff alleges that defendant Stone issued a misbehavior report against him on October 3, 2011, relating to plaintiff's refusal to use a filthy towel provided by C.O. Bucci, [14] even though C.O. Stone was not present for the incident. (Dkt. No. 27 at 51). During the disciplinary hearing, plaintiff asked C.O. Stone why he constantly called plaintiff a "Homo Niggerette." Plaintiff alleges that C.O. Stone retaliated against plaintiff, for his question during the hearing and for filing unspecified "grievances of discrimination based on plaintiff's race and sexual orientation" (Dkt. No. 27 at 35), by issuing another misbehavior report relating to plaintiff's use of his wheelchair, on October 14, 2011. (Dkt. No. 27 at 25–26, 35–36, 52–54). Plaintiff claims that, at some point, C .O. Stone "promised to 'make up for his mistakes at the previous hearing' " and told plaintiff" "[i]f I have to write your ass up every day I will—so prepare." (Dkt. No. 27 at 53). While plaintiff's allegations are conclusory in some respects, his amended complaint adequately alleges retaliation by C.O. Stone in connection with this sequence of events.

On July 25, 2011, defendant Budziszewski filed a misbehavior report against plaintiff for disobeying an order to get off the phone and return to his cell. Plaintiff alleges that he was found guilty notwithstanding the fact that phone records showed that he made no call at the relevant time. (Dkt. No. 27 at 25, 49). Ultimately, the disposition was expunged as a result of an Article 78 proceeding plaintiff pursued in state court. (Dkt. No. 145–1 at 14–16). Plaintiff alleges that, on October 17, 2011, he filed a grievance against defendant Budziszewski, who retaliated by filing misbehavior reports against plaintiff relating to the duration of his showers on December 12, 2011, February 6, 2012, and March 7, 2012. [15] Plaintiff was convicted on the disciplinary charges although he purported to have a medical pass for an extended, 25–minute shower. (Dkt. No. 27 at 55–59). Plaintiff claims that, at the time of one of the disciplinary hearings, defendant Gardner told him "keep poking the Bear with

2015 WL 403133

these ... grievances ... and watch what happens to your ass. Every time you get a ticket you will be found guilty regardless." (Dkt. No. 27 at 57).[16] Ultimately, at least one of the disciplinary dispositions was reversed as a result of an Article 78 proceeding. (Dkt. No. 145–1 at 24). The allegations regarding defendant Budziszewski state a plausible claim of retaliation that cannot be dismissed under Rule 12(b)(6).[17]

## V. *Discrimination/Equal Protection*

**\*20** The amended complaint alleges that defendants discriminated against plaintiff on the basis of his disability, sexual orientation, and/or race. (Dkt. No. 27 at 9, 35–36, 52, 56, 58–59). Defendants argue that verbal harassment of the plaintiff, including the use of the term "Homo Niggerette" by defendants Stone and Budziszewski to taunt plaintiff, does not constitute actionable discrimination under Section 1983. (Def.s' Mem. of Law at 6–7). While verbal harassment alone does not support a claim of unconstitutional discrimination, the amended complaint alleges an adequate equal protection claim.

### A. Legal Standards

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike. *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (*citing City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)). A plaintiff alleging a violation of his equal protection rights must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination, typically against an identifiable or suspect class, such as race or religion. *Phillips v. Girdich,* 408 F.3d 124, 129 (2d Cir.2005). Then, the plaintiff must establish that the difference in treatment cannot survive the appropriate level of scrutiny. *Id.*

" 'In applying the Equal Protection Clause to most forms of state action, [courts] ... seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.' " *Pedersen v. Office of Personnel Management,* 881 F.Supp.2d 294, 309 (D.Conn.2012) (quoting *Plyler v. Doe,* 457 U.S. 202, 216 (1982)). Courts apply heightened equal protection scrutiny to those laws that burden a fundamental right or target a suspect class, such as those based on race, national

origin, or sex. *Id.* (*citing, inter alia, Romer v. Evans,* 517 U.S. 620, 629, 631 (1996)).

Certain "suspect" classifications, including those based on race, are subject to strict judicial scrutiny, and must further a compelling state interest and be narrowly tailored to accomplish the purpose. *Pyke v. Cuomo,* 567 F.3d 74, 77 (2d Cir.2009). The Second Circuit has held that homosexuality is "quasi-suspect (rather than suspect)" category, that is subject to heightened or intermediate judicial scrutiny,[18] but not strict scrutiny. *Windsor v. U.S.,* 699 F.3d 169, 185 (2d Cir.2012), *judgment aff'd, U.S. v. Windsor,* —— U.S. ——, 133 S.Ct. 2675 (2013).[19] "The Equal Protection Clause permits distinctions which are based on a person's disability, if they are rational and serve a legitimate end." *Wiggins v. N.Y. City Dep' of Corr.,* No. 06 Civ.1946, 2008 WL 3447573 at \*8 (S.D.N.Y. Aug. 12, 2008) (*citing Garcia v. State Univ. of N.Y. Health Scis. Ctr.,* 280 F.3d 98, 109 (2d Cir.2001)).

Alternatively, an equal protection claim can sometimes be sustained even if the plaintiff does not allege "class-based" discrimination, but instead claims that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 601 (2008). The Equal Protection Clause "secure[s] every person .... against intentional and arbitrary discrimination" by state officials. *Willowbrook v. Olech,* 528 U.S. 562, 564, (2000). Thus, in a "class of one" claim, the Equal Protection Clause requires a "rational basis for the difference in treatment." *Id.*

**\*21** Mere verbal harassment, profanity, or even racial epithets, " 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *See, e.g., Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998) (collecting cases); *Webster v. Fischer,* 694 F.Supp.2d 163, 187 (N.D.N.Y.2010). However, when alleged harassment amounts to more than verbal taunts and includes other more serious, ongoing constitutional deprivations, a plaintiff should be given an opportunity to pursue his constitutional claims. *Toliver v. City of New York,* 530 F. App'x 90, 92–93 (2d Cir.2013) (reversing district court's granting of defendants' Rule 12(b)(6) based on the lower court's erroneous conclusion that plaintiff alleged mere

verbal harassment which did not support an actionable constitutional deprivation).

**B. Analysis**

Plaintiff alleges that, unlike four other handicapped inmates who were allowed to take extended showers with impunity, he was disciplined for trying to take longer showers, despite having medical authorization. (Dkt. No. 27 at 13, 58–59). Plaintiff also claims that defendant Budziszewski, who filed multiple, retaliatory misbehavior reports against plaintiff relating to the length of his showers, was one of the correction officers who consistently referred to plaintiff as "The Homo Niggerette." (Dkt. No. 27 at 59). Based on the authority cited above, plaintiff's allegations of racist taunts, combined with the more serious, related claims of unconstitutional retaliation, are sufficient to state a "class of one" equal protection claim, and perhaps a discrimination claim based on race and/or sexual orientation. In the context of a summary judgment motion, defendants may be able to document a rational, or even compelling penological interest in how they treated plaintiff vis à vis other handicapped inmates in connection with use of the shower. However, the equal protection claim in the amended complaint is adequate to withstand a Rule 12(b)(6) motion. [20]

**VI. *Conspiracy***

The amended complaint alleges that all of the defendants conspired to "discriminate, harass, and retaliate" against plaintiff by pursuing false disciplinary charges against him over a period of more than one year. (Dkt. No. 27 at 8). Defense counsel argues that plaintiff's conspiracy claim should be dismissed under the "intracorporate conspiracy doctrine." This court agrees, and recommends that the duplicative and conclusory conspiracy claim in the amended complaint be dismissed.

**A. Legal Standards**

"To survive a motion to dismiss, a conspiracy claim under 42 U.S .C. § 1983 must allege facts plausibly suggesting that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal.... Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed." *Vega v. Artus,* 610 F.Supp.2d 185,

202–03 (N.D.N.Y.2009) (*citing, inter alia, Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002)).

**\*22** "The intracorporate conspiracy doctrine provides that 'if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own ... employees, each acting within the scope of his employment[,] there can be no actionable conspiracy.' ... The intracorporate conspiracy doctrine 'bars conspiracy claims against employees of entities such as [DOCCS] (when those employees are alleged to have conspired solely with each other) unless, pursuant to the doctrine's 'scope of employment' exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed." *Richard v. Fischer,* No. 11–CV–6013, 2014 WL 3974158, at \*8 (W.D.N.Y. Aug. 7, 2014) (collecting cases).

**B. Analysis**

The Second Circuit has not yet validated the "intracorporate conspiracy doctrine" in the context of a section 1983 action. *Rahman v. Fischer,* No. 9:10–CV–1496 (LEK/TWD), 2012 WL 4492010, at \*13 (N.D.N.Y. Sept. 28, 2012) ("[t]he Second Circuit has recognized the doctrine in the context of 42 U.S.C. § 1985, ... but has not extended its application of the doctrine to conspiracy claims under § 1983) (citations omitted). However, numerous district courts have applied the doctrine to dismiss conspiracy charges, under Rule 12(b)(6), relating to Section 1983 claims of retaliation and discrimination similar to those raised in this case. *See, e.g .,* *Vega v. Artus,* 610 F.Supp. at 193, 205–06 (dismissing intracorporate conspiracy claim relating to allegations that defendants harassed, discriminated against, and retaliated against plaintiff (*inter alia,* by filing false misbehavior reports), because of plaintiff's perceived sexual orientation); *Graham v. Peters,* No. 13–CV–705JTC, 2013 WL 5924727, at \*1, 5 (W.D.N.Y. Oct. 31, 2013) (dismissing, under intracorporate conspiracy doctrine claim that defendants conspired to retaliate against plaintiff for exercising his First Amendment rights, by subjecting him to excessive force and false disciplinary charges); *Richard v. Fischer,* 2014 WL 3974158. at \*8–9 (dismissing conspiracy claim under intracorporate conspiracy doctrine based on allegations that the defendants discriminated in making inmate work assignments based on race and religion); *Rahman v. Fischer,* 2012 WL 4492010, at \*1, 13 (dismissing, based on the intracorporate conspiracy doctrine, claims that

2015 WL 403133

defendants conspired to retaliate against plaintiff, by denying him access to classes and a locker, to punish him for pursuing his First Amendment rights to exercise his religion and access the courts).

Some district courts in this Circuit have declined to apply the intracorporate conspiracy doctrine to dismiss conspiracy claims based on more egregious constitutional violations, such as unprovoked assaults, finding there was at least an issue of fact as to whether defendant correction officers were acting, not in the scope of their employment, but for purely personal reasons. [21] However, given the nature of the underlying alleged constitution claims in this case, plaintiff's conclusory allegations that the defendants were clearly pursuing a "personal" agenda (Dkt. No. 145–1 at 74), are not enough to state a plausible claim that the defendants were not acting within the scope of their employment. *See, e.g., Vega v. Artus,* 610 F.Supp. at 205 ("in order to allege facts plausibly suggesting that individuals were pursuing personal interests wholly separate and apart from the entity" to overcome the intracorporate conspiracy doctrine, "more is required of a plaintiff than simply alleging that the defendants were motivated by personal bias against the plaintiff"). Based on the authority above, this court recommends that plaintiff's conspiracy claim be dismissed under the intracorporate conspiracy doctrine. [22]

## VII. *Due Process*

### A. Legal Standards

**\*23** To begin a due process analysis relating to prison disciplinary proceedings, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges, and then determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Supreme Court held that although states may create liberty interests for inmates that are protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." [23]

The due process protections afforded inmates facing disciplinary hearings that affect a liberty interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004) (*citing, inter alia, Wolff v. McDonnell,* 418 U.S. 539, 563–67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (*citing, inter alia, Superintendent v. Hill,* 472 U.S. 445, 455 (1985)).

### B. Analysis

Liberally construed, the amended complaint alleges that defendant Gardner, who presided at most of plaintiff's disciplinary hearings, was not fair and impartial and found plaintiff guilty in the absence of even "some" evidence. For example, plaintiff alleges that he was found guilty by defendant Gardner of disobeying an order to get off the telephone, even though records indicated that plaintiff was not using the phone during the relevant time period; the disposition was later expunged in an Article 78 proceeding. (Dkt. No. 27 at 25, 49; Dkt. No. 145–1 at 14–16). Similarly, plaintiff was found guilty on several misbehavior reports relating to the duration of his showers despite having medical orders allowing extended showers; at least one of those dispositions was allegedly reversed in an Article 78 proceeding. (Dkt. No. 27 at 5559; Dkt. No. 145–1 at 24). Plaintiff claims that, on one occasion, hearing officer Gardner told plaintiff "Every time you get a ticket you will be found guilty regardless.... I ain't fair and impartial." (Dkt. No. 27 at 57).

The allegations in the amended complaint are sufficient to state a plausible claim that plaintiff was denied procedural due process in connection with at least some of his disciplinary proceedings because the hearing officer was not impartial and/or because of the lack of "some" supporting evidence. The court does not decide whether this due process claim could withstand a summary judgment motion, properly-documented with hearing transcripts and supporting documents and affidavits.

## VIII. *Denial of Medical Care*

### A. Legal Standards

2015 WL 403133

**\*24** In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter,* 316 F.3d 178, 183–84 (2d Cir.2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (*citing, inter alia, Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)).

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.' *Bellotto v. County of Orange,* 248 F. App'x 232, 236 (2d Cir.2007) (quoting *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006)). If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Smith v. Carpenter,* 316 F.3d 178, 185–86 (2d Cir.2003). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id.* at 185. The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange,* 248 F. App'x at 236 (*citing, inter alia, Chance v. Armstrong,* 143 F.3d at 702).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the

official drew that inference. *Id.* at 835, 837. The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer v. Brennan,* 511 U.S. at 844. Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin v. Goord,* 467 F.3d at 281.

### B. Analysis

**\*25** Because of back injuries, plaintiff used a walker to ambulate short distances and needed a wheelchair otherwise. (Dkt. No. 27 at 17). He allegedly complained to various defendants, including Aube, Peterson, Kane, Stefinik, Gaye, Keys, and Cutler that storing and retrieving his wheelchair was causing him pain; but they denied him the assistance of other inmates. (Dkt. No. 27 at 18–20). On May 9, 2011, while trying to move his wheelchair, plaintiff "felt a ... 'needle sharp' pain" in his spine and leg, collapsed on the floor, and could not move. (Dkt. No. 27 at 21). [24] Plaintiff was treated in the hospital and, upon his return to his housing unit, defendants Peterson and Kane continued to require that plaintiff move his wheelchair without assistance, notwithstanding his protests that he could not do so, given his pain. (Dkt. No. 27 at 22). As plaintiff struggled to store his wheelchair, he again collapsed on the floor. Plaintiff claims that C.O. Stefinik told the nurse "Nothing's wrong with him, he just ... laid down on the floor[,]" and Sgt. Aube stated "leave his ass on the floor." (Dkt. No. 27 at 23). The defendants did not allow plaintiff to be taken for medical attention for "approximately half an hour" by which time, plaintiff's pain was so intense that he cried. (Dkt. No. 27 at 23). [25]

Plaintiff does not state that the delay in his treatment following his "second" collapse (Dkt. No. 27 at 45) resulted in any substantial deterioration of his medical condition. However, the amended complaint, liberally construed, alleges that he suffered extreme pain for approximately 30 minutes before the identified defendants allowed him to get medical attention. While a summary judgment motion, supported by plaintiff's medical records, may well establish that the one, relatively brief delay in allowing plaintiff medical attention was not

Case 9:17-cv-01042-DNH-TWD   Document 67   Filed 03/19/19   Page 114 of 131
Toliver v. Fischer, Not Reported in F.Supp.3d (2015)

2015 WL 403133

sufficiently "serious" to satisfy the objective prong of the Eighth Amendment standard, this court cannot make that determination in the context of a Rule 12(b)(6) motion. Similarly, while the court concludes that plaintiff has adequately alleged that the named corrections officers were deliberately indifferent to plaintiff's medical needs on at least one occasion, a summary judgment motion supported by affidavits from the defendant may establish that no rational fact finder could conclude that plaintiff satisfied the subjective prong necessary to establish an unconstitutional delay in medical care.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 134) be **GRANTED** as to defendants Fischer, Maly, and LeClaire, and as to plaintiff's conspiracy claim, and it is further

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 134) be otherwise **DENIED,** and it is further

**ORDERED,** that if the District Court adopts this recommendation, she shall return the case to me to set a schedule for discovery and any further substantive motions with respect to the surviving claims and defendants.

**\*26** Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (*citing Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

Filed Nov. 17, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 403133

Footnotes

1    C.O. North, who is no longer an active DOCCS employee (Dkt. No. 91), has not been served with the amended complaint and is not currently represented in this action.

2    The Court agrees with Defendants' response to Plaintiffs request that "Plaintiff's allegations in all three motions are purely speculative [,]" and that his "issues ... should be addressed through administrative channels ...." Dkt. No. 166 at 2.

3    Throughout the course of this litigation, Plaintiff has filed no less than eighteen (18) separate applications seeking injunctive relief. *See* Dkt. Nos. 7, 54, 64, 67, 71, 80, 83, 95, 101, 112, 121, 122, 123, 132, 161, 163, 164, & 167. The vast majority of these applications discuss the same conclusory allegations and speculation regarding threats to his physical safety. Noticeably lacking from these applications, which span almost three years, is any indication that Plaintiff has actually been subjected to any physical violence during his time at Shawangunk, that in any way relates to this litigation.

4    Plaintiff claims that he is seeking this video because he is concerned that Defendants and other corrections officers are tampering with his mail and that it is not reaching the Court. *See* Dkt. No. 151 at 1–2. One need only glance at the docket in this matter and in the numerous other cases Plaintiff has commenced to know that the vast majority, if not all of Plaintiff's submissions to the Court, have actually been mailed to the Court. Despite the fact that this case has not yet progressed beyond the motion to dismiss stage, there are nearly 170 docket entries in this matter, the vast majority of which are submissions by Plaintiff.

1    Judge D'Agostino again dismissed all claims against defendants Schneiderman, Bellamy, and Prack because the amended complaint did not adequately allege their personal involvement. (Dkt. No. 85 at 3–5).

2    Plaintiff has subsequently attempted to file two motions to further amend or supplement his complaint (Dkt.Nos.77, 146); but this court has denied both motions because of plaintiff's failure to support his motions with a proposed amended pleading, and because his submissions were " 'exceedingly confusing,' piecemeal, and lengthy." (Dkt. No. 147 at 4 (citing Dkt. No. 98 at 7–8), 7).

3    C.O. North, who is no longer an active DOCCS employee (Dkt. No. 91), has not been served with the amended complaint and is not currently represented in this action. The Attorney General's Office represents former DOCCS Commissioner Brian Fischer, Supt. Joseph T. Smith, Dep. Supt. W. Maly, C.O.J. Stefinik, Lt. J. Gardner, C.O. Stone, Dep. Com. Lucien LeClaire, Sgt. Aube, C.O. Gaye (John Doe), C .O. Keys, Cpt. L. Pingott, C.O.D. DeGraff, Sgt. Preston, C.O. R. Cutler, C.O. Budziszewski, C.O. R. Kane, and C.O. J. Peterson. (Def .s' Mem. of Law at 1, Dkt. No. 134–1). Plaintiff apparently

misspelled the names of defendants Pingott and Peterson in his papers; the court will use the spellings from defense counsel's papers.

4    Because the pages of the amended complaint are not all consecutively numbered, the court will refer to the pages in the header added, upon filing, by the court's CM–ECF system.

5    Many courts in this Circuit have discussed whether all of the personal involvement factors, set forth in *Colon,* are still viable after *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). *See, e.g., Conklin v. County of Suffolk,* 859 F.Supp.2d 415, 439 (E.D.N.Y.2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon. Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.' " *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.,* 811 F.Supp.2d 803, 815 (S.D.N.Y.2011)). See also *Young v. Choinski,* 15 F.Supp.3d 172, No. 3:10–CV–606, 2014 WL 962237, at *10–12 (D.Conn. Mar. 13, 2014) ("Although *Iqbal* does arguably cast doubt on the viability of certain categories of supervisory liability, where the Second Circuit has not revisited the criteria for supervisory liability, this Court will continue to recognize and apply the *Colon* factors.").

6    In his response to the Rule 12(b)(6) motion, plaintiff attempts to bolster his claim that former Com. Fischer was "personally involved" in violations of plaintiff's constitutional rights. Plaintiff claims that, while the Commissioner was visiting Shawangunk "during this period," plaintiff overheard him comment "Oh, that's Toliver[;] good job with him." (Dkt. No. 145–1 at 58–59). While it is not clear when plaintiff claims defendant Fischer made this remark, it is recounted in the context of plaintiff's discussion about incidents in late 2013, well after his filing of the amended complaint. This ambiguous remark, if it was indeed made by defendant Fischer, would not seem probative of his personal involvement in the alleged constitutional violations recounted in the amended complaint. In any event, generally one cannot amend a complaint in a response to a motion to dismiss. *Chamberlain v. City of White Plains,* 986 F.Supp.2d 363, 390 n. 19, (S.D.N.Y.2013) (*citing Wright v. Ernst & Young, LLP,* 152 F .3d 169, 178 (2d Cir.1998)).

7    The Second Circuit concluded, however, that "[w]hen allegations of improperly denied medical treatment come to the attention of a supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate him from responsibility for allowing the continuation of allegedly unlawful policies within his supervisory responsibility." 386 F.3d at 438.

8    In his response to the motion to dismiss, plaintiff tried to bolster his showing of personal involvement of Dep. Supt. Maly by making allegations about his oversight of a disciplinary hearing in July 2012, after Maly had been served with the amended complaint in this action. (Dkt. No. 145–1 at 61–62). Based on the authority stated above, the court cannot decide the pending motion to dismiss based on plaintiff's attempt to rely on new allegations outside of the time frame of the operative amended complaint, without making a proper motion to supplement.

9    For example, plaintiff alleges that after denying plaintiff's grievance in July 2011 (Dkt. No. 27 at 20), the Superintendent affirmed the guilty disposition on a misbehavior report issued by C.O. Stone in October 2011 alleging that plaintiff failed to obey an order with respect to getting out of his wheelchair and storing it (Dkt. No. 27 at 52–54).

10   *See* section VII B, below.

11   Plaintiff's 81–page amended complaint is disorganized and often unclear about significant factual details. The court has construed plaintiff's pro se pleading liberally, as required by Second Circuit authority.

12   In plaintiff's response to the Rule 12(b)(6) motion, he asserted that defendant Cutler was another "co-worker and friend" who worked on the same housing unit as the other defendants. (Dkt. No. 145–1 at 11–12).

13   Plaintiff asserted, in his response to the Rule 12(b)(6) motion, that defendant DeGraff was a "friend of Defendants Stef[i]nik, Pet[ ]erson, K[ ]ane, Cutler and Keys." (Dkt. No. 145–1 at 13). The amended complaint also alleges that plaintiff filed another grievance, on March 22, 2011, alleging, *inter alia,* that unspecified officers tampered with his food. (Dkt. No. 27 at 11). Plaintiff alleges that he filed additional 2011 grievances on March 25, March 30, April 22, and May 6 implicating defendants Pingott, DeGraff, and unspecified others, the last of which was denied by Supt. Smith. (Dkt. No. 27 at 11–12, 20–21, 29).

14   C.O. Bucci is not named as a defendant in the amended complaint.

15   Plaintiff alleges he filed another grievance with respect to the duration of his showers on December 12, 2011, but the amended complaint does not specify whether defendant Budziszewski was named in that grievance. (Dkt. No. 27 at 12–13).

16   Plaintiff, in his response to the Rule 12(b)(6) motion, claimed that, at some point before the February 6, 2012 misbehavior report was filed, defendant Budziszewski, promised to " 'get plaintiff again' for the grievances." (Dkt. No. 145–1 at 22).

2015 WL 403133

**17**  Because defendant North has not appeared in this case and is not a party to the pending Rule 12(b)(6) motion, the court will not address the allegations of retaliation against C.O. North.

**18**  "To withstand intermediate scrutiny, a classification must be 'substantially related to an important government interest.' ... 'Substantially related' means that the explanation must be 'exceedingly persuasive.' " 699 F.3d 185 (citations omitted).

**19**  The Supreme Court in *Windsor* did not consider whether homosexuals constitute a suspect class. 133 S.Ct. at 2695–96.

**20**  In his response to the Rule 12(b)(6) motion, plaintiff also argues that he was denied equal protection because, by requiring him to store and retrieve his wheelchair under physically difficult circumstances, the defendants treated plaintiff differently from "similarly situated inmates using wheelchairs and/or walkers." (Dkt. No. 145–1 at 19). While this equal protection claim is more difficult to discern from the amended complaint, the court will not preclude plaintiff from pursuing this claim, without prejudice to the defendants challenging it in a subsequent summary judgment motion.

**21**  *See, e.g., Medina v. Hunt,* No. 9:05–CV–1460, 2008 WL 4426748, at *8–10 (N.D.N.Y. Sept. 25, 2008) (a triable issue of fact exists regarding whether officers acted pursuant to their personal interests where a prisoner alleged that officers assaulted him in retaliation for participating in a federal lawsuit); *Hill v. City of New York,* No. 03 CV 1283, 2005 WL 3591719, at *6 (E.D.N.Y. Dec. 30, 2005) (finding that the personal interest exception applies, and allowing conspiracy claims to proceed, where it was alleged that officers conspired to cover up their use of excessive force); *Randle v. Alexander,* 960 F.Supp.2d 457, 475 (S.D.N.Y.2013) (there is no fair interpretation of plaintiff's allegations that suggests that the defendants were acting within the scope of their responsibilities as prison guards when they forced plaintiff and another inmate to fight each other in the mantrap area, and then tried to cover up the fight).

**22**  The courts notes that, as in *Rahman v. Fischer,* 2012 WL 4492010, at *13 n. 18, plaintiff's conspiracy claim "appears largely duplicative of many of the other claims raised in his [Amended] Complaint."

**23**  Most, if not all, of the disciplinary proceedings against plaintiff involved "Tier II" hearings, for which the maximum possible confinement was 30 days of segregated housing or keeplock. *See* N.Y. Comp.Codes R. & Regs. tit. 7 § 253.7(a)(1)(iii). The federal district courts in New York, applying *Sandin,* have consistently held that terms of special housing or "keeplock" of approximately 30 days, and the related loss of privileges, do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement. *See, e.g., Brown v. Secore,* 9:08–CV–085, 2010 WL 980233, at *5 (N.D.N.Y. Mar. 15, 2010) (collecting cases); *Pilgrim v. Bruce,* 9:05–CV–198 (GLS/GHL), 2008 WL 2003792, at *15 (N.D.N.Y. May 7, 2008) (plaintiff's conclusory allegations, which notably do not include claims that he was denied food, clothing, bedding, heat, running water, toiletries, or medicine during his 60 days in keeplock, fail to establish that he was subjected to more severe conditions than in normal restrictive confinement); *Holland v. Goord,* 05–CV–6295, 2006 WL 1983382, at *7 (W.D.N.Y. July 13, 2006) (77 days in keeplock during which plaintiff was deprived of TV, phone, packages, and commissary, and was unable to go to Muslim services and classes, did not create a protected liberty interest). However, defendants' pending motion does not challenged plaintiff's due process claim on the basis that he was not deprived of a liberty interest (perhaps because he received multiple, sequential disciplinary sentences); so the court will not address that issue.

**24**  Elsewhere in the amended complaint, plaintiff seems to allege that his physical collapses while storing or retrieving his wheelchair happened in March 2011, not May 2011. (Dkt. No. 27 at 45).

**25**  The amended complaint seems to allege that plaintiff collapsed under similar circumstances on at least one subsequent occasion. (Dkt. No. 27 at 23–24).

---

**End of Document**                                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2822199
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Harold VERLEY, Plaintiff,

v.

Dr. Lester N. WRIGHT, Chief Medical
Officer and Associate Commissioner
of the New York State Department of
Correctional Services, et. al., Defendants.

No. 02 Civ. 1182(PKC).
|
Sept. 27, 2007.

*MEMORANDUM AND ORDER*

P. KEVIN CASTEL, U.S.D.J.

**\*1** Plaintiff Harold Verley, proceeding *pro se,* brings this action pursuant to 42 U.S.C. § 1983 against Dr. Lester N. Wright, Dr. Carl J. Koenigsmann and Dr. Steven Weinstein, each of whom is employed by the New York State Department of Corrections ("DOCS") as a physician (collectively, the "State Defendants"). Also named as defendants are Corrections Physician Services, Inc., ("CPS") and Prison Health Services, Inc., ("PHS") (collectively, the "Corporate Defendants"). Verley suffers from hepatitis C and contends that defendants have violated his rights under the Eighth and Fourteenth Amendments by withholding treatment with deliberate indifference to his medical needs. Plaintiff seeks injunctive, declaratory and monetary relief.

The State and Corporate Defendants now move for summary judgment in their favor. I conclude that plaintiff has failed to administratively exhaust his remedies as to all claims against the State Defendants, with the exception of his claim against defendant Wright for denial of interferon/ribavirin treatment and his claim against defendant Koenigsmann for denial of the referral to a nutritionist and hepatologist. As to defendant Wright, plaintiff has raised a triable issue of fact on the deliberate indifference claim against him; however, I conclude that the claim is barred by the doctrine of qualified immunity. As to defendant Koenigsmann, plaintiff has failed to come

forward with evidence which would permit a reasonable factfinder to conclude that he acted with deliberate indifference to plaintiff's medical needs. Plaintiff's claims for money damages against the State Defendants in their official capacities are also barred by sovereign immunity. Plaintiff's claims for declaratory and injunctive relief are deemed moot because of his transfer from the Green Haven Correctional Facility ("Green Haven") to a different facility and because he has received the treatment he initially sought.

The Corporate Defendants do not assert that the exhaustion requirement applies to them. However, plaintiff has failed to come forward with evidence which would permit a reasonable factfinder to find in his favor as against the Corporate Defendants.

For the reasons more fully explained below, summary judgment is granted dismissing plaintiff's claims.

BACKGROUND

A. *Procedural Background*

Defendants, with the exception of Wright and Koenigsmann, moved pursuant to Rule 12(b)(1), (2), and (6), Fed.R.Civ.P., to partially dismiss the Complaint. (Docket # 13, 20, 28) The motions were referred to Magistrate Judge Debra C. Freeman.

In a Report and Recommendation dated January 22, 2004 (the "R & R"), Magistrate Judge Freeman recommended that the Court dismiss all claims against defendants Glenn S. Goord, Charles E. Greiner, Donald Stevens, Dr. Thomas Rush, Dr. Michael Antonelle, Vincent Marrone, Dr. Rosensweig and Phillip Marron, but deny the motion to dismiss claims against defendants CPS and PHS; the Magistrate Judge also recommended denial of Verley's motion to amend certain portions of the Complaint. (Docket # 90) Despite twice seeking extensions of his time to object to the R & R, no objections were received from plaintiff. The Corporate Defendants timely filed objections. On June 2, 2004, I issued an Order which adopted in its entirety the R & R of Magistrate Judge Freeman. (Docket # 94)

**\*2** In their submissions on the present motion, the Corporate Defendants have annexed a "Second Amended Complaint" ("SAC"). (Corp. Defs. Rule 56.1 Stmt. Exh. A) Plaintiff sought and received permission to file a SAC,

(Docket # 107) but the SAC does not appear to have been filed with the Clerk. On the motions, all parties direct their arguments to the SAC and I will therefore consider it the operative pleading and deem it to have been filed.

A. *Background*

Since 1990, plaintiff has been incarcerated within DOCS. In late 1996, physicians at Green Haven, where plaintiff was then located, noted elevated enzyme levels in plaintiff's blood. (Johnson Dec. Exh. E) Following testing in 1997, plaintiff was told that he was likely infected with the hepatitis C virus ("HCV"). (Verley Dec. ¶ 34) HCV is a chronic, viral liver disease. (Verley Brief in Opp. Exh. R; Johnson Dec. Exh. I-1) No broadly effective treatment for HCV exists, although the most successful treatments are a regimen of interferon, ribavirin or some combination thereof. (Verley Brief in Opp. Exh. N; Johnson Dec. Exh I-1)

Plaintiff contends that his "medical provider," a physician assigned to provide medical services to inmates, told him that he should "consider" undergoing a liver biopsy, the most accurate method of testing for HCV, in order to confirm the diagnosis. Plaintiff claims that he was denied a biopsy for over a year, despite having obtained several referrals for one from his medical provider at Green Haven. (Verley Exh. I at 12-17) Verley underwent a liver biopsy on October 6, 1998, which resulted in a finding of "Chronic Hepatitis, Consistent with Hepatitis C, Grade 2, Stage 2." (Verley Exh. I at 20) On or about December 26, 1998, Dr. Thomas Rush, an Infectious Disease Control Specialist at Green Haven, ordered that plaintiff begin combination interferon/ribavirin ("IR") therapy immediately. [1] (Verley Dep. 41-42; Defs. 56.1 ¶ 15)

On February 12, 1999, plaintiff was denied participation in an IR therapy program by defendant Wright, the Associate Commissioner and Chief Medical Officer of DOCS, on the basis that plaintiff did not satisfy the preconditions set forth in the 1998 preliminary protocol (the "1998 Protocol") which governed treatment of HCV within DOCS. (Johnson Dec. Exh. I-4, Q; Johnson Dec. Exh. A, Wright Dec. ¶ 8) The 1998 Protocol was the precursor to the Clinical Practice Guideline on Hepatitis C (the "Guideline") which went into effect on March 31, 1999. (Johnson Dec. Exh. I-5) The 1998 Protocol and the Guideline provide that treatment must not be given

to anyone with "evidence of active substance (alcohol or drug) use during the past two years." (Johnson Exh. I-4 ¶ 2; Exh. I-5 at 3)

Plaintiff was found guilty of two disciplinary violations relating to two separate instances of drug use which occurred in November of 1998. (Johnson Dec. Exhs. K, J) The first incident occurred on November 13, 1998 when a search of plaintiff's cell resulted in the confiscation of five small bags of a substance later determined to be marijuana. (Johnson Dec. Exh. K) Plaintiff was charged with, and pled guilty to, drug possession in violation of prison regulations. (*Id.*) Prior to this incident, plaintiff had been twice tested for drugs and tested negative both times. (Johnson Dec. J "Hearing Transcript" at 17) As a result of this disciplinary violation, plaintiff was placed on a list of inmates subject to random drug testing which he underwent on November 24, 1998. (Johnson Dec. Exh. J) The test resulted in a finding that Verley's urine was "positive for contraband," namely cannabinoid. (*Id.*) A second test confirmed the first result. (*Id.*) In response to the test results, plaintiff was charged with, and pled guilty to, use of a controlled substance in violation of prison regulations. The fact that plaintiff had not been free from drug use for two years as the 1998 Protocol required caused Wright to deny him IR therapy. (Johnson Dec. Exh. Q)

**\*3** Plaintiff filed a grievance challenging the denial of IR therapy, pursuing the claim through the DOCS grievance procedure and culminating in an Article 78 proceeding in New York Supreme Court. (Verley Aff. Exh. L) In a Decision and Order dated May 1, 2000, Justice Judith A. Hillery concluded "that Dr. Wright demonstrated a deliberate indifference to petitioner's serious medical needs" by denying him IR therapy. (*Id.* at 5) She ordered that plaintiff be immediately enrolled in IR therapy.

Thereafter, plaintiff was admitted to IR therapy but did not respond favorably to the treatment. In August 2001, Rush recommended that plaintiff be given a new type of Interferon treatment called Pegelated Interferon ("PegIntron"), upon its approval by the Food and Drug Administration ("FDA"). (Verley Dep. 57) Plaintiff alleges that PegIntron therapy was approved by the FDA but, despite his repeated requests, he was denied access to it by Wright. (SAC ¶ 24; Verley Dep. 58) Plaintiff contends that the initial denial of IR therapy, delay in his receipt of medical treatment and the denial of

PegIntron, combined to result in his suffering additional ills, including loss of hearing. (Verley Dep. 49; 51-52) In addition to claiming that Wright acted with deliberate indifference toward plaintiff's specific medical condition, he alleges that Wright improperly failed to develop a tracking system or other procedure to monitor inmates with chronic illnesses (the "Monitoring Claim"). (SAC ¶ 25; Verley Dep. 61-63)

Plaintiff also contends that in May 2001, Koenigsmann, Facility Health Services Director at Green Haven, improperly denied him access to the services of a hepatologist, dermatologist and nutritionist on the basis that he had already seen a gastroenterologist ("GI"). (Verley Dep. 72, 74-75; Verley Dep. 61-62) He claims that Koenigsmann denied him a follow-up appointment with the GI, despite a referral for the appointment from his medical provider. (Verley Dep. 75; Johnson Dec. Exh. E "Def" 234) Plaintiff contends that the real reason for the denial of medical treatment by Koenigsmann was a desire to have plaintiff transferred to another facility.

In October 2001, plaintiff complained to Dr. Steven Weinstein, an outside medical consultant at Green Haven, about back pain he believed was attributable to an old gun shot wound and "HCV related neuropathy." (SAC ¶ 35) Following testing, Weinstein determined that Verley had no apparent nerve damage. Plaintiff asserts that Weinstein reached this conclusion by ignoring prior tests which showed nerve damage. (Pl. "Statement of Disputed Factual Material Issues of Fact" ¶ 4) Plaintiff contends that Weinstein's report "was based on personal opinion, not sound medical information." (Id.) When plaintiff questioned the diagnosis, Weinstein allegedly became verbally abusive toward plaintiff. (Id. ¶ 25; Verley Dep. 76) Plaintiff alleges that Weinstein deliberately disregarded any indication that plaintiff may have experienced pain or nerve damage "out of spite" and personal dislike of plaintiff. (SAC ¶ 36)

*4 Defendant CPS is a corporate entity which in February 1998 contracted with DOCS to provide off-site review of referrals of DOCS inmates to medical specialists.[2] (CPS 56.1 Stmt. ¶¶ 20-21) According to the terms of the contract, CPS was to "provide or arrange for the provision of all medically necessary specialty physician services ... and to manage the delivery of hospital service to the [inmate] Population ...." (CPS 56.1 Stmt. ¶ 23, Exh. I § 1) As part of its services, CPS engaged in a process

of preadmission certification to determine "whether the inpatient care proposed by a physician is appropriate and required" and conducted reviews of patient care. (CPS 56.1 Exh. I § 3.G) If CPS declined to permit a patient to be seen by a specialist, despite a referral from the patient's physician, DOCS could require a review by a committee of two DOCS representatives and two CPS representatives, all of whom are physicians or health professionals. (Id.) CPS did not provide direct care to DOCS inmates. (CPS Stmt. ¶ 34) Verley appears to contend that CPS was, at least partially, responsible for denying him both the IR therapy and the PegIntron treatments and that these decisions by CPS were motivated by its desire to save money. (Verley Dep. 86; 100-02; SAC ¶ 37) As a result of the denial of the referrals to see specialists, plaintiff contends that he has suffered a "compromised liver," hearing difficulties and joint and muscle pain. (Verley Dep. 119)

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law ...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir.2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Rule 56(e), Fed.R.Civ.P. In raising a triable issue of fact, the nonmovant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific

facts showing that there is a genuine issue for trial.' " *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir.2004) (quoting *Aslanidis v. United States Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993)).

**\*5** An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (quotations and citations omitted); *accord Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. *See* Rule 56(c), Fed.R.Civ.P. In the absence of any disputed material fact, summary judgment is appropriate. *Id.*

Plaintiff has been served with the requisite "Notice to Pro Se Litigants Opposing Summary Judgment" required by Local Rule 56.2. A *pro se* party's submissions are to be read liberally, a requirement that is especially strong in the summary judgment context, where a *pro se* plaintiff's claims are subject to a final dismissal. *See Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988) ("[S]pecial solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment.") However, a party's *pro se* status does not alter the obligation placed upon the party opposing summary judgment to come forward with evidence demonstrating that there is a genuine dispute regarding material fact. *Miller v. New York City Health & Hosp. Corp.,* 2004 WL 1907310, \*9 (S.D.N.Y. Aug. 25, 2004).

### B. *Claims Against the State Defendants*

#### a. *Failure to Exhaust*

The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.,* was enacted in an effort to address the large number of prisoner complaints filed in federal court. *See Porter v. Nussle,* 534 U.S. 516, 524 (2002) (The PLRA is intended to "reduce the quantity and improve the quality of prisoner suits.") The PLRA does not itself create any substantive rights but "claims covered by the PLRA are typically brought

under 42 U.S.C. § 1983 ...." *Jones v. Bock,* --- U.S. ----, 127 S.Ct. 910, 919 (2007). Under the provisions of the PLRA, "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any ... correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is intended to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter,* 534 U.S. at 524-25. The Supreme Court has made clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life." *Id.* at 532. Within the Second Circuit, failure to exhaust administrative remedies is an affirmative defense and the defendant therefore bears the burden of proving that claims have not been exhausted. *See Jenkins v. Haubert,* 179 F.3d 19, 28-29 (2d Cir.1999). Where a complaint contains claims which are exhausted and claims which have not been properly exhausted, the Court must dismiss only the unexhausted claims and not the complaint in its entirety. *Bock,* 127 S.Ct. at 924.

**\*6** DOCS has a well-established, three-step, administrative procedure for inmate grievances called the inmate grievance program ("IGP"). N.Y. Correction Law § 139 (2003). First, an inmate must file a complaint with the Inmate Grievance Resolution Committee ("IGRC") at his facility. 7 N.Y.Codes R. & Reg. ("NYCRR") § 701.5(a)(1). Absent mitigating circumstances, in order to be timely, a grievance must be filed within 21 days of the alleged incident. 7 NYCRR § 701 .5(a)(1). If the IGRC is unable to resolve the dispute to the satisfaction of the grievant, a hearing must take place within 16 days of the IGRC's receipt of the grievance. § 701.5(b) (2) After receiving a response from the IGRC, an inmate has seven days in which to appeal to the superintendent of his facility. § 701.5(c) (1). If the IGRC does not respond to an inmate's initial grievance, the inmate may still appeal to the superintendent. § 701.8. Finally, the inmate may appeal the decision of the superintendent to the Central Office Review Committee ("CORC") within seven days of receiving the decision. § 701.5(d)(1)(i). The CORC "consists of the deputy commissioner and counsel, deputy commissioner for correctional facilities, deputy commissioner for program services, deputy commissioner for administrative services, and the deputy commissioner and chief medical officer, or their designees expressly authorized to act for them." § 701.5(d)(2)(i). An inmate

2007 WL 2822199

may attend a hearing or appeal a grievance unaided or aided by a member of staff or an other inmate. 7 NYCRR § 701.6(a).

The State Defendants contend that plaintiff has failed to exhaust his administrative remedies in regard to the claims against Weinstein, the claim against Koenigsmann as it pertains to the dermatology referral, the claims against Wright in relation to plaintiff's biopsy and denial of HCV retreatment with PegIntron and the Monitoring Claim. Plaintiff's claims against Wright relating to the denial of IR therapy and against Koenigsmann for declining to permit him to see a nutritionist and hepatologist are indisputably exhausted.

Plaintiff appears to contend that the PLRA applies only to administrative remedies "as are available" and there are "no remedies available to exhaust any medical issue" which renders such an issue "ungrievable." Plaintiff also claims that physicians cannot be compelled to comply with the final determination regarding the IGP complaint and thus a grievance proceeding cannot afford a meaningful remedy. Further, plaintiff contends that because of the "diversity of opinions amongst District Court Judges, as to whether the exhaustion requirement, as applied by DOCS, is more of a punative mechanism or fair mechanism for redress of wrongful acts ... there are material issues which should go before trial." (Pl. Brief in Op. at 21)

Verley acknowledged at his deposition that he did not file a grievance in regard to the Monitoring Claim and there is no evidence in the record that such a grievance was filed. (Verley Dep. 64-65) Accordingly, the Monitoring Claim is unexhausted and is dismissed.

**\*7** In regard to Verley's claims against Koenigsmann as they relate to the dermatology referral, Verley testified at his deposition that he did submit a grievance relating to that claim. (Verley Dep. 72) However, there is no record of such a grievance being filed. (Johnson Dec. Exh. P) While Verley did file a grievance against Koenigsmann regarding the denial of a referral to a hepatologist and nutritionist, he did not include the dermatological referral in the grievance and that claim is therefore unexhausted. (Johnson Dec. Exh. G) In response to defendants' evidence, plaintiff failed to come forward with evidence that he exhausted his dermatological claim. His

conclusory assertion that he exhausted the claim, without more, is insufficient to raise a triable issue of fact.

As to claims against Wright, it appears from the record that plaintiff only filed a grievance relating to the denial of the referral for IR therapy. (Johnson Dec. Exh. H, P) Accordingly, any other claim against Wright, including those claims relating to the delay in plaintiff's biopsy or the denial of PegIntron, has not been exhausted. [3] Plaintiff's claims against Weinstein are also unexhausted as plaintiff failed to file any grievance relating to Weinstein's alleged deliberate indifference to either his gunshot wound or his "HCV related neuropathy."

This is not a case where the claim is perceived to be unexhausted simply because plaintiff did not name in his grievance a party who he has now sued. *See Block,* 127 S.Ct. at 923. These are claims which have not been the subject of grievance proceedings.

In *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004), the Second Circuit summarized its holdings in a series of cases as requiring that a three-part inquiry be undertaken when a prisoner counters a defendant's argument that he or she failed to exhaust. First, the court considers whether administrative remedies were "available" to the prisoner. *Id.* (citing *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004)). Second, the court inquires whether the defendants failed to preserve a non-exhaustion argument by failing to raise the issue or preserve it. *Hemphill,* 380 F.3d at 868 (citing *Johnson v. Testman,* 380 F .3d 691 (2d Cir.2004)). Third, the court looks to whether the defendant's own actions inhibited the inmate's exhaustion of remedies, and if so, whether the actions estopped one or more defendant from raising non-exhaustion. *Hemphill,* 380 F.3d at 868 (citing *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004)). If, after considering these three questions, the court finds that administrative remedies were available to the plaintiff, and that defendants are not estopped and have not forfeited their non-exhaustion claims, but that the plaintiff still failed to exhaust, the court considers whether plaintiff plausibly alleges "special circumstances" that justify the prisoner's failure to comply with the exhaustion requirements. *Id.*

**\*8** Here, plaintiff has failed to demonstrate that the administrative remedies were not, in fact, "actually available to him." *Hemphill,* 380 F.3d at 686. It is sheer speculation that meaningful relief, such as a transfer to

2007 WL 2822199

another correctional facility with different medical staff and access to other medical facilities, could not have been afforded. Moreover, the Supreme Court has noted that the exhaustion requirement is a legislative mandate that has several important purposes, beyond the direct availability of relief to the prisoner. *Woodford v. Ngo,* 126 S.Ct. 2378, 2385-88 (U.S. June 22, 2006). DOCS has a meaningful grievance procedure which was fully available to plaintiff.

The State Defendants have preserved their exhaustion argument. Exhaustion arguments were timely raised on the motion to dismiss and in both the Answers to the SAC and the original Complaint. (Doc. # 22, 116 ¶ 32)

Finally, there is no evidence in the record that defendants have inhibited plaintiff from administratively exhausting his remedies or used coercive pressure to induce plaintiff not to file a grievance. Rather, the record before the Court indicates that plaintiff was able to file at least seven grievances during his incarceration at Green Haven. (Johnson Dec. Exh. P) There is no evidence of undue delay in the handling of plaintiff's grievances. *See Manos v. Decker,* 2005 WL 545215 (S.D.N.Y. Mar. 7, 2005). The grievance filed in relation to the denial of IR therapy was filed on February 18, 1999 and finally decided by CORAC less than two months later on April 7, 1999. (Johnson Dec. Exh. H) Similarly, the grievance relating to the referrals for a nutritionist and hepatologist was filed on August 8, 2001 and decided by the Superintendent less than a month later. (Johnson Dec. Exh. G) There is also no evidence of "special circumstances" which would excuse plaintiff's failure to exhaust his administrative remedies.

Accordingly, the Monitoring Claim, all claims against Weinstein, the dermatology claim against Koenigsmann and all claims against Wright with the exception of the claim relating to the initial denial of IR therapy are dismissed on exhaustion grounds.

### b. *The Eleventh Amendment*

In prohibiting suits against states, the Eleventh Amendment confirms two presuppositions of constitutional proportion: "first, that each State is a sovereign entity in our federal system; and second, that [i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent,' " *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54 (1996) (alteration in original; citations and quotations omitted). "Sovereign immunity does not merely constitute

a defense to monetary liability or even to all types of liability. Rather, it provides an immunity from suit." *Federal Maritime Com'n v. South Carolina State Ports Authority,* 535 U.S. 743, 766 (2002). Sovereign immunity may be abrogated by Congressional action, *see Seminole,* 517 U.S. at 55, or a state may waive its immunity provided it does so in an unequivocal fashion, *see Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238 n. 1 (1985), *CSX Transportation, Inc. v. New York State Office of Real Property Services,* 306 F.3d 87, 95 (2d Cir.2002). Section 1983 does not abrogate a state's Eleventh Amendment immunity and there has been no waiver for section 1983 claims on the part of the State of New York. *See Quern v. Jordan,* 440 U.S. 332 (1979). Absent waiver or abrogation, sovereign immunity extends to all agencies and officials sued in their official capacity because the State is the real party in interest. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 484-86 (1994); *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Suits asserting official capacity claims against employees of DOCS and its facilities have been held to be subject to the State's Eleventh Amendment immunity. *See, e.g., Davis v. New York,* 316 F.3d 93, 101 (2d Cir.2002) (Commissioner of DOCS and officials of Attica).

**\*9** The SAC reflects that all of plaintiff's claims against the State Defendants are asserted against them in their individual and official capacities. (SAC ¶¶ 9-12) Plaintiff's claims for injunctive or declaratory relief and his claims against the State Defendants in their personal capacities are not barred by the Eleventh Amendment. *See id.* at 101-02 (citing *Hafer v. Melo,* 502 U.S. 21, 27-31 (1991); *Kostok v. Thomas,* 105 F.3d 65, 69 (2d Cir.1997)). Plaintiff's claims for money damages against the State Defendants in their official capacities are dismissed.

### c. *Claims for Injunctive and Declaratory Relief*

Subject matter jurisdiction requires that there be an actual controversy "at all stages of review, not merely at the time the complaint is filed." *Prins v. Coughlin,* 76 F.3d 504, 506 (2d Cir.1996) (citing *Preiser v. Newkirk,* 422 U.S. 395, 402 (1975)). According to the Second Circuit, "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir.2006) (citing *Prins,* 76 F.3d at 506). While the issue of mootness was not raised by any party, the Court may nonetheless consider it *sua sponte. See Prins,* 76 F.3d at 506. [4]

Plaintiff seeks "a preliminary injunction permanently enjoining defendant's [sic], their agents, employees, assigns, and other persons acting in concert with them or their behalf" from "making plaintiff's Hepatitis C treatment contingent upon other factors than sound medical practice and science" as well as compelling the State Defendants to "promulgate new Hepatitis C treatment guidelines consistent with prevailing professional norms, establish and maintain an adequate pain management regiment ... and to establish a uniformity and systematic system of prison health care." (SAC "Wherefore Clause" A-C) During the events giving rise to this case, plaintiff was incarcerated at Green Haven. On February 18, 2003, Verley was transferred to the Fishkill Correctional Facility ("Fishkill"). (Doc. # 50) On April 30, 2003, Verley was again transferred to the Auburn Correctional Facility ("Auburn"). (Doc. # 74) He was then transferred to Marcy Correctional Facility ("Marcy"), Doc. # 140, then to Mohawk Correctional Facility ("Mohawk"), Doc. # 146, and finally back to his current location at Marcy, Doc. # 158. To the extent that plaintiff seeks injunctive and declaratory relief directed at officials at Green Haven, those claims are now moot as plaintiff is no longer incarcerated at the Green Haven facility. Thus, the claim for injunctive and declaratory relief against Koenigsmann and Weinstein, who are based at Green Haven, is dismissed.

The claim for injunctive and declaratory relief is not moot against Wright who is a state-wide DOCS official. However, to the extent that the claims for injunctive and declaratory relief seek to have Wright implement a "uniform and systematic" method of tracking and treating inmates suffering from HCV, those claims are part of the Monitoring Claim which is unexhausted and, hence, are dismissed.

**\*10** Plaintiff also seeks an injunction enjoining Wright from "making plaintiff's Hepatitis C treatment contingent upon other factors than sound medical practice and science ...." As a result of the Article 78 proceeding before Justice Hillery, plaintiff received a full course of IR therapy. Plaintiff has failed to come forward with any evidence that there is "a likelihood that he ... will be injured in the future," in respect to the receipt of IR therapy or any other medical treatment. *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998). Any threat of injury to plaintiff is, at this time, merely hypothetical, which is insufficient to warrant injunctive or declaratory relief. *See O'Shea v. Littleton,* 414 U.S. 488, 494-96 (1974) (injunctive relief); *Irish Lesbian and Gay Organization v. Giuliani,* 143 F.3d 638, 647 (2d Cir.1998) (declaratory relief). Summary judgment is granted dismissing all of plaintiff's claims against Wright seeking declaratory and injunctive relief.

### C. *Verley's Eighth Amendment Claims Against the State Defendants and the Corporate Defendants*

According to established law, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *See Helling v. McKinney,* 509 U.S. 25, 31 (1993). The Cruel and Unusual Punishments Clause of the Eighth Amendment requires that prison officials ensure that inmates receive adequate medical care. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). However, "not every lapse in medical care is a constitutional wrong." *Salahuddin,* 467 F.3d at 279. An inmate does not state a cognizable Eighth Amendment claim by merely disagreeing with prison officials about what constitutes appropriate medical care. *See Ross v. Kelly,* 784 F.Supp. 35, 44 (W.D.N.Y.1992), *aff'd,* 970 F.2d 896 (2d Cir.1992). Rather, a prison doctor's judgment regarding treatment is presumed valid absent proof that it was "such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Richardson v. Blanchette,* 2006 WL 496010, \*7 (D.Conn. Mar. 1, 2006) (citation and quotation omitted).

In the context of the denial of medical care, the actions of a prison official violate the Eighth Amendment only where two requirements, one objective and one subjective, are satisfied. *Farmer,* 511 U.S. at 834. The alleged deprivation of adequate medical care must be objectively "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). In determining whether a depravation of medical care is "sufficiently serious," courts consider whether the inmate was, in fact, deprived of medical care and whether there was harm, or is likely to be harm, from the alleged deprivation. *See Farmer,* 511 U.S. at 844-47; *Helling,* 509 U.S. at 32-33.

The second requirement for an Eighth Amendment violation, the subjective component of the inquiry, focuses upon whether the prison official acted with a sufficiently

2007 WL 2822199

culpable state of mind. *Wilson,* 501 U.S. at 300. A culpable state of mind may be demonstrated by proof that a prison official acted with deliberate indifference to an inmate's health needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference may be shown where the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer,* 511 U.S. at 837. Therefore, a prison official must be subjectively aware of the risk to the inmate that the official's conduct creates; it is insufficient for a plaintiff to demonstrate that a prison official was incorrect in his belief that an inmate is not at risk or that the belief itself was unsound under the circumstances. *See Salahuddin,* 467 F.3d at 281 ("The defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere. Thus, even if objectively unreasonable, a defendant's mental state may be nonculpable.").

a. *Claims Against Wright*

**\*11**  The State Defendants concede that HCV is a serious medical condition. (Mem. at 16); *Johnson v. Wright,* 412 F.3d 398 (2d Cir.2005). In regard to harm caused by the denial of medical treatment for his HCV, Verley has asserted that he suffered hearing loss and was told by Rush that his HCV had worsened by virtue of the initial denial of IR therapy. (Verley Dep. 39-41) Therefore, interpreting all facts in plaintiff's favor, I conclude that he has satisfied the first prong of the Eighth Amendment inquiry. The question now becomes whether Wright acted with a "sufficiently culpable state of mind," *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998), in denying plaintiff IR therapy.

In *Johnson v. Wright,* 412 F.3d 398, the Second Circuit reversed the district court's grant of summary judgment to defendants, including defendant Wright, in a case where the plaintiff, an HCV sufferer, contended that defendants had acted with deliberate indifference toward his medical needs by denying him ribavirin against the recommendation of his treating physicians. *See* 412 F.3d at 404-05. The evidence was that on a single occasion, the plaintiff had tested positive for marijuana and on this basis was denied the drug regimen despite the unanimous view of his treating physicians. *See id.* The Second Circuit concluded that a reasonable jury

could conclude that Wright and the other defendants had acted with a sufficiently culpable state of mind "by reflexively following the [Hepatitis C Primary Care Practice] Guideline's substance abuse policy" to deny plaintiff ribavirin therapy. *Johnson,* 412 F.3d at 406.

Here, Wright acted against the recommendation of plaintiff's treating physician, Rush, who had recommended plaintiff for IR therapy. In deciding to deny plaintiff IR therapy, Wright stated that there was "no detectable progression of plaintiff's Hepatitis C" although the "basis" on which he denied Verley's treatment was that "Verley had not been free from illicit drug abuse for a period of two years" as required under the 1998 Protocol. [5] (Wright Dec. ¶¶ 8, 17-18) Wright stated that Verley's drug use, specifically the two 1998 disciplinary citations for marijuana possession and use, caused him to conclude that Verley was "not committed to taking personal responsibility for assisting in his proposed course of treatment" and might "hinder or negatively impact the treatment." (Wright Dec. ¶¶ 16, 18) However, there is no indication in the record that there were any other legitimate compliance concerns regarding Verley's ability to adhere to the IR therapy treatment regimen. Verley has persistently sought treatment for his HCV. Further, when he was placed on a 24 week IR therapy treatment schedule which failed to yield results, Verley requested to continue on the 48 week treatment cycle, again evincing his commitment to receiving treatment despite potential side effects of IR therapy. (Verley Dep. 57)

This case presents facts different from those in *Johnson* in that Wright reviewed plaintiff's medical file prior to denying him IR therapy. However, both here and in *Johnson,* Wright denied an inmate medical treatment in reliance on prison protocol without consideration of the degree to which the inmate was non-compliant with the protocol. Here, there is evidence that would permit a reasonable factfinder to conclude that Wright did not act with a sufficiently culpable state of mind in denying plaintiff IR therapy. However, in view of *Johnson,* I conclude that a reasonable factfinder could find in Verley's favor. There is no evidence in the record before the Court that Wright balanced plaintiff's medical and disciplinary record against the recommendation of plaintiff's treating physician and then exercised his considered medical judgment to deny plaintiff IR therapy. Further, there is no indication that Wright even believed that he had the discretion to depart from the 1998 Protocol. Indeed, the

language of the 1998 Protocol is mandatory, stating that there *"must* be no evidence of active substance (alcohol or drug) use during the past two years" in order for an inmate to receive IR therapy. (Johnson Dec. Exh. I-4) (emphasis added) Applying *Johnson* to these facts, there is a triable issue of fact as to whether Wright, in denying plaintiff IR therapy, acted with deliberate indifference to plaintiff's medical needs.

b. *Claims Against Koenigsmann*

**\*12** The inquiry as to Koenigsmann turns on whether he acted with a "sufficiently culpable state of mind" in denying Verley consultations with specialists, including a nutritionist and hepatologist. These consultations were recommended in response to plaintiff's request by Dr. Bendheim, plaintiff's medical provider, on May 31, 2001. (Johnson Dec. Exh. E at DEF 234) While Koenigsmann did not follow Verley's treating physician's recommendation of a referral, he did so on the basis of his own medical judgment rather than in reflexive compliance with any prison medical policy. Koenigsmann denied plaintiff's request to see a specialist on the basis that plaintiff was seeing both Infectious Disease and Gastrointestinal Specialists. (*Id.;* Koenigsmann Dec. ¶ 10) He also relied on the fact that "there was no indication in [Verley's] medical records that the Infectious Disease consultant felt [Verley] needed to see a heptaologist," that Verley's condition was stable and that "there was no available retreatment approved by the FDA for patients" in Verley's circumstance who had failed to respond to IR therapy. (Koenigsmann Dec. ¶ 10) It was Koenigsmann's "professional judgment" that there was "no sound medical basis for granting Verley's May 31, 2001, request" to see a hepatologist. (*Id.* ¶¶ 10-11) Similarly, Koenigsmann concluded that, because Verley's weight had been managed without consulting a nutritionist, *Id.* ¶¶ 17-20; Johnson Dec. Exh. E at 244, Verley's health did not require a nutritional consultation. (Koenigsmann Dec. ¶ 22)

Plaintiff has failed to raise a triable issue of material fact as to the second prong of the deliberate indifference inquiry as to his claims against Koenigsmann. There is substantial evidence in the record that Koenigsmann reviewed plaintiff's file and made an independent medical determination that it was unnecessary for Verley to visit a specialist in light of the care that he was already receiving. *Cf. Johnson,* 412 F.3d at 404. Disagreement with a physician's decision, whether that decision is erroneous

or not, is insufficient to support a finding of deliberate indifference. *See United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970) ("[D]ifference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983."). There is insufficient evidence in the record before me to permit a reasonable factfinder to conclude that Koenigsmann knew of or disregarded an excessive risk to plaintiff's health or safety. *See Farmer,* 511 U.S. at 837. Summary judgment is therefore granted dismissing the claims against Koenigsmann.

c. *Claims Against the Corporate Defendants*

Plaintiff contends that "CPS and PHS' delay and denial of medical treatment to serious medical need constitutes a violation of the Eighth and Fourteenth Amendment[s] to the United States Constitution." (SAC ¶ 46) Although it is unclear from the face of the SAC precisely what medical treatment plaintiff alleges that he was denied by CPS and PHS, it appears that Verley contends that CPS denied him the PegIntron treatment and alternative treatment for HCV, specifically milk thistle. (Verley Dec. 102; 107) However, Verley concedes that no referral for a consultation regarding PegIntron was ever submitted to CPS. (Verley Dep. 108) There is no evidence in the record that a referral for alternative HCV treatment was ever submitted to CPS. While plaintiff contends that there are documents which "would have established the allegations" (Verley Dep. 102), plaintiff was offered a reasonable opportunity to conduct discovery and those documents are not part of the record before the Court. Therefore, even assuming that the first prong of the deliberate indifference inquiry were satisfied, there would be no basis on which a reasonable factfinder could conclude that the subjective component of the deliberate indifference inquiry is satisfied. Summary judgment is therefore granted to the Corporate Defendants.

D. *Qualified Immunity*

**\*13** The State Defendants contend that even if plaintiff has evidence of the denial of a constitutional or federally protected right by a state actor, the state actor is protected by the defense of qualified immunity. I need only consider the defense as to Wright, as it is only as to him that the claim would otherwise survive. "The doctrine of qualified immunity protects state actors sued in their individual capacity from suits for monetary damages where 'their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.' " *Baskerville v. Blot,* 224 F.Supp.2d 723, 737 (S.D.N.Y.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Immunity applies to "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). In considering whether defendant is protected by qualified immunity, a court "must first determine whether the facts alleged, taken most favorably to plaintiffs, demonstrate a violation of a constitutional right. Having already determined that they do, [the court] must turn to the second prong of the qualified immunity analysis and determine whether the defendants' actions violated clearly established constitutional rights of which a reasonable person would have known." *Zieper v. Metzinger,* 474 F.3d 60, 67 (2d Cir.2007) (internal citations omitted). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). The Second Circuit has stated that the right of prisoners to be free from deliberate indifference to serious medical needs under the Eighth Amendment is a clearly established right. *See LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998).

On a motion for summary judgment, dismissal of claims against a defendant on grounds of qualified immunity is appropriate only if "the evidence is such that, even when it is viewed in the light most favorable to the plaintiff [ ] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right." *McKenna v. Wright,* 2004 WL 102752, *8 n. 9 (S.D.N.Y. Jan. 21, 2004) (citation omitted), *aff'd,* 386 F .3d 432 (2004). A government official's actions are objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller,* 66 F.3d 416, 420-21 (2d Cir.1995) (citing *Malley,* 475 U.S. at 341). Whether or not a government official acts reasonably is determined by the state of the law applicable at the time of the alleged acts. *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998). Therefore, if reasonable medical professionals could disagree as to whether Wright's actions were unlawful under the then-applicable law, summary judgment in favor of Wright is appropriate. *Lennon,* 66 F.3d at 421. The "ultimate legal

determination whether ..." a government actor "... should have known he acted unlawfully is a question of law better left for the court to decide." *Id.*

**\*14** In a qualified immunity analysis, the court should first define the clearly established right which is allegedly violated by a defendant's conduct. The defense of qualified immunity was not before the Second Circuit in *Johnson v. Wright,* 412 F.3d at 406 n. 4. Thus, it was not necessary for the Court to define a right as clearly established within the meaning of *Saucier v. Katz,* 533 U .S. 194, 202 (2001), and other cases. It may be tempting to read *Johnson* as holding that there is a clearly established right not to be denied HCV treatment based solely upon isolated instances of drug use during a specific time period and in contravention of the recommendations of treating physicians, but I am not convinced that is a fair reading of the case which arose in the context of a single reported instance of marijuana use. If I were to assume that the foregoing is the clearly established right, then it was not established until *Johnson* which was not decided until 2005, long after the events at issue in this case. To avoid doubt, I will also examine qualified immunity through the lens of the broader right which was clearly established at the time of the operative events-a right to be free from inadequate medical care.

The Court must next determine whether a rational factfinder could conclude that it was objectively reasonable for Wright to believe that by following the 1998 Protocol, he acted in a fashion that was not deliberately indifferent to plaintiff's rights. At the time that Wright denied plaintiff IR therapy, a reasonable prison official would have known that "inadequate medical care can give rise to an Eighth Amendment constitutional violation where prison officials are deliberately indifferent to an inmate's serious medical needs." *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). However, a reasonable prison medical official would not necessarily have known that denying plaintiff treatment in reliance on the 1998 Protocol would constitute deliberate indifference to plaintiff's medical needs. The 1998 Protocol required that candidates for IR therapy have been drug-free for two years because consuming drugs which are metabolized through the liver may adversely impact treatment and drug abuse raises concerns that a participant may not be compliant with the conditions of treatment. (Wright Dec. ¶ 10; Johnson Dec. Exh. I-4) According to defendants' expert, Mark Korsten, the guidelines in place in 1998-1999 "reflect the generally

accepted standards of care in relation to the diagnosis and treatment of Hepatitis at that time," including "the then-prevailing view that substance abuse, whether or not involving intravenous drug use, warranted withholding of drug therapy for Hepatitis C ...." (Johnson Dec. Exh D, Korsten Dec. ¶ 3-4) Wright's treatment of plaintiff, in addition to being in compliance with the applicable prison regulations, did not result in any "departure from accepted standards of care ...." (*Id.,* tab D-2 ¶ 6) Plaintiff has presented no evidence to the contrary. Because reasonable prison medical officials could have concluded that Wright's denial of plaintiff's referral for IR therapy pursuant to the policy then in effect at Green Haven was not unlawful, Wright is protected by qualified immunity.

*CONCLUSION*

**\*15** Defendants Wright, Koenigsmann, Weinstein, Corrections Physician Services and Prison Health Services motions for summary judgment are granted. All other claims having been previously dismissed, the Clerk shall enter judgment in favor of defendants.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2822199

Footnotes

1   In plaintiff's "Declaration in opposition to the defendant's motion for summary judgment," plaintiff states that it was a Dr. Malvarosa, not Dr. Rush, who referred him for IR therapy. In other filings by plaintiff, he asserts that Dr. Rush ordered the referral. Although contradictory, it is immaterial which physician actually issued the referral as it is undisputed that plaintiff was referred for IR therapy.

2   Defendant PHS is the successor to CPS which was the entity active at the time of plaintiff's allegations, CPS 56.1 Stmt. ¶ 20. I will therefore discuss the allegations as they relate to CPS. The SAC refers to CPS as "Corrections Physician Health Services, Inc." but it appears from defendants' 56.1 statement that the correct name is Corrections Physician Services.

3   Even had plaintiff's claim regarding the delay in his receipt of a biopsy been exhausted, there is no evidence in the record that Wright was personally involved in plaintiff's biopsy or its timing. *See Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). Rather, the determination was made by plaintiff's treating physicians. Plaintiff may not under § 1983 pursue a theory of respondeat superior to hold Wright liable for actions of plaintiff's treating physicians. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

4   The issue of mootness was considered by Magistrate Judge Freeman in her R & R, adopted by this Court on June 2, 2004. However, because Magistrate Judge Freeman's R & R was addressed to the original complaint and plaintiff again seeks declaratory and injunctive relief in the SAC, I will consider the issue of mootness anew.

5   While "[a]n individual defendant is not liable under § 1983 absent personal involvement," *Rivera v. Goord,* 253 F.Supp.2d 735, 747 (S.D.N.Y.2003), plaintiff has produced sufficient evidence that Wright was personally involved in the denial of the referral for IR therapy. *See McKenna v. Wright,* 386 F.3d 432, 437 (2d Cir.2004).

End of Document                                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Reconsideration Granted in Part by Ward v. LeClaire, N.D.N.Y., April 17, 2008

2008 WL 182206
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth WARD, Plaintiff,
v.
Lucien LeCLAIRE, Jr., Acting commissioner, et al., Defendants.

No. 9:07-CV-0026 (LEK)(RFT).
|
Jan. 15, 2008.

**Attorneys and Law Firms**

Kenneth Ward, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of New York, Christina L. Roberts-Ryba, Esq., Assistant Attorney General, of Counsel, Albany, NY, for Defendants.

***ORDER***

RANDOLPH F. TREECE, United States Magistrate Judge.

**\*1** Presently before the Court is a Motion to Vacate the Notice of Deposition (Dkt. No. 49), a Motion for a Court Conference (Dkt. No. 49), a Motion to Compel Discovery (Dkt. No. 49), and a Motion to Amend the Complaint (Dkt. No. 51), all filed by *pro se* Plaintiff Kenneth Ward.[1] Defendants have opposed each Motion. Dkt. Nos. 52-53.

**A. Background.**

Plaintiff initiated this action on January 8, 2007, by filing a civil rights Complaint with the Clerk of the Court (Dkt. No. 1); the Complaint was ordered served on February 5, 2007 (Dkt. No. 7). Accompanying Plaintiff's Complaint was a Motion for a Preliminary Injunction. On March 19, 2007, Defendants filed an Answer to the Complaint and a Response in Opposition to Plaintiff's Motion for a Preliminary Injunction. Dkt. Nos. 20-21. On April 6,

2007, Plaintiff filed a Motion for a Temporary Restraining Order. Dkt. No. 23. The Motion for a Temporary Restraining Order and Motion for Preliminary Injunction were denied by Order, dated May 24, 2007. Dkt. No. 31.

On June 8, 2007, Defendants requested leave to take Plaintiff's deposition, which was granted by this Court. Dkt. Nos. 34-35. Thereafter, Plaintiff filed a Motion to Vacate the Order granting Defendants leave to depose him (Dkt. No. 36); Plaintiff's request was denied on September 10, 2007 (Dkt. No. 43). Thereafter, on November 5, 2007, Plaintiff filed his Motion to Vacate the Notice of Deposition, Motion for a Court Conference, and Motion to Compel Discovery. Dkt. No. 49. On November 8, 2007, Plaintiff filed his Motion to Amend the Complaint (Dkt. No. 51) after having an amended complaint and a Motion to Amend the Complaint stricken from the Court's docket for failure to comply with the Federal Rules of Civil Procedure and the Local Rules (Dkt. Nos. 46 & 48).

**B. Motion to Compel Discovery.**

The Court will first address the Motion to Compel Discovery as Plaintiff has intertwined Defendants' alleged failure to cooperate in discovery in the other Motions pending before this Court.

Plaintiff alleges that the Defendants have failed to make the initial disclosures as required by Rule 26(a)(1) of the Federal Rules of Civil Procedure. Defendants state that such initial disclosure provisions do not apply to this case and, therefore Defendants's counsel "returned the plaintiff's demands without prejudice and await for production under the Federal Rules of Civil Procedure 34." Dkt. No. 53. A copy of the letter returning the demands was not annexed to the Defendants' Response to this Motion. Thus, the Court is unable to determine whether the basis for the rejection was explained to Plaintiff, and whether this prong of the Motion was asserted due to lack of information or for dilatory reasons.

Nevertheless, it is undisputed that Plaintiff is in the custody of the New York State Department of Correctional Services and is proceeding with this action *pro se*. Thus, it is beyond cavil that Rule 26(a)(1)(B)(iv)[2] expressly excludes this case from provisions requiring the mandatory disclosures. Accordingly, Plaintiff's Motion to Compel is without merit and must be **denied**.

## C. Motion to Vacate Defendants' Notice of Deposition.

**\*2** Plaintiff objects to Defendants' Notice of Deposition due to Defendants' failure to fully comply with Rule 30(b)(2) of the Federal Rules of Civil Procedure. [3] More specifically, Plaintiff objects to the fact that the Notice of Deposition fails to state the method by which the testimony will be recorded. *See* Dkt. No. 49.

Defendants oppose the Motion and state that the "Notice of Deposition is routine, accurate and is in compliance with the order signed by your honor on June 11, 2007 (Docket # 35)." Dkt. No. 53. In addition, Defendants note that Plaintiff already sought to vacate the Order that granted them leave to serve the Notice of Deposition, and that they served the Notice in a timely fashion. *Id.*

The requirements for a proper Notice of Deposition are established by the Federal Rules of Civil Procedure. Nothing in this Court's June 11, 2007 Order granted leave to Defendants to serve a Notice of Deposition that did not comply with the Federal Rules. Accordingly, Plaintiff is correct in his assertion with respect to the required content of the Notice of Deposition. Thus, any future Notice of Deposition issued by Defendants in this action shall comply with the Federal Rules. [4]

Given the passage of time, the request to vacate the Notice of Deposition will be **denied as moot.** [5] Moreover, Plaintiff is advised that he has an ongoing obligation to resolve minor disputes, such as this, with Defendants' counsel prior to seeking the intervention of this Court. *See* N.D.N.Y.L.R. 7.1(b)(2) and 7.1(d). Plaintiff has offered the Court no evidence that he made any attempt to resolve this dispute by way of written correspondence or otherwise. ***Plaintiff is advised that the Court will require proof of good faith conferral on any discovery related Motion filed in this action, and failure to provide such evidence may be a basis for denial of the Motion.***

## D. Motion for Court Conference.

Plaintiff seeks a Court conference to address and resolve all of the outstanding issues between the parties. However, the Court has addressed those issues in this Order. Accordingly, the Court finds no need for a conference at this time and Plaintiff's Motion for a Court Conference is **denied.** As with the discovery motions, Plaintiff is advised that the Court will require that proof of good faith

conferral accompany *any* request for a Court Conference, and failure to provide such evidence will be a basis for denial of such request.

## E. Motion to Amend the Complaint.

Plaintiff filed his Motion to Amend the Complaint (Dkt. No. 51) on November 8, 2007, in accordance with an extension of time granted by this Court (Dkt. No. 48). Thus, the Motion was timely filed.

Through his proposed amendments, Plaintiff seeks to dismiss Defendants Eagen and Boyea, and to add Defendants Fischer, Habek, Dumas and Rock. *See* Dkt. No. 51. The claims in the amended Complaint continue, as in the original Complaint, to be related to Plaintiff's exposure to environmental tobacco smoke and the impact on Plaintiff's health. The amended complaint also asserts a claim for retaliation, based upon actions taken as a result of the filing of this action.

**\*3** Defendants filed a letter in opposition to this Motion. Dkt. No. 52. Defendants assert that, due to the passage of time, the delay would be prejudicial to Defendants as the discovery deadline in the Scheduling Order has expired, [6] and the deposition of the Plaintiff was scheduled for November 21, 2007. [7] In addition, Defendants assert that Plaintiff failed to "provide any reason why the requested changes were not in the original complaint." Dkt. No. 52.

Rule 15(a) of the Federal Rules of Civil Procedure generally governs the amendment of complaints, but in the case of proposed amendments where new defendants are to be added, the Court must also look to Rule 21. *United States v. Chilstead Building Co.,* No. 96-CV-0641 (N.D.N.Y. Nov. 7, 1997) (McAvoy, C.J.) (citations omitted). Rule 21 states that a party may be added to an action "at any time, on just terms." *Id.* Rule 21 is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." *United States v. Commercial Bank of North America,* 31 F.R.D. 133, 135 (S.D.N.Y.1962) (internal quotations omitted). Addition of parties under Rule 21 is guided by the same liberal standard as a motion to amend under Rule 15. *Chilstead; Fair Housing Dev. Fund Corp. v. Burke,* 55 F.R.D. 414, 419 (E.D.N.Y.1972).

Given the history of this case, the Court in unable to find that the passage of time has, in any way, prejudiced the Defendants. In addition, Plaintiff was not in a position to assert his claims for retaliation in the original Complaint, as such events are alleged to have occurred after the filing of his original Complaint. Further, in the interest of judicial economy, the Court finds that all parties would be better served by having this dispute resolved in one, rather than multiple, action. Accordingly, the Court will **grant** Plaintiff's Motion to Amend the Complaint.

WHEREFORE, it is hereby

ORDERED, that Plaintiff's Motion to Compel Discovery (Dkt. No. 49) is **denied;** and it is further

ORDERED, that Plaintiff's Motion to Vacate the Notice of Deposition (Dkt. No. 49) is **denied as moot;** and it is further

ORDERED, that Plaintiff's Motion for a Court Conference (Dkt. No. 49) is **denied;** and it is further

ORDERED, that Plaintiff's Motion to Amend the Complaint (Dkt. No. 51) is **granted.** The original of the amended Complaint, which shall supersede and replace *in toto* the original Complaint filed herein, shall be filed with the Court by the Plaintiff, ***within thirty (30) days*** of the filing date of this Order; [8] and it is further

ORDERED, that Plaintiff serve a copy of such Amended Complaint on opposing counsel ***within thirty (30) days*** of the filing date of this Order; and it is further

ORDERED, that Plaintiff provide the Court with copies of his Amended Complaint and completed USM-285

forms for service on the newly identified Defendants to this action; and it is further

**\*4** ORDERED, that upon the filing of the Amended Complaint, the Clerk shall amend the Court's docket to reflect the addition of Defendants Fischer, Rock, Habek, and Dumas, and the dismissal of Defendants Eagen and Boyea; and it is further

ORDERED, that upon the filing of the Amended Complaint, the Clerk shall issue Amended Summonses naming the newly identified Defendants and forward them, along with a copies of the Amended Complaint, to the United States Marshal for service upon newly added Defendants; and it is further

ORDERED, that a formal response to Plaintiff's Amended Complaint be filed by the Defendants or their counsel withing ***thirty (30) days*** following service on the new Defendants; and it is further

ORDERED, that the discovery deadline be reset to **May 1, 2008,** the motion to compel deadline reset to **May 30, 2008,** and the dispositive motion filing deadline reset to **July 25, 2008.** The nondispositive motion filing deadline is expired and shall not be further extended; and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties hereto in accordance with the Local Rules.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 182206

---

Footnotes

1    A Motion to Vacate the November 7, 2007 Order denying Plaintiff's Motion for a Temporary Restraining Order is also pending and will be addressed in a separate Order by the Honorable Lawrence E. Kahn, United States District Judge.

2    The relevant portion of Federal Rule of Civil Procedure 26(a) (l)(B)(iv) states:
        (B) Proceedings Exempt from Initial Disclosure. The following proceedings are exempt from initial disclosure:
        (iv) an actionbrought without an attorney by a person in the custody of the United States, a state, or a state subdivision[.]

3    The provision to which Plaintiff refers is now codified in Rule 30(b)(3)(A), pursuant to the recent amendments to the Federal Rules of Civil Procedure.

4    Despite Plaintiff's request in this Motion, Defendants are *not* obligated to confer with him regarding the scheduling of the Deposition. Rather, he is entitled to the twenty (20) days notice as set forth in this Court's June 11, 2007 Order.

Case 9:17-cv-01042-DNH-TWD    Document 67    Filed 03/19/19    Page 131 of 131

2008 WL 182206

5    The Court notes that Plaintiff complains that the Department of Correctional Services moved him from one facility to another based upon service of the Notice of Deposition, and that the Attorney General did not appear on the scheduled date for the deposition. However, Plaintiff filed this Motion to Vacate the Notice of Deposition and, thus, the reluctance of counsel to proceed on the originally scheduled date is wholly justified. As discussed above, such events may have been avoided with proper and courteous interactions amongst the parties rather than resorting to Court intervention on the issues raised in this Motion.

6    The discovery deadline was stayed, by Order of this Court, pending resolution of the pending Motions. Dkt. No. 54.

7    It is this Court's understanding that the deposition did not proceed on November 21, 2007, due to the Motions filed by Plaintiff on November 5, 2007.

8    The proposed amended complaint submitted by Plaintiff along with the present Motion shall not be filed by the Clerk as the amended complaint herein. Rather, Plaintiff shall submit a copy of the Amended Complaint that bears his original signature to the Clerk for filing.

---

**End of Document**                                           © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    4