UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEREMY ZIELINSKI,

                                        Plaintiff,          9:17-CV-1042
                                                            (DNH/TWD)
            v.

ANTHONY ANNUCCI, et al.,

                                        Defendants.
_____

APPEARANCES:

JEREMY ZIELINSKI
16-A-3601
Plaintiff, pro se
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

HON. LETITIA JAMES                  WILLIAM A. SCOTT, ESQ.
New York State Attorney General     Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224


THÉRÈSE WILEY DANCKS
United States Magistrate Judge


## <u>ORDER AND REPORT-RECOMMENDATION</u>

**I.    INTRODUCTION**

        Plaintiff Jeremy Zielinski ("Zielinski") commenced this civil rights action by filing a pro

se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an

application to proceed in forma pauperis ("IFP").  Dkt. No. 1 ("Compl."); Dkt. No. 7 ("IFP

Application").  Plaintiff filed with his complaint a motion for a preliminary injunction and

temporary restraining order.  Dkt. No. 4 ("First Motion for Injunctive Relief").

The complaint alleged that the Commissioner of the New York Department of Corrections and Community Supervision ("DOCCS"), Anthony Annucci, then-Superintendent of Clinton Correctional Facility Michael Kirkpatrick, and various John Doe officials violated Plaintiff's constitutional rights under the Eighth and Fourteenth Amendments by wrongfully denying him meals on multiple occasions on and before September 17, 2017, because his name was left off of "chow lists."  *See generally*, Compl.  The complaint further alleged that this action was brought on behalf of Plaintiff and "a class of similarly situated persons . . . consisting of all inmates at Clinton."  *Id*. at ¶ 4.

By Decision and Order entered on November 29, 2017, the Honorable David N. Hurd deemed the action to be brought by Plaintiff in his individual capacity only, found that Plaintiff's Eighth Amendment claims survived initial review pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, dismissed Plaintiff's Fourteenth Amendment claims without prejudice, denied the First Motion for Injunctive Relief, and directed the New York State Attorney General's Office to produce information, to the extent possible, regarding the names of the unidentified John Doe corrections officers.  *See generally*, Dkt. No. 10 ("November 2017 Order").

Thereafter, Defendants Annucci and Kirkpatrick were served, and Plaintiff filed, among other things, (1) a motion to amend his complaint, together with a proposed amended complaint, and (2) a motion seeking leave to file a second supplemental complaint.  Dkt. No. 29 ("Motion to Amend"); Dkt. No. 29-3 ("Proposed Amended Complaint"); Dkt. No. 33 ("Motion to Supplement").

The Proposed Amended Complaint named Annucci and Kirkpatrick, as well as several

2

new officials, as Defendants, and asserted the following ten (10) claims arising during

Plaintiff's confinement at Clinton Correctional Facility: (1) Eighth Amendment claims against

"the Defendants" based on the denial of meals on various dates as a result of a failure to

include Plaintiff's name on a "chow list" and correct that failure at meal time ("Claim 1"); (2)

Eighth Amendment claims against "the Defendants" based on "orchestrating" and/or failing to

protect Plaintiff from "two violent attacks" ("Claim 2"); (3) First Amendment retaliation claims

against "the Defendants" based on the denial of certain meals following Plaintiff's verbal

complaints, grievances, and commencement of litigation ("Claim 3"); (4) First Amendment

retaliation claims against "the Defendants" based on "orchestrating" and/or failing to protect

Plaintiff from "two violent attacks" following Plaintiff's verbal complaints, grievances, and

commencement of litigation ("Claim 4"); (5) a First Amendment retaliation claim against

Corrections Sergeant Jabut based on him "causing a false misbehavior report to be issued

against Plaintiff" in response to Plaintiff "reporting staff misconduct" ("Claim 5"); (6) First

Amendment free-flow-of-mail claims against Director of the DOCCS Inmate Grievance

Program Shelly Mallozzi, Newly Appointed Superintendent of Clinton Correctional Facility

Earl Bell, Clinton Correctional Facility IGP Supervisor Christine Gregory, and Defendants

Annucci and Kirkpatrick based on "establishing and refusing to remedy [ ] policies and

customs" that resulted in a defective grievance process ("Claim 6"); (7) First Amendment

interference with government access claims against Mallozzi, Bell, Gregory, Annucci, and

Kirkpatrick ("Claim 7"); (8) Eighth Amendment failure to protect claims against "the

Defendants" based on the establishment of, and refusal to remedy, "policies and customs"

resulting in inmate porters delivering meals to keeplocked inmates unsupervised ("Claim 8");

(9) a claim against Defendant Lamoy for violation of New York Penal Law §§ 110.00 and/or

3

135.65 ("Claim 9"); and (10) a claim against Defendant Lamoy for violation of New York

Penal Law § 120.14 ("Claim 10").  Proposed Amended Complaint at ¶¶ 102-112.  Despite the

express rejection in the November 2017 Order of Plaintiff's class action allegations contained

in the original complaint, the Proposed Amended Complaint also included class action

allegations.  *See id*. at ¶ 101.

On March 19, 2019, this Court issued a Report-Recommendation and Order regarding

Plaintiff's outstanding motions, including his Motion to Amend and Motion to Supplement.

*See* Dkt. No. 67 ("March 2019 Order").  With respect to Plaintiff's pleadings motions, the

Court granted the Motion to Amend insofar as the Proposed Amended Complaint asserted

an Eighth Amendment claim for denial of meals against Defendants Baker, French, Castine,

and Reed, and a First Amendment retaliation claim against Defendant Lamoy, denied the

Motion to Amend insofar as the Proposed Amended Complaint asserted any other new

claims for relief, and denied the Motion to Supplement.  *Id*. at 15-33.  As a result, only the

following claims remain in this action: (1) Plaintiff's First Amendment retaliation claim against

Defendant Lamoy; and (2) Plaintiff's Eighth Amendment claims against Defendants Annucci,

Kirkpatrick, Baker, French, Reed, and Castine.  *See* November 2017 Order; March 2019

Order.[1]

The named Defendants have moved for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  Dkt. No. 92 ("Motion for Summary Judgement").  Plaintiff

has opposed the motion, and has also filed a cross-motion requesting that the Court (1)

---

[1]  By Decision and Order entered on July 3, 2019, the Honorable David N. Hurd
accepted and adopted the Report-Recommendation portion of the March 2019 Order in its
entirety.  Dkt. No. 74 ("July 2019 Order").

unseal the document submitted by counsel in response to the Court's Order entered on May 4, 2018, (2) vacate, in part, the March 2019 Order, (3) sanction the Defendants for spoliation of evidence, and (4) re-open discovery to allow Plaintiff to obtain previously unavailable law enforcement disciplinary records and documents evidencing the approval by Defendants Annucci and Kirkpatrick of the "chow list policy" at issue.  Dkt. No. 105-1 at 1-23 ("Cross-Motion Declaration"); Dkt. No. 105-2 ("Cross-Motion Memorandum of Law"); Dkt. No. 105-4 ("Opposition Declaration"); Dkt. No. 105-5 ("Opposition Memorandum of Law").

For the reasons that follow, Plaintiff's Omnibus Cross-Motion is denied, and the Court recommends that Defendants' Motion for Summary Judgment be granted in part and denied in part.

## II.    FACTUAL BACKGROUND[2]

### A.    Facts Related to Plaintiff's Eighth Amendment Claims

At Clinton Correctional Facility, inmates who are not on keeplock status or confined in the special housing unit ("SHU") are let out of their cells to attend lunch and dinner meals if they are placed on a "chow list" sometime before the meal. Am. Compl. at ¶ 20;[3] Dkt. No. 49-2; Opposition Declaration at 2, ¶ 3.  "Chow lists" are also created for breakfast meals on Saturday and Sunday, weekday holidays, and during the week if the inmate is confined in the B-Block.  Opposition Declaration at 2, ¶ 3.

The "chow list," also commonly referred to as a "go-round" sheet, is a piece of paper

---

[2]  The majority of the "Undisputed Material Facts" set forth in Defendants' Rule 7.1 Statement are disputed by Plaintiff.  *Compare* Dkt. No. 92-1 *with* Dkt. No. 105-3.  As a result, and because Plaintiff is the nonmoving party, the Court has relied largely on the record evidence provided by Plaintiff in its recitation of the factual background.

[3]  Plaintiff's Amended Complaint is verified.  *See* Am. Compl. at 30.

that lists every cell on a particular block with a box next to each cell.  Am. Compl. at ¶ 21.  A

corrections official tasked with creating the "chow list" is supposed to walk past each cell on a

particular block and record whether an inmate wants to be let out of his cell for the next

upcoming meal, recreation, or shower.  Am. Compl. at ¶ 21; Dkt. No. 49-2.

Meals generally take place at the same time every day.  Dkt. No. 92-3 ("Pl. Dep. Tr."),

pp. 61-62.[4]  The "chow list" is typically prepared sometime between half an hour and a few

minutes before the next upcoming meal.  Pl. Dep. Tr., pp. 70-71.  If an inmate's name is not

recorded on the "chow list," his cell door is not opened when other cell doors on the block are

opened for the meal associated with that list.  Am. Compl. at ¶ 21.

Plaintiff alleges that corrections officials "frequently" prepare the "chow list" without

making a proper announcement.  Am. Compl. at ¶ 22.  Corrections officials also "speed or

creep by inmate cells without stopping or affirmatively asking each inmate if he wants to be

on the 'list[.]'"  *Id*.  As a result of these actions, inmates often do not know when a "chow list"

is being taken, causing them to miss their opportunity to request placement on the list.  *Id*.

Inmates may also be "off-unit" when the "chow list" is prepared.  *Id*.

Plaintiff alleges that corrections officials also "constantly" and "deliberately" leave

inmates who expressly request placement on the "chow list" off that list as a "means of

harassment and retaliation[.]"  Am. Compl. at ¶ 23.  According to Plaintiff, there is also "no

supervision of list-taking[,]" and "no system . . . to correct errors."  *Id*.

Plaintiff alleges that as a result of "severe flaws in the 'chow list' process," he was

denied meals when he requested them, including, but not limited to, the following meals:

---

[4]  All citations to Plaintiff's deposition transcript refer to the page number(s) identified on the transcript, as opposed to the CM/ECF page number.

1) Lunch on 12/21/2016;

2) Breakfast on 12/30/2016;

3) Dinner on 1/1/2017;

4) Dinner on 2/3/2017;

5) Lunch on 2/4/2017;

6) Dinner on 4/10/2017;

7) Dinner on 5/4/17;

8) Dinner on 5/20/2017;

9) Breakfast on 5/21/2017;

10) Lunch on 9/7/2017;

11) Dinner on 9/7/2017;

12) Breakfast on 9/8/2017;

13) Dinner on 9/13/2017.

14) Lunch on or about 9/27/2017;

15) Dinner on or about 9/28/2017;

16) Breakfast on 10/15/2017;

17) Breakfast on 10/29/2017;

18) Lunch and Dinner on 11/11/2017;

19) Lunch on 1/14/2018;

20) Lunch on 1/23/2018;

21) Lunch and Dinner on 2/3/2018; and

22) Dinner on 3/24/2018.

Am. Compl. at ¶ 26.

7

Plaintiff alleges that Defendants Baker and French were responsible for denying him a meal on February 4, 2017, because Defendant Baker failed to place his name on the lunch "chow list" despite his request, and Defendant French failed to let him out of his cell when other inmates were released for the meal. *See* Am. Compl. at ¶¶ 27-29. Plaintiff further alleges that Defendants Reed and Castine were responsible for denying him meals on February 3, 2018, and March 24, 2018, in the same manner as Defendants Baker and French. *Id*. at ¶¶ 30-33.

Plaintiff alleges that Defendants Annucci and Kirkpatrick were responsible for the meals he missed as a result of not being included on the "chow list" because they created and/or allowed the "flawed" policy or practice to exist, and failed to take corrective action despite their awareness of the problem. Am. Compl. at ¶¶ 35-41.

Plaintiff contends that he submitted a grievance about inmates missing meals as a result of the "chow list" process at Clinton Correctional Facility (hereinafter, the "Policy Grievance") to the "IGP Clerk" on December 30, 2016. Opposition Declaration at 5, ¶18. Plaintiff stated in that grievance as follows:

> I and many other inmates have been and frequently are denied meals
> numerous times because COs only open the cells at mealtime if they (or
> some other CO) has [sic] put us on a "chow list." The "list" is frequently
> taken without any announcement being made, with COs speeding by
> without stopping or inmates even knowing a list is being taken, causing
> them to miss it. Even when it is announced, COs constantly make
> mistakes. I was denied lunch on 12/21 and denied breakfast on 12/30,
> and have been denied other meals on numerous prior occasions. We
> have an absolute right to eat at every meal; it is never "optional" to give us
> food.

Dkt. No. 105-4 at 46.

Plaintiff requested, as a resolution, the following action:

8

> Stop taking a "chow list" and open all cells at meals by default; inmates who do not want to go can just close their cells and not come out. If staff want to track individually who is going to meals, they can take the list as inmates come off the company – it's no more work than what they do now and completely solves the problem.

Dkt. No. 105-4 at 46.

Plaintiff contends that on January 1, 2017, he submitted a followup letter to the "IGP Clerk" for inclusion as additional evidence in support of the Policy Grievance. Opposition Declaration at 5, ¶ 19; Dkt. No. 105-4 at 47. Plaintiff claims that he submitted an appeal of the Policy Grievance to the Superintendent, Defendant Kirkpatrick, on March 2, 2017, after receiving no response from the Inmate Grievance Review Committee ("IGRC"), which he informed the "IGP Clerk" about. Opposition Declaration at 5, ¶ 20; Dkt. No. 105-4 at 48.

On March 17, 2017, Plaintiff filed a separate grievance regarding meal deprivations during his keeplock confinement. Dkt. No. 92-16, ¶¶ 17-18; Dkt. No. 92-19. On March 28, 2017, Plaintiff claims that he submitted an appeal to the Central Office Review Committee ("CORC") of the Policy Grievance, after receiving no response of any kind from the Superintendent, which he "deemed . . . constructively denied" at that point. Opposition Declaration at 5, ¶ 21; Dkt. No. 105-4 at 49.

On or about April 3, 2017, IGP Supervisor Christine Gregory sent Plaintiff a "MEMORANDUM" in response to the letter he sent her on March 28, 2017, wherein he advised that he was submitting an appeal of his unanswered grievance to CORC. Opposition Declaration at 6, ¶ 24; Dkt. No. 105-4 at 50. The "MEMORANDUM" stated that no grievance was on file from Plaintiff "with a written date of 12/30/16 concerning the alleged denial of meals[,]" and no correspondence was received concerning the appeal of the allegedly submitted grievance. Dkt. No. 105-4 at 50. The "MEMORANDUM" further listed

9

five other grievances submitted by Plaintiff, and stated that these grievances "have all been forwarded to CORC." *Id*.

On April 17, 2017, Plaintiff commenced a New York Court of Claims proceeding regarding deficiencies with the grievance process at Clinton Correctional Facility, wherein he referenced, among others, the Policy Grievance, which was never received by the IGRC. Dkt. No. 105-4 at 61-62. Plaintiff never received a response from CORC to the appeal he sent regarding the Policy Grievance. Opposition Declaration at 8, ¶ 34.

On April 24, 2017, and following an investigation, Defendant Kirkpatrick denied the grievance Plaintiff filed on March 17, 2017, regarding meal denials. Dkt. No. 92-16, ¶¶ 17-18; Dkt. No. 92-19.

### B.    Facts Related to Plaintiff's First Amendment Claims

Plaintiff alleges that he was assaulted by an inmate in the North Yard at Clinton Correctional Facility on December 7, 2017. Am. Compl. at ¶ 45. Plaintiff alleges that immediately before the assault, he was speaking with a different inmate about "this case[.]" *Id*.

Following the assault, Plaintiff was taken to the emergency room at a nearby hospital where he was treated for his injuries. Am. Compl. at ¶ 46. Plaintiff alleges that upon returning to Clinton Correctional Facility the next day, Defendant Lamoy approached him while he was in his cell and stated, "Oh, look who's back. Karma's a bitch, huh? You expected to be bragging to everyone in the yard about what you're doing and have it not get back to us? We've got squirrel ears everywhere." *Id*. at ¶ 50.

On December 8 and 9, 2017, Plaintiff was on keeplock status pending an investigation

into the altercation that occurred on December 7, 2017. Am. Compl. at ¶ 51. Plaintiff claims that he was not given lunch or dinner on December 8, or breakfast on December 9. Am. Compl. at ¶ 51. Plaintiff allegedly reported the denial of meals to "numerous" corrections officials who walked past his cell, and also "yelled loudly" to the officer in charge of the block each time he did not receive a meal. *Id*. at ¶ 52.

Plaintiff alleges that he was returned to keeplock status on December 11, 2017, following his placement on suicide watch, and was "again denied lunch and dinner . . . despite numerous pleas for food." Am. Compl. at ¶ 56. Plaintiff alleges that Defendant Lamoy showed up at his cell after he was denied lunch and threatened to assault him if he did not stop complaining. *Id*. at ¶ 57.

Plaintiff was released from keeplock on December 13, 2017, but returned to keeplock status on December 29, 2017. Am. Compl. at ¶¶ 60, 64-65.

On December 30, 2017, Defendant LaMoy responded to Plaintiff's cell in keeplock, as Plaintiff was demanding food. *Compare* Dkt. No. 92-1, *with* Dkt. No. 105-3. Plaintiff claims that despite the response, he did not receive any meals that day. Opposition Declaration at 2, ¶ 5. Plaintiff further claims that Defendant Lamoy was present on the block and heard, but ignored, Plaintiff's "many loud demands for food that morning." *Id*. at 2-3, ¶ 7.

Plaintiff alleges that he was denied dinner on December 31, 2017, and complained to Defendant Lamoy about it on the morning of January 1, 2018. Am. Compl. at ¶¶ 67-68. Plaintiff alleges that Defendant Lamoy in essence responded that he did not care. *Id*. at ¶ 68. Plaintiff further alleges that he was then denied breakfast, "loudly demanded food[,] and an argument [with Defendant Lamoy] ensued." *Id*.

11

According to Plaintiff, Defendant Lamoy threatened to assault him, and thereafter directed another corrections official to open Plaintiff's cell. Am. Compl. at ¶ 69. Plaintiff claims that Defendant Lamoy then entered his cell after the door was opened and "struck [him] in the throat . . . and shoved [him] backward[.]" *Id*. Plaintiff further claims that Defendant Lamoy then backed out of the cell and stated, "You can write all the grievances you want. This isn't Holiday Inn. It isn't Burger King; you can't have it your way. . . . When you grieve the porters and it comes through, they don't wanna help you[.]" *Id*.

On January 1, 2018, Plaintiff submitted a grievance regarding his interactions with Defendant Lamoy, which was received on January 3, 2018. Dkt. No. 92-23 at 4-5, ¶ 17; Dkt. No. 92-29 at 9-11. According to Plaintiff, on the morning of January 5, 2018, Defendant Lamoy saw him at the commissary area and, in the presence of other inmates, "waved folded up papers which appeared to be the grievances Plaintiff had filed about what happened on C-Block[, and] loudly yelled . . ., "Don't worry, rat! I got it! I got it right here. The porters are gonna be happy, too." Am. Compl. at ¶ 77; Pl. Dep. Tr., pp. 231-32.

Plaintiff alleges that he was denied the following meals between December 8, 2017, and January 2, 2018, while on keeplock status:

    1) Lunch and Dinner on 12/8/2017;

    2) Breakfast on 12/9/2017;

    3) Lunch and Dinner on 12/11/2017;

    4) Breakfast, Lunch, and Dinner on 12/30/2017;

    5) Breakfast and Dinner on 12/31/2017;

    6) Breakfast and Dinner on 1/1/2018; and

    7) Breakfast and Lunch on 1/2/2018

12

Am. Compl. at ¶¶ 51, 60, 65, 75.  The meals that Plaintiff was denied while on keeplock

status were supposed to be brought to him at his cell.  *Id*. at ¶ 51.

## III.    PROCEDURAL HISTORY RELEVANT TO PLAINTIFF'S OMNIBUS CROSS-MOTION

After Defendants Annucci and Kirkpatrick answered the original complaint and Judge

Hurd directed limited discovery and appointment of pro bono counsel related to Plaintiff's

then-pending motion for injunctive relief (Dkt. No. 17), this Court issued an Order on May 4,

2018, which, among other things, directed Defendants' counsel to "produce to the Court for

an in camera review . . . any DOCCS directive(s) pertaining to so-called 'chow lists,' and the

'chow lists' for each of the dates listed in Plaintiff's motion (Dkt. No. 17) for the units where

Plaintiff was held on such dates."  Dkt. No. 26 ("May 2018 Order").  On June 15, 2018,

counsel filed a status report in response to the May 2018 Order wherein counsel (1) enclosed

for in camera review a copy of the relevant directive concerning chow lists, and (2) advised

that "the requested chow lists . . . are only maintained for a period of thirty days before they

are destroyed" and thus "DOCCS does not possess either the chow lists referenced in the

Plaintiff's complaint that are at issue in this case, [ ]or the chow lists referenced in the

Plaintiff's motion at Docket No. 17."  Dkt. No. 40 ("June 2018 Status Report").  Days later,

Plaintiff was transferred from Clinton Correctional Facility to Elmira Correctional Facility.  Dkt.

No. 44.

Following additional discovery and correspondence on Plaintiff's request for injunctive

relief, the Court issued the March 2019 Order, which also addressed Plaintiff's then-pending

requests for injunctive relief.  *See generally*, March 2019 Order.  At the conclusion of the

March 2019 Order, the Court advised Plaintiff that he had fourteen (14) days to file

any written objections. *Id*. at 34.

On or about April 3, 2019, Plaintiff submitted a letter motion addressed to Judge Hurd wherein he requested a 30-day extension of time to file objections to the March 2019 Order and a stay of the deadline for him to submit a signed copy of the signature page of the Amended Complaint pending Judge Hurd's review of his objections to the March 2019 Order. Dkt. No. 68. That same day, Judge Hurd granted Plaintiff's letter motion, extended Plaintiff's deadline to file objections to the March 2019 Order to May 9, 2019, and stayed Plaintiff's deadline to provide a signed copy of the signature page of the Amended Complaint pending the District Court's decision on the Report-Recommendation. Dkt. No. 69.

On May 15, 2019, the Court received another letter motion from Plaintiff, which requested an extension of time until May 31, 2019, to file objections to the March 2019 Order. Dkt. No. 70. That same day, Judge Hurd granted Plaintiff's request and extended his deadline to file objections to the March 2019 Order to May 31, 2019. Dkt. No. 71. Judge Hurd also advised Plaintiff that no further extensions would be granted. *Id*.

On May 31, 2019, Plaintiff filed a letter advising that he was unable to file objections to the March 2019 Order . Dkt. No. 72. Thereafter, Judge Hurd accepted and adopted the the Report-Recommendation portion of the March 2019 Order in its entirety and directed Plaintiff to submit a copy of the final page of his Proposed Amended Complaint within thirty (30) days. *See* July 2019 Order.

Thereafter, Defendants Baker, Castine, French, Lamoy, and Reed were served, and answers to the Amended Complaint were filed on behalf of these Defendants, and Defendants Annucci and Kirkpatrick. *See* Dkt. No. 78 ("Answer By Annucci and Kirkpatrick"); Dkt. No. 79 ("Acknowledgment of Service"); Dkt. No. 81 ("Answer By Baker, Castine, French,

14

Lamoy, and Reed").

By Order entered on October 16, 2019, the Court reset the pretrial deadlines as follows: Discovery due by 12/17/2019 and Dispositive Motions to be filed by 2/18/2020. Dkt. No. 82. Following the close of discovery, Plaintiff filed a letter motion requesting a two-week extension of time to review and correct his deposition transcript, and serve follow-up discovery. Dkt. No. 86. By Order entered on February 20, 2020, the Court granted Plaintiff's request in part and directed him to complete his review and corrections to his deposition transcript and serve the corrected deposition, along with any further documents, on Defendants' counsel by February 28, 2020. Dkt. No. 87. The Court also sua sponte extended the dispositive motion deadline to March 27, 2020. *Id*.

Thereafter, Defendants' counsel filed the pending Motion for Summary Judgment. On May 14, 2020, Plaintiff filed a letter motion wherein he requested (1) a copy of the docket sheet, (2) a copy of "the directive concerning chow lists" that Defendants' counsel filed under seal on June 15, 2018, (3) a copy of any communications between Defendants' counsel and Plaintiff's former pro bono counsel related to the destruction of "chow lists," and (4) an extension of his deadline to respond to the Motion for Summary Judgment. Dkt. No. 94.

By Order entered on May 21, 2020, the Court granted Plaintiff's letter motion as follows: (1) Plaintiff's deadline to file his response to the Motion for Summary Judgment was extended to June 16, 2020; (2) the Clerk was directed to provide Plaintiff with a courtesy copy of the docket sheet and status report filed by counsel on July 30, 2018 (Dkt. No. 49), which was filed in response to the Court's Order directing Defendants to provide Plaintiff with chow lists for inmates in SHU or protective custody, or an affidavit from the appropriate official explaining why this information is not available; and (3) Defendants' counsel was

15

directed to provide Plaintiff with copies of communications with Plaintiff's former pro bono

counsel by June 4, 2020.  Dkt. No. 95.

On June 1, 2020, the Court received another letter motion from Plaintiff wherein he

requested a copy of the documents submitted by Defendants' counsel for in camera review

on June 15, 2018.  Dkt. No. 96.  By Order entered on June 3, 2020, the Court denied

Plaintiff's letter motion.  Dkt. No. 97 ("June 2020 Order").  In doing so, the Court stated as

follows:

> The Directive 4310, the Food Service Operations Manual, submitted with
> [the June 2018 Status Report] for the Court's in camera review does not
> pertain to 'chow lists' or how they are generated, who makes or creates
> the lists, who is on it, how it is confirmed that names on it get their meals,
> chow lists for inmates in SHU, or protective custody, how or why an
> inmate may not be on the chow list, or policies regarding how long chow
> lists must be kept. It is not relevant to plaintiff's claims and the Court
> ordered it to be forwarded to pro bono discovery counsel so counsel could
> confirm it was not relevant to plaintiff's claims.

*Id*.

Thereafter, Plaintiff filed three additional requests for an extension of time to respond

to the Motion for Summary Judgment, which were granted.  *See* Dkt. Nos. 99, 100, 101, 102,

103, 104.  Plaintiff's last request for an extension of time to respond to the Motion for

Summary Judgment also included a request for an extension of his deadline to file a motion

for reconsideration of the July 2019 Order under Rule 60(b) of the Federal Rules of Civil

Procedure.  *See* Dkt. No. 103.

By Order entered on July 14, 2020, the Court denied Plaintiff's request to file a motion

for reconsideration of the July 2019 Order insofar as that motion would be based on any of

the reasons set forth in Rule 60(b)(1), (2), and (3).  Dkt. No. 104 ("July 2020 Order").  The

Court further stated that the timeliness of any motion for reconsideration of the July 2019

16

Order for reasons set forth in any other subsection of Rule 60(b) would be analyzed under the "reasonable time" requirement of Rule 60(c).  *Id*.

## IV.    PLAINTIFF'S OMNIBUS CROSS-MOTION

As noted, Plaintiff's cross-motion requests that the Court (1) unseal the document submitted by counsel in response to the May 2018 Order, (2) vacate, in part, the March 2019 Order, (3) sanction the Defendants for spoliation of evidence, and (4) re-open discovery to allow Plaintiff to obtain law enforcement disciplinary records and documents evidencing the approval by Defendants Annucci and Kirkpatrick of the "chow list" policy at issue.  *See* Cross-Motion Declaration; Cross-Motion Memorandum of Law.  Because certain aspects of Plaintiff's Cross-Motion are relevant to the Court's analysis of Defendants' Motion for Summary Judgment, the Court will address the Cross-Motion first.

### A.    Request to Unseal Documents Submitted By Counsel

Plaintiff contends that the Court should unseal the document submitted by counsel in response to the May 2018 Order, pursuant to Rule 5.2(d) of the Federal Rules of Civil Procedure.  *See* Cross-Motion Memorandum of Law at 3-5.

As noted, the Court previously denied Plaintiff's request to unseal the document submitted by counsel in response to the May 2018 Order.  *See* June 2020 Order.  Thus, the Court liberally construes this request as a motion for reconsideration of the June 2020 Order.

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. New*

*York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).  The standard for granting a motion for reconsideration is strict.  *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Id.*[5]  Thus, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

Plaintiff does not suggest that there has been an intervening change in the controlling law, nor has he presented new evidence which was not previously available.  Therefore, the only basis for reconsideration is to remedy a clear error of law or to prevent manifest injustice.

After thoroughly reviewing Plaintiff's request and affording it due consideration in light of his status as a pro se litigant, the Court finds that Plaintiff presents no basis for reconsideration of the June 2020 Order.  Based upon a review of the relevant law and its application to the facts of this case, the Court concludes that its previous Order was legally correct and did not work a manifest injustice.  Indeed, the Court expressly identified the document submitted for in camera review – at the Court's request – and explained why it is not relevant to the remaining claims and defenses in this action.  *See* June 2020 Order.[6]

---

[5]  Generally, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader*, 70 F.3d at 257.

[6]  Rule 5.2(d) expressly affords courts discretion to (1) "order that a filing be made under seal without redaction," and (2) unseal that order at a later date.

Accordingly, Plaintiff's motion for reconsideration of the June 2020 Order is denied in its entirety.

### B.    Request to Vacate the March 2019 Order

Plaintiff contends that this Court incorrectly ruled in the March 2019 Order that the following claims asserted in the Proposed Amended Complaint were inadequately plead: (1) Plaintiff's Eighth Amendment claims against Defendants Annucci and Kirkpatrick; (2) Plaintiff's First Amendment retaliation claim against Defendant Lamoy insofar as it identified a yard attack as adverse action; (3) Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Lamoy based on the denial of meals while Plaintiff was on keeplock status; and (4) Plaintiff's state law assault and battery claims against Defendant Lamoy.  *See* Cross-Motion Memorandum of Law at 5-15.  Plaintiff requests that the Court vacate the March 2019 Order insofar as it denied the Motion to Amend with respect to the aforementioned claims pursuant to Rule 60(b)(1), (3), and (6) of the Federal Rules of Civil Procedure.  *Id*.

As Plaintiff was previously advised when he sought reconsideration of the July 2019 Order, any such motion for reconsideration based on any of the reasons set forth in Rule 60(b)(1), (2), and (3) is untimely.  *See* July 2020 Order.  Accordingly, insofar as Plaintiff seeks reconsideration of the March 2019 Order pursuant to Rule 60(b)(1) and (3), his motion is denied as untimely.

Insofar as Plaintiff seeks reconsideration of the March 2019 Order under Rule 60(b)(6), that rule allows for reconsideration for "any other reason that justifies relief."  While this language is broad, "[t]he Supreme Court has interpreted subsection six as requiring a

showing of 'extraordinary circumstances' to 'justify[ ] the reopening of a final judgment.'"
*Reynolds v. Greene*, No. 9:05-CV-1539, 2010 WL 604179, at *2 (N.D.N.Y. Feb. 16, 2010)[7]
(quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)); *United States v. Cirami*, 563 F.2d
26, 30 (2d Cir. 1977) (If the party is moving for reconsideration under Rule 60(b)(6), the party
must show "exceptional circumstances" or "extreme hardship." (citing *United States v.
Cirami*, 535 F.2d 736, 741 (2d Cir. 1976)).  The Second Circuit holds a "firm belief that courts
should not encourage the reopening of final judgments or casually permit the relitigation of
litigated issues out of a friendliness to claims of unfortunate failures to put in one's best
case."  *Cirami*, 563 F.2d at 33.  In addition, any motion pursuant to Rule 60(b)(6) must be
made "within a reasonable time[.]"  *See* Fed. R. Civ. P. 60(c).

Although the Court will address each claim that Plaintiff contends should have been
allowed to proceed but for legal errors in the March 2019 Order, the Court notes, at the
outset, that Plaintiff's motion for reconsideration was not filed within a reasonable period of
time.  Indeed, Plaintiff has failed to offer any explanation as to why he waited more than one
year beyond the entry of the July 2019 Order to request reconsideration of the March 2019
Order.  *See Truskoski v. ESPN, Inc*., 60 F.3d 74, 77 (2d Cir. 1995) (per curiam) (holding that
a Rule 60(b) motion brought eighteen months after the judgment was not brought "within a
reasonable time"); *Zamora v. FIT Int'l Grp., Corp*., No. 14-CV-5344, 2019 WL 2416941, at *2
(S.D.N.Y. June 7, 2019) (noting that "[t]he 'Second Circuit has repeatedly held that a
one-year delay in filing a Rule 60(b)(6) [motion] is unreasonable,' especially where there has
been no explanation for the delay" (quoting *Chiulli v. IRS*, No. 03-CV-6670, 2006 WL

---

[7] Copies of all unpublished decisions cited herein will be provided to Plaintiff in
accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

3008084, at *3 (S.D.N.Y. Oct. 20, 2006) (citing *PRC Harris, Inc. v. Boeing, Co.*, 700 F.2d 894, 897 (2d Cir. 1983))).

Moreover, the Court is not at all persuaded that Plaintiff could not have timely raised his substantive arguments before the issuance of the July 2019 Order, irrespective of his alleged lack of access to the law library during this period.  While Plaintiff perhaps desired to include case law support of his arguments, which he has now done, he does not challenge any case law cited by the Court in the March 2019 Order.  Instead, Plaintiff argues that the Court failed to consider and/or liberally construe certain allegations in the Proposed Amended Complaint, which he believes were sufficient for certain dismissed claims to proceed.  Plaintiff did not need case law to identify allegations he believed the Court failed to consider, and explain why such allegations were sufficient for certain dismissed claims to proceed.  In addition, Plaintiff's submissions between the March 2019 Order and the July 2019 Order make clear that he had access to a typewriter during this time, and was able to successfully mail documents to the Court, including a single-spaced two-page letter explaining why he was unable to timely file his objections.  *See* Dkt. No. 72.

Accordingly, in addition to the reasons discussed more fully below, the Court denies Plaintiff's request to vacate portions of the March 2019 Order as untimely.

### 1. Eighth Amendment Claims Against Annucci and Kirkpatrick

Plaintiff appears to argue that this Court erroneously dismissed his Eighth Amendment claims against Defendants Annucci and Kirkpatrick.  *See* Cross-Motion Memorandum of Law at 7-10.

For the sake of clarity, the March 2019 Order did not hold that the Proposed Amended

21

Complaint failed to adequately plead an Eighth Amendment claim against Defendants Annucci and Kirkpatrick. Rather, the March 2019 Order rejected the class action allegations and any attempt to bootstrap the existing Eighth Amendment claim against these officials into a First Amendment retaliation claim against them. *See* March 2019 Order at 20-21.[8] The March 2019 Order also clarified that, insofar as Plaintiff sought to pursue an Eighth Amendment claim against these officials (and Superintendent Bell) based specifically on the newly alleged meal denials – as opposed to the claim that all meal denials occurred pursuant to a flawed custom or practice – the Proposed Amended Complaint failed to adequately plead that these officials were personally involved in such wrongdoing. *Id.* In so ruling, the Court contemplated a scenario in which Plaintiff is unable to prove his policy-based claim, but is able to prove that certain specific meal denials violated his Eighth Amendment rights.

Indeed, the March 2019 Order expressly denied the Motion to Amend with respect to Defendants Annucci and Kirkpatrick only insofar as the Proposed Amended Complaint "seeks to add . . . *additional* First and Eighth Amendment claims" against these officials. *Id.* at 21 (emphasis added). The March 2019 Order also included ordering paragraphs that (1) directed the Clerk to file, upon receipt from Plaintiff of a signed copy of the signature page of the Proposed Amended Complaint (Dkt. No. 29-3), "that pleading as the Amended Complaint in this action against original Defendants Annucci and Kirkpatrick, as well as new Defendants Baker, French, Castine, Reed, and Lamoy ONLY[,]" and (2) directed Defendants Annucci

---

[8] Should one or more of Plaintiff's Eighth Amendment claims proceed to trial, the Court's refusal to allow this case to proceed as a class action does not necessarily mean Plaintiff is precluded from introducing evidence showing other inmates besides himself suffered meal deprivations. Rather, the admissibility of such evidence is for the trial court to decide.

and Kirkpatrick to "file their respective response the First Amended Complaint within twenty (20) days of the filing of the signed First Amended Complaint[.]"  *Id.* at 32-33.

Based on the foregoing, Plaintiff's request that the Court reconsider its prior ruling and reinstate the Eighth Amendment claims against Defendants Annucci and Kirkpatrick is denied as unnecessary.

### 2. Claims Against Defendant Lamoy

#### (a) Retaliation Claim

Insofar as Plaintiff contends that the March 2019 Order incorrectly declined to allow Plaintiff to proceed with a First Amendment retaliation claim against Defendant Lamoy based on an alleged inmate assault that occurred on December 7, 2017, Plaintiff has failed to satisfy his high burden of demonstrating that the Court committed a clear error of law that has resulted in extreme hardship.

The Court declined to allow this claim to proceed based on the speculative and conclusory nature of the allegations in the Proposed Amended Complaint.  *See* March 2019 Order at 22-23.  Although Plaintiff now argues that the Court failed to consider specific allegations that Defendant Lamoy made a statement the day after the alleged assault about "Karma" and Plaintiff "bragging" about the instant action, the Amended Complaint is devoid of any allegations explaining how Defendant Lamoy may have known, prior to the alleged inmate assault on December 7, 2017, that Plaintiff had filed the instant action.  In addition, the Amended Complaint lacks any allegations which plausibly suggest that Plaintiff had any encounters with Defendant Lamoy, good, bad, or otherwise, prior to December 7, 2017. Without any such allegations, the Court had no basis to plausibly infer that Defendant Lamoy

directed an inmate to assault Plaintiff on December 7, 2017, because Plaintiff filed the instant action.

Accordingly, Plaintiff's motion to vacate and reverse the March 2019 Order is denied with respect to the aforementioned claim.

### (b) Eighth Amendment Claim

Insofar as Plaintiff contends that the March 2019 Order incorrectly declined to allow Plaintiff to proceed with an Eighth Amendment failure-to-protect claim against Defendant Lamoy, Plaintiff has failed to satisfy his high burden of demonstrating that the Court committed a clear error of law that has resulted in extreme hardship.

Construing the Amended Complaint with the utmost liberality, the allegations plausibly suggest that Defendant Lamoy was made aware of two meals that Plaintiff missed in close proximity to when those meals were not delivered to Plaintiff at his cell – a lunch meal on December 11, 2017, and a breakfast meal on January 1, 2018. *See* Am. Compl. at ¶¶ 51-73. The Amended Complaint also alleges that Defendant Lamoy delivered Plaintiff lunch on January 1, 2018. *Id*. at ¶ 70. While Plaintiff alleges he was denied several other meals during his keeplock confinement, the Court had no basis to plausibly infer Defendant Lamoy was responsible for ensuring the delivery of those meals. Instead, the Amended Complaint identifies other officials with whom Plaintiff spoke about those missed meals. *See* Am. Compl. at ¶¶ 51-73. Furthermore, insofar as Plaintiff claims that Defendant Lamoy was responsible for any of Plaintiff's missed meals, the March 2019 Order found that such claims sounded in First Amendment retaliation. *See id.* at 18.

Accordingly, Plaintiff's motion to vacate and reverse the March 2019 Order is denied

with respect to the aforementioned claim.

### (c) State Law Claims

Insofar as Plaintiff contends that the Court failed to liberally construe the Proposed Amended Complaint to assert state law assault and battery claims based on Defendant Lamoy's alleged use of force against Plaintiff on January 1, 2018, and allow those claims to proceed, the Court did not construe the Proposed Amended Complaint to assert such claims because were not expressly plead.  *See generally*, Am. Compl.  In any event, Defendant Lamoy has admitted that he was aware of Plaintiff's complaints about being denied meals on and before January 1, 2018.  *See* Dkt. No. 92-11 at ¶¶ 10-17.  Based on this admission, it appears that any damages Plaintiff might have been able to recover based on state law assault and battery claims are the same damages he will be able to recover should he succeed on his First Amendment retaliation claim arising out of Defendant Lamoy's alleged use of force in response to Plaintiff's complaints about being denied food.  Thus, declining to allow state law assault and battery claims to proceed in this action, which presents potential jurisdictional concerns, *see* N.Y. Correction Law § 24, does not prejudice Plaintiff in any way.

Accordingly, Plaintiff's motion to vacate and reverse the March 2019 Order is denied with respect to the aforementioned claim.

### C.    Request for Sanctions for Spoliation of Evidence

Plaintiff requests that the Court sanction Defendants for failing to preserve "chow lists" and body camera footage of the "chow list" process after this action was being "actively litigated."  *See* Cross-Motion Memorandum of Law at 15.  Plaintiff requests as a sanction that the Court bar Defendants from disputing that he was left off the "chow lists" for the dates he

claims he was denied meals, and issue an adverse inference instruction with regard to the destruction of the post-action "chow lists" and body camera footage. *Id*. at 17.

The Court is inclined to agree with Plaintiff that after Defendants Annucci and Kirkpatrick were served, and certainly by the time the Mandatory Pretrial Discovery and Scheduling Order was imposed, Defendants had an obligation to preserve relevant documents, including the "chow lists" that were apparently destroyed thereafter. At this stage of the proceeding, the Court need not and will not decide what sanction, if any, is appropriate should this case proceed to trial. However, for purposes of this Report-Recommendation and Order, the Court has assumed that Plaintiff was denied meals on each of the dates that he has claimed in his Amended Complaint.

### D.    Request to Re-Open Discovery

Plaintiff asks the Court to re-open discovery pursuant to Rule 26(d)(1) and Rule 56(d) to allow him to obtain previously unavailable "law enforcement disciplinary records" and records of "state-law-mandated reviews and approvals" by Defendants Annucci and Kirkpatrick relative to "the 'chow list' policies" so that he may properly oppose the Motion for Summary Judgment. *See* Cross-Motion Memorandum of Law at 18-19.

Plaintiff's request for disciplinary records is denied at this time as unnecessary because (1) in addressing the Motion for Summary Judgment, the Court is obligated to construe all evidence in the light most favorable to Plaintiff, and (2) as set forth below, the Court has not relied solely on Defendant declarations in granting any aspect of the Motion for Summary Judgment. *See Shomo v. Dep't of Corr. & Cmty. Supervision*, No. 9:15-CV-1029 (GLS/ATB), 2019 WL 7971871, at *12 n.12 (N.D.N.Y. Oct. 7, 2019) ("To the extent plaintiff

seeks relief under Rule 56(f), we further recommend denying the same. Plaintiff admits that these transcripts, at most, include the state's request to withdraw their 2012 state court petition to force-feed plaintiff, and its concession that the court stop short of determining plaintiff's status as a quadriplegic. . . . Even assuming the validity of plaintiff's contentions as to the contents of the transcripts, such evidence is not relevant to the instant motion and would not affect this court's recommendation." (citing *Hodge v. Perilli*, No. 06-CV-2480, 2010 WL 291058, at *11 (S.D.N.Y. July 12, 2010) (citing *Sage Realty Corp. v. Insurance Co. of North America*, 34 F.3d 124, 128 (2d Cir. 1994) (noting that to obtain Rule 56(f) relief, additional discovery sought must be material to opposition of the summary-judgment motion))), *report and recommendation adopted by* 2020 WL 486868 (N.D.N.Y. Jan. 30, 2020).[9]

Plaintiff's request for records related to "state-law-mandated reviews and approvals" by Defendants Annucci and Kirkpatrick "of the 'chow list' policies" is also denied as unnecessary.  Any such documents, to the extent they exist, will not show that these officials were aware that certain corrections officials at Clinton Correctional Facility have prepared or relied on "chow lists" in a manner that has resulted in inmates missing meals.  Indeed, Defendants Annucci and Kirkpatrick have both expressly denied having any such knowledge. *See* Dkt. No. 92-14 ("Annucci Decl."), ¶¶ 12-15; Dkt. No. 92-15 ("Kirkpatrick Decl."), ¶¶ 12, 14-15.  While a question of fact may remain as to this issue, the documents Plaintiff desires

---

[9]  The Federal Rules of Civil Procedure were amended on December 1, 2010, which included redesignating former Rule 56(f) as 56(d).

will not resolve the matter.[10]

## V.    LEGAL STANDARD GOVERNING SUMMARY JUDGMENT

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin*, 467

---

[10] There also can be no doubt that Plaintiff knew, at the time he commenced this action, that records showing awareness by Defendants Annucci and Kirkpatrick of improper preparation and use of "chow lists" would be relevant to this dispute.  Thus, insofar as Plaintiff contends that the records he now desires will show such awareness, his request is alternatively denied as untimely.  *See Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) ("[T]he trial court may properly deny further discovery if the nonmoving party has had a fully adequate opportunity for discovery." (citations omitted)); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 2398762, at *2 (S.D.N.Y. Aug. 15, 2007) (denying Plaintiff's request to extend discovery because "Plaintiff has not shown that her failure to complete discovery was anyone's fault but her own" and "[P]laintiff did not diligently utilize the time available to her to complete discovery, [so] there is no reason to extend that time."); *Yrityspankki Skop Oyj v. Delta Funding Corp.*, No. 98-CV-7888, 1999 WL 1018048, at *3-4 (S.D.N.Y. Nov. 9, 1999) ("In seeking to reopen discovery in the face of the plaintiff's summary judgment motion, the defendant must demonstrate by affidavit what additional information it wishes to discover, how that additional information can reasonably be expected to defeat the summary judgment motion by creating issues of material fact, what efforts the defendant has made during discovery to obtain this information and why it was unsuccessful in doing so. . . . Plaintiff utterly fails to satisfy these requirements of Fed. R. Civ. P. 56(f).").

F.3d at 272-73.  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence.  *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted).

In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff."   "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id*. (citation and internal quotation marks omitted).  "To defeat summary judgment, . . . nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (citation and internal quotation marks omitted).  "[T]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations." *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997)  (citation omitted).  "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve

all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93-CV-5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## VI.    LEGAL STANDARDS GOVERNING CLAIMS AND DEFENSES

### A.    First Amendment Retaliation Claim

To establish a prima facie First Amendment retaliation claim, a plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

As to the first element, it is well-settled the filing of grievances and lawsuits is a constitutionally protected activity under the First and Fourteenth Amendments. *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (citing *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988)); *Espinal v. Goord*, 558 F.3d 119, 128-29 (2d Cir. 2009) ("There is no dispute that [plaintiff's] earlier federal lawsuit . . . was a protected activity."). In addition, "case law in this Circuit indicates that a prisoner's oral complaints to a correction officer may serve as the

basis for a First Amendment retaliation claim." *Tirado v. Shutt*, No. 13-CV-2848, 2015 WL 774982, at *9 (S.D.N.Y. Feb. 23, 2015) (collecting cases), *report and recommendation adopted in pertinent part by* 2015 WL 4476027 (S.D.N.Y. July 22, 2015).

"Adverse action" for purposes of a retaliation claim has been defined as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights. . . . Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes*, 239 F.3d at 493).  This is an objective test, so an adverse action may be found even if the plaintiff himself was not subjectively deterred from exercising his rights. *Gill*, 389 F.3d at 381.

A plaintiff bears the burden of showing "the protected conduct was a substantial or motivating factor" in the defendant's decision to act against the plaintiff.  *Graham*, 89 F.3d at 79.  For protected conduct to be a substantial or motivating factor in a decision, it is "only intuitive" that "the decisionmakers must be aware of the protected conduct." *Wrobel v. County of Erie*, 692 F.3d 22, 32 (2d Cir. 2012) (citation omitted).  In evaluating whether a causal connection exists between the plaintiff's protected activity and a state official's actions, "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the [plaintiff's] prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995)).  "The causal connection must be sufficient to support an inference that the protected conduct played a

substantial part in the adverse action." *Id*.

**B.    Eighth Amendment Conditions-of-Confinement Claims**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."

U.S. Const. amend. VIII.  The prohibition extends to prison conditions.  *Horne v. Coughlin*,

155 F.3d 26, 31 (2d Cir. 1998).  "The Constitution does not mandate comfortable prisons . . .

but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner

receives in prison and the conditions under which he is confined are subject to scrutiny under

the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations and

internal quotation marks omitted).  Prison officials violate the Eighth Amendment when they

"deprive an inmate of his 'basic human needs' such as food, clothing, medical care, and safe

and sanitary living conditions." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting

*Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam)).

To state a claim under the Eighth Amendment based upon conditions of confinement,

an inmate must satisfy both an objective and a subjective element.  *Farmer*, 511 U.S. at 834,

837.  To satisfy the objective element, a plaintiff must establish that he was incarcerated

under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a

"life[ ] necessit[y]" or a "substantial risk of harm." *Id*. at 834.  To satisfy the subjective

element, a plaintiff must establish that the "defendant official acted with a sufficiently

culpable state of mind . . ., such as deliberate indifference to inmate health or safety."

*Walker*, 717 F.3d at 125 (citations and internal quotation marks omitted).

To constitute deliberate indifference under the subjective element, "[t]he prison official

must know of, and disregard, an excessive risk to inmate health or safety." *Jabbar v.*

32

*Fischer*, 683 F.3d 54, 57 (2d Cir. 2012); *see also Trammel v. Keane*, 338 F.3d 155, 162-63 (2d Cir. 2003) (the state of mind for the subjective element in cases involving prison conditions is "deliberate indifference to inmate health or safety.").  "The official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Mere negligence is not enough. *Id.* at 835.

"[U]nder certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension[,]" *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (citation omitted), but only if such substantial deprivation "presents an immediate danger to the inmate's health or well-being." *Chapdelaine v. Keller*, No. 95-CV-1126 (RSP/GLS), 1998 WL 357350, at *12 (N.D.N.Y. Apr. 16, 1998) (citations omitted); *see also Evans v. Albany County Corr. Facility*, No. 9:05-CV-1400 (GTS), 2009 WL 1401645 at *9 (N.D.N.Y. May 14, 2009) ("To establish a valid claim that the denial of food . . . constitutes an Eighth Amendment violation, one must establish that there was a 'sufficiently serious condition' that resulted from the food not being received.").

### C.    Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Ross v. Blake*, __ U.S. ___, 136 S. Ct. 1850, 1854-55 (2016).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether

they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined and do so properly.  *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Id*. at 211.  In New York state prisons, DOCCS has a well-established three-step inmate grievance program.  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5 (2013).

Generally, the IGP involves the following procedure for the filing of grievances.  First, an inmate must file a complaint with the facility's IGP clerk within twenty-one calendar days of the alleged occurrence.  N.Y. Comp. Codes R. & Regs. tit. 7 ("7 NYCRR"), § 701.5(a) (2010).  A representative of the facility's IGRC has sixteen calendar days from receipt of the grievance to informally resolve the issue.  *Id*. at 701.5(b)(1).  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen calendar days of receipt of the grievance (*id*. at § 701.5(b)(2)), and issues a written decision within two working days of the conclusion of the hearing.  *Id*. at § 701.5(b)(3).

Second, a grievant may appeal the IGRC decision to the facility's superintendent within seven calendar days of receipt of the IGRC's written decision.  7 NYCRR, § 701.5(c)(1).  If the grievance involves an institutional issue (as opposed to a DOCCS-wide policy issue), the superintendent must issue a written decision within twenty calendar days of receipt of the grievant's appeal.  *Id*. at § 701.5(c)(3)(ii).  Grievances regarding DOCCS-wide

34

policy issues are forwarded directly to CORC for a decision under the process applicable to the third step. *Id*. at 701.5(c)(3)(I).

Third, a grievant may appeal to CORC within seven working days of receipt of the superintendent's written decision. 7 NYCRR, § 701.5(d)(1)(I). CORC is to render a written decision within thirty calendar days of receipt of the appeal. *Id*. at 701.5(d)(3)(ii).

As set forth above, at each step of the IGP, a decision must be rendered within a specified time period. "Where the IGRC and/or superintendent do not timely respond, an inmate must appeal 'to the next step,'" assuming there is another step in the IGP. *Eleby v. Smith*, No. 9:15-CV-0281 (TJM/DEP), 2017 WL 986123, at *4 (N.D.N.Y. Jan. 9, 2017) (quoting 7 N.Y.C.R.R. § 701.6(g)(2)); *see also Smith v. Kelly*, 985 F. Supp. 2d 275, 281 (N.D.N.Y. 2013) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance . . . can—and must—be appealed to the next level . . . to complete the grievance process.").

Generally, if a plaintiff fails to follow each of the required steps of the IGP, including receipt of a decision from CORC, prior to commencing litigation, he has failed to exhaust his administrative remedies as required under the PLRA. *See Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[T]he PLRA requires proper exhaustion, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits.") (internal quotations and citations omitted)).

While the PLRA mandates exhaustion of administrative remedies, it also "contains its own, textual exception to mandatory exhaustion." *Ross*, 136 S. Ct. at 1858. More specifically, section 1997e(a) provides that only those administrative remedies that "are

available" must first be exhausted.  42 U.S.C. § 1997e(a); *see also Ross*, 136 S. Ct. at 1858

("[T]he exhaustion requirement hinges on the availability of administrative remedies[.]")

(quotations and citations omitted).  In the PLRA context, the Supreme Court has determined

that "availability" means that "an inmate is required to exhaust those, but only those,

grievance procedures that are capable of use to obtain some relief for the action complained

of." *Ross*, 136 S. Ct. at 1859 (quotations and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal

administrative remedies are not available to prisoners under the PLRA.  *Id*. at 1859-60.  First,

"an administrative procedure is unavailable when (despite what regulations or guidance

materials may promise) it operates as a simple dead end—with officers unable or

consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 1859.  "Next, an

administrative scheme might be so opaque that it becomes, practically speaking, incapable

of use." *Id*.  Finally, an administrative remedy is not "available" when "prison administrators

thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation." *Id*. at 1860.

In *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), the Second

Circuit noted that, "the three circumstances discussed in *Ross* do not appear to be

exhaustive[.]"  The illustrations of unavailability in *Ross* nonetheless guide the Court's inquiry.

*See Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19,

2016).

## VII.    ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue that summary judgment is appropriate because (1) Plaintiff failed to

exhaust available administrative remedies with respect to his Eighth Amendment claims, (2) the alleged meal denials by Defendants Baker, French, Castine, and Reed did not violate Plaintiff's Eighth Amendment rights as a matter of law, (3) the alleged wrongdoing by Defendant Lamoy is insufficient to establish a First Amendment retaliation claim, and (4) there is no evidence in the record from which a reasonable factfinder could conclude that Defendants Annucci and Kirkpatrick were personally involved in any of the wrongdoing that resulted in Plaintiff missing one or more meals. *See generally*, Dkt. No. 92-30 ("Defendants' Summary Judgment Memorandum of Law").

In response, Plaintiff argues that (1) he exhausted all "available" administrative remedies with respect to his Eighth Amendment claims, (2) a reasonable jury could return a verdict against Defendants Annucci, Kirkpatrick, Baker, Castine, French, and Reed on his Eighth Amendment claims because he was denied meals under the "chow list" policy and practice, and (3) a reasonable jury could return a verdict against Defendant Lamoy on his First Amendment retaliation claim. *See* Opposition Memorandum of Law.[11]

### A.    Exhaustion

The parties do not dispute that the Policy Grievance Plaintiff claims to have submitted to the IGP Clerk on December 30, 2017, was never filed and assigned a formal grievance number. In addition, the parties do not dispute that Plaintiff never submitted a grievance specifically addressing the meal denials he claims he experienced on February 4, 2017, February 3, 2018, and March 24, 2018.

---

[11] As noted above, Plaintiff also argues in his Cross-Motion Memorandum of Law that further discovery is needed insofar as there is a lack of evidence in the record showing that Defendants Kirkpatrick and Annucci were not personally involved in creating or endorsing the "chow list" practice at Clinton Correctional Facility.

Nonetheless, Plaintiff contends that he properly exhausted his administrative remedies with respect to his Eighth Amendment claims because (1) he submitted the Policy Grievance to the IGP Clerk at Clinton Correctional Facility on December 30, 2016, and timely appealed the non-response to this grievance to the Superintendent and then CORC, (2) this grievance complained about the improper application of the "chow list" policy at Clinton Correctional Facility, which had resulted, and would continue to result, in him and other inmates missing meals, and (3) he did not have an obligation to submit repetitive grievances regarding future harm that occurred as a result of an improper application of the "chow list" policy. Opposition Memorandum of Law at 27; Opposition Declaration at 20, ¶ 34.

Plaintiff further contends that, insofar as his actions did not satisfy the exhaustion requirement, the IGP process at Clinton Correctional Facility was not "available" because it operated as a "simple dead end" and staff frequently "thwarted" people from trying to use it through "machination, misrepresentation, or intimidation." Opposition Declaration at 20, ¶ 35. Plaintiff claims that the IGP process operated as a dead end because (1) although forty-six (46) of his grievances were processed, he received no relief for any of the issues that he raised, and (2) many of the complaints, appeal statements, and other communications he submitted to the IGP Clerk or other IGP staff were either not received or not filed, which is consistent with a pattern he witnessed as a Law Library clerk whose duties included assisting inmates with the grievance process. *Id*. at ¶¶ 36-54.

Plaintiff also argues that Defendants are equitably estopped from asserting non-exhaustion because (1) the actions of DOCCS officials inhibited his use of the grievance process, and (2) DOCCS had a full and fair opportunity to resolve his challenges to the "chow list" policy administratively, yet refused to do so. Opposition Memorandum of Law at

27.

The Court is inclined to agree with Plaintiff that he properly attempted to exhaust the

Policy Grievance. *Cf. Heyliger v. Gebler*, 624 Fed. App'x 780, 782 (2d Cir. 2015) (summary

order) ("Under the regulations . . ., if at any step of the grievance process, an inmate did not

receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ]

to the next step.'") (quoting 7 NYCRR, § 701.6(g)(2) (2015)).  However, even assuming

Plaintiff did not properly exhaust this grievance, at a minimum, he has adduced sufficient

evidence from which a reasonable factfinder could conclude that the grievance process was

not available to him with respect to this grievance. *See generally*, Dkt. No. 105-4.

Furthermore, insofar as Plaintiff claims in this action that there was a practice or

unofficial policy at Clinton Correctional Facility regarding preparing or interpreting "chow lists"

in a manner that caused inmates, including Plaintiff, to unnecessarily miss meals, the Court

agrees that he was not required to exhaust his administrative remedies each time he was

subsequently denied meals as a result of a wrongful preparation of a "chow list" in order to

present a constitutional challenge to the practice or unofficial policy that resulted in the

deprivation. *See, e.g., Cisco v. Jones*, No. 9:17-CV-0347 (LEK/DJS), 2020 WL 1180779, at

*4 (N.D.N.Y. Mar. 12, 2020) (recognizing that "the Second Circuit has crafted an exception to

[the exhaustion requirement] for cases 'in which a prior grievance identifies a specific and

continuing complaint that ultimately becomes the basis for a lawsuit'" (quoting *Johnson v.

Killian*, 680 F.3d 234, 239 (2d Cir. 2012)).

As more fully explained by another court in this circuit:

> In *Johnson*, the Second Circuit held that [an inmate-plaintiff] had
> exhausted his administrative remedies when he filed, and exhausted, a

grievance in 2005 challenging the facility's prayer polices. *Id*. at 236-37. After Johnson filed his grievance, the facility ceased enforcing the relevant policy. *Id*. at 237. In 2007, a new warden was appointed, and the challenged policy was reimplemented and consistently enforced. *Id*. Plaintiff filed a complaint without exhausting his administrative remedies regarding the re-implementation of the challenged policy. *Id*. The court held that plaintiff sufficiently complied with the exhaustion requirement by challenging the identical policy in 2005, notwithstanding a "different set of circumstances" in 2007. *Id*. at 238-39. The court held that "the issue that Johnson would have raised in 2007—the inadequacy of the spaces and times allotted for congregational prayer—was identical to the issue he exhausted in 2005." *Id*. at 239.

*White v. Williams*, No. 12-CV-1892, 2016 WL 1237712, at *7 (N.D.N.Y. Jan. 11, 2016), *report and recommendation adopted by* 2016 WL 1239263 (N.D.N.Y. Mar. 29, 2016).

The Court, however, disagrees with Plaintiff insofar as he contends that he was not required to grieve specific instances of alleged wrongdoing related to corrections officials' creation and use of the "chow list" before commencing suit against those officials. The Court reaches this conclusion for two reasons.

First, the alleged deliberate indifference of Defendants Baker, French, Reed, and Castine with respect to meal requests that occurred after Plaintiff attempted to file the Policy Grievance is more akin to harassment than a mistake resulting from lax preparation or interpretation of a "chow list," and therefore triggers an entirely different administrative process. *See* 7 NYCRR, § 701.8.

Second, low-ranking corrections officials who created "chow lists," including Defendants Baker, French, Reed, and Castine, do not have the authority to grant Plaintiff the relief he sought in the Policy Grievance, which was, in essence, an end to the use of "chow lists" as a means for determining which inmates are released from

40

their cells for upcoming meals.

Accordingly, insofar as Plaintiff seeks to hold Defendants Baker, French, Reed, and Castine personally liable for their specific actions of alleged deliberate indifference, his prior submission of the Policy Grievance does not satisfy the exhaustion requirement with respect to the Eighth Amendment claims against these officials. *See White v. Velie*, No. 9:15-CV-88 (TJM/ATB), 2015 WL 10567827, at *7 (N.D.N.Y. Dec. 18, 2015) ("The fact that plaintiff has previously raised excessive force or medical care claims does not excuse him from exhausting all future claims based on medical care or excessive force."), *report and recommendation adopted by* 2016 WL 1238242 (N.D.N.Y. Mar. 28, 2016), *aff'd*, 709 Fed. App'x 35 (2d Cir. 2017) (noting that plaintiff's contention that he had previously filed "similar" grievances did not excuse his failure to exhaust); *White v. Williams*, 2016 WL 1237712, at *7 ("The fact that plaintiff has previously raised generalized personal safety concerns regarding unidentified inmates or medical care claims does not excuse him from exhausting all future claims that raise similar issues.").

Moreover, the evidence in the record shows that around the same times that Plaintiff contends he was denied meals by Defendants Baker, French, Reed, and Castine, he submitted several other grievances.  *See* Dkt. No. 92-18.  One of those grievances, filed on February 20, 2018, alleges harassment by a corrections official. *Id*.  Thus, the Court has no basis to conclude either that the administrative scheme was "so opaque" as to be "practically speaking, incapable of use[,]" or that Plaintiff was unable to "tak[e] advantage of [the] grievance process" as a result of the actions

41

of corrections officials.  *Ross*, 136 S. Ct. at 1859.

However, Plaintiff has introduced evidence showing that by the time he was allegedly denied meals on and after February 3, 2018, he had attempted to fully exhaust the Policy Grievance, and filed other grievances regarding meal deprivations, as well as a New York Court of Claims proceeding regarding the Policy Grievance and his inability to properly utilize the grievance process, and none of these efforts lead to a change in the practice surrounding preparation and interpretation of "chow lists" at Clinton Correctional Facility.  Thus, a rational factfinder could conclude that the administrative procedure for remedying missed meals as a result of the practice surrounding preparation and interpretation of "chow lists" at Clinton Correctional Facility operated as a dead end.

In light of the foregoing, the Court recommends that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his Eighth Amendment claims be denied.

### B.   First Amendment Retaliation Claim

#### 1.  Protected Activity

Plaintiff has introduced evidence showing that on December 8, 2017, Defendant Lamoy made a reference to Plaintiff's activities in the prison yard the day before.  *See* Am. Compl. at ¶¶ 46, 50-51; Pl. Dep. Tr., pp. 179-89.  Plaintiff has also introduced evidence showing that Defendant Lamoy showed up at his cell after he was denied lunch on December 11, 2017, and threatened to assault him if he did not stop complaining.  Am. Compl. at ¶ 57.

Furthermore, the evidence in the record shows that Plaintiff submitted at least three grievances between December 26 and December 30, 2017, regarding alleged mistreatment by corrections officials.  *See* Dkt. No. 92-21 at 7; Dkt. No. 92-22 at 6-8. According to Plaintiff, he also complained "loudly" about being denied meals on multiple occasions between December 8 and December 31, 2017, including on December 30, 2017, and it is undisputed that Defendant Lamoy interacted with Plaintiff that day in response to his complaint about being denied food.  Am. Compl. at ¶ 52; Opposition Declaration at 2-3, ¶ 7; *Compare* Dkt. No. 92-1, *with* Dkt. No. 105-3.

Construed in the light most favorable to Plaintiff, such evidence suggests that Defendant Lamoy was aware of Plaintiff's engagement in protected activity on and before December 30, 2017.  *See, e.g., Tirado*, 2015 WL 774982, at *9; *Smith v. Woods*, No. 03-CV-480, 2006 WL 1133247 at *10 (N.D.N.Y. Apr. 24, 2006) (extending First Amendment protection to prisoner plaintiff's oral complaints to correction officers under circumstances presented), *aff'd*, 219 Fed. App'x 110 (2d Cir. 2007), *cert. denied*, 522 U.S. 1248 (2008).

In addition, it is undisputed that Plaintiff submitted a grievance regarding Defendant Lamoy's alleged conduct on January 1, 2018, which was officially filed on January 3, 2018.  Dkt. No. 92-23 at 4-5, ¶ 17; Dkt. No. 92-29 at 9-11.

### 2. Adverse Actions

As noted above, Plaintiff has introduced evidence showing that Defendant Lamoy threatened him with physical harm on December 11, 2017.  In addition, Plaintiff has introduced evidence showing that on January 1, 2018, he complained to

Defendant Lamoy about being denied dinner on December 31, 2017, after which the two engaged in an argument, which lead to Defendant Lamoy threatening Plaintiff, entering his cell, and striking him in the throat.  Am. Compl. at ¶¶ 67-69; Pl. Dep. Tr., pp. 224-28.  Furthermore, according to Plaintiff and a fellow inmate, two days later, Defendant Lamoy called Plaintiff a "rat" in the presence of other inmates.  Am. Compl. at ¶ 77; Pl. Dep. Tr., pp. 231-32; Dkt. No. 105-4 at 43.

Construed in the light most favorable to Plaintiff, such evidence suggests that Defendant Lamoy subjected Plaintiff to various forms of adverse action between December, 2017 and January, 2018.

### 3. Causal Connection

Construing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Defendant Lamoy was aware of Plaintiff's lawsuit and complaints about being denied meals on and before December 30, 2017.  In addition, a reasonable factfinder could conclude that Defendant Lamoy was aware of at least the grievance Plaintiff submitted against him by January 3, 2018.  Furthermore, the alleged adverse actions occurred within close proximity to Plaintiff's receipt of the November 2017 Order in this action, oral complaints about mistreatment, and submission of grievances.

In light of the foregoing, and construing the evidence in the light most favorable to Plaintiff, the Court recommends that Defendants' Motion for Summary Judgment be denied with respect to Plaintiff's First Amendment retaliation claim against Defendant Lamoy.

### C.    Eighth Amendment Claims

44

At the outset, the Court notes that the unofficial policy that Plaintiff challenges in this case is best characterized as a practice of indifference toward preparing, interpreting, and correcting, as necessary, "chow lists" in order to ensure that inmates at Clinton Correctional Facility who desire to leave their cells for certain meals are in fact permitted to do so.  Although the Inmate Handbook at Clinton Correctional Facility implies that the corrections officer tasked with preparing a "chow list" will provide inmates with an opportunity to state whether or not they wish to leave their cell for non-mandatory meals, and expressly states that "[l]ist taking occurs at roughly the same time every day[,]" Dkt. No. 49-2, Plaintiff has introduced evidence showing that "chow lists" are regularly taken at different times, with corrections officials sometimes failing to announce the preparation of the list in advance, and other times "racing by" cells.  *See* Am. Compl. at ¶¶ 22-23; Pl. Dep. Tr., pp. 57, 71-72, 118.  Plaintiff has also introduced evidence showing that (1) supervisory officials at Clinton Correctional Facility do not oversee the preparation and interpretation of "chow lists" to ensure the written policy is followed correctly, and (2) unlike other facilities within DOCCS, officials at Clinton Correctional Facility tasked with opening cell doors will not open an inmate's cell door if he is not on the "chow list," even if the inmate informs that official that the person who prepared the list made a mistake or never provided proper notice. *See* Am. Compl. at ¶¶ 36-37, 40-41; Pl. Dep. Tr., pp. 237-41.

In other words, Plaintiff has introduced evidence from which a reasonable factfinder could conclude that the practice associated with the preparation and interpretation of "chow lists" at Clinton Correctional Facility is unique, and creates the potential for inmates to be denied meals as a result of (1) a mistake by the official

preparing or interpreting the list, (2) indifference by the official preparing the list, or (3) an intentional exclusion.  Furthermore, Plaintiff has introduced evidence showing that as a result of this unofficial policy or practice, he missed at least twenty-four (24) meals over a period of approximately thirteen months.  *See* Am. Compl. at ¶ 26.[12]

In a typical case involving alleged meal deprivations, the number of missed meals would play a critical role in a court's evaluation of the merits of the Eighth Amendment claim.  Moreover, generally speaking, district courts in this Circuit have repeatedly held that isolated meal deprivations are insufficient to constitute an Eighth Amendment violation.  *See, e.g.*, *Woodward v. Ali*, No. 9:13-CV-1304 (LEK/RFT), 2015 WL 5711899, at *2 (N.D.N.Y. Sept. 29, 2015) ("Plaintiff argues that he was deprived of sufficient meals for two days. . . . However, as Judge Treece correctly states, the assertion that Plaintiff was deprived of sufficient meals for two days does not establish that 'the deprivation of food posed an immediate danger to his health.'" (citing Report and Recommendation)); *Lewis v. Zon*, 920 F. Supp. 2d 379, 387-88 (W.D.N.Y. 2013) (dismissing Eighth Amendment claim based on allegations that plaintiff was refused food on "July 7, 2004, July 27, 2004 and for part of the day on September 24, 2004[,]" concluding that these alleged deprivations, unaccompanied by any allegations that plaintiff "experienced any pain, discomfort, or medical problems . . . simply do not suggest that plaintiff suffered an urgent condition risking degeneration or extreme pain"); *Konovalchuk v. Cerminaro*, No. 9:11-CV-01344 (MAD), 2014 WL

---

[12]  Plaintiff has also submitted affidavits from fifteen different inmates who each claim that they missed meals during their confinement at Clinton Correctional Facility based on this unofficial policy or practice.  Dkt. No. 105-4 at 22-40.

272428, at *21 (N.D.N.Y. Jan. 24, 2014) ("missing two consecutive meals and being deprived of water during the same period of time, without more, does not give rise to an Eighth Amendment violation"); *Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *8-9 (S.D.N.Y. Mar. 8, 2012) (dismissing Section 1983 "claims regarding deprivation of meals" where plaintiff alleged that he was deprived of adequate food "on four separate dates over a span of six months," including one "morning meal" and one "afternoon meal"); *Cagle v. Perry*, No. 04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (holding that two meal deprivations were not sufficiently numerous, prolonged, or severe to rise to level of Eighth Amendment violation); *Zimmerman v. Seyfert*, No. 03-CV-1389, 2007 WL 2080517, at *27 (N.D.N.Y. July 19, 2007) (holding that requiring the plaintiff to go eleven hours without eating did not rise to the level of a constitutional claim).

This case, however, is distinguishable from such cases because the deprivations associated with Plaintiff's Eighth Amendment claims allegedly occurred as a result of a flawed custom or practice, which also allegedly impacted other inmates.  The number of meals missed by Plaintiff therefore cannot be the sole measure of whether or not the challenged policy or practice, and the acts of officials in furtherance of the policy or practice, are constitutional.

Against this backdrop, the Court analyzes the claims against Defendants Baker, French, Castine, Reed, Annucci, and Kirkpatrick.

### 1.  Baker and French

As noted, Plaintiff has introduced evidence from which a reasonable factfinder

47

could conclude that he was denied at least twenty-four (24) meals between December, 2016 and March, 2018.  *See* Am. Compl. at ¶ 26.  As of February 4, 2017, which is the date Plaintiff claims Defendants Baker and French denied him lunch, there is evidence in the record showing that Plaintiff had already been denied four (4) meals over the prior six weeks, including one meal the previous day.  *Id*. at ¶¶ 26-29.  The evidence in the record also shows that Plaintiff received his breakfast meal earlier that day, as well as his dinner meal later that day.  Pl. Dep. Tr. pp. 99-100, 109.

District courts have held that the denial of a handful of meals over a similar period does not constitute a "sufficiently serious" deprivation, particularly where there is no evidence that more than one meal was denied on any given day.  *See Woodward*, 2015 WL 5711899, at *2; *Lewis*, 920 F. Supp. 2d at 387-88; *Konovalchuk*, 2014 WL 272428, at *21; *Cagle*, 2007 WL 3124806, at *14.

Furthermore, with respect to the subjective element, Plaintiff testified that his neighbor did not "put down to go to chow" on February 4, 2017, but Defendant French opened the neighbor's cell door instead of Plaintiff's.  *Id*., pp. 57, 105-106, 141.  This evidence, of course, suggests that either Defendant Baker made a mistake during his preparation of the list, or Defendant French made a mistake in his interpretation of it, and Plaintiff does not argue otherwise.  *See* Opposition Memorandum of Law at 14-15.[13]

Additionally, although Plaintiff testified that he and two other inmates advised

---

[13]  Defendants Baker and French have also both provided sworn statements indicating that neither even intentionally denied Plaintiff, or any other inmate, a meal.  *See* Dkt. No. 92-8 ("Baker Decl."), ¶ 6; Dkt. No. 92-10 ("French Decl."), ¶ 8.

Defendant French that Plaintiff wished to be released from his cell after his neighbor's cell door was opened instead, it is undisputed that when an inmate is not on the "chow list," he is not supposed to be let out of his cell.  While Plaintiff may disagree with that policy, Defendant French's reliance on it is insufficient to establish that he was deliberately indifferent to Plaintiff's health and well-being.  *See, e.g., Sankara v. Montgomery*, No. 9:16-CV-0885 (FJS/TWD), 2018 WL 4610686, at *9 (N.D.N.Y. June 25, 2018) (concluding, where inmate plaintiff claimed to miss a total of five meals over a period of fifty-three days, and corrections official admitted denying one of those meals because plaintiff was "not standing at his door fully dressed as required," that the deprivations did not rise to the level of an Eighth Amendment violation), *report and recommendation adopted by* 2018 WL 3408135 (N.D.N.Y. July 13, 2018).  This is particularly the case because there is no evidence in the record showing that either Defendant Baker or Defendant French was aware on February 4, 2017, that Plaintiff had previously missed any meals.

In short, there is no evidence in the record which a reasonable factfinder could conclude that Defendants Baker and French denied Plaintiff a single lunch meal on February 4, 2017, out of deliberate indifference to his health or well-being.

Accordingly, the Court recommends that Plaintiff's Eighth Amendment claims against Defendants Baker and French be alternatively dismissed on the merits.

### 2.  Reed and Castine

#### (a) Objective Element

As noted, Plaintiff claims that Defendant Castine prepared the "chow list" for

lunch and dinner on February 3, 2018, and for dinner on March 24, 2018, and Defendant Reed was responsible for opening the cell doors of inmates on the "chow list" for the dinner meals on February 3 and March 24, 2018.  Pl. Dep. Tr., pp. 117, 125-128, 133-35, 139.  Plaintiff claims that he informed Defendant Castine that he wished to have has name placed on the "chows lists" for each of these meals, and separately informed Defendant Reed that he wished to be released from his cell for the dinner meals on February 3 and March 24, 2018, yet he was not released from his cell for lunch and dinner on February 3, 2018, or dinner on March 24, 2018.  Am. Compl. at ¶¶ 30-33; Pl. Dep. Tr., pp. 126-128, 133-35, 138-40.

Defendant Castine states in his declaration that he was not working on the A-Block during the 3:00 pm to 11:00 pm shift on February 3, 2018, and therefore "would have had nothing to do with either taking the dinner chow list or letting inmates on A-Block out for the dinner meal."  Dkt. No. 92-9 at 2, ¶ 5.  In addition, Defendant Reed states in his declaration that "letting inmates out for the lunch meal is not one of [his] job duties," and he therefore "would not have been responsible for letting the Plaintiff out for lunch on March 24, 2018."  Dkt. No. 92-13 at 2, ¶ 6.

Plaintiff, however, testified that he had a conversation with Defendant Castine about being left off the lunch "chow list" when Defendant Castine prepared the dinner "chow list" on February 3, 2018.  Pl. Dep. Tr., pp. 126-128.  Moreover, Defendant Castine does not deny that he was working on February 3, 2018, during the times that the lunch and dinner "chow lists" were prepared, and acknowledges that he was working on the A-Block when the lunch "chow list" was prepared.  Dkt. No. 92-9 at 2, ¶ 5.  In addition, Plaintiff testified that he was denied dinner, not lunch, on March 24,

**Case 9:17-cv-01042-DNH-TWD    Document 116    Filed 03/08/21    Page 51 of 62**

2018, and that he witnessed Defendant Reed open the cell doors for the dinner meal that day, and thereafter spoke with Defendant Reed about not being let out for the meal. Pl. Dep. Tr., pp. 133-34, 138-40. Thus, questions of fact remain regarding whether Defendants Castine and Reed were responsible for denying Plaintiff meals on February 3 and March 24, 2018, which must be resolved for purposes of this motion in Plaintiff's favor at this stage.

As of February 3, 2018, Plaintiff claims that he had been denied at least twenty-one (21) meals over the preceding thirteen and a half months as a result of corrections officials failing to properly prepare and/or interpret "chow lists," with the most recent denials occurring roughly two and three weeks earlier, respectively. Am. Compl. at ¶ 26. In addition, Plaintiff claims that he was denied at least fourteen (14) other meals between December 8, 2017, and January 2, 2018, while he was confined on keeplock status. Am. Compl. at ¶¶ 51, 60, 65, 75.

Although Plaintiff does not claim that either Defendant Castine or Defendant Reed were responsible for any of these earlier missed meals, they are certainly relevant to the Court's analysis of the objective element of Plaintiff's Eighth Amendment claim under the circumstances alleged. Indeed, to conclude otherwise would mean that an inmate could hypothetically be denied consecutive meals for days at a time as a result of corrections officials preparing "chow lists" in a flawed manner, and as long as no official prepared more than one list, the inmate would be unable to state a cognizable constitutional claim. *See also Jabbar,* 683 F.3d at 57 (noting that "there is no 'static test' to determine whether a deprivation is sufficiently serious; '[t]he conditions themselves must be evaluated in light of contemporary standards of

51

decency'" (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).

Nonetheless, whether or not depriving an inmate of roughly two meals every month for more than a year -- including consecutive meals on more than one occasion -- as a result of an allegedly flawed practice posed an unreasonable risk of serious damage to Plaintiff's health presents a close call.  On the one hand, it is unlikely that such infrequent deprivations, even over this relatively long period of time, presented a risk of serious damage to Plaintiff's physical state.  On the other hand, health includes the risk of serious damage to "mental soundness[,]" *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (quoting *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)), and there can be little doubt that a custom or practice that may result in an inmate missing a meal on any given day, even when he desires the meal and requests it, can lead to stress and anxiety, particularly where the effects of that custom or practice have been experienced over an extended period of time.  Furthermore, there is no evidence in the record regarding the specifics of the breakfast meal Plaintiff received on February 3, 2018, and at least one court has held that "[w]hen a prison guard deprives a prisoner of two of the regularly three meals served each day, the objective prong of the Eighth Amendment may be met if the defendants do not satisfy their burden of showing that the one meal served is nutritionally adequate." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 213 (N.D.N.Y. 2001).

In light of the above, and construing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that the meal deprivations purportedly caused by the actions of Defendants Castine and Reed were serious enough to violate Plaintiff's Eighth Amendment rights.

**(b) Subjective Element**

Plaintiff testified that he had no interactions with either Defendant Castine or Defendant Reed that were out of the ordinary before February 3, 2018.  Pl. Dep. Tr., pp. 116, 131.  Plaintiff further testified that he advised Defendant Castine that he wished to be placed on the lunch "chow list" on February 3, 2018, and thought Defendant Castine heard his request.  *Id*., pp. 117-19.  Thus, it is certainly possible that Plaintiff was not let out of his cell for lunch of February 3, 2018, based on a mistake with either the preparation or interpretation of the "chow list."

However, according to Plaintiff, Defendant Castine was also responsible for taking the dinner "chow list" on February 3, 2018, and Plaintiff expressly advised Defendant Castine that he was not let out of his cell for lunch when Defendant Castine was making rounds for the dinner "chow list."  Pl. Dep. Tr., pp. 126-128, 133-35, 138-40.  Plaintiff also testified that he told Defendant Castine that he needed to be released for dinner, to which Defendant Castine responded, "Okay, I'll make sure you're on the list."  *Id*., p. 126.  Nonetheless, according to Plaintiff, he was not released with the other inmates for the dinner meal.  *Id*., pp. 126-27.

Plaintiff testified that after Defendant Reed opened the cell doors of other inmates and not his, he "yell[ed] as loud as [he] possibly could" and other inmates joined in yelling that he should be released for the meal.  Pl. Dep. Tr., p. 127.  According to Plaintiff, Defendant Reed then approached his cell, and he reiterated that he wanted to be released for dinner.  *Id*.  Plaintiff claims Defendant Reed advised that he would not be released because he was not on the list, to which Plaintiff responded

53

that not releasing him for the meal was a violation of his Eighth Amendment rights. *Id*., pp. 127-28. According to Plaintiff, Defendant Reed laughed at this statement and stated that it was "the funniest thing" he had ever heard. *Id*., p. 128.

With regard to the alleged meal denial on March 24, 2018, Plaintiff testified that Defendant Castine prepared the dinner "chow list" for this meal with the yard list, and Defendant Reed was responsible for opening the cell doors to release inmates to the yard. Pl. Dep. Tr., pp. 133-39. According to Plaintiff, he requested to be included on the list for yard time, and could have attended dinner from the yard, but was not let out of his cell when other inmates were let out for yard time. *Id*. Plaintiff further testified that he spoke with Defendants Castine and Reed about not being let out of his cell, and each advised that he was not on the list. *Id*., pp. 139-40.

Construing this evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant Castine left Plaintiff off the "chow list" on at least two occasions, despite being made aware of Plaintiff's desire to receive a meal. Alternatively, a reasonable juror could conclude that Defendant Reed refused to open Plaintiff's cell door to release him for meals on two occasions, despite the fact that Plaintiff's name was on the "chow list."[14] Intentionally denying an inmate a meal, in

---

[14] The "chow lists" created on February 3 and March 24, 2018, have apparently been destroyed. Defendants Kirkpatrick and Annucci were served on January 5, 2018. *See* Dkt. No. 14. Both the original complaint and the First Motion for Injunctive Relief submitted with the original complaint indicate Plaintiff's belief that he and other inmates had missed meals, and would miss meals in the future, as a result of the practice surrounding the preparation and interpretation of "chow lists." Counsel was also aware, by January 12, 2018, that "chow lists" are regularly destroyed within ten days of creation. *See* Dkt. No. 16. Thus, Plaintiff cannot be faulted for the unavailability of the "chow lists" prepared on February 3 and March 24, 2018.

the absence of a disciplinary basis for doing so, suggests some degree of unjustified indifference to that person's well-being.  Furthermore, according to Plaintiff, Defendants Castine and Reed were made aware that he had already missed one meal on February 3, 2018, before he was denied the second meal.

In light of the foregoing, Plaintiff has introduced sufficient evidence to create a question of fact with respect to the subjective element of his Eighth Amendment claims against Defendants Castine and Reed.

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be denied with respect to Plaintiff's Eighth Amendment claims against Defendants Castine and Reed.

### 3.  Annucci and Kirkpatrick

Plaintiff claims that Defendants Annucci and Kirkpatrick are responsible for the unofficial "chow list" policy or practice at Clinton Correctional Facility because they created and/or allowed the policy or practice to continue by doing the following: (1) not requiring officials who prepare "chow lists" to make an adequate announcement; (2) not requiring that supervisory officials regularly walk the companies so that inmates may bring issues to their attention, as is done at other correctional facilities; (3) not requiring meaningful record keeping of the "chow lists"; (4) allowing the "chow lists" to be destroyed within ten days of creation; (5) refusing to install surveillance cameras or require corrections officials to wear body cameras that are turned on; (6) refusing to retain any recorded footage for a meaningful length of time; (7) refusing to meaningfully investigate or remedy legitimate complaints; and (8) failing to establish policies or customs to correct errors in "chow lists."  Am. Compl. at ¶¶ 35-41.

Defendants Annucci and Kirkpatrick argue that they were not personally involved in the alleged meal deprivations.  *See* Defendants' Summary Judgment Memorandum of Law at 18-22.  Defendant Annucci states that he never reviewed any correspondence from Plaintiff, never reviewed, investigated or ruled on any of Plaintiff's grievances, and never directed that Plaintiff not receive a meal.  *See* Annucci Decl., ¶¶ 12-15.  Defendant Kirkpatrick states that he never allowed or encouraged any officials at Clinton Correctional Facility to deny inmates meals, or became aware of staff misconduct toward Plaintiff, or of a failure to follow proper procedures and protocols regarding the provision of meals.  *See* Kirkpatrick Decl., ¶¶ 12, 14-15.[15]

The Second Circuit recently clarified that "there is no special rule for supervisory liability."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. Dec. 28, 2020).  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id*. (quoting *Iqbal*, 556 U.S. at 676).  Thus, in the context of an Eighth Amendment claim against a supervisory official, a plaintiff must establish that the supervisory official himself acted with deliberate indifference—meaning that [the official] personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety."  *Id*. at 619 (internal quotation marks and citation omitted).

Following *Tangreti*, the Second Circuit decided *Edwards v. Quiros*, 986 F.3d 187 (2d Cir. 2021), where it found that a district court erred in setting aside a jury's

---

[15]  Defendant Kirkpatrick was Superintendent of Clinton Correctional Facility from August 6, 2015 to December 14, 2017.  Kirkpatrick Decl., ¶ 1.

verdict against the Warden of a Connecticut-based correctional facility on a Rule 50

motion.  In that case, the plaintiff, a Connecticut prisoner, brought a Section 1983

action alleging that state correctional officials, including the Warden, violated his

Eighth Amendment rights by requiring him to wear full restraints when exercising in the

prison yard over a period of six months.  *Edwards*, 986 F.3d at 189-91.  After the close

of all evidence at trial, the jury returned a verdict in the plaintiff's favor against the

Warden.  *Id*. at 191.  The district court then granted the Warden's Rule 50 motion, in

part on the ground that there was insufficient evidence showing the Warden's personal

involvement in the decision to require the plaintiff to exercise in full restraints.  *Id*.  In

reaching this conclusion, the district court relied on evidence showing that the Warden

was only specifically aware that the plaintiff was required to wear full restraints when

exercising in the prison yard beginning when plaintiff submitted an informal request,

which was only two weeks before the condition was removed, and therefore too brief

to sustain a violation of the Eighth Amendment.  *Id*.

In reversing, the Second Circuit found, with respect to the subjective element of

the plaintiff's claim, that "there was sufficient evidence for the jury to find that [the

Warden] had the requisite state of mind for the entire six-month period during which

[the plaintiff] was required to exercise in restraints when outside of his cell" because

there existed "abundant circumstantial evidence from which the jury reasonably

inferred [the Warden]'s actual knowledge of [the plaintiff]'s recreation status and the

concomitant risk to [the plaintiff]'s health from being required to exercise in restraints."

*Edwards*, 986 F.3d at 192-93.  The Second Circuit further found that there existed

sufficient evidence for the jury "to conclude that [the Warden] was deliberately

indifferent to the risk of harm to [the plaintiff]" because his "testimony indicated that he understood the importance of [inmates being able to] exercise unrestrained." *Id*. at 193-94 (noting that "[t]o be held liable, Quiros need only appreciate that the deprivation of meaningful exercise posed an excessive risk to Edwards's health[; he] need not have known the specifics of that health risk with the level of detail a physician would understand").

In this case, there can be no doubt that Defendant Annucci relies on subordinate officials, including Superintendents of correctional facilities, with respect to the day-to-day operation of those facilities. *See* Annucci Decl., ¶¶ 8-9. In addition, there is no evidence in the record showing, and the Court otherwise has no basis to infer, that Defendant Annucci was responsible for creating the "chow list" practice at Clinton Correctional Facility, which, according to Plaintiff, differs from both the written policy, and the practice at other correctional facilities. *Compare* Dkt. No. 49-2 *with* Am. Compl. at ¶¶ 22-23, 36-37, 40-41; Pl. Dep. Tr., pp. 57, 71-72, 118, 237-42.[16] Thus, even assuming Plaintiff was wrongly denied meals during his incarceration at Clinton Correctional Facility as a result of a flawed practice relative to the preparation and interpretation of "chow lists," the evidence in the record is insufficient to establish Defendant Annucci's personal involvement in this alleged wrongdoing, particularly in

---

[16] The written policy seems to contemplate that (1) inmates receive some level of advance notice regarding the preparation of the list, and (2) if an inmate is not on the "chow list," he is not permitted to attend the associated meal. *See* Dkt. No. 49-2; *see also* Baker Decl., ¶ 6; French Decl., ¶ 8. As noted, according to Plaintiff, the practice differed from the written policy in that "chow lists" were regularly taken at different times, with corrections officials sometimes failing to announce the preparation of the list in advance, and other times "racing by" cells. *See* Am. Compl. at ¶¶ 22-23; Pl. Dep. Tr., pp. 57, 71-72, 118.

light of *Tangreti*.

Conversely, it is reasonable to infer at this stage of the proceeding, and based on the absence of any evidence to the contrary, that Defendant Kirkpatrick, as the person in charge of Clinton Correctional Facility throughout 2017, was responsible for creating or ensuring the continuance of the "chow list" policy as written, and gave some guidance as to how the policy should be executed in practice. Moreover, if, as Plaintiff claims, the corrections officials tasked with preparing the "chow list" at Clinton Correctional Facility are never supervised or audited in any respect, and the corrections officials tasked with opening cell doors based on the list do not have the discretion to remedy a recording error, the "chow list" policy or practice in effect precludes a remedy for errors caused by negligence, recklessness, or intentional acts, as well as simple mistakes, which are undoubtedly foreseeable.

Based on the foregoing, a reasonable factfinder could conclude that Defendant Kirkpatrick was personally involved in creating a practice at Clinton Correctional Facility that would likely result in inmates unnecessarily missing meals. *See Walker*, 717 F.3d at 125 ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk.").[17]

---

[17] It is of course possible that the "chow list" practice at Clinton Correctional Facility is exactly as Plaintiff describes, and is done this way because this practice is necessary to maintain institutional security and/or preserve internal order, which may be grounds for dismissing Plaintiff's Eighth Amendment claims despite the missed meals. *See Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979) (recognizing that a prisoner's constitutional rights may be properly limited or retracted to maintain institutional security and preserve internal order, and thus, courts "have held that even when an institutional restriction infringes a specific constitutional guarantee, . . . the practice must be evaluated in the light of the central

Furthermore, Plaintiff has introduced evidence showing that he communicated with the "IGP Clerk" at Clinton Correctional Facility in March, 2017, about the Policy Grievance, and requested that the grievance be submitted to the Superintendent, Defendant Kirkpatrick.  *See* Opposition Declaration at 5, ¶¶ 20-21; Dkt. No. 105-4 at 48-49.  There is also evidence in the record showing that Plaintiff (1) filed a lawsuit in the New York Court of Claims in April, 2017, regarding deficiencies with the grievance process at Clinton Correctional Facility, wherein he referenced, among others, the Policy Grievance, and (2) filed a grievance regarding denial of meals in March, 2017, which was investigated by Defendant Kirkpatrick and denied on April 24, 2017.  Dkt. No. 105-4 at 61-62; Dkt. No. 92-16, ¶¶ 17-18; Dkt. No. 92-19.  Plaintiff has also introduced evidence from fifteen (15) inmates who claim that they were also denied meals based on issues with the preparation or interpretation of the "chow lists" during their confinement at Clinton Correctional Facility.  *See* Dkt. No. 105-4 at 22-40.

Based on this evidence, a reasonable factfinder could also conclude that Defendant Kirkpatrick was aware, during his time as Superintendent at Clinton Correctional Facility, that inmates, including Plaintiff, were in fact missing meals because of the unofficial policy or practice at Clinton Correctional Facility regarding the preparation and/or interpretation of "chow lists."  In addition, as set forth above, under the circumstances, a reasonable factfinder could conclude that the totality of the meal deprivations Plaintiff experienced was serious enough to violate his Eighth Amendment rights.

---

objective of prison administration, safeguarding institutional security").  Currently, however, there is no evidence before the Court regarding this issue.

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be granted with respect to Plaintiff's Eighth Amendment claim against Defendant Annucci and denied with respect to Plaintiff's Eighth Amendment claim against Defendant Kirkpatrick.

## VIII.    CONCLUSION

Thus, if this Report-Recommendation and Order is accepted, the remaining claims will be Plaintiff's First Amendment claim for retaliation against Defendant Lamoy; and Plaintiff's Eighth Amendment claims against Defendants Castine, Reed, and Kirkpatrick.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 92) be **GRANTED in part** and **DENIED in part** as set forth above; and it is hereby

**ORDERED** that Plaintiff's request for sanctions for spoliation of evidence, set forth in his Omnibus Cross-Motion (Dkt. No. 105), is **DENIED without prejudice** as premature;[18] and it is further

**ORDERED** that the remainder of Plaintiff's Omnibus Cross-Motion is **DENIED** as set forth above; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d

---

[18]  Should Judge Hurd adopt at least some of the portions of this Report-Recommendation recommending that certain claims survive summary judgment, Plaintiff may renew his request for sanctions.

Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which

to file written objections to the foregoing report.[19]  Such objections shall be filed with

the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN

FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984

F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892

F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     March 8, 2021
           Syracuse, NY

Therese Wiley Dancks
United States Magistrate Judge

---

[19]  If you are proceeding pro se and are served with this Order and Report-
Recommendation by mail, three additional days will be added to the fourteen-day period,
meaning that you have seventeen days from the date the Order and Report-
Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the
last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the
deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal
holiday.  Fed. R. Civ. 6(a)(1)(C).