UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEREMY ZIELINSKI,

                        Plaintiff,

            -v-                              9:17-CV-1042

ANTHONY ANNUCCI *et al.*,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

JEREMY ZIELINSKI
Plaintiff, Pro Se
16-A-3601
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14872

HON. LETITIA JAMES                    WILLIAM A. SCOTT, ESQ.
New York State Attorney General       Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## <u>ORDER ON REPORT & RECOMMENDATION</u>

On September 20, 2017, *pro se* plaintiff Jeremy Zielinski ("plaintiff"), then

an inmate at Clinton Correctional Facility ("Clinton C.F."), filed this 42

U.S.C. § 1983 action on behalf of himself and a putative class of similarly situated prisoners alleging, *inter alia*, that various corrections officials were wrongfully denying them meals. Dkt. No. 1. Plaintiff sought leave to proceed in forma pauperis ("IFP"). Dkt. Nos. 2, 3, 7. Plaintiff also moved for a temporary restraining order and injunctive relief. Dkt. No. 4.

On November 29, 2017, this Court granted plaintiff's IFP application, deemed the action to have been brought by plaintiff in his individual capacity only (as non-lawyers cannot represent others in federal court), denied the request for injunctive relief, dismissed some of the claims, directed certain defendants to respond to plaintiff's Eighth Amendment denial-of-meals claims, and instructed the Attorney General's Office to assist plaintiff in identifying certain John Doe defendants. Dkt. No. 10. After some additional motion practice, plaintiff moved to amend his pleading. Dkt. Nos. 30, 33.

On March 19, 2019, U.S. Magistrate Judge Thérèse Wiley Dancks advised by Report & Recommendation ("R&R") that plaintiff's amended complaint be accepted for filing to the extent that it asserted (1) a First Amendment retaliation claim against defendant Lamoy; and (2) Eighth Amendment denial-of-meal claims against defendants Annucci, Kirkpatrick, Baker, French, Reed, and Castine. Dkt. No. 67. That R&R was adopted by this Court in full on July 3, 2019, Dkt. No. 74, and the parties went to discovery on the remaining claims, *see* Dkt No. 87.

On April 30, 2020, defendants Lamoy, Annucci, Kirkpatrick, Baker, French, Reed, and Castine (collectively "defendants") moved under Federal Rule of Civil Procedure ("Rule") 56 seeking summary judgment on the surviving claims. Dkt. No. 92. Plaintiff opposed and cross-moved for sanctions, further discovery, and other miscellaneous relief. Dkt. No. 105.

On March 8, 2021, Judge Dancks denied plaintiff's request for sanctions without prejudice to renew and advised by R&R that plaintiff's Eighth Amendment denial-of-meals claim be dismissed against defendants Baker, French, and Annucci. Dkt. No. 116 (the "March 8 R&R").

However, the March 8 R&R recommended that defendants' motion for summary judgment be denied as to plaintiff's (1) First Amendment retaliation claim against defendant Lamoy; and (2) Eighth Amendment denial-of-meals claims against defendants Castine, Reed, and Kirkpatrick. Dkt. No. 116.

Both parties have filed objections to the March 8 R&R. Dkt. Nos. 121, 127. Upon *de novo* review of the portions to which the parties have objected, the March 8 R&R will be accepted in part and rejected in part as follows. *See* 28 U.S.C. § 636(b)(1)(C).

## 1. **First Amendment**

The March 8 R&R recommended that summary judgment be denied as to plaintiff's First Amendment retaliation claim against defendant

Lamoy. Dkt. No. 116 at 42–44.[1] "To prevail on a First Amendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020) (cleaned up).

First, the March 8 R&R determined that plaintiff engaged in "protected activity" when he repeatedly complained to various prison officials about missing certain meals. Dkt. No. 116 at 42–43. In particular, the March 8 R&R found that plaintiff submitted "at least three grievances between December 26 and December 30, 2017" and "complained 'loudly' about being denied meals on multiple occasions" throughout the month of December 2017. *Id.* at 43.

Second, the March 8 R&R determined that, construed in the light most favorable to the non-movant, defendant Lamoy took "adverse action" against plaintiff when he (1) threatened him on December 11, 2017; (2) entered his cell and struck him on January 1, 2018; and (3) called him a "rat" in front of other inmates on January 3, 2018. Dkt. No. 116 at 43–44.

---

[1] Pagination corresponds to CM/ECF.

Third, the March 8 R&R determined that a reasonable factfinder could conclude that a causal connection existed between one or more of these adverse actions and plaintiff's protected activity. Dkt. No. 116 at 44. In particular, the March 8 R&R found that:

> Defendant Lamoy was aware of Plaintiff's lawsuit and complaints about being denied meals on and before December 30, 2017. In addition, a reasonable factfinder could conclude that Defendant Lamoy was aware of at least the grievance Plaintiff submitted against him by January 3, 2018. Furthermore, the alleged adverse actions occurred within close proximity to Plaintiff's receipt of the November 2017 Order in this action, oral complaints about mistreatment, and submission of grievances.

Dkt. No. 116 at 44.

Defendants have objected to the March 8 R&R's recommendation that summary judgment be denied as to this First Amendment retaliation claim. Defs.' Obj., Dkt. No. 121 at 7–9. In their objection, defendants point out that plaintiff did not file any grievances naming defendant Lamoy until January 1, 2018, *after* two of the "adverse actions" identified by the March 8 R&R (with the exception of the "rat" comment) had already occurred. *Id*. at 8. In defendants' view, plaintiff's statements about *other* complaints and grievances that he made to (or about) *other* prison officials are insufficient to give rise to a jury question on causation. *Id*.

Upon review, defendants' motion for summary judgment on this claim must be granted. "Courts properly approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Barnes v. Harling*, 368 F. Supp. 3d 573, 599 (W.D.N.Y. 2019) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

As an initial matter, plaintiff has certainly carried his burden on summary judgment of identifying evidence from which a jury could conclude that he engaged in protected activity. "[O]ral complaints made to corrections officers" may serve as the basis for a First Amendment retaliation claim. *Tirado v. Shutt*, 2015 WL 4476027, at *4 (S.D.N.Y. July 15, 2015). The same is true of formal grievances and lawsuits filed against prison officials. *Id*. Viewed in the light most favorable to him, plaintiff engaged in all three forms of protected activity while incarcerated at Clinton C.F.

However, defendant Lamoy's alleged misconduct does not rise to the level of "adverse action" required to maintain a First Amendment retaliation claim. "An act in retaliation for the exercise of a constitutional right is actionable under § 1983 even if the act when taken for different reasons would have been proper." *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988) (cleaned up). Importantly, though, the "retaliatory conduct must be the type

that would deter 'a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Hayes*, 976 F.3d at 272 (quoting *Davis*, 320 F.3d at 353). Therefore, courts "look to the specific circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens." *Id*. (cleaned up).

As relevant here, "[h]ostile statements of prison guards, though made in connection with an inmate's exercise of free speech, do not presumptively violate the First Amendment." *Tirado*, 2015 WL 4476027, at *5. "Though certain verbal threats may rise to the level of adverse actions, such threats are generally either quite specific or made on a repeated basis." *Id*. Thus, "[w]ithout evidence that an unnecessary statement by a prison guard contributed to some concrete threat to the prisoner's safety and welfare, the making of the statement does not rise to the level of First Amendment retaliation." *Davidson v. Bartholome*, 460 F. Supp. 2d 436, 445 (S.D.N.Y. 2006).

Measured against this body of law, neither the verbal threats of future physical harm uttered by Lamoy on December 11, 2017, nor Lamoy's act of calling plaintiff a "rat" in front of other inmates on January 3, 2018, satisfy the "adverse action" requirement necessary to sustain a First Amendment claim for retaliation. *See, e.g.*, *Barrington v. New York*, 806 F. Supp. 2d 730, 734 (S.D.N.Y. 2011) (dismissing on summary judgment a retaliation claim

where prison guard allegedly responded to prisoner's filing of a grievance by "banging on the bars of his cell," "waiv[ing] a copy of [the] grievance, "using racial slurs," and stating that "me and my boys going to get you"); *see also Mateo v. Fischer*, 682 F. Supp. 2d 423, 434 (S.D.N.Y. 2010) (collecting cases).[2]

Plaintiff's assertion that defendant Lamoy entered his cell on January 1, 2018 and struck him once in the throat presents a closer question. Notably, a physical assault "need not rise to the level of an Eighth Amendment excessive force violation in order to be considered an adverse action for purposes of a First Amendment retaliation analysis." *Flemming v. King*, 2016 WL 5219995, at *5 (N.D.N.Y. June 20, 2016) (Hummel, M.J.) (Report & Recommendation), *adopted by* 2016 WL 5173282 (N.D.N.Y. Sept. 21, 2016). Instead, "[t]he Second Circuit has stated that the issue of whether the alleged retaliation [has] reached the threshold of actionability under Section 1983 'is factual in nature.'" *Nelson v. McGrain*, 2015 WL 7571911, at *2 (W.D.N.Y. Nov. 24, 2015) (quoting *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999)).

Those facts are as follows. Plaintiff testified that he and defendant Lamoy got into a "pretty boisterous argument" because Lamoy "was one of the staff" who had failed to resolve an earlier meal-related grievance filed by

---

[2] Alternatively, "a series of actions motivated by retaliation that are, collectively, sufficient to deter a person of ordinary firmness from exercising his First Amendment rights" can also rise to the level of adverse action. *Tirado*, 2015 WL 4476027, at *7. That standard is not met here, either.

plaintiff. Pl.'s Dep., Dkt. No. 92-3, 223:10–16, 224:12–16. During this "argument," plaintiff testified that defendant Lamoy entered his cell and "shoved [him] backward by the throat" using an open hand. *Id.* at 226:12–23; *see also id.* at 227:6–12. According to plaintiff's testimony, no further physical contact happened: Lamoy "backed out of the cell after that." *Id.* at 227:9–12. Plaintiff further testified that he did not suffer any physical injuries or bruising as a result of this incident. *Id.* at 225:24–227:5.

Construed in the light most favorable to him, plaintiff's claim that defendant Lamoy entered his cell and shoved him backward by the throat, causing no injuries, does not rise to the level of an "adverse action." *See Woodward v. Afify*, 2018 WL 9875253, at *11 (W.D.N.Y. Sept. 28, 2018) (Report & Recommendation) (concluding on summary judgment that inmate's claim that guard punched him in the chest a single time to be "an insufficient adverse action to meet even the lower standard required in a First Amendment retaliation claim"), *adopted by* 2019 WL 5394217 (W.D.N.Y. Oct. 22, 2019).

Even assuming otherwise, plaintiff has failed to raise a material question of fact with respect to the causation requirement. To prevail on a First Amendment retaliation claim, an inmate must still show that the protected activity was "a substantial or motivating factor" in the adverse action. *Hayes*, 976 F.3d at 272.

Notably, plaintiff did not file any formal grievances about defendant Lamoy until later in the day on January 1, 2018, the date on which Lamoy entered his cell and shoved him backward during the argument. The March 8 R&R acknowledged this timing problem vis-à-vis defendant Lamoy but concluded that Lamoy could still be held liable because he was more generally aware of the fact that plaintiff had been engaged in formal and informal protected activity over at least the past month.

However, courts ordinarily require some kind of demonstrable connection between the protected activity at issue (whatever its nature) and any adverse action that follows. *Cf. McFadden v. Friedman*, 2015 WL 5603433, at *16 (Suddaby, J.) (adopting Report & Recommendation of Hummel, M.J.) ("Grievances filed against officers other than the disciplining officer, in most circumstances, do not establish the requisite causal connection between the protected conduct and the alleged adverse action.").

For good reason, too: a too-lax application of the already-generous causation standard for First Amendment retaliation claims would risk transforming a whole range of day-to-day inmate/officer interactions into First Amendment retaliation claims. *Medina v. Skowron*, 806 F. Supp. 2d 647, 651 (W.D.N.Y. 2011) (cautioning courts not "to indulge in specious, '*post hoc ergo propter hoc*' reasoning; *i.e.*, to permit an inference that simply

because the defendants' action followed the plaintiff's protected activity, that the former must have been motivated by the latter").

After careful review of the underlying record, there is insufficient evidence from which a rational trier of fact could find the causation requirement satisfied. Accordingly, defendants' motion for summary judgment must be granted as to plaintiff's First Amendment claim against defendant Lamoy.

## 2. **Eighth Amendment**

The March 8 R&R also recommended that summary judgment be denied as to plaintiff's Eighth Amendment denial-of-meals claims against defendants Castine, Reed, and Kirkpatrick. Dkt. No. 116.

Plaintiff's Eighth Amendment claim revolves around the use of "chow lists" during meal times at Clinton C.F. Dkt. No. 116 at 58. As explained in more detail in the R&R, plaintiff contends that the prison guards prepared and interpreted these "chow lists" in an *ad hoc* manner that caused him and other inmates to routinely miss out on certain meals. *Id*. at 45–46.

The Eighth Amendment imposes a duty on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "To state a claim, a plaintiff must show both that (1) objectively, the conditions resulted in unquestioned and serious deprivations of basic human needs or of the minimal civilized measure of life's necessities and (2) subjectively, that the defendant acted with a

sufficiently culpable state of mind, deliberate indifference, in imposing those conditions." *Dixon v. Fishkill Corr. Facility*, 2019 WL 2866489, at *3 (S.D.N.Y. July 2, 2019) (cleaned up).

As to Castine and Reed, the March 8 R&R determined that the evidence showed that defendant Castine left plaintiff off the "chow list" for lunch and dinner on February 3, 2018 and left him off the "chow list" again for dinner on March 24, 2018. Dkt. No. 116 at 49–50. The March 8 R&R further determined that defendant Reed was responsible for opening the cell doors (or not opening them, as the case may be) on those two dates. *Id*. As a result, plaintiff missed lunch and dinner on February 3 and missed dinner on March 24. *See id*. As to Kirkpatrick, the March 8 R&R determined that he bore decision-making responsibility over the "chow list" policy or practice at Clinton C.F. during the relevant time period. *Id*. at 59.

Defendants have objected to the March 8 R&R's recommendation that summary judgment be denied as to these claims. Defs.' Obj. at 9–13. As defendants explain, the sporadic denial of a few meals is not ordinarily considered "objectively" sufficiently serious to amount to an Eighth Amendment violation. *Id*. at 9–11. They further argue that plaintiff has utterly failed to establish a jury question on the "subjective" component of deliberate indifference, especially as to defendant Kirkpatrick. *Id*. at 11–13.

Upon review, defendants' motion for summary judgment on these claims must be granted. "The Second Circuit has held that the Constitution requires that prisoners be fed nutritionally adequate food and 'under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension.'" *Sankara v. Montgomery*, 2018 WL 4610686, at *8 (N.D.N.Y. June 25, 2018) (Dancks, M.J.) (Report & Recommendation) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)), *adopted by* 2018 WL 3408135 (N.D.N.Y. July 13, 2018) (Scullin, J.); *see also Jackson v. Marks*, 722 F. App'x 106, 107 (2d Cir. 2018) (summary order) ("[A] substantial deprivation of food can cause serious physical harm sufficient to find cruel and unusual punishment in violation of the Eighth Amendment.").

"To establish a valid claim that the denial of food . . . constitutes an Eighth Amendment violation, one must establish that there was a 'sufficiently serious condition' that resulted from the food not being received." *Lewis v. Zon*, 920 F. Supp. 2d 379, 387 (W.D.N.Y. 2013) (citation omitted). "A condition is serious for constitutional purposes if it presents 'a condition of urgency that may result in degeneration or extreme pain.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1988)).

### a. **Castine and Reed**

Measured against this standard, the alleged denial of two meals on February 3 and another meal on March 24 is not "objectively" sufficiently serious to amount to an Eighth Amendment violation. *Compare Sankara*, 2018 WL 4610686, at *9 (collecting cases holding that the sporadic denial of a few meals is insufficient to state an Eighth Amendment violation), *with Dixon*, 2019 WL 2866489, at *3 (denying motion to dismiss where plaintiff alleged defendants prevented him "from eating any food for three days out of a five-day period").

The March 8 R&R acknowledged as much. Dkt. No. 116 at 46 ("[I]solated meal deprivations are insufficient to constitute an Eighth Amendment violation."). Even so, the March 8 R&R reasoned that the three missed meals that were specifically attributable to defendants Castine and Reed must be assessed in light of all the prior meals that plaintiff had allegedly been denied up to that point. *Id*. at 51 ("Although Plaintiff does not claim that either Defendant Castine or Defendant Reed were responsible for any of these earlier missed meals, they are certainly relevant to the Court's analysis of the objective element of Plaintiff's Eighth Amendment claim under the circumstances alleged.").

To be sure, those background facts are fair game for purposes of an Eighth Amendment analysis.[3]  Importantly, however, "[a] successful § 1983 claim holds an individual personally responsible for the role his or her own acts or omissions played in violating someone's rights." *Dukes v. City of Albany*, 492 F. Supp. 3d 4, 12 (N.D.N.Y. 2020).  And even taking into account all the other meals that plaintiff claims to have missed up to that point, there is simply no indication in the record that the denial of two meals on February 3 and one more meal on March 24 posed any immediate danger to plaintiff's health.  *Woodward v. Ali*, 2015 WL 5711899, at *12 (N.D.N.Y. Sept. 29, 2015) (Kahn, J.) (adopting Report & Recommendation of Treece, M.J.) ("Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment, but the failure to provide food must present an immediate danger to the prisoner's health."  (cleaned up)); *see also Lewis*, 920 F. Supp. 387–88 (finding objective element unsatisfied where plaintiff claimed that denial of meals rendered him "unable to take certain medications" but failed to demonstrate "that he experienced any pain, discomfort, or medical problems" as a result); *Sankara*, 2018 WL 4610686, at *9 (finding this element unsatisfied where prisoner "testified at his

---

[3]  For instance, a prison official who denies meals to an inmate in serious distress—even though that particular official might have borne no responsibility for the prior deprivations of food—could still be held accountable for his own "personal involvement" in the sense that he himself would have acted with "deliberate indifference" to an objectively sufficiently serious condition.

deposition that he was hungry and emotionally frustrated as a result" of missing certain meals). Accordingly, defendants' motion for summary judgment must be granted as to plaintiff's Eighth Amendment claims against defendants Castine and Reed.

**b. <u>Kirkpatrick</u>**

Plaintiff's Eighth Amendment denial-of-meals claim must also be dismissed against defendant Kirkpatrick, the prison official in charge of Clinton C.F. throughout 2017. Dkt. No. 116 at 59. The March 8 R&R determined that:

> [A] reasonable factfinder could [ ] conclude that Defendant Kirkpatrick was aware, during his time as Superintendent at Clinton Correctional Facility, that inmates, including Plaintiff, were in fact missing meals because of the unofficial policy or practice at Clinton Correctional Facility regarding the preparation and/or interpretation of "chow lists." In addition, . . . , under the circumstances, a reasonable factfinder could conclude that the totality of the meal deprivations Plaintiff experienced was serious enough to violate his Eighth Amendment rights.

Dkt. No. 116 at 60.

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

At the outset, the dismissal of plaintiff's denial-of-meals claims against defendants Baker and French (in the March 8 R&R) and against defendants Castine and Reed (in this opinion) would ordinarily eliminate the possibility of any supervisory liability against defendant Kirkpatrick. *See, e.g.*, *Lawrence v. Evans*, 669 F. App'x 27, 28 (2d Cir. 2016) (summary order) ("Because there is no underlying constitutional violation, [the] supervisory liability claim also fails."); *Raspardo v. Carlone*, 770 F.3d 97, 127 (2d Cir. 2014) ("Liability cannot be imputed to [the supervisor] without an underlying constitutional violation."); *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation.").

Notably, though, the fact pattern presented by this case is somewhat unusual. The evidence marshaled in discovery established that defendants Baker and French only denied plaintiff "a single lunch meal on February 4, 2017" and defendants Castine and Reed only denied plaintiff lunch and dinner on February 3, 2018, and denied plaintiff dinner on March 24, 2018. Dkt. No. 116 at 49–50. As discussed at length *supra*, this kind of sporadic denial of a few isolated meals—especially in the absence of an immediate danger to health—simply does not amount to an objectively serious deprivation for Eighth Amendment purposes.

However, plaintiff contends that he was denied more than just a total of four meals while incarcerated at Clinton C.F. Indeed, the March 8 R&R found that plaintiff's evidence established that "he missed at least twenty-four (24) meals over a period of approximately thirteen months." Dkt. No. 116 at 46, 48.[4]

Although these additional missed meals are not fairly traceable to any conduct by defendants Baker, French, Castine, or Reed, the March 8 R&R concluded that Kirkpatrick's role as Superintendent of Clinton C.F. meant that he could be held personally responsible for "creating or ensuring the continuance of" the policy or practice that caused his subordinates to deny plaintiff all of those meals. *Id*. at 59.[5]

That's true as a general matter. As the Second Circuit recently explained in attempting to clarify this area of law:

> The focus is on what the *supervisor* did or caused to be done, "the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable which can be no less than the *mens rea* required of anyone else. Simply put, there's no special rule of liability for supervisors. The test for them is the same as the test for everyone else."

---

[4] Plaintiff claims that he was also denied fourteen other meals while on "keeplock" status, which differs from the general "chow list" practice. Dkt. No. 116 at 51; *see also id*. at 5 (explaining that the "chow list" practice at issue applies to "inmates who are not on keeplock status or confined in the special housing unit").

[5] The R&R notes that plaintiff has submitted affidavits "from fifteen different inmates who each claim that they missed meals during their confinement at Clinton Correctional Facility based on this unofficial policy or practice." Dkt. No. 116 at 46 n.12.

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010) (Gorsuch, J.)).

In other words, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618. To do so, plaintiff must identify evidence that, if credited, would show that defendant Kirkpatrick's creation and continuance of the *ad hoc* "chow list" practice at Clinton C.F. caused plaintiff to suffer a deprivation that was "objectively" sufficiently serious and that defendant Kirkpatrick "personally knew of and disregarded an unreasonable risk of serious harm" to plaintiff's health as a result of his conduct. *See id.* at 619.

The problem is that no reasonable jury could reach that conclusion on this record. Plaintiff claims that the flawed "chow list" policy caused him to miss twenty-four meals over a period of roughly thirteen months. Dkt. No. 116 at 46; *see also id.* at 26 (assuming for the purpose of summary judgment that "plaintiff was denied meals on each of the dates that he has claimed in his Amended Complaint").[6]

---

[6] The R&R uses the phrase "at least," which suggests that this number of missed meals is a floor and not a ceiling. Of course, *pro se* litigants enjoy special solicitude on summary judgment. *See, e.g.*, *Minus v. City of N.Y.*, 488 F. Supp. 3d 58, 63 (S.D.N.Y. 2020). Even so, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)). As relevant here, the burden is on plaintiff to come forward with admissible evidence (even his own testimony would have sufficed) about the total number of meals he was denied. Speculation about additional meals that might have been missed is insufficient on summary judgment. Thus, the Court confines its analysis to the instances in which plaintiff has identified a specific deprivation.

Assuming those facts as true for the purpose of summary judgment, this still amounts to nothing more than the sporadic deprivation of food over an extended period of time. In our circuit, a deprivation of that nature does not rise to the level of an Eighth Amendment violation. *Compare Dixon*, 2019 WL 2866489, at *3 (suggesting that "routinely" feeding inmates "every other day" would be actionable as an Eighth Amendment violation as a denial of "adequate nutrition"), *with Abascal v. Fleckenstein*, 2012 WL 638977, at *3 (W.D.N.Y. Feb. 27, 2012) (explaining that the "deprivation of fourteen meals" dispersed over a four-month period would not be "sufficiently serious to establish an Eighth Amendment violation").[7]

Nor has plaintiff established a jury question on the subjective component of this supervisory liability claim. The March 8 R&R determined that "it is reasonable to infer at this stage of the proceeding, and based on the absence of evidence to the contrary, that Defendant Kirkpatrick, as the person in charge . . . gave some guidance as to how the [chow list] policy should be executed in practice." Dkt. No. 116 at 59.

---

[7] Other circuits seem to have set the bar even higher. *See, e.g.*, *Foster v. Runnels*, 554 F.3d 807, 812–13 (9th Cir. 2009) (holding that denying an inmate sixteen meals over twenty-three days was objectively sufficiently serious to violate the Eighth Amendment); *Reed v. McBride*, 178 F.3d 849, 853–54 (7th Cir. 1999) (finding objective element satisfied by allegation that sick prisoner was denied food for three to five days); *Simmons v. Cook*, 154 F.3d 805, 808 (8th Cir. 1998) (finding objective element satisfied where prisoner was denied four consecutive meals over two days).

However, as defendants point out in their objections, this amounts to a conclusion "that personal involvement by a supervisory defendant can be inferred simply because they are in a supervisory position." Dkt. No. 121 at 13. That is precisely the kind of inference about supervisory officials held impermissible by the Second Circuit in *Tangreti*, which recognized the Supreme Court's abrogation of the more plaintiff-friendly test that had long been used by courts in this circuit. 983 F.3d at 617 n.4 (cataloguing confusion over whether, and to what extent *Iqbal* abrogated the factors found in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)). Accordingly, summary judgment must be granted as to plaintiff's Eighth Amendment claims against defendant Kirkpatrick.

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED in part and REJECTED in part;

2. The Report & Recommendation is ACCEPTED to the extent that it recommended granting summary judgment as to plaintiff's Eighth Amendment claims against defendants Baker, French, and Annucci;

3. The Report & Recommendation is REJECTED to the extent that it recommended denying summary judgment as to plaintiff's First Amendment

retaliation claim against defendant Lamoy and plaintiff's Eighth Amendment claims against defendant Castine, Reed, and Kirkpatrick;

4.  Defendants' motion for summary judgment is GRANTED as to those claims for the reasons set forth in this opinion; and

5.  Plaintiff's operative complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly, terminate any pending motions, and close the file.

IT IS SO ORDERED.

Dated:  July 1, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge